## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**ROBERT W. HALL, individually and**                      **PLAINTIFF**
**on behalf of all others similarly situated**

**v.**               **Case No. 1:09-CV-00057-JLH**

**EQUITY NATIONAL LIFE INSURANCE**
**COMPANY, et al.**                           **DEFENDANTS**

---

### DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION
### AND ELIMINATE PLAINTIFF'S CLASS ACTION ALLEGATIONS
### AND SUPPORTING MEMORANDUM OF LAW

---

Markham R. Leventhal           John K. Baker (ABA #97024)
Farrokh Jhabvala                **MITCHELL, WILLIAMS, SELIG,**
**JORDEN BURT LLP**               **GATES & WOODYARD, P.L.L.C.**
777 Brickell Avenue, Suite 500      425 West Capitol Avenue, Suite 1800
Miami, Florida  33131            Little Rock, Arkansas  72201
Telephone:  (305) 371-2600       Telephone:  (501) 688-8800
Facsimile:  (305) 372-9928        Facsimile:  (501) 918-7850

*Attorneys for Defendants Transamerica*
*Life Insurance Company and AEGON USA, LLC*

## <u>TABLE OF CONTENTS</u>

<i>Page</i>

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ................................................................................. 4

    Nature of the Dispute ................................................................................. 5

    The *Pipes* Case and Related "Actual Charges" Litigation ................................ 8

    The *Runyan* Class Action Complaint ........................................................... 9

    The *Runyan* Class Action Settlement and Notice to the Settlement Class ...................... 10

    Plaintiff's Counsel Attempts to Enjoin and Obstruct the *Runyan*
    Settlement .................................................................................................. 12

    The *Runyan* Final Judgment and Release .................................................... 13

ARGUMENT ..................................................................................................... 16

I.     THIS COURT IS AUTHORIZED TO RULE ON CLASS
      CERTIFICATION AND TO ELIMINATE THE CLASS ALLEGATIONS
      IN THIS CASE ........................................................................................ 17

II.    PLAINTIFF'S PROPOSED CLASS CLAIMS ARE BARRED BY THE
      FULL FAITH AND CREDIT ACT, *RES JUDICATA*, AND
      COLLATERAL ESTOPPEL ..................................................................... 18

    A.    The Full Faith And Credit Act Requires This Court To Give Effect
        To The *Runyan* Final Judgment ......................................................... 18

    B.    The Proposed Class Claims Are Barred By The Final Judgment
        Under Arkansas' Law Of *Res Judicata* ............................................... 21

        1.    The *Runyan* Action resulted in a final judgment on the
            merits ......................................................................................... 22

        2.    The *Runyan* Action was based upon proper jurisdiction ......................... 23

        3.    The *Runyan* Action was fully contested in good faith ............................ 24

## TABLE OF CONTENTS
(continued)

*Page*

      4.    This action and the *Runyan* Action involve the same claim or cause of action ................................................................. 25

      5.    This action and the *Runyan* Action involve the same parties or their privies ........................................................................ 26

    C.    The Doctrine Of Collateral Estoppel Bars All Class Allegations And Claims Asserted In This Action .................................. 27

III.    ALL CLASS ALLEGATIONS AND CLAIMS ASSERTED IN THIS ACTION ARE BARRED BY THE RELEASE IN THE *RUNYAN* FINAL JUDGMENT.................................................................................................. 28

IV.    ALLOWING THE PLAINTIFF TO RE-LITIGATE DUPLICATIVE, SETTLED CLASS ACTION CLAIMS WOULD VIOLATE THE STRONG PUBLIC AND JUDICIAL POLICY UNDERLYING *RES JUDICATA* AND FAVORING CLASS ACTION SETTLEMENTS ............................ 30

CONCLUSION ............................................................................................. 31

CERTIFICATE OF SERVICE ............................................................. 33

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Allen v. McCurry,*
    449 U.S. 90 (1980)..................................................................... 21, 30

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)........................................................................ 3

*Arkansas Louisiana Gas Co. v. Taylor,*
    858 S.W.2d 88 (Ark. 1993) ........................................................... 3, 22

*Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,*
    398 U.S. 281 (1970)...................................................................... 21

*Bailey v. Harris Brake Fire Protection District,*
    697 S.W.2d 916 (Ark. 1985) ......................................................... 22

*Barclay v. Waters,*
    182 S.W.3d 91 (Ark. 2004) ........................................................... 22

*Butler v. City of North Little Rock, Arkansas,*
    980 F.2d 501 (8th Cir. 1992) ......................................................... 20, 22

*Cahill v. Jewell,*
    181 F.3d 100, 1999 WL 357747 (6th Cir. May 12, 1999) ............................ 16

*Carwell Elevator Co. v. Leathers,*
    101 S.W.3d 211 (Ark. 2003) ......................................................... 22

*Claybrook v. Central United Life Insurance Co.,*
    387 F. Supp. 2d 1199 (M.D. Ala. 2005) .............................................. 5, 6, 8

*Cooper v. Federal Reserve Bank of Richmond,*
    467 U.S. 867 (1984)...................................................................... 20

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ....................................................... 31

*Colella v. University of Pittsburgh,*
    569 F. Supp. 2d 525 (W.D. Pa. 2008).............................................. 31

*Crockett & Brown, P.A. v. Wilson,*
    864 S.W.2d 244 (Ark. 1993) ......................................................... 23

# TABLE OF AUTHORITIES
(continued)

*Page*

*Davis v. Davis,*
    305 U.S. 32 (1938) ........................................................................................... 21

*East Texas Motor Freight Lines v. Freeman,*
    713 S.W.2d 456 (Ark. 1986) ........................................................................... 28

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ......................................................................................... 18

*Erickson v. Allianz Life Insurance Co. of North America,*
    2009 WL 3151829 (8th Cir. Oct. 2, 2009) ...................................................... 21

*Federated Department Stores, Inc. v. Moitie,*
    452 U.S. 394 (1981) ......................................................................................... 30

*Francis v. Francis,*
    31 S.W.3d 841 (Ark. 2000) ....................................................................... 22, 28

*Geringer v. City of Omaha,*
    1993 WL 10445 (8th Cir. Jan. 22, 1993) ........................................................ 19

*Gilbert v. Ferry*,
    413 F.3d 578 (6th Cir. 2005) ........................................................................... 30

*Grant County Savings & Loan Ass'n, Sheridan, Kansas v. Resolution Trust Corp.,*
    968 F.2d 722 (8th Cir. 1992) ........................................................................... 29

*In re Life Investors Insurance Co. of America,*
    589 F.3d 319 (6th Cir. 2009) ....................................................................... 4, 12

*In re Oil & Gas Litigation,*
    967 F.2d 489 (11th Cir. 1992) ..................................................................... 3, 31

*In re St. Jude Medical Inc. Silzone Heart Valves Products Liability Litigation,*
    2009 WL 1789376 (D. Minn. June 23, 2009) ................................................ 18

*In re Warfarin Sodium Antitrust Litigation*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................ 3, 31

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) ........................................................................... 31

# TABLE OF AUTHORITIES
(continued)

*Page*

*John Cheeseman Trucking, Inc. v. Pinson*,
    855 S.W.2d 941 (Ark. 1993) ..................................................................... 23

*Kiowa Tribe of Oklahoma v. Lewis*,
    777 F.2d 587 (10th Cir. 1985) ................................................................. 21

*Kremer v. Chemical Construction Corp.*,
    456 U.S. 461 (1982) ....................................................................... *passim*

*Lane v. Sullivan*,
    900 F.2d 1247 (8th Cir. 1990) ................................................................. 27

*Markey v. Louisiana Citizens Fair Plan*,
    2008 WL 5427708 (E.D. La. Dec. 30, 2008) .............................................. 18

*Matsushita Electric Industrial Co. v. Epstein*,
    516 U.S. 367 (1996) ....................................................................... *passim*

*Medvick v. City of University City, Missouri*,
    995 F.2d 857 (8th Cir. 1993) .............................................................. 20, 21

*National Farmers Union Standard Insurance Co. v. Morgan*,
    966 F.2d 1250 (8th Cir. 1992) ................................................................. 27

*Nguyen v. St. Paul Travelers Insurance Co.*,
    2009 WL 23677 (E.D. La. Jan. 5, 2009) .................................................... 18

*Nottingham Partners v. Trans-Lux Corp.*,
    925 F.2d 29 (1st Cir. 1991) .................................................................... 27

*Philadelphia American Life Insurance Co. v. Buckles*,
    350 F. App'x 376 (11th Cir. 2009) ...................................................... 6, 7, 8

*Phillips Petroleum v. Shutts*,
    472 U.S. 797 (1985) .............................................................................. 23

*Pipes v. Life Investors Insurance Co. of America*,
    254 F.R.D. 544 (E.D. Ark. 2008) .......................................................... 8, 17

*Rainey Bros. Construction Co. v. Memphis & Shelby County Board of Adjustment*,
    1999 WL 220128 (6th Cir. 1999) ............................................................. 21

**TABLE OF AUTHORITIES**
(continued)

*Page*

*Reppert v. Marvin Lumber & Cedar Co.*,
    359 F.3d 53 (1st Cir. 2004) ............................................................... *passim*

*Russell v. Nekoosa Papers, Inc.*,
    547 S.W.2d 409 (Ark. 1977) .................................................................. 23

*Smith v. Life Investors Insurance Co. of America*,
    2009 WL 3756913 (W.D. Pa. Nov. 6, 2009) ......................................... 17

*Temple University Hospital, Inc. v. Healthcare Management Alternatives, Inc.*,
    832 A.2d 501 (Pa. Super. Ct. 2003) ......................................................... 5

*Vencor Inc. v. National States Insurance Co.*,
    303 F.3d 1024 (9th Cir. 2002) ................................................................. 5

*Vervaecke v. Chiles, Heider & Co.*,
    578 F.2d 713 (8th Cir. 1978) ................................................................. 17

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................. 17

*Wells v. Arkansas Public Service Commission*,
    616 S.W.2d 718 (1981) .......................................................................... 22

*White v. National Football League*,
    822 F. Supp. 1389 (D. Minn. 1993) ....................................................... 31

*Williams v. McKenzie*,
    834 F.2d 152 (8th Cir. 1987) ................................................................. 21

**Statutes**

28 U.S.C. § 1738 .......................................................................... *passim*

GA. CODE ANN. § 33-24-16.1(a) (2006) .................................................... 7

MO. REV. STAT. § 376.789(1)(2) (2009) .................................................... 7

OKLA. STAT. ANN. tit. 36, § 3651(A) (2006) .............................................. 7

S.C. CODE ANN. § 38-71-242(A)(1) (2008) ................................................ 7

TEX. INS. CODE ANN. § 1201.0601 (2005) ................................................. 7

**TABLE OF AUTHORITIES**
(continued)

*Page*

**Rules**

Fed. R. Civ. P. Rule 23 ................................................................................................... *passim*

**Other Authorities**

John Carreyrou, *As Medical Costs Soar, The Insured Face Huge Tab*, WALL ST. J.,
    Nov. 29, 2007 ............................................................................................................ 5

George A. Nation III, *Obscene Contracts:  The Doctrine of Unconscionability and
    Hospital Billing of the Uninsured*, 94 Ky. L.J. 101, 104 (2005) ....................................... 5

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Defendants Transamerica Life Insurance Company ("Transamerica") and AEGON USA, LLC respectfully move for an Order denying class certification and eliminating plaintiff's class action allegations from this case.[1]  This motion does not address or affect plaintiff's right to pursue his individual claims.

## INTRODUCTION

This is a "copycat" class action in which plaintiff has duplicated the allegations of several prior class cases filed against Life Investors and Transamerica, some of which have been pending since 2007.   In June of 2009, plaintiff, an Alabama resident, "opted out" of a Class Action Settlement (the "Settlement") pending in the Circuit Court of Pulaski County in *Runyan v. Transamerica Life Insurance Company*, Case No. CV-09-2066-3 (Ark. Circuit Ct., Pulaski County) (the "*Runyan* action").   Instead of proceeding with his own individual suit, plaintiff copied the class action allegations of the *Runyan* case, and on November 3, 2009, filed this duplicative class action in this Court.

Two days later, plaintiff's counsel began efforts to interfere with the Settlement in the *Runyan* Court.   On November 5, 2009, plaintiff's counsel filed a Motion to Intervene and an Emergency Motion for Injunctive Relief Under the All Writs Act in the *Pipes* case, a related action pending before Judge Susan Webber Wright.[2]  Plaintiff's counsel asked the federal court in *Pipes* to enjoin the *Runyan* Court from considering final approval of the Settlement.   The next

---

[1] Equity National Life Insurance Company ("Equity National") merged into Life Investors Insurance Company of America ("Life Investors") effective June 1, 1995.   Life Investors merged into its affiliate Transamerica effective October 2, 2008.

[2] *See* Motion to Intervene (Dkt. Entry ("D.E.") No. 147) and Plaintiff's Emergency Motion for Injunctive Relief Under the All Writs Act (D.E. No. 148) filed in *Pipes v. Life Investors Ins. Co. of Am.*, Case No. 1:07-cv-00035-SWW (E.D. Ark.) by plaintiff's counsel, Gail O. Matthews and Doralee Chandler of Matthews, Sanders & Sayes, on behalf of Daniel Crager, a Settlement Class member from Mississippi (collectively, the "*Crager* Motions").

day, on November 6, 2009, plaintiff's counsel appeared in the *Runyan* action and filed supplemental objections to the Settlement.  *See infra* pp. 12-13.  On November 9, 2009, plaintiff's counsel appeared at the fairness hearing in the *Runyan* Court and argued objections to the Settlement.

On November 12, 2009, Judge Wright entered an Order denying the *Crager* Motions filed by plaintiff's counsel and stating in pertinent part:

> [T]his Court's determination that the requisites for certification under Rule 23 of the Federal Rules of Civil Procedure were lacking in this case does not prevent Pipes, Purifoy, and other representative plaintiffs named in the state-court action from seeking class certification of a nation-wide class and approval of a class settlement in state court.

*Pipes*, Order filed Nov. 12, 2009, at 4 (D.E. No. 152) (footnote and citations omitted).

On November 9, 2009, the *Runyan* Court held its fairness hearing to consider final approval of the Settlement.  On December 21, 2009, the *Runyan* Court granted final approval to the Class Action Settlement, overruled all objections to the Settlement, and entered its Final Order and Judgment ("Final Judgment"), along with detailed Findings of Fact and Conclusions of Law ("Findings").[3]  The proposed "class" pled in this action is subsumed within the Settlement Class approved in *Runyan*, and the Final Judgment in *Runyan* therefore resolved and released the claims of the putative class alleged in this action.  Pursuant to 28 U.S.C. § 1738 and well established precedent, the Final Judgment in *Runyan* is entitled to Full Faith and Credit in this Court and, consequently, the claims of the proposed class in this case are barred by *res*

---

[3] An authenticated copy of the Final Judgment is attached hereto as Exhibit 1, and an authenticated copy of the Findings is attached hereto as Exhibit 2.  The *Runyan* Court's Findings are incorporated into the Final Judgment.  *See* Final Judgment ¶ 2.

*judicata*, collateral estoppel, and the release in the Final Judgment.[4]  Persons whose claims are

barred by *res judicata* cannot participate in a subsequent class action.[5]

In sum, because plaintiff's class action allegations duplicate those in a prior class action

that has since reached final judgment, the claims of virtually all members of the class alleged in

this case are barred by *res judicata*, collateral estoppel, and the release in the *Runyan* Final

Judgment.[6]  A class cannot be certified where it is so overbroad that virtually all of the proposed

class members have no claims.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997)

(Rule 23 is designed to "block[] unwarranted or overbroad class definitions").  In addition,

plaintiff's attempt to re-litigate settled class claims would undermine months of work by the

Arkansas Circuit Court in *Runyan* and frustrate the strong public policy underlying *res judicata*

and favoring the settlement of class action lawsuits.[7]  For all of these reasons and those discussed

---

[4] In *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 374 (1996), the U.S. Supreme Court held that "a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the [Full Faith and Credit] Act."

[5] Pursuant to the Full Faith and Credit Act, Arkansas law governs enforcement of the *Runyan* Final Judgment in federal court. *See, e.g., Matsushita*, 516 U.S. at 369 ("a federal court must give the judgment the same effect that it would have in the courts of the State in which it was rendered").  In *Ark. La. Gas Co. v. Taylor*, 858 S.W.2d 88, 91 (Ark. 1993), the Arkansas Supreme Court held that a person whose claims are barred by *res judicata* cannot participate in a subsequent class action.

[6] Only putative class members who opted out of the *Runyan* Settlement would not be barred by the Final Judgment.  Because only 0.187 percent of the proposed class in this action opted out of the *Runyan* Settlement, the claims of 99.8% of the proposed class members alleged in this action are barred by *res judicata*.  *See* Declaration of Stephen B. Gwin ¶ 9 (of the 70,208 insureds in the proposed class, only 131 opted out) ("Gwin Decl."), attached hereto as Exhibit 3.

[7] *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *see also infra* pp. 30-31.

-3-

below, this Court should grant this motion and enter an Order denying class certification and eliminating plaintiff's class allegations from this action.

## STATEMENT OF FACTS

On September 17, 1994, plaintiff Robert W. Hall purchased a supplemental cancer insurance policy, policy number 01E122807 (the "Policy") from Equity National, a predecessor of Life Investors and Transamerica.  *See supra* note 1.  As described on the Application and Policy Schedule Page, the Policy is a "Cancer Expense Policy."[8]  At the time plaintiff purchased the Policy, he was a resident of Linden, Alabama.  *See* D.E. No. 9-2, at pg. 21 of 22 (Application).  The Complaint confirms that plaintiff is still a resident of Alabama.[9]  The Policy covered Mr. Hall and his spouse.  All benefits under the Policy are payable directly to Mr. Hall as the named insured under the Policy.  *See* Policy, Sec. C, at p. 6 ("Benefit payments will be made directly to the Insured, unless assigned ....").

The Policy insures for "loss incurred" and provides certain "limited" benefits for expenses incurred from cancer:

> We agree to insure you for *loss incurred*, while this policy is in force, from Cancer first Positively Diagnosed after the "waiting period", subject to the provisions on the following pages of this policy.

Policy at p. 1. Many of the benefits are "keyed to the 'actual charges' incurred by the insured for certain services."  *See In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 322 (6th Cir. 2009).[10] For example, the Policy pays benefits for the "actual charges" for certain laboratory tests up to

---

[8] A copy of the Policy including the Application is attached as Exhibit A to the Answer and Defenses of Transamerica Life Insurance Company.  D.E. No. 9-2.

[9] *See* Class Action Complaint ¶ 12 (hereinafter "Complaint").

[10] In *Life Investors*, the Sixth Circuit reversed a district court in Tennessee which attempted to enjoin the *Runyan* Class Action Settlement.  *Id.* at 331-32.

$150 per hospital stay, the "actual charges for drugs and medicines" while hospitalized up to a certain maximum, and the "actual charges" for certain radiation therapy and chemotherapy treatments. *See, e.g.*, Policy, Sec. E, ¶¶ 1, 2, 11, 12.  As a condition precedent to receiving any benefits under the Policy, the insured is required to submit written "proof of loss" for "each incurred expense."   Policy, Sec. C, at p. 6 ("Proof of loss must be submitted to us for each incurred expense"); *id.*, Sec. K, ¶¶ 8, 9 ("Indemnities payable under this policy for any loss will be paid as soon as we receive proper written proof of loss.").

## Nature of the Dispute

This action copies the claims made in several other cases where plaintiffs allege they were not paid sufficient benefits based on "actual charges" under a cancer insurance policy. According to these plaintiffs, the "actual charges" for medical treatment should mean a medical provider's "list prices" or maximum rates, even when these prices are not actually owed, billed, incurred, or paid by anyone.[11]  Because plaintiff's policy was purchased and delivered in Alabama, his claims are governed by Alabama law.  In *Claybrook v. Central United Life Ins. Co.*, 387 F. Supp. 2d 1199 (M.D. Ala. 2005), the Alabama district court, applying Alabama law, expressly rejected plaintiff's position.

---

[11] "List" prices are artificially inflated prices which virtually no consumers actually pay. George A. Nation III, *Obscene Contracts:  The Doctrine of Unconscionability and Hospital Billing of the Uninsured*, 94 Ky. L.J. 101, 104 (2005) ("The labels for these charges, 'regular,' 'full,' or 'list,' are misleading, because in fact they are actually paid by less than five percent of patients nationally."); *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 508-09 (Pa. Super. Ct. 2003) (hospital was paid its list prices in only one to three percent of its cases); *Vencor Inc. v. Nat'l States Ins. Co.*, 303 F.3d 1024, 1029 n.9 (9th Cir. 2002) (providers' standard rates are paid only "by a small minority of patients").  One hospital's Chief Medical Officer referred to these prices as "Disneyland numbers."   John Carreyrou, *As Medical Costs Soar, The Insured Face Huge Tab*, WALL ST. J., Nov. 29, 2007, at A1 (attached hereto as Exhibit 4).

In *Claybrook*, the plaintiffs claimed that their insurer had underpaid claims for the "actual charges" of certain chemotherapy treatments provided to Mrs. Claybrook, who was covered by Medicare. The Medicare-allowed amount for the chemotherapy treatments was $16,351.91, but the list price for the treatments was $26,361.00. *Id.* at 1202. The Claybrooks were paid benefits of $16,351.91 – exactly the amount the medical provider was required to and did accept as payment in full from Medicare for the chemotherapy services. *Id.* Nevertheless, the Claybrooks argued that Central United Life Insurance Company breached the insurance contract by not paying them "actual charges" according to the higher list price. The *Claybrook* court rejected plaintiffs' claim, holding that actual charges "are charges actually billed to the patient (or their insurance provider) when medical services are rendered; such actual charges may be higher or lower depending upon whether the patient is a Medicare recipient." *Id.* at 1204. Because Central United had paid "benefits equal to what Mrs. Claybrook's chemotherapy providers accepted in full and final payment for their services to her as a Medicare patient," the district court concluded that there was no breach of contract. *Id.* at 1204-05.

In *Philadelphia American Life Insurance Co. v. Buckles*, 350 F. App'x 376 (11th Cir. 2009), the Eleventh Circuit considered a similar situation where the insured under a supplemental cancer policy incurred hospital expenses of $1,600,000, but the hospital's "list prices" or maximum rates for the same treatment totaled $4,900,000. *Id.* at 380. The insured's primary health insurer "discharged [the] liability for his treatments" by paying the lesser amount, which the hospital accepted "as full payment for the treatments." *Id.* at 378. The insured, however, sought payment under the cancer policy of the higher list prices, contending they were the "actual charges" incurred. Applying Florida law, the Eleventh Circuit held that "actual charges incurred" as used in the policy means the "actual amount accepted by a health care provider as full satisfaction of the insured's obligations for treatment." *Id.* at 380. The court

explained that paying the list prices "would give [the insured] a benefit based on a fictional amount and lead to an absurd result." *Id.* ("it is unreasonable to believe that the drafter of the insurance contract would have intended such a result").

In 2004, Transamerica discovered it had been overpaying claims based on "actual charges" because insureds were submitting documents as proof of loss that contained "list prices," instead of the actual amounts being billed, charged, and paid for medical treatment. These overpayments were resulting in windfall payments to a minority of policyholders.  In 2006, after providing written notice to its policyholders, Transamerica updated its claim forms and revised its instructions for submitting "proof of loss" to ensure it would receive proper documentation of the "actual charges" being incurred and paid to medical providers. Transamerica now pays "actual charges" benefits based on the total amount actually charged by and owed to the medical provider as payment in full for the services provided.  Transamerica's methodology is consistent with *all* state statutes defining "actual charges."[12]

Plaintiff in this action alleges that Transamerica breached his insurance contract and committed bad faith by "reducing" his benefits and changing the definition of "actual charges" in the policy.  According to plaintiff, "actual charges" should mean a medical provider's list prices or maximum rates, even when these prices are not actually owed, billed, incurred, or paid by

---

[12] Five states have passed statutes governing payment of benefits for "actual charges" in a specified disease policy.  *See* S.C. CODE ANN. § 38-71-242(A)(1) (2008) (defining "actual charges" as the amount the healthcare provider agreed to accept or is obligated by operation of law to accept as payment in full for the goods or services provided to the insured); MO. REV. STAT. § 376.789(1)(2) (2009) (same); TEX. INS. CODE ANN. § 1201.0601 (2005) ("actual charges" means "the amount actually paid by or on behalf of the insured and accepted by a provider for services provided"); GA. CODE ANN. § 33-24-16.1(a) (2006) (same); OKLA. STAT. ANN. tit. 36, § 3651(A) (2006) (same).

anyone.   Plaintiff here asserts the same claims rejected by the Alabama District Court in *Claybrook* and the Eleventh Circuit in *Buckles*.

## The *Pipes* Case and Related "Actual Charges" Litigation

Plaintiff's class action claims in this case duplicate those in *Runyan* and those addressed in *Pipes v. Life Investors Insurance Company of America*, Case No. 1:07-cv-00035-SWW (E.D. Ark.) (the "*Pipes*" case), filed on June 6, 2007.   The *Pipes* case was one of three class actions filed against Life Investors in 2007.   The *Pipes* action advanced more quickly than the other class cases, and class certification briefing in *Pipes* was completed on October 22, 2008.   On November 25, 2008, Judge Wright entered an order in *Pipes* denying class certification.   *Pipes v. Life Investors Ins. Co. of Am.*, 254 F.R.D. 544 (E.D. Ark. 2008).

Plaintiffs' counsel in *Pipes* filed five additional cases against Life Investors and Transamerica, including three class actions and two individual actions in various states including Arkansas, Mississippi, Michigan, and Louisiana.[13]   Following a year and a half of litigation with plaintiffs' counsel in the *Pipes* case, including extensive written discovery, document production, depositions, and third-party discovery, on October 6, 2008, counsel for Life Investors met to discuss settlement with plaintiffs' counsel in *Pipes*, who represented the most plaintiffs and had the largest number of related cases.   Findings at 13 ¶ 1; Leventhal Decl. ¶¶ 3, 5.   On November 20 and 21, 2008, the parties engaged in a confidential mediation before a former

---

[13] *See* Findings at 9 ¶ 3; Declaration of Markham R. Leventhal ¶ 3 ("Leventhal Decl."), copy attached hereto as Exhibit 5.   The six cases brought by plaintiff's counsel in *Pipes* were: *Pipes v. Life Investors Insurance Company of America*, No. 1:07-cv-00035 (E.D. Ark.); *Runyan v. Transamerica Life Insurance Company*, No. 6:08-cv-6034 (W.D. Ark.); *Ross v. Life Investors Insurance Company of America*, No. 4:08-cv-00064 (S.D. Miss.); *Weidman v. Life Investors Insurance Company of America*, No. 2:08-cv-12870 (E.D. Mich.); *Harris v. Transamerica Life Insurance Company*, No. 09-13-JVP-SCR (M.D. La.); and *Nolan v. Life Investors Insurance Company of America*, No. 3:08-cv-00839 (M.D. La.) (defined collectively in the Settlement Agreement, along with the *Runyan* action, as the "Litigation").

United States District Court Judge.  *Id.* at 13 ¶ 2; Leventhal Decl. ¶ 6.  The November 2008 mediation did not result in a settlement, but the parties agreed to continue negotiating.  *Id*.  After months of additional negotiations, in early March of 2009, the parties reached a preliminary understanding on the terms of a global class action settlement, subject to completion and execution of a comprehensive settlement agreement.  Findings at 14 ¶ 4; Leventhal Decl. ¶ 7.

### The *Runyan* Class Action Complaint

On March 13, 2009, plaintiffs' counsel filed their Class Action Complaint in the *Runyan* action.  Findings at 14 ¶ 5; Leventhal Decl. ¶ 8.  The *Runyan* Class Action Complaint ("*Runyan* Complaint") included eight named plaintiffs and consolidated the claims of the six actions pending in Arkansas, Mississippi, Michigan, and Louisiana, alleging a variety of claims on behalf of a national class of persons insured under Transamerica and Life Investors' cancer policies.[14]  The *Runyan* Complaint alleged that "[p]rior to April 1, 2006, Defendants interpreted 'actual charges' to mean the amount that appeared on a physician's statement prior to any reduction, discount, third-party payment or write-off," but that, by revising and updating its "proof of loss" requirements, Transamerica engaged in a "scheme or program to reduce benefits being paid to the Plaintiffs and similarly situated policyholders by unilaterally changing the interpretation of the term 'actual charges' as used in the Policies."  *Runyan* Complaint ¶¶ 30, 36.

In connection with its class allegations, the *Runyan* Complaint alleged "common questions of law and fact" related to "actual charges" including:

> (a)     The meaning of the term "actual charges" under the Policies and whether Defendants have systematically refused and/or failed to pay the proper amount of benefits, including but not limited to benefits

---

[14] *See Runyan* Complaint ¶ 88 (defining the proposed "class").  A copy of the Class Action Complaint in *Runyan* is attached as Exhibit A to the Leventhal Declaration.

calculated on an "actual charges" and/or "charges" basis, as the terms are properly defined;

(b)     Whether Defendants changed their interpretation of "actual charges" or "charges" under the Policies and began paying benefits not based on "actual charges" but on lesser amounts paid to healthcare providers by third-party insurers and Medicare;

(c)     Whether Defendants' changes in their interpretation of "actual charges" or "charges" constitutes a breach of contract or bad faith;
. . . .

*Id.* ¶ 90.  The *Runyan* Complaint asserted multiple claims based on Transamerica's payment of benefits for "actual charges," including but not limited to claims for breach of contract, breach of the implied duty of good faith and fair dealing or bad faith, unjust enrichment and disgorgement, and declaratory relief and injunctive relief.[15]

### The *Runyan* Class Action Settlement and Notice to the Settlement Class

In April 2009, the parties finalized a Class Action Settlement Agreement ("Agreement") and filed it with the Arkansas Circuit Court in *Runyan*.  Findings at 14 ¶ 6; Leventhal Decl. ¶ 9.[16] The *Runyan* Court granted preliminary approval to the Class Action Settlement on April 23, 2009.[17]  Among other things, the court's Preliminary Approval Order appointed a Settlement Administrator, approved a notice plan, including written notice to Settlement Class members, publication notice in *USA Today*, and creation of a Settlement website.  On May 14, 2009, a

---

[15] The *Runyan* Complaint asserted claims for breach of contract, declaratory and injunctive relief, breach of the implied duty of good faith and fair dealing or bad faith, unjust enrichment and disgorgement, tortious breach of contract, fraud and intentional misrepresentation, fraudulent concealment, civil conspiracy and aiding and abetting, and equitable estoppel.  *Runyan* Complaint ¶¶ 104-152.

[16] A copy of the Class Action Settlement Agreement is attached to the Leventhal Declaration as part of Exhibit C.

[17] A copy of the Preliminary Approval Order is attached as Exhibit F to the Leventhal Declaration.

Notice of Proposed Class Action Settlement ("Notice") was mailed to 250,136 Settlement Class members, including plaintiff in this case.[18]   On May 26 and 28, 2009, a notice was published in *USA Today*.  Oseas Aff. ¶ 7.  The Settlement Administrator also established a toll-free telephone call center with live operator support and an Internet website with access to the Notice, Claim Forms, the Settlement Agreement, and other documents.  *Id.* ¶¶ 8-9.  The *Runyan* Court scheduled a fairness hearing ("Fairness Hearing") to consider final approval of the Settlement on July 27, 2009.

All members of the Settlement Class were given an opportunity to "opt-out" or exclude themselves from the Settlement.  Class members who chose to participate in the Settlement were provided the opportunity to object to the Settlement, and if they so desired to appear at the Fairness Hearing to present their objections.  There were very few objections to the Settlement. Although 250,136 Notices were sent to the Settlement Class, there were only nine objectors at the time of the Fairness Hearing.  *See* Findings at 44-45.[19]   Most of the efforts to oppose the Settlement were orchestrated by a handful of plaintiffs' counsel in competing class actions, including plaintiff's counsel in this case,[20] who filed objections, motions to intervene, and other

---

[18]  Affidavit of Robert Oseas ¶ 6 ("Oseas Aff."), a copy attached hereto as Exhibit 6.  A copy of the Notice is attached as Exhibit A to the Oseas Affidavit.

[19]  Eighteen individuals originally filed objections with the Court, and nine of those were subsequently withdrawn.  One individual mailed a letter to the Settlement Administrator but did not file it with the Court.  The ratio of objectors to Settlement Class Members (9:250,136) was less than four one-thousandths of 1%, or approximately .0036%.

[20]  Plaintiff in this case, Robert Hall, opted out of the Settlement, but plaintiff's counsel in this case, Gail O. Matthews and Doralee Chandler, assumed the representation of Daniel Crager in *Runyan*.  Plaintiff's counsel filed several motions in *Runyan* including a Motion to Stay Proceedings and/or Continue Fairness Hearing and to Set Aside Preliminary Approval Order, Supplemental Consolidated Preliminary Objections to Proposed Class Action Settlement and Notice of Intent to Appear, and a Motion for Rehearing.  Mr. Matthews argued objections to the Settlement at the fairness hearing on November 9, 2009.  Ms. Chandler argued the Motion for
*(footnote continued on next page)*

motions in the *Runyan* action.[21]   The *Runyan* Court heard all of the motions to intervene and

related motions at two hearings on September 16 and October 1, 2009.[22]   The *Runyan* Court held

its final Fairness Hearing on November 9, 2009.[23]

**Plaintiff's Counsel Attempts to
Enjoin and Obstruct the *Runyan* Settlement**

As discussed above, at about the same time they filed this copycat class action, plaintiff's

counsel began trying to derail the *Runyan* Settlement.   On November 5, 2009, plaintiff's counsel

filed the *Crager* Motions in the *Pipes* case (*see supra* note 2), asking the *Pipes* Court to enjoin

the Arkansas Circuit Court from considering final approval of the Settlement.   These motions

were denied by the *Pipes* Court on November 12, 2009.

On November 5 and 6, 2009, plaintiff's counsel appeared in the *Runyan* action on behalf

of Daniel Crager and filed Supplemental Objections to the Settlement and a Motion to Stay

Proceedings and/or to Continue Fairness Hearing and to Set Aside Preliminary Approval

---

Rehearing in the *Runyan* Court on January 19, 2010.   The Motion for Rehearing was denied.   *See* Exhibit I to the Leventhal Declaration.

[21] For example, plaintiff's counsel in *Gooch v. Life Investors Ins. Co. of Am.*, Case No. 1:07-cv-0016 (M.D. Tenn.), a competing class action in the Middle District of Tennessee, filed a motion to intervene on behalf of William Shepherd, a motion to stay the *Runyan* proceedings, and other papers.   Plaintiff's counsel in *Lindley v. Life Investors Ins. Co. of Am.*, Case No. 08-cv-00379 (N.D. Okla.), a competing class action in the Northern District of Oklahoma, filed a Motion to Intervene and several other papers on behalf of Audrey Hunter.   Plaintiff's counsel in *Brown v. Life Investors Ins. Co. of Am.*, Case No. 2:08-cv-217 (N.D. Miss.), a proposed Mississippi class, filed objections on behalf of Naomi Crocker.

[22] On December 8, 2009, the *Runyan* Court entered a comprehensive Order on all of the various motions.   A copy of the December 8, 2009 Order is attached as Exhibit G to the Leventhal Declaration (the "December 8 Order").

[23] The Fairness Hearing was postponed from July 27, 2009 because lawyers from the *Gooch* case, *supra* note 21, filed a motion in the Middle District of Tennessee to enjoin the Settlement, which was granted by the district court, but subsequently stayed and ultimately reversed by the Sixth Circuit.   *In re Life Investors*, 589 F.3d at 331-32.

Order.[24]   Plaintiff's counsel argued objections to the *Runyan* Court on November 9, 2009.   The

*Runyan* Court ultimately denied these various motions and overruled the objections to the

Settlement.

**The *Runyan* Final Judgment and Release**

On December 21, 2009, the *Runyan* Court entered its Final Judgment (Exh. 1), granting

final approval to the *Runyan* Settlement and finding that the Settlement was "entered into in

good faith" and that the Settlement was "fair, reasonable, and adequate as to, and in the best

interests of, the Plaintiffs and the Settlement Class members."   Final Judgment ¶ 2.   The Final

Judgment incorporated the Court's Findings of Fact and Conclusions of Law (Exh. 2), which

included extensive analysis of the evidence submitted and arguments made in favor and against

final approval of the Settlement.   *Id.*   The *Runyan* Court confirmed and approved for purposes of

the Settlement the prior provisional certification of the Settlement Class defined as follows:

> All persons in the United States:  (i) who were an insured, covered person,
> or beneficiary under a Cancer Policy in force at any time from January 1,
> 2004 through April 23, 2009; or (ii) who were an insured, covered person,
> or beneficiary under a Non-Cancer Actual Charges Policy which was in
> force on April 23, 2009, or who submitted a claim for Actual Charges
> Benefits under a Non-Cancer Actual Charges Policy after the effective
> date of the 2006 Updated Claims Procedures; or (iii) the surviving spouse
> or legal representative of such persons defined in (i) or (ii).

Final Judgment ¶ 3 (the "*Runyan* Class" or "Settlement Class").   "Cancer Policy" as used in the

Final Judgment includes "any supplemental cancer insurance policy" issued or administered by

---

[24]   *See* Order Substituting Counsel (substituting Gail Matthews and Doralee Chandler as
counsel of record for Daniel Crager); Supplemental Consolidated Preliminary Objections to
Proposed Class Action Settlement and Notice of Intent to Appear; and Proposed
Intervenors/Objector's Daniel A. Crager Motion to Stay Proceedings and/or Continue Fairness
Hearing and to Set Aside Preliminary Approval Order (all attached hereto as composite Exhibit
7).

Transamerica, Life Investors, or their predecessor companies.[25]

The *Runyan* Court expressly found that "the Notice Plan, including the distribution of the written Notice by mail, issuance of the Publication Notice, and creation of the Internet website, in accordance with the Settlement Agreement and this Court's Preliminary Approval Order," "constituted the best notice practicable under the circumstances to Settlement Class members," "constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class members of the pendency of the Action, how the Settlement would affect them, their right to exclude themselves from the Settlement, and their right to object to the Settlement and appear at the Fairness Hearing," "was reasonable and constituted due, adequate, and sufficient notice," and "fully satisfied the requirements of Arkansas Rule of Civil Procedure 23, the due process requirements of the United States Constitution, and other applicable law."  Final Judgment ¶ 5.[26]

The *Runyan* Final Judgment dismissed the claims of all Settlement Class members who did not properly opt out of the Settlement Class "on the merits and with prejudice":

> Dismissal.  All claims asserted in the Complaint in this Action are hereby dismissed on the merits and with prejudice as to all Settlement Class members who did not request exclusion from the Settlement Class in the time and manner provided in the Preliminary Approval Order, without costs to any party.

---

[25] Capitalized terms used in the Final Judgment, such as Cancer Policy, Non-Cancer Actual Charges Policy, and 2006 Updated Claims Procedures, have the same meanings as defined in the Settlement Agreement.  Final Judgment ¶ 1.

[26] The *Runyan* Court also found that the Notice was structured to follow the style recommended by the Federal Judicial Center, and "the Notice communicates information in a manner understandable by members of the Settlement Class, and presents and organizes the information with a table of contents in such a way that layperson Class members can easily find the answers to specific questions they may have about the Settlement."  Findings at  21, ¶ 7.

*Id*. ¶ 14.  The Final Judgment resolves any alleged ambiguity regarding the meaning of "actual charges" and requires Transamerica to pay Actual Charges Benefits according to "the amount of money that a healthcare provider (or other vendor) agrees to accept, or is obligated by agreement or operation of law to accept, as payment in full for the particular goods and services provided to the patient (or consumer)."  *See* Findings at 16,¶ 6 (quoting Settlement Agreement § 1(b)).[27]

The Final Judgment also included a comprehensive release of claims under which "all Representative Plaintiffs, and all Settlement Class members who have not properly and timely excluded themselves from the Class" released Transamerica, its predecessors and affiliates from, among other things:

> any and all claims, demands, complaints, disputes, causes of action, rights of action, suits, debts, liabilities, obligations, and damages of every nature whatsoever, whether based on federal, state, or local law, statute, ordinance, regulation, common law, private contract, agreement, or any other authority (collectively, "Claims"), whether known or unknown, asserted or unasserted, that the Releasing Parties now have, ever had, or may in the future have, arising out of, resulting from, or relating in any way to a Cancer Policy or an Actual Charges Policy (collectively, a "Policy" or the "Policies"), for the following:
>
> (i)     Any and all Claims asserted or which could have been asserted in the Litigation;
>
> *     *     *
>
> (iii)     Any and all Claims relating to premiums or benefits under the Policies including but not limited to Claims relating to the amount of premiums paid or payable, the amount of benefits paid or payable, . . .;
>
> (iv)     Any and all Claims relating to any type of Actual Charges Benefits paid or payable under a Policy, or the meaning, definition, or interpretation of "actual charges" or "charges" under a Policy;

_____

[27] The *Runyan* Court found that this injunction was extremely valuable to the Settlement Class, resulting in premium dollar savings in excess of $135 million (present value) over the next ten years.  *See* Findings at 16-17 (Exh. 2).

* * *

       (vi)    Any and all Claims relating to the Company's administration of the Policies including but not limited to the forms, processes, proof of loss requirements, or procedures used in connection with or relating to the processing of claims and payment of benefits under such Policies, or any changes to such forms, processes, proof of loss requirements, or procedures . . . .

Final Judgment ¶ 8(a).  The Final Judgment also made clear that:  "Notwithstanding any other provision of the Settlement Agreement or this Final Judgment, under no circumstances shall the Release be interpreted to allow any future claims challenging the Company's interpretation of 'actual charges' or 'charges'. . . ."  *Id.* ¶ 8(b).[28]

## ARGUMENT

The *Runyan* Final Judgment precludes the duplicative class claims alleged in this action because the class alleged here was fully encompassed within the Settlement Class defined in *Runyan*.  Under well established precedent, the *Runyan* Final Judgment is entitled to full faith and credit.  *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 374 (1996) ("a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the [Full Faith and Credit] Act"); *Cahill v. Jewell*, 1999 WL 357747, *4 (6th Cir. May 12, 1999) ("Like all final judgments, a state court judgment approving the settlement of a class action is entitled to full faith and credit under the Act.").  Because the putative class claims in this action were resolved and released in the Final Judgment and are barred by *res judicata* and collateral estoppel, the

---

[28] The *Runyan* Final Judgment also retained jurisdiction "as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and this Final Judgment . . . ."  Final Judgment ¶ 16.

proposed "class" as defined in the complaint no longer exists, and this Court should deny class certification and eliminate the class allegations from this action.[29]

## I.      THIS COURT IS AUTHORIZED TO RULE ON CLASS CERTIFICATION AND TO ELIMINATE THE CLASS ALLEGATIONS IN THIS CASE

Under Rule 23, this Court is expressly authorized to make determinations regarding whether or not an action may proceed as a class action.  Rule 23 states:  "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  Either the plaintiff or the defendant may move for a determination of the propriety of class action status.  *See, e.g., Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 940 & n.4 (9th Cir. 2009) (under the plain language of Rule 23(c)(1)(A), "district courts throughout the nation" and other sources recognize that defendants may file motions to determine and deny class certification).  "Under Rule 23 the district court is given broad discretion to determine the maintainability and the conduct of class actions."  *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713, 719 (8th Cir. 1978) (internal quotation marks omitted).

The discretionary powers afforded to district courts under Rule 23 also include the authority to issue orders eliminating the class action allegations in a proceeding and ordering that it proceed as an individual action:

---

[29] Aside from the Final Judgment, there are multiple other reasons why a class could not properly be certified in this action.  *See, e.g., Pipes v. Life Investors Ins. Co. of Am.*, 254 F.R.D. 544 (E.D. Ark. 2008) (denying class certification); *Smith v. Life Investors Ins. Co. of Am.*, 2009 WL 3756913 (W.D. Pa. Nov. 6, 2009) (same).  Transamerica reserves its right to assert all of its other defenses to class certification if necessary.  In addition, the Complaint does not plead or seek to certify a class limited to the few persons who opted out of the *Runyan* Settlement.  *See supra* note 6.  Accordingly, the certification of a "mini" class of opt outs is not at issue.  Should plaintiff seek to amend his class definition, Transamerica reserves all of its defenses to certification of any such amended class.

> In conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly . . . .

Fed. R. Civ. P. Rule 23(d)(1)(D).   "[C]ourts have routinely applied Rule 23(d)(1)(D), or its predecessor Rule 23(d)(4), to motions to strike class allegations."   *Markey v. La. Citizens Fair Plan*, 2008 WL 5427708, *1 (E.D. La. Dec. 30, 2008) (citations omitted); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 184 n.6 (1974) ("the District Court may in some instances require that pleadings be amended to eliminate class allegations").   Where the class allegations in a complaint are simply not viable, it is appropriate to order that the pleadings be amended to eliminate the class allegations or to strike the allegations from the complaint.   *See, e.g.*, *In re St. Jude Med. Inc. Silzone Heart Valves Prods. Liab. Litig.*, 2009 WL 1789376 (D. Minn. June 23, 2009); *Nguyen v. St. Paul Travelers Ins. Co.*, 2009 WL 23677 (E.D. La. Jan. 5, 2009); *Markey*, 2008 WL 5427708, *1-3.

## II.   PLAINTIFF'S PROPOSED CLASS CLAIMS ARE BARRED BY THE FULL FAITH AND CREDIT ACT, *RES JUDICATA*, AND COLLATERAL ESTOPPEL

### A.   The Full Faith And Credit Act Requires This Court To Give Effect To The *Runyan* Final Judgment

In *Matsushita*, the U.S. Supreme Court expressly held that a federal court is required to afford full faith and credit to the judgment in a state court class action.   In *Matsushita*, the Supreme Court addressed a situation in which the Delaware Chancery Court had entered judgment approving a class action settlement that contained a "global release" of all claims arising out of Matsushita's acquisition of MCA, Inc.   *Id.* at 371.   The release included certain federal securities claims over which federal courts had exclusive jurisdiction.   The Ninth Circuit held that the Full Faith and Credit Act, 28 U.S.C. § 1738 (the "Act"), did not bar further prosecution of these securities claims in a federal district court.   *Id.* at 372.   The Supreme Court

reversed, holding that the Act applied and precluded the federal court from entertaining the claims released in the state court settlement.

The Court began its analysis by noting that:

> The Full Faith and Credit Act mandates that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. *The Act thus directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state.* Federal courts may not "employ their own rules . . . in determining the effect of state judgments," but must "accept the rules chosen by the State from which the judgment is taken."

*Id*. at 373 (emphasis added) (quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481-82 (1982)); *see also Geringer v. City of Omaha*, 1993 WL 10445, *1 (8th Cir. Jan. 22, 1993) ("A federal court must give a state court judgment the same preclusive effect it would be given under the law of the rendering state").[30]

The *Matsushita* Court held that it made no difference that the judgment arose out of a class action, as opposed to an individual action:

> That the judgment at issue is the result of a class action, rather than a suit brought by an individual, does not undermine the initial applicability of § 1738. The judgment of a state court in a class action is plainly the product of a "judicial proceeding" within the meaning of § 1738.

516 U.S. at 373-74. "Therefore, a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the Act." *Id*. at 374. The Court concluded that the Act applies even "in cases in

---

[30] The Full Faith and Credit Act "was enacted to implement the Full Faith and Credit Clause" of the U.S. Constitution, "and specifically to insure that federal courts, not included within the constitutional provision, would be bound by state judgments." *Kremer,* 456 U.S. at 483, n.24 (citations omitted). The Act embodies the fundamental constitutional interests of comity and federalism which are a "bulwark of the federal system." *Id*. at 466 n.6 (citations omitted), 478.

which the state court judgment at issue incorporates a class action settlement releasing claims solely within the jurisdiction of the federal courts." *Id.* at 375.

When enforcing a state court judgment under the Full Faith and Credit Act, the *Matsushita* Court also made clear that "a federal court must first look to the law of the rendering State to ascertain the effect of the judgment." *Id.* at 375, 369 ("a federal court must give the judgment the same effect that it would have in the courts of the State in which it was rendered"); *see also Medvick v. City of University City, Mo.*, 995 F.2d 857, 858 (8th Cir. 1993) ("Under § 1738 a state court judgment is entitled to the same full faith and credit in a federal court as the judgment is given by state law."); *Butler v. City of North Little Rock, Ark.*, 980 F.2d 501, 503 (8th Cir. 1992) (applying Arkansas preclusion law because "[t]he federal courts . . . must examine state law to determine whether preclusion applies"). In *Matsushita*, because Delaware law held that the claims alleged in the federal court would be barred by the state court judgment, the class members were precluded by *res judicata* from litigating those claims in the federal courts. *See id.* at 379; *see also Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").[31]

The Supreme Court has observed that "section 1738 was enacted . . . specifically to insure that federal courts . . . would be bound by state judgments." *Kremer*, 456 U.S. at 483 n.

---

[31] "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer*, 456 U.S. at 466. "It has long been established that § 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Id.* at 481-82 (citations omitted).

24 (citing *Davis v. Davis*, 305 U.S. 32, 40 (1938)); *see also Erickson v. Allianz Life Ins. Co. of N. Am.*, 349 F. App'x 111 (8th Cir. 2009). "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Kremer*, 456 U.S. at 482 (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)); *Erickson*, 349 F. App'x at 111. Indeed, even if a federal court believed that a state court's judgment were wrong, the court could not deny full faith and credit. *See, e.g.*, *Medvick*, 995 F.2d at 858 ("even if the [city] work rule is facially unconstitutional," § 1738 bars the plaintiff's subsequent federal action); *Kiowa Tribe of Okla. v. Lewis*, 777 F.2d 587, 592 (10th Cir. 1985) ("Regardless of whether we agree with the Kansas Supreme Court's construction . . . we must honor the judgment"); *Rainey Bros. Contsr. Co. v. Memphis & Shelby County Bd. of Adjustment*, 1999 WL 220128, *2 (6th Cir. 1999) ("the state court judgment had preclusive res judicata effect, even though the state courts erroneously applied the law"). The Supreme Court has made it clear that federal district courts may not function as appellate tribunals for state court proceedings. *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions"); *Williams v. McKenzie*, 834 F.2d 152, 153 (8th Cir. 1987) ("Federal courts are *not* courts of review even for federal claims asserted in a state court proceeding. In fact this court must give full faith and credit to the state court judgment.") (emphasis in original).

Under the above authorities and Section 1738, this Court is required to give full faith and credit to the *Runyan* Final Judgment in this case.

### B.    The Proposed Class Claims Are Barred By The Final Judgment Under Arkansas' Law Of *Res Judicata*

The *Runyan* Final Judgment unquestionably satisfies all requirements for application of the Arkansas doctrine of *res judicata*. Arkansas law holds that "a valid and final judgment

rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim." *Barclay v. Waters*, 182 S.W.3d 91, 95 (Ark. 2004) (citing *Carwell Elevator Co. v. Leathers*, 101 S.W.3d 211 (Ark. 2003)).  "*Res judicata* bars not only the re-litigation of claims which were actually litigated in the first suit, but also those which could have been litigated." *Id.* at 95-96.  "Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." *Id.* at 96 (citing *Carwell*, *supra*).  Moreover, Arkansas law properly holds that *res judicata* prevents a person from participating as a class member in a class action. *Ark. La. Gas Co. v. Taylor*, 858 S.W.2d 88, 91 (Ark. 1993).

Arkansas law bars a subsequent suit when:  (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Bailey v. Harris Brake Fire Protection Dist.*, 697 S.W.2d 916, 917 (Ark. 1985) (citing *Wells v. Ark. Pub. Serv. Comm'n*, 616 S.W.2d 718 (1981)); *see also Butler*, 980 F.2d at 504.

### 1.   The *Runyan* Action resulted in a final judgment on the merits

There is no question that a final judgment was entered in *Runyan*.  As required by Section 1738, an authenticated copy of the Final Judgment has been filed with this Court as Exhibit 1 to this Memorandum.  The Final Judgment in *Runyan* expressly states that "[a]ll claims asserted in the Complaint in this action are hereby *dismissed on the merits and with prejudice* as to all Settlement Class members who did not request exclusion from the Settlement Class . . . ."  Final Judgment ¶ 14 (emphasis added).  The existence of the *Runyan* Final Judgment clearly and unequivocally satisfies the first prong of res judicata. *Francis v. Francis*, 31 S.W.3d 841, 846

(Ark. 2000) ("Dismissal with prejudice is as conclusive of the rights of the parties as if there were an adverse judgment as to the plaintiff after a trial," and finding that a settlement "was a final adjudication on the merits of 'all matters in controversy between the parties.'"); *Russell v. Nekoosa Papers, Inc.*, 547 S.W.2d 409, 410 (Ark. 1977); *accord Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) (class action settlement in Minnesota state court barred a suit in Massachusetts federal court under principles of *res judicata* and release).[32]

### 2.    The *Runyan* Action was based upon proper jurisdiction

In *Phillips Petroleum v. Shutts*, 472 U.S. 797, 812-14 (1985), the U.S. Supreme Court expressly held that a state court may properly exercise personal jurisdiction over non-residents in a multistate class action provided that class members are afforded notice and an opportunity to participate or opt out.   There is no dispute that notice and an opportunity to participate or opt out were provided in connection with the *Runyan* Settlement.   The Final Judgment expressly finds that the Notice satisfied the requirements of due process (Final Judgment ¶ 5; Findings at 19-21), and that the Court had both subject matter jurisdiction and personal jurisdiction over the parties and *Runyan* Class members:

> 15.    <u>Jurisdiction</u>:  The Court has subject matter jurisdiction over this Action and to approve the Settlement, and has personal jurisdiction over the parties to the Settlement Agreement and the Class members. . . .

---

[32] In addition, the fact that plaintiff's counsel and two other competing class action lawyers have appealed the *Runyan* Final Judgment does not affect the finality of the judgment for purposes of *res judicata* under Arkansas law.   The Arkansas Supreme Court has expressly held that a judgment is final for purposes of *res judicata* notwithstanding an appeal of the judgment.  *Crockett & Brown, P.A. v. Wilson*, 864 S.W.2d 244, 246 (Ark. 1993) (rejecting the "argument that a judgment on appeal is not final" and holding that acceptance of such an argument would allow a plaintiff to "clog the courts and harass an adversary" which "is the precise result *res judicata* is designed to prevent"); *John Cheeseman Trucking, Inc. v. Pinson*, 855 S.W.2d 941, 943 (Ark. 1993) ("Arkansas follows the majority rule that a judgment is final for purposes of issue preclusion, despite a pending appeal for a review of the judgment, unless the appeal actually consists of a trial *de novo*.").

Final Judgment ¶ 15.  Accordingly, the second prong of *res judicata* is satisfied.

### 3.    The *Runyan* Action was fully contested in good faith

The *Runyan* Court's Final Judgment and Findings incorporate a detailed history of the

Litigation and the Settlement and demonstrate that the action was fully contested in good faith.

Findings at 8-15.  The *Runyan* Complaint represented the consolidation of six prior actions,

including four class actions and two individual actions pending in several states.  *Id*. at 8.  The

*Runyan* Court expressly found that: "[d]uring the course of the Litigation, the Parties engaged in

adversarial and, at times contentious, written discovery, document production, depositions, and

third-party discovery," and "[t]he Company strenuously denie[d] all of the Plaintiffs' claims and

any allegations of wrongdoing."  *Id*. at  9, 11.  It further found:

- that it was only after "a year and a half of contentious litigation, [that] the Parties to the Litigation agreed to meet to discuss settlement";

- the parties engaged in a two-day mediation before former U.S. District Court Judge Nicholas H. Politan, who has extensive experience mediating class action settlements;

- the Parties devoted substantial time and resources and spent thousands of dollars preparing for and attending the mediation;

- following the mediation and "[a]fter months of additional arm's-length negotiations, the Parties reached a preliminary understanding on the major terms of a class action settlement, subject to completion and execution of a comprehensive class action settlement agreement."

*Id*. at 13-14.

Moreover, the *Runyan* Court found further that "the Parties [were] represented by

experienced class action counsel who worked diligently negotiating the Settlement at arms'

length in an adversarial setting to ensure that the Settlement Agreement was fair, reasonable, and

adequate."  *Id*. at 14.  The *Runyan* Court found that "the Settlement was negotiated in good faith

and there was no collusion or 'reverse auction' of any kind in the negotiation of the Settlement."

*Id.*; *see also* Final Judgment ¶ 2 ("the terms and provisions of the Settlement Agreement including all exhibits have been entered into in good faith").  All Settlement Class members were provided the opportunity to object and to appear at the Fairness Hearing.  The *Runyan* Court considered and ruled on all objections (Findings at 44-55), and entertained multiple motions to intervene and other motions filed by counsel for certain Settlement Class members who chose to oppose the Settlement.  *See* Dec. 8, 2009 Order (attached to the Leventhal Declaration as Exhibit G) (addressing various motions filed by Settlement Class members).  The *Runyan* Court also held a Fairness Hearing on November 9, 2009.  Final Judgment at 1.

Accordingly, there is no question that the *Runyan* action was fully contested in good faith, and the third prong for applying *res judicata* is satisfied.  *See Kremer*, 456 U.S. at 483 n.24 ("The Court's decisions enforcing the Full Faith and Credit Clause of the Constitution, Art. IV, § 1, also suggest that what a full and fair opportunity to litigate entails is the procedural requirements of due process.").

> **4.     This action and the *Runyan* Action involve the same claim or cause of action**

This action and the *Runyan* action involve the same Transamerica insurance policies, the same claim procedures revised in 2006, construction of the same policy provisions regarding "actual charges," and the same claim that Transamerica has "underpaid" or "reduced" benefit payments for "actual charges."  *Compare* Complaint ¶¶ 3-5, 7-8 *with Runyan* Complaint ¶¶ 29-31, 33, 39.  The proposed class claims in this action are based on allegations that Transamerica breached its insurance contracts "by paying reduced benefits instead of 'actual charges' as reflected on the health care providers' billing statements."  *See* Complaint ¶¶ 4-10, 29, 42.  All of the alleged "common questions" in support of plaintiff's proposed class are similarly related to the allegation that Transamerica paid "actual charges" benefits based on the

"lesser amounts paid to health care providers by third-party insurers and Medicare." *See id.* ¶ 29. Both this action and the *Runyan* action assert claims against Transamerica and its predecessors or affiliates for breach of contract, breach of the implied duty of good faith and fair dealing or bad faith, unjust enrichment and disgorgement, and declaratory relief and injunctive relief. Thus, this action and the *Runyan* action involve the same claims and cause of action.

**5.      This action and the *Runyan* Action involve the same parties or their privies**

The putative class members the plaintiff seeks to represent in this case (*i.e.*, insureds covered by a Transamerica cancer policy that pays benefits based on "actual charges" for services provided) are Settlement Class members and released their claims in the *Runyan* action. *See* Final Judgment ¶ 3 (defining the Settlement Class as including all insureds and covered persons in the United States). Accordingly, the fifth prong for applying *res judicata* is satisfied. For all of the above reasons, the class claims asserted in this action are barred by *res judicata*. *See Kremer*, 456 U.S. at 485 ("In our system of jurisprudence, the usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum.").

Because the five elements for establishing *res judicata* under Arkansas law are satisfied, the claims asserted in this action are barred. In *Reppert v. Marvin Lumber & Cedar Co.*, the court considered a similar situation in which the defendant argued that a complaint filed in federal district court was precluded by a class action settlement and judgment entered in a Minnesota state court. 359 F.3d at 54. The district court granted the defendant's motion to dismiss, and the plaintiffs appealed to the First Circuit. The Circuit Court noted: "It is beyond cavil that a suit can be barred by the earlier settlement of another suit in either of two ways: res

judicata or release." *Id.* at 56 (quoting *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31-32 (1st Cir. 1991)). The *Reppert* court held the federal suit was barred by both.

In *Reppert*, similar to *Runyan*, direct mail notices had been sent to all identifiable class members, notices were published in newspapers, and a toll-free number and a website were established to provide potential class members with information about the proposed class action settlement and appropriate forms for participating in the proceedings or opting out. *Id.* at 55. "Thereafter, and before the class settlement was approved, the Minnesota court, as required by state law (in similar fashion to its federal counterpart), held a fairness hearing to determine whether the settlement was reasonable, adequate, and in the best interest of the class." *Id.* The state court heard at least one objector, and overruled the objection. *Id.* Subsequently, the state court determined the settlement was fair, adequate and reasonable and approved it. *Id.* Under these facts, the Massachusetts District Court and the First Circuit both concluded that the subsequent suit in *Reppert* was barred by *res judicata*.

The situation here is similar to that in *Reppert*. The Arkansas doctrine of *res judicata* precludes all claims asserted in this action on behalf of the putative class members, and the *Runyan* Final Judgment is entitled to full faith and credit in this Court. Accordingly, the class aspect of this action should be eliminated.

C.   **The Doctrine Of Collateral Estoppel Bars All Class Allegations And Claims Asserted In This Action**

Under Arkansas law, plaintiff's claims are also barred by collateral estoppel or issue preclusion, which has four elements: (1) the issue is the same as that involved in a prior litigation; (2) the issue was actually litigated; (3) the issue was determined by a valid and final judgment; and (4) the determination was essential to the judgment. *Nat'l Farmers Union Standard Ins. Co. v. Morgan*, 966 F.2d 1250, 1253 (8th Cir. 1992) (citing *Lane v. Sullivan*, 900

F.2d 1247, 1250 (8th Cir. 1990) (citing *East Texas Motor Freight Lines v. Freeman*, 713 S.W.2d 456, 459 (Ark. 1986)).   The *Runyan* Final Judgment also satisfies all requirements for application of the Arkansas doctrine of collateral estoppel.

First, the policies of the class alleged in this action are the same Cancer Policies involved in the *Runyan* action.   This action also involves construction of the same contract language regarding "actual charges," and the same claims that Transamerica "underpaid" or "reduced" benefit payments based upon "actual charges."   Thus, the contracts, issues, and legal theories involved in this action are the same as those resolved in *Runyan*.   Second, the issues raised by plaintiff here were litigated in the *Runyan* action to a final judgment on the merits with a dismissal with prejudice as to the Settlement Class.   *See, e.g.*, *Francis*, 31 S.W.3d at 846 (settlement is "a final adjudication on the merits of 'all matters in controversy between the parties,'" and a "[d]ismissal with prejudice is as conclusive of the rights of the parties as if there were an adverse judgment as to the plaintiff after a trial").   Third, those issues were determined by a valid and final judgment.   And finally, the determination of the benefit payment issues and interpretation of "actual charges" under the Policies was not only essential to the *Runyan* Final Judgment, but those issues were central to the *Runyan* action and the six prior actions that were consolidated into *Runyan*.   Accordingly, the claims of Settlement Class members in *Runyan* are also barred by collateral estoppel and cannot be relitigated here.

## III.   ALL CLASS ALLEGATIONS AND CLAIMS ASSERTED IN THIS ACTION ARE BARRED BY THE RELEASE IN THE *RUNYAN* FINAL JUDGMENT

As noted in *Reppert*, "a suit can be barred by the earlier settlement of another suit in either of two ways:  res judicata or release."   *Reppert*, 359 F.3d at 56 (citation omitted).   In *Reppert*, the First Circuit found that in addition to *res judicata*, the release in a prior state court case which was approved by that court as part of the settlement process was "an imposing

-28-

hurdle," which also barred the subsequent federal court action.  *Id*. at 58-59.  Likewise, in *Grant County Savings & Loan Ass'n, Sheridan, Kansas v. Resolution Trust Corp.*, 968 F.2d 722 (8th Cir. 1992), the court concluded that the settlement agreement the parties negotiated clearly and unmistakably released the defendant because the release made clear that the parties "intended the settlement and release to end all litigation" over the pending claims.  *Id*. at 725.

Like the releases in *Reppert* and *Grant County*, the release in the *Runyan* Final Judgment unquestionably extinguishes all claims that the putative class members have pled in this case. The *Runyan* release is a comprehensive release related to the Policies which expressly includes, among other things, any and all Claims which were asserted or could have been asserted in the *Runyan* action; any and all Claims "relating to premiums or benefits under the Policies including but not limited to Claims relating to the amount of premiums paid or payable, the amount of benefits paid or payable"; any and all Claims relating to "any type of Actual Charges Benefits paid or payable under a Policy, or the meaning, definition, or interpretation of 'actual charges' or 'charges' under a Policy"; any and all claims relating to "the Company's administration of the Policies including but not limited to the forms, processes, proof of loss requirements, or procedures used in connection with or relating to the processing of claims and payment of benefits under such Policies, or any changes to such forms, processes, proof of loss requirements, or procedures"; and any and all Claims for attorney's fees, costs or expenses, and any right "to bring a representative or class action claim of any nature whatsoever relating to the Policies." Final Judgment at 6-8, ¶ 8.  The Final Judgment expressly states that: "Notwithstanding any other provision of the Settlement Agreement or this Final Judgment, under no circumstances shall the Release be interpreted to allow any future claims challenging the Company's interpretation of 'actual charges' or 'charges', . . ." *Id*. at 9, ¶ 8.

Thus, Transamerica, including all of its predecessors and affiliates, was expressly released by the Settlement Class from the proposed class claims in this case, and no such class claims can be relitigated in this action. Accordingly, all class claims and allegations asserted in this case should be dismissed or eliminated.

## IV.  ALLOWING THE PLAINTIFF TO RE-LITIGATE DUPLICATIVE, SETTLED CLASS ACTION CLAIMS WOULD VIOLATE THE STRONG PUBLIC AND JUDICIAL POLICY UNDERLYING *RES JUDICATA* AND FAVORING CLASS ACTION SETTLEMENTS

The Supreme Court has "consistently emphasized" the importance of *res judicata* and collateral estoppel "in fulfilling the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction." *Kremer*, 456 U.S. at 466 n.6. "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised." *Id. Res judicata* "relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication." *Id.* (quotations and brackets omitted).[33] "When a state court has adjudicated a claim or issue," *res judicata* also "serve[s] 'to promote the comity between state and federal courts that has been recognized as a bulwark of the federal system.'" *Kremer*, 456 U.S. at 466 n.6 (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). Plaintiff's attempt to relitigate the class action claims settled in *Runyan* would turn these principles on their head.

---

[33] *See also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (the doctrine of *res judicata* "serves vital public interests"; "[p]ublic policy dictates that there be an end of litigation"; *res judicata* "is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts") (citations omitted); *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005) (the purpose of *res judicata* and collateral estoppel is "to shield litigants and the judicial system from the burden of re-litigating identical issues and to avoid inconsistent results") (internal parenthesis omitted).

Plaintiff's attempt to harass Transamerica by continuing to litigate class claims resolved in *Runyan* after substantial investments of time and expense would also frustrate the strong public policy favoring the settlement of class actions. *See, e.g., In re Warfarin*, 391 F.3d at 535 ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *In re Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (particularly in the class action context "there is an overriding public interest in favor of settlement"); *Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 530 (W.D. Pa. 2008) ("The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen in class actions") (internal quotation marks omitted); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) ("The policy . . . favoring the voluntary resolution through settlement is particularly strong in the class action context. Settlement of the complex disputes often involved in class actions minimizes the substantial burdens to the parties and to scarce judicial resources that such litigation entails") (citation omitted).

## CONCLUSION

For all of the reasons set forth above, Transamerica and AEGON USA, LLC respectfully request that this Court enter an Order denying class certification and eliminating the class action allegations from this action.

Respectfully submitted,

John K. Baker, Esq., Ark. Bar No. 97024          /s/ Markham R. Leventhal
**MITCHELL, WILLIAMS, SELIG,**                    Markham R. Leventhal, Esq.
   **GATES & WOODYARD, P.L.L.C.**                 Farrokh Jhabvala, Esq.
425 West Capitol Avenue, Suite 1800              **JORDEN BURT LLP**
Little Rock, Arkansas  72201                     777 Brickell Avenue, Suite 500
Telephone:  (501) 688-8800                       Miami, Florida  33131
Facsimile:  (501) 918-7850                       Telephone:  (305) 371-2600
jbaker@mwlaw.com                                 Facsimile:  (305) 372-9928
                                                 ml@jordenusa.com
                                                 fj@jordenusa.com

                                                 *Attorneys for Defendants Transamerica Life*
                                                 *Insurance Company and AEGON USA, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2010, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

*Attorneys for Plaintiff*

I hereby certify that on April 13, 2010, I mailed the foregoing document by U.S. First Class Mail

to the following non CM/ECF participant:

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL  35203

*Attorneys for Plaintiff*


_____ /s/ Markham R. Leventhal _____


183565