# Exhibit G to
# Declaration of Markham R. Leventhal

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
THIRD DIVISION

EDISON RUNYAN; DWIGHT PIPES;
EARL L. PURIFOY; JOHN ROSS,
As The Legal Representative Of
ELIZABETH ROSS; MARY WEIDMAN;
DURAIN WEIDMAN; MARION HARRIS;
and VAN R. NOLAN, Each Individually,
And On Behalf Of All Others Similarly Situated                        PLAINTIFFS

FILE/8 12/08/2009 13:12:17
DT$ O'Brien Circuit Clerk

V.                              CASE NO. CV-09-2066-3

TRANSAMERICA LIFE INSURANCE
COMPANY; LIFE INVESTORS INSURANCE
COMPANY OF AMERICA; MONUMENTAL
LIFE INSURANCE COMPANY; and
AEGON USA, INC.                                                     DEFENDANTS
_____/

## ORDER

The Court presently has pending before it the following motions, each of which has been

fully briefed and is ripe for decision:

(1)     The *Crager* Motions, heard September 16, 2009

- Consolidated Proposed Intervenors/Objectors' Motion to Intervene and
  Memorandum in Support by James Carroll, Loretta Carroll, Daniel A. Crager,
  William McWhorter, and Kathleen McWhorter (filed June 26, 2009) (the
  "*Crager* Group"); and

- Withdrawal of Objections by William and Kathleen McWhorter and James
  and Loretta Carroll (filed July 23, 2009).[1]

---

[1] After the insurance company defendants submitted testimony by affidavit challenging
the class membership allegations of James and Loretta Carroll and William and Kathleen
McWhorter, these four individuals filed their "Withdrawal of Objections" and withdrew their
participation in the Motion to Intervene, leaving Daniel Crager as the only proposed intervenor
remaining in the *Crager* Group. These objectors did not seek the Court's approval, required by
Ark. R. Civ. P. 23(e)(4), to withdraw their objections. Nevertheless, the Court treats the
"Withdrawal of Objections" as a motion to withdraw the objections, and hereby GRANTS the
withdrawal.

(2)    **The *Shepherd* Motions, heard September 16, 2009**

- Motion for Leave to Intervene by William E. Shepherd (filed June 23, 2009);

- Motion to Set Aside Preliminary Approval Order, Motion for Stay of Proceedings and Request for Scheduling Order by William E. Shepherd (filed August 27, 2009); and

- Motion to Produce (filed September 28, 2009).

(3)    **The *Goad* Motions, heard September 17, 2009**[2]

- Motion for Leave to Withdraw Objection of Objector Evelyn Jones (filed July 24, 2009);

- Motion to Conduct Limited Discovery filed by Objectors Frances A. Goad, Evelyn Jones, Linda McCarthy, Thomas McCarthy and Benita White (filed June 26, 2009) (the "*Goad* Group");

- Objectors' Motion to Intervene for Limited Purpose (filed July 10, 2009);

- Objectors' Motion for Leave to Submit Proof of Membership in the Settlement Class Out of Time (filed July 14, 2009); and

- Objectors' Motion to Assess Costs (filed August 12, 2009).

(4)    **The *Hunter* Motions, heard October 1, 2009**

- Motion for Order Directing Pre-Hearing Disclosures by the Settling Parties, by objector Audry Hunter (filed July 10, 2009);

- Motion to Intervene by Putative Class Member and Objector Audry Hunter (filed July 17, 2009);[3]

---

[2] Several motions filed by the *Goad* Group were withdrawn. On July 24, 2009, Evelyn Jones withdrew her motion to intervene, and moved to withdraw her objections to the Settlement. On September 25, 2009, the remaining members of the *Goad* Group withdrew their motion to intervene, and moved to withdraw their objections to the Settlement. On September 28, 2009, the Court entered an Order permitting withdrawal of the objections by Settlement Class members Goad, Mr. and Mrs. McCarthy, and White. The Court hereby GRANTS the motion of Evelyn Jones to withdraw her objections to the Settlement.

[3] For purposes of this Memorandum Order, the Court refers collectively to the motions to intervene filed by *Crager*, *Shepherd*, and *Hunter* as the "Motions to Intervene."

- Defendants' Life Investors Insurance Company of America and Transamerica Life Insurance Company's Motion to Strike Untimely and Improper Filings by Counsel for Objector Audry Hunter (filed July 23, 2009); and

- Motion to Stay by Audry Hunter (made *ore tenus* on October 1, 2009).

Having reviewed the parties submissions and heard oral argument on September 16-17 and October 1, 2009, the Court hereby rules on the Motions.

## RELEVANT BACKGROUND

### A.    The Litigation

This class action was filed on March 13, 2009 by the plaintiffs' attorneys ("Class Counsel") to consolidate multiple companion actions they had been litigating on behalf of the Representative Plaintiffs (sometimes referred to as "Class Representatives") in various jurisdictions throughout the country (including this action, the "Litigation").[4]

The Plaintiffs assert a variety of claims on behalf of themselves and a proposed national class of current and former policyholders who were insured or covered under certain supplemental cancer insurance policies and similar specified disease policies issued or administered by Transamerica, Life Investors, Monumental Life, or one of their predecessor companies.[5]  The Policies do not provide comprehensive health insurance.  Rather, they provide certain "limited" benefits in cash directly to the insured.  Defendants' Memorandum in Support of Joint Motion for Preliminary Approval of Proposed Class Action Settlement, filed April 21,

---

[4] The parties' Settlement Agreement was incorporated by reference into the Preliminary Approval Order entered April 23, 2009 and all terms defined in the Settlement Agreement and in the Preliminary Approval Order will have the same meanings when used in this Order.

[5] *See generally* Plaintiffs' Class Action Complaint filed March 13, 2009 (the "Complaint").  Life Investors merged into Transamerica effective October 2, 2008.  Complaint ¶ 18.  Accordingly, all of the outstanding Policies are currently administered by Transamerica. Monumental Life has issued only 34 policies covered by the Settlement all of which were issued in the State of Michigan.  Complaint ¶ 17.

2009 ("Defendants' Memorandum") at 4. Under these circumstances, the insured is free to use the cash benefits from the Policies for any purpose. Complaint ¶ 26. The vast majority of the Policies include one or more provisions that pay benefits based on the "actual charges" for certain services. Defendants' Memorandum at 4.

Plaintiffs allege that the Company has underpaid benefits based upon the "actual charges" for services such as chemotherapy, radiation therapy, blood-related expenses, and other services.[6] Plaintiffs allege that new claim procedures instituted by the Company in 2006 created a new definition or interpretation of "actual charges" that was inconsistent with the Company's prior practice and course of conduct. Complaint ¶ 39. Plaintiffs also complain that premium rate increases have been too large, violating the Policy provisions which provide for guaranteed renewability subject to rate increases. Complaint ¶ 49. Plaintiffs' allegations include that the Company's payment of "actual charges" benefits for services rendered on or after April 1, 2006, and its continually raising premium rates breaches the terms of the Policies and constitutes bad faith and unfair and deceptive practices.[7] The Complaint alleges nine counts arising out of these allegations. Plaintiffs seek to represent a nationwide class of policyholders who are or were insured or covered under the Policies.

---

[6] *See, e.g.* Complaint ¶ 59. The Plaintiffs allege that, prior to April 1, 2006, the Company paid claims and interpreted the phrase "actual charges" to mean any amount that appeared on a medical provider's statement, without reduction for any discount, third-party payment, or write-off of any kind. Complaint ¶ 30. Plaintiffs complain that the Company reduced benefits, breached the Policies, and acted in bad faith when it revised its claim forms and procedures in 2006 and began paying claims for "actual charges" based on the amount actually owed and paid to the medical provider as payment in full for the services rendered. *See, e.g.* Complaint ¶¶ 39, 108, 121.

[7] *Id.* The Plaintiffs have also sued AEGON USA, Inc., and alleged that AEGON USA, Inc. has acted in concert or as the alter ego of the insurance company defendants. Complaint ¶ 19.

The Company and AEGON USA, Inc. filed separate Answers to the Complaint on April 3, 2009.[8] The Defendants deny the Plaintiffs' claims and any allegations of wrongdoing. Regarding "actual charges" benefits, the Company maintains that "actual charges" must be interpreted according to its plain and ordinary meaning, taking into account the Policy as a whole and, consequently, that "actual charge" can only be reasonably interpreted as the actual amounts that are being charged by, paid to, and accepted by the healthcare provider as payment in full for the services rendered. Defendants' Memorandum at 8. The Company also alleges that healthcare billing practices have changed since it first developed Actual Charges Policies in the mid-1970s. *Id.* As a result, the Company commenced an investigation in 2004 which the Company contends resulted in a discovery that it had been overpaying claims for "actual charges" benefits based on the statements its insured were submitting as "proof of loss." *Id.* The Company maintains it has the right to correct its claim practices consistent with the terms of the Policies and to prevent unnecessary premium rate increases to its policyholders. *Id.* at 9.

It is undisputed that the Company sent a letter in 2006 to all policyholders explaining its interpretation of "actual charges," consistent with the Actual Charges Injunction in the Settlement, and setting forth its rationale for updating its claim forms. Complaint ¶ 39; Defendants' Memorandum at 9. The Company alleges that all of its coverage and benefits decisions have been made in good faith with the intent to correctly apply the language and terms of the Policies and to protect the policyholders from unnecessary premium rate increases.

---

[8] *See* Transamerica Life Insurance Company, Life Investors Insurance Company of America, and Monumental Life Insurance Company's Answer and Defenses to Class Action Complaint, filed April 3, 2009 (the "Answer"); AEGON USA, Inc.'s Answer and Defenses to Class Action Complaint, filed April 3, 2009 (the "AEGON Answer").

Defendants' Memorandum at 9.  Regarding premium rate increases, the Company contends that all premium rate increases have been lawfully and properly implemented.[9]

Regarding class certification, the Company contends that a class action could never be properly certified in a contested proceeding outside of the settlement context, and that certification for settlement purposes is only appropriate here because of the delicate balance reached in fashioning the monetary and injunctive relief under the proposed Settlement. Defendants' Memorandum at 9.

The Litigation consists of seven actions listed in the parties' Settlement Agreement,[10] pending in various states including Arkansas, Mississippi, Michigan, and Louisiana.[11]   The parties were engaged in adversarial and, at times, contentious proceedings over these issues since the first of the companion cases, *Pipes, et al. v. Life Investors Ins. Co., et al.*, Case No.1:07-cv-00035 (E.D. Ark.), was filed in 2007.  The docket in the *Pipes* action reflects that,

---

[9] Defendants' Memorandum at 9.  AEGON USA, Inc. contends it is not an insurer and is not a party to any insurance policies at issue in this action.  See, e.g., AEGON Answer ¶ 23. AEGON USA, Inc. is not a party to the Settlement Agreement, but will be covered under the Release.  Joint Motion for Preliminary Approval filed April 20, 2009 (the "Joint Motion") at Exhibit 1.

[10] *See* Agreement § 1(r).  The first filed of these cases was *Pipes v. Life Investors Insurance Company of America*,  Case No. 1:07-cv-00035-SWW, currently pending in the United States District Court for the Eastern District of Arkansas.  The *Pipes* case was filed on June 6, 2007.  In addition to *Pipes* and this Action, the Litigation includes the *Runyan* action in the Western District of Arkansas, the *Ross* action in the Southern District of Mississippi, the *Weidman* action in the Eastern District of Michigan, and the *Nolan* and *Harris* actions in the Middle District of Louisiana.

[11] In addition, there are other cases pending against one or more of the Defendants in jurisdictions around the country, raising some of the same allegations the Plaintiffs have made in the Litigation. *See, e.g.*, Joint Motion for Preliminary Approval of Class Action Settlement at 11 and 12, n.14 (explaining the existence of "several other cases involving cancer policies pending against the Company," including *Gooch v. Life Investors Ins. Co. of Am.*, Case No. 1:07-cv-00016 (M.D. Tenn.)).

during the course of the Litigation, the parties engaged in written discovery, document production, depositions, and third party discovery. The court in that case denied the Plaintiffs' Motion for Class Certification on November 21, 2008, and a Motion for Reconsideration was filed by the plaintiffs in *Pipes*. The *Pipes* case and all other cases in the Litigation are now stayed pending this Court's final ruling on the proposed Class Action Settlement. *See* Notice of Non-Compliance with Court's Preliminary Approval Order by Certain Settlement Class Members at Composite Exhibit B.

**B.      The Class Action Settlement Agreement**

Following six months of negotiations which commenced in October 2008, the parties finalized and executed the Class Action Settlement Agreement that was filed with the Court in this consolidated case on April 20, 2009. Defendants' Memorandum at 13. The Settlement provides multiple categories of both monetary and non-monetary relief to the Settlement Class members. Defendants' Memorandum at 15. After briefing and a hearing, the Court made an initial finding the Settlement was sufficiently fair, reasonable, adequate, and in the best interest of the Class members to warrant sending notice to the Settlement Class. *See* Preliminary Approval Order at 2. Accordingly, this Court granted preliminary approval to the Settlement on April 23, 2009 (the "Preliminary Approval Order"). *Id.*

**C.      Implementation of the Notice Plan**

The Court's Preliminary Approval Order appointed Epiq Systems, Inc., a nationally recognized class action administration firm, as Settlement Administrator. Under the Preliminary Approval Order, the Settlement Administrator was required: (1) to print and send a written Notice to the Settlement Class within 21 days (by May 14, 2009); (2) to publish the Court-approved Publication Notice twice in *USA Today*; and (3) to create a Settlement website. On

May 14, 2009, Notices were mailed to 250,136 Settlement Class members at a cost of $187,852.[12] The comprehensive Notice mailed to Settlement Class members advised them of the nature of the litigation, the terms of the Settlement, their right to object to the Settlement, their right to exclude themselves or "opt-out" of the Settlement, along with the deadlines and procedures for doing so. *See* Defendants' Status Report at Exhibit A (Notice of Proposed Class Action Settlement). The Notice follows the style recommended by the Federal Judicial Center in a simplified Question and Answer format with a table of contents to help laypersons easily find answers to specific questions they might have about the Settlement.

On May 26 and 28, 2009, Publication Notice was published in *USA Today* at a cost of $25,075. The Settlement Administrator also established an Interactive Voice Response ("IVR") system along with live operator support, and created an Internet website with access to the Notice, Claim Forms, the Settlement Agreement, and other documents.[13] The telephone call center was live as of May 14, 2009 and available through a toll-free number (1-866-940-3613) which was provided in the Notice. As of July 9, 2009, the IVR system had responded to 13,082 telephone calls. The Settlement website was live on May 13, 2009. As of July 9, 2009, the website reported 45,642 unique visitor sessions. As of July 9, 2009, Transamerica had incurred approximately $290,201 of expenses for the various services of the Settlement Administrator.

---

[12] These facts related to implementation of the Notice Plan were presented to the Court in Defendants' Status Report Regarding Class Action Settlement filed July 24, 2009 ("Defendants' Status Report"). The Company has informed the Court that it will submit affidavits to update the facts set forth in the Status Report in connection with its motion for final approval of the Settlement. *Id.* at 2.

[13] The Settlement website is: www.SupplementalInsuranceSettlement.com.

-8-

**D.     Response to the Proposed Settlement**

The Settlement provides monetary and non-monetary benefits to the Settlement Class which are outlined in detail in the Notice, and the parties estimate that these benefits are worth millions of dollars to the Class.   The Settlement Class overall has responded very favorably to the Notice.  From the 250,136 Notices sent to Settlement Class members, a very small number of individuals filed timely objections with the Court.  Defendants' Status Report at 3.   Several class members withdrew their objections, and other objectors, proven to be non-class members also withdrew their objections.  As a result, there are only nine objectors that remain pending before the Court.[14]  Thus, the ratio of objectors to Settlement Class members (9: 250,136) is less than four one-thousandths of 1%, or approximately .0036%).   Several of these remaining objectors appear to have been actively solicited to object, or they are represented by plaintiffs' counsel in other putative class actions.  *Id.*  In contrast to the minimal number of objections, the Settlement Administrator has received several thousand Claim Forms from Class members seeking one of the monetary benefits under the Settlement.  *Id.*

**E.     Stays Entered in Multiple Related Actions**

The parties filed joint motions to stay pending final approval of the Settlement in the six federal courts whose cases were encompassed by the Settlement.  Each of these courts has stayed their proceedings pending final approval of the Settlement.   Recently, the parties submitted court-ordered status reports in these cases.  Judge Susan Webber Wright in the *Pipes* action, Judge Hendren in the federal *Runyan* action, and Magistrate Judge Anderson in the *Ross* action

---

[14] The Court has received a handful of correspondence from Class Members, both before and after the Objection Deadline.

recently entered orders extending the stays in their cases pending a decision by the state court. *See Pipes* (Doc. No. 145); *Runyan* (Doc. No. 41); *Ross* (Text Order, entered November 2, 2009).

**F.    Opposition to the Settlement Filed in Other Courts**

Since the Preliminary Approval Order was entered, plaintiffs' counsel in several similar class actions pending in other jurisdictions have attempted to enjoin or otherwise affect the Settlement and/or the final Fairness Hearing through motions filed in those actions.  The Court has been informed that the plaintiffs in those actions have timely excluded themselves from this action. The attorneys in several of these actions also represent Settlement Class members in this case who chose to remain in the Settlement rather than exclude themselves, and who have filed objections or motions to intervene in this action.

**1.    Gooch v. Life Investors Ins. Co. of Am., Case No. 1:07-cv-00016 (M.D. Tenn.)**

In the *Gooch v. Life Investors* action, for example, counsel of record Thomas O. Sinclair, Clayborn Williams, and W. Daniel "Dee" Miles, III are three of the same counsel who represent proposed intervenor *Shepherd* in this action.  On June 23, 2009, plaintiff's counsel in the *Gooch* action filed a Motion for Injunctive Relief (the "Motion to Enjoin"), asking the district court in Tennessee to enjoin this Court from proceeding with the Settlement.[15]   On June 25, 2009, proposed intervenor *Shepherd* informed this Court of the Motion to Enjoin through his Notice of Filing and Request for Expedited Ruling, in which he explained his intention to file a motion to stay these proceedings if granted intervenor status.  *See* Notice of Filing and Request for Expedited Ruling at 1.  On July 24, 2009, Defendants' Status Report was filed.  Defendants in the *Gooch* action opposed the Motion to Enjoin, arguing *inter alia*, that any such injunction

---

[15] On June 25, 2009, plaintiff in the *Gooch* action filed his request for exclusion and "opted out" of this Settlement, but did not withdraw his Motion to Enjoin.

would violate the Anti-Injunction Act,[16] but on July 24, 2009, the district court in the *Gooch* case issued an injunction prohibiting Life Investors and Transamerica "from pursuing final approval" of the Settlement. *See* July 27, 2009 Notice of Filing Gooch Injunction Order.

The *Gooch* injunction effectively prevented Defendants and their counsel from appearing at the scheduled Fairness Hearing in this action on July 27, 2009. The parties notified this Court of the injunction over the weekend, and on Monday, July 27, 2009, the Court heard from various objectors and intervenors who appeared for the Fairness Hearing despite the *Gooch* injunction or, with respect to the *Goad* Group's attorneys, without knowledge of it. The Court entered no orders on July 27, 2009, and the objectors and proposed intervenors present that day elected to present no argument to this Court regarding the fairness of the Settlement or their filings.

Life Investors and AEGON USA, Inc., defendants in the *Gooch* case, appealed the *Gooch* injunction to the U.S. Court of Appeals for the Sixth Circuit, and on July 30, 2009, filed with the Sixth Circuit a Motion for Emergency Stay of Injunction Pending Appeal and to Expedite Appeal (the "Emergency Motion"). *See* Notice of Order by U.S. Court of Appeals for the Sixth Circuit Staying Injunction Which Prevented Defendants from Pursuing Final Approval of Class Action Settlement filed August 20, 2009 (the "Notice of Order") at Exhibit C. Life Investors argued that the injunction was unlawful and was causing irreparable harm by interfering with the Settlement. After response and reply briefs were filed, on August 17, 2009, the Sixth Circuit granted the Emergency Motion and stayed the *Gooch* injunction, holding in pertinent part: "In

---

[16] *See Vallier v. American Fidelity Assurance Co.*, 2008 WL 4330028 (D. Kan. Sept. 16, 2008) (explaining that the Anti-Injunction Act prohibits federal courts from enjoining state court actions, with narrow exceptions, none of which apply). *See* Joint Status Report at Exhibit E; *see also id* at Exhibit F, attaching *Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091, 1100-03 (9th Cir. 2008) (reversing injunction that prevented defendant from negotiating settlement of similar class action claims with lawyers in other actions without first obtaining permission of plaintiffs' co-lead counsel in *Negrete*).

view of the defendants' arguments on the merits and the likely irreparable harm, a stay pending appeal will issue." *See* Notice of Order at Exhibit A.  On August 25, 2009, the plaintiff in *Gooch* filed a Petition for Rehearing En Banc in the Sixth Circuit, and two days later, filed in this Court his notice of the Petition.  On September 22, 2009, the Sixth Circuit Court of Appeals denied the Petition for Rehearing En Banc.

### 2.    The *Belue* and *Smith* Actions

Similar motions to enjoin the Settlement in whole or in part were also filed in related actions pending in the District of South Carolina, *Belue v. AEGON USA, Inc., Life Investors Ins. Co. of Am.*, Case No. 7:08-cv-3830-GRA (D.S.C.) and in the Western District of Pennsylvania, *Smith v. Life Investors Ins. Co. of Am.*, Case No. 2:07-cv-00681 (W.D. Pa.).  The plaintiffs in *Belue* and *Smith* subsequently excluded themselves from this action, but several of the attorneys of record in the *Belue* action have also filed objections in this case on behalf of Settlement Class members Jackie Queen, Howard Barnhill, and Joanne W. Gibson.  No injunction has been entered in either the *Belue* or *Smith* actions, but plaintiffs in both actions recently renewed their motions to enjoin.  *Smith,* (D.E. 260) (Plaintiff's Renewed Motion for Injunctive Relief Under the All Writs Act); *Belue* (D.E. 111) (Plaintiffs' Renewed Emergency Motion for Injunctive Relief Under the All Writs Act).   *See* Defendants' Status Report Regarding Class Action Settlement, filed November 4, 2009.

### G.    The Rescheduled Fairness Hearing

After hearing from the parties, objectors, and proposed intervenors to accommodate their schedules, on September 24, 2009, the Court rescheduled the Fairness Hearing for November 9, 2009 and gave notice to all interested parties.  *See* September 24, 2009 Notice of Fairness Hearing.  On October 1, 2009, the Court entered an Order requiring the parties to notify

Settlement Class members and their counsel who had timely filed a notice of intent to appear of the new Fairness Hearing date. The October 1st Order further required that the date and time of the Fairness Hearing be added to the Settlement website. On September 16 and 17, and October 1, 2009, the Court heard argument on multiple preliminary motions which are the subject of this Order.

## DISCUSSION

### I. THE MOTIONS TO INTERVENE

Although the Court heard oral argument from four groups seeking to intervene in this action, only the Motions to Intervene by *Crager*, *Shepherd*, and *Hunter* remaining pending. These three Settlement Class members seek leave to intervene pursuant to Ark. R. Civ. P. 24(a)-(b), of right and permissively. For the reasons set forth below, the Court finds that none of the proposed intervenors complied with the procedural mandates of Rule 24(c), and the Motions to Intervene are DENIED on that basis alone. In addition, the Court finds that the proposed intervenors are not entitled to party status "of right" under Rule 24(a) and the Court exercises its discretion to deny permissive intervention under Rule 24(b). Accordingly, the Motions to Intervene are DENIED.

#### A.   The Motions To Intervene Are Procedurally Defective

Rule 24(c) of the Arkansas Rules of Civil Procedure provides that a motion for leave to intervene in an action "shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." The Motions to Intervene in this case are procedurally improper. The *Crager* and *Hunter* motions failed to attach any

pleading.[17]  *See Polnac-Hartman & Ass'n v. First Nat'l Bank in Albuquerque*, 292 Ark. 501, 504, 731 S.W.2d 202, 204 (Ark. 1987) (motion to intervene is deficient and does not show an "entitlement to intervene as a matter of right or permissively" if it attaches no pleading). Without a pleading, the "court may not have any idea of the right asserted by the would-be intervenor." *Polnac-Hartman*, 292 Ark. at 504, 731 S.W.2d at 204.

In a belated attempt to cure this defect, *Crager* subsequently filed an "Amended Complaint in Intervention." *Crager* was not authorized to file this pleading as he had not been granted party status and, even if considered the "Amended Complaint" added no claims or defenses and failed to make any class action allegations. *Hunter* never made any attempt to comply with Rule 24(c).[18] *Shepherd's* motion was accompanied by a proposed Complaint in

---

[17] *Crager*'s motion was originally filed on behalf of five individuals, four of whom were not Class members, by his lead counsel N. Albert Bacharach. Attorney Bacharach's objections and fee petitions in a wide array of class action settlements have been routinely denied around the country. See, e.g., *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (denying objections to settlement in drug manufacturer class action); *Meyenburg v. Exxon Mobil Corp.*, 2006 WL 5062697 (S.D. Ill. June 5, 2006) (denying objections to settlement in an automotive, commercial and industrial lubricant class action); *Rinaldi v. Iomega Corp.*, 2001 WL 34890424, at *11 (Del. Super. Ct. June 29, 2001) (denying objections to a settlement in a computer storage device class action); *Azizian v. Federated Dep't Stores, Inc.*, 2007 WL 425850, at *1-2 (N.D. Cal. Feb. 8, 2007) (denying objectors' request for attorneys' fees because attorney involvement did not sufficiently benefit the class to warrant an award of fees); *Wal-Mart Stores, Inc., v. Visa U.S.A. Inc.*, 396 F.3d 96, 101 (2d Cir. 2005) (denying objections to settlement in anti-trust class action against credit card companies Visa and MasterCard). Mr. Bacharach did not appear at the hearing on the Motions to Intervene.

[18] *Hunter's* motion was also arguably untimely. It was not filed until one week before the originally scheduled Fairness Hearing. It is well-settled that an untimely motion to intervene will be denied. *Ballard v. Garrett*, 349 Ark. 371, 78 S.W.3d 73 (Ark. 2002) (denying untimely motion). Moreover, *Hunter's* motion was filed by counsel who was neither licensed in Arkansas nor admitted to file papers in this case, and it was inconsistent with a prior *pro se* objection filed by *Hunter*. On July 23, 2009, Defendants filed a Motion to Strike Untimely and Improper Filings by Counsel for Objector Audry Hunter (the "Motion to Strike"), including the motion to intervene, among other filings. On October 1, 2009, this Court entered a written order granting Ms. Hunter's counsel *pro hac vice* status to argue at the hearing. The Court DENIES
*(Footnote continued on next page)*

-14-

Intervention, but it likewise was procedurally deficient because it failed to make any class action allegations consistent with Rule 23, and it was admittedly filed so that *Shepherd* could stay this action *rather* than to pursue a claim or defense if granted intervenor status.   Because each of the Motions to Intervene was procedurally defective, they are DENIED in the exercise of the Court's discretion on that basis alone.

### B.     Intervention of Right

Rule 24(a) of the Arkansas Rules of Civil Procedure provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Ark. R. Civ. P. 24(a).   None of the proposed intervenors argues that they are permitted to intervene under any State statute pursuant to Subsection 24(a)(1).   In order to intervene as of right under Subsection (a)(2), they must meet a three factor test:

> [A]n applicant must show three things:   (1) that he has a recognized interest in the subject matter of the primary litigation, (2) that his interest might be impaired by the disposition of the suit, and (3) that his interest is not adequately represented by the existing parties.

*DeJulius v. Sumner*, 373 Ark. 156, 158-59, 282 S.W.3d 753, 755 (Ark. 2008).

The Arkansas Supreme Court has applied Subsection 24(a)(2) in the context of class action settlements in several cases, including *DeJulius v. Sumner*, 373 Ark. 156, 282 S.W.3d 753 (Ark. 2008), which the Court finds controlling in this case.   In *DeJulius*, the Supreme Court held there is no intervention of right in a situation such as this, where Settlement Class members have

---

Defendant's Motion to Strike in part only with respect to the *Hunter* motion to intervene, but for the reasons set forth herein DENIES the motion to intervene on the merits.

been given an opportunity to opt-out and pursue their claims independently. *Id.* at 159, 282

S.W.3d at 755. Any such class member who chooses to remain in the settlement action "has no

interest that needs protecting by intervention of right," and cannot show "that his interest might

be impaired by the disposition of the litigation." *Id.* (citing *Billabong Prods., Inc. v. Orange City

Bank,* 278 Ark. 206, 644 S.W.2d 594 (Ark. 1983)).

> Generally, if a person seeking intervention will be left with the right to
> pursue his own independent remedy against the parties, regardless of the
> outcome of the pending case, then he has no interest that needs protecting
> by intervention of right.

*DeJulius,* 373 Ark. at 158, 282 S.W. 3d at 755 (citation omitted).

The Motions to Intervene failed entirely to address the *DeJulius* case despite that it is the

most recent and relevant authority on the subject of intervention of right from this State's highest

court. At oral argument, the proposed intervenors made several arguments as to why they

believe *DeJulius* should not close the door on intervention of right in this case. *Crager's* counsel

effectively conceded that *DeJulius* precluded intervention of right, but argued that the law was

vague and that it would seem to put objectors in a "Catch 22" position because they are not

afforded an appellate remedy absent a successful intervention. *Shepherd's* counsel argued that

the Arkansas Supreme Court did not establish a "bright line rule" in *DeJulius,* and that the

Court's holding was limited by the word "generally." *Hunter's* counsel argued incorrectly that

intervention of right should be granted because the burden to establish an interest that might be

impaired is a minimal one.

The Court disagrees that the law is vague or that the *DeJulius* holding is somehow

limited or imprecise. The language of *DeJulius* is plain, and the elements of Rule 24(a)(2)

applied to this case clearly establish the interests of the proposed intervenors were protected by

opt-out rights and were not impaired. Each of the proposed intervenors was notified of the class

action Settlement and all of its terms. Each had an opportunity to request exclusion from the Settlement, but chose instead to remain a Settlement Class Member and accept this Court's evaluation of the Settlement.

*Shepherd* argues that he did not have adequate time to consider his options. Mr. Shepherd, however, had time to hire three law firms, two of which have been engaged in similar litigation for several years. These law firms had the Class Notice, the Settlement Agreement, the Court's Preliminary Approval Order and all other filings at their disposal, and they filed a motion for leave to intervene, a proposed complaint, and a supporting brief, all before the deadline for Mr. Shepherd to exclude himself. The Court finds that Mr. Shepherd had ample time to decide whether to exclude himself, but made a tactical decision to remain in the Class.

If the proposed intervenors were interested in pursuing their own claims against the Defendants, or achieving their own results on the merits, they could easily have opted out and filed separate lawsuits. For these same reasons, the Court rejects the *Crager* argument that Settlement Class members should be given a "right" to intervene in order to appeal.[19] Accordingly, the Court finds both factually and as a matter of law that the proposed intervenors cannot meet the first two factors of the test for intervention of right because they have not

---

[19] The Arkansas Supreme Court has addressed this issue and has held that class members need not be afforded a right to intervene simply to preserve appellate rights. *Ballard v. Advance Am.*, 349 Ark. 545, 549-50, 79 S.W.3d 835, 837 (Ark. 2002) (dismissing appeal and explaining: "appellants had the ability to opt out and instead elected to object to the settlement and risk being bound by it, if approved by the court over their objections . . . . appellants willingly undertook the risk that their motion to intervene might be denied for failure to meet the requirements of Rule 24(a) of the Arkansas Rules of Civil Procedure, and that they would then be bound by the settlement as approved by the circuit court).

established "a recognized interest in the subject matter of the primary litigation," which "might

be impaired by the disposition of the suit." *DeJulius*, 373 Ark. at 159, 282 S.W.3d at 755.

The proposed intervenors have also failed to meet their burden to establish the third

factor under Rule 24(a)(2) — that their interests are not adequately represented by the existing

parties.  There are eight Class Representatives in this action.  They are all current or former

policyholders of insurance policies similar to the policies owned or formerly owned by *Crager*,

*Shepherd*, and *Hunter*.  The proposed intervenors have not distinguished their interests in any

meaningful way from those of the existing Class Representatives.  *Shepherd* and *Hunter* argue

that the Class Representatives are in adequate because Defendant Life Investors won the class

certification battle in the *Pipes* litigation.  The class representatives in *Pipes* did not include all of

the same Class Representatives as are present in this matter.  The fact that the class certification

issue was decided in Defendants' favor in one of the six actions originally filed by the Class

Representatives in this case does not support the proposed intervenors' adequacy argument nor

their request to entirely re-litigate this case.[20]  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

961 (9th Cir. 2009) (affirming approval of class action settlement despite that five of seven class

representatives were held inadequate, and noting:  "[T]he adequacy-of-representation require-

ment is satisfied as long as one of the class representatives is an adequate class representative.")

(quotations and citations omitted).

---

[20] Defendants' position is that that this case could never be properly certified on a litigated basis.  Plaintiffs allege that all of their Class Representatives are adequate, and this is precisely why they filed a motion for reconsideration of the class certification decision in *Pipes*.  Settlements necessarily represent a balancing of risk, and class action settlements balance not only the risks related to the merits of a case, but also the risks attendant to the significant issue of class certification.

**C.    Permissive Intervention**

The proposed intervenors also seek leave to intervene by permission under Ark. R. Civ.

P. 24(b).   The Rule on permissive intervention states:

> Upon timely application anyone may be permitted to intervene in an
> action: (1) when a statute of this state confers a conditional right to
> intervene; or (2) when an applicant's claim or defense and the main action
> have a question of law or fact in common . . . . In exercising its discretion,
> the court shall consider whether the intervention will unduly delay or
> prejudice the adjudication of the rights of the original parties.

Ark. R. Civ. P. 24(b).  "Permissive intervention is a matter resting within the sound discretion of

the trial court." *Billabong Prods., Inc., v. Orange City Bank*, 278 Ark. 206, 209, 644 S.W.2d

594, 595 (Ark. 1983); *accord H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797

F.2d 85, 89 (2d Cir. 1986).

Permissive intervention in a class action settlement is unusual and inappropriate if it

would cause delay or prejudice to absent class members.   *See In re Domestic Air Transp.*

*Antitrust Litig.*, 148 F.R.D. 297, 337 (N.D. Ga. 1993) ("Permitting the intervention would be

unfair and it would prejudice the rights of all class members for the Court to permit the

intervention of all objecting class members.").   As the federal district court in the *In re Domestic*

*Air Transportation Litigation* explained:

> [O]bjectors have merely expressed dissatisfaction with specific aspects of
> the proposed settlement and have presented no evidence to demonstrate
> that they would be better representatives of the class or that they would
> somehow enhance the representation of the class.  The goals of Rule 23
> would be defeated if the Court permitted every individual or entity that
> objected to discrete aspects of the settlement to intervene.  See *American
> Pipeline and Construction Co. v. Utah*, 414 U.S. 538, 550-51, 94 S. Ct.
> 756, 764-65, 38 L. Ed. 2d 713 (1974) (The filing of individual motions to
> join or to intervene was "precisely the multiplicity of activity which Rule
> 23 was designed to avoid").

*Id.* The arguments of the proposed intervenors in this action lead this Court to the same conclusion.

The proposed intervenors have articulated no legitimate justification for their intervention as co-plaintiffs in this action, but merely express their differing opinions about the Settlement. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981) ("[W]hether another team of negotiators might have accomplished a better Settlement is a matter equally comprised of conjecture and irrelevance."). To this point, the Court finds it telling that, with respect to *Shepherd's* proposed Complaint in Intervention, he sought only to represent his personal interests as a new Plaintiff. His proposed Complaint did not even seek to advance claims on behalf of a class, nor did it add any claims not already pled by the existing Representative Plaintiffs. Instead, *Shepherd* sought to intervene into this lawsuit for the purpose of suing on behalf of himself alone. In addition, Shepherd asserted that he sought to intervene in order to move to stay this action rather than to add anything of value. The Court finds nothing can be gained by permitting such an intervention, particularly when, as noted, *Shepherd* was free to opt-out of the class and pursue his own independent lawsuit.

The Class Action Complaint originally filed in this action already includes claims for breach of contract, bad faith and other claims, arising out of the payment of "actual charges" benefits and increasing premiums. The proposed intervenors have not demonstrated any value they would add as new class representatives. Rather, they appear to simply disagree with Class Counsel's decisions about how to structure relief in the Settlement. These concerns will be addressed when the Court considers objections to the Settlement.[21]  *See In re Domestic Air*

---

[21] *Crager* and *Hunter* filed objections to the Settlement. Just as he chose not to exclude himself from this action, *Shepherd*, through his counsel, chose not to file any objections.

*Transp.*, 148 F.R.D. at 337 (denying permissive intervention where proposed intervenor's "presence through intervention would not accomplish any more than their participation as objectors and would create the possibility of further delay [in] final disposition of this action").[22] Contrary to *Hunter's* position, intervention is not necessary for a Settlement Class member to present her objections. Notice at 11-12 ("As long as you send your written Objection on time, the Court will consider it."); *see also In re Domestic Air Transp.*, 148 F.R.D. at 337 ("The goals of Rule 23 would be defeated if the Court permitted every individual or entity that objected to discrete aspects of the settlement to intervene.").

In addition, intervention by these individuals would likely cause undue delay and prejudice to thousands of Settlement Class members awaiting benefits in the Settlement. *See In re Vitamins Antitrust Litig.*, 1999 WL 1335318, at *4 (D.D.C. 1999) (denying permissive intervention that "would delay and perhaps destroy the settlement and would thus prejudice the rights of the class members"); 6 James Wm. Moore, et al., *Moore's Federal Practice* at § 24.10[2][d] at 24-60 (where proposed intervenors have an opportunity to object or opt out "the court will likely deny intervention, especially if such intervention will result in delay in the existing action").[23]   At least two of the proposed intervenors, *Shepherd* and *Hunter* expressly

---

[22] The Arkansas class action rule is similar to Rule 23 of the Federal Rules of Civil Procedure, and this Court considers relevant federal decisions persuasive authority. *First Nat'l Bank of Fort Smith v. Mercantile Bank of Jonesboro*, 304 Ark. 196, 199, 801 S.W.2d 38, 40 (1990) (the "spirit of the federal rules is to be found in our Rule 23") (quoting *Int'l Union of Elec. Workers v. Hudson*, 295 Ark. 107, 116, 747 S.W.2d 81, 86 (1988)).

[23] *Michigan Ass'n for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981) ("[A]llowing intervention at this point would seriously delay the parties' ability to implement the provisions of the Consent Decree"); *Bowling v. Pfizer Inc.*, 159 F.R.D. 492, 496 (S.D. Ohio 1994) ("By far the most compelling reason to deny the PCO the opportunity to intervene is to immediately begin implementation of the settlement.   The Parties have the right to the compensation provided under the settlement.").

requested that this Court delay the Settlement proceedings in this case, and obtained an order

from the *Gooch* court which temporarily enjoined these proceedings.[24]  *Shepherd* requested

intervention specifically "so that he may then file his own motion to stay these proceedings."

Notice of Filing and Request for Expedited Hearing (filed, June 24, 2009).  *Hunter* and her

counsel, for example, suggest delay of "several weeks if not months."  Motion to Intervene at 4.

These requested delays are contrary to the interests of thousands of Settlement Class members

who have already submitted Claim Forms and are awaiting relief.  *Ballard*, 349 Ark. at 378, 78

S.W.3d at 77 (affirming denial of motion to intervene where "allowing the intervention would

have also delayed the entry of the proposed settlement and would have delayed the class

members' ability to collect their compensation") (internal citation omitted).

This Court finds in the exercise of its discretion that permissive intervention is

inappropriate in this action.  There are eight Class Representatives pursuing claims in this action

similar to those alleged by the proposed intervenors, and intervention would not add substantial

value to the Settlement, but would cause substantial delay and prejudice.

## II.   THE PROPOSED INTERVENORS' REMAINING MOTIONS

### A.   The *Shepherd* Motion To Set Aside The Preliminary Approval Order Is Denied

After the Sixth Circuit entered an order staying the *Gooch* court's injunction pending

appeal, *Shepherd* filed a "Motion to Set Aside Preliminary Approval Order, Motion for Stay of

Procecdings [sic] and Request for Scheduling Order," in which he argued that "[t]he deadlines

---

[24] That *Shepherd* and *Hunter* believe they would have won this case on the merits does not provide a basis for intervention, especially in light of the delay they seek.  *Cf. Ballard v. Martin*, 349 Ark. 564, 578, 79 S.W.3d 838, 847 (Ark. 2002) (rejecting objection that settlement was unreasonable when compared to a likely litigation recovery – "Nor can we proceed in our analysis with any assumption that the class will prevail and collect all damages claimed").

previously set forth by this Court have now been rendered obsolete," and that "it will be necessary to reissue notice to all absent class members of any additional hearings on the issue of final approval of the settlement." *Id.* ¶¶ 8, 10 (the "Motion to Set Aside"). *Shepherd's* argument is not well taken.

The Preliminary Approval Order entered in this case expressly states that the Fairness Hearing "may be continued, adjourned or rescheduled by the Court without further notice to members of the Settlement Class." Preliminary Approval Order ¶ 12. It is not at all unusual for a fairness hearing in a class action settlement to be rescheduled, and it is fundamental that the final Fairness Hearing *should* be held, to enable this Court to make its determinations regarding the fairness of the Settlement. This Court issued a Notice of Fairness Hearing on September 24, 2009, which notified all interested parties who had appeared in this action that the Fairness Hearing was re-set for November 9, 2009. Moreover, the Court subsequently entered an Order requiring that the Fairness Hearing be posted on the Settlement website. The Settlement Administrator has posted this new schedule in accordance with the Court's Order, and Shepherd's counsel cites no facts or legal authority to support his contention that the dates set by the Court are obsolete. Indeed, the deadlines for objecting, opting-out, and filing a claim have now passed, and all remain relevant. Rule 23 provides that the best notice practicable be given to the Class, and the Court finds that such Notice was given and that the Notice Plan was implemented as required by the Preliminary Approval Order. Plaintiff's Motion to Set Aside is therefore DENIED.

**B.      The Motions for Discovery are Denied**

Motions for discovery were filed by the *Goad Group* (Motion to Conduct Limited Discovery); *Hunter* (Motion for Order Directing Pre-Hearing Disclosures); and *Shepherd* (Motion to Produce).  These three motions are likewise DENIED.

First, with respect to the Motion to Conduct Limited Discovery by the *Goad Group*, counsel for the *Goad Group* conceded at oral argument that discovery may not be necessary, and that the group would not know whether discovery would be necessary until listening to the parties' presentations at the Fairness Hearing.  Accordingly, the Court indicated that it would deny the motion without prejudice.  Subsequently, the *Goad Group* withdrew their motion to intervene and all objections, and informed the Court that their counsel would not appear at the Fairness Hearing.  Given these developments, the Court DENIES the motion for discovery filed by the *Goad Group* as moot.

The Court will likewise exercise its discretion to deny the discovery motions filed by *Hunter* and *Shepherd*.  It is well established that courts possess broad authority to disallow discovery by objectors to a class settlement. *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 27 (D.C. Cir. 2001); *Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 619 (S.D. Cal. 2005); *Epstein v. Wittig*, 2005 WL 3276390, at *7 (D. Kan. Dec. 2, 2005) (rejecting objectors request to conduct limited discovery); *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008) (same).  Objectors are not automatically entitled to discovery or "to question and debate every provision of the proposed compromise." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984); *see also Mars Steel Corp. v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) ("The temptation to convert a settlement hearing into a full trial on the merits must be

resisted."). "Discovery should be minimal and conditioned on a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel." *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 613492, at *2 (D. Mass. Mar. 16, 2005) (*quoting Manual for Complex Litigation, Fourth*, § 21.643 (2004)); *see also Epstein v. Wittig*, 2005 WL 3276390, at *7 (same).

Courts have routinely held that objectors must articulate a reasonable basis for the class settlement discovery that is sought. *See, e.g., In re Lorazepam*, 205 F.R.D. at 27; *Epstein*, 2005 WL 3276390, at *7 (asserting that the "reasonable basis for the evidentiary requests" as a "criteria relevant to the court's decision"). Neither *Hunter* nor *Shepherd* have done that here. This Court's Preliminary Approval Order and Notice of Proposed Class Action Settlement (the Notice) in this case set a deadline of June 28, 2009 for filing objections and any notice of intent to appear at the Fairness Hearing in this action. Neither *Hunter's* counsel nor *Shepherd's* counsel will be speaking at the Fairness Hearing. *Shepherd* has no standing to seek discovery as he did not file any such objection and did not file any notice of intent to appear at the Fairness Hearing. *Hunter* filed an objection, but no notice of intent to appear until well after the deadline. At the October 1, 2009 hearing on her motions, *Hunter's* counsel could articulate no reason why he needed the discovery he seeks, but he declined to withdraw the motion stating his belief that it was moot.

The Court disagrees that the motion is moot but finds that there has been extensive and ample discovery already taken by the named Representative Plaintiffs in this action. *In re Gen. Tire*, 726 F.2d at 1084 n.6 (holding that "there is no reason . . . to renew discovery" if "the District Court had before it sufficient facts intelligently to approve the settlement") (citing *Detroit v. Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974)); *Jaffe v. Morgan Stanley & Co.*, 2008 WL

346417, at *2 (N.D. Cal. Feb. 7, 2008) (denying objectors' request for discovery where "the Court has sufficient facts before it to intelligently evaluate the settlement"). In addition, as counsel for both *Shepherd* and *Hunter* are on the Court's service list, they will be served with the parties' submissions in support of final approval and are free to observe the Fairness Hearing. The Court denies the motions for discovery.

### C.      The *Goad* Group's Motion For Costs

On August 12, 2009, the *Goad* Group filed Objectors' Motion to Assess Costs (the "Motion for Costs"), seeking to recover costs and attorneys' fees for their attendance in Court on July 27, 2009 at the time originally slotted for the Fairness Hearing in this case. The Motion for Costs cites to no Rule that would support such an award in the circumstances presented, nor does it cite any authority other than case law which places it within the Court's discretion to award costs where an applicable rule of civil procedure <u>does</u> apply. *See* Motion for Costs at 3 (citing *City of Fort Smith v. Didicom Towers, Inc.*, 362 Ark. 469, 478, 209 S.W.3d 344, 351 (2005) for the proposition that "an award of costs is within the sound discretion of the Circuit Court"). The *Fort Smith* case, however, affirmed the denial of an award of costs. The "discretion of the trial court" portion of the holding in *Fort Smith* does nothing to change the fundamental requirement that the costs sought to be recovered are permitted only pursuant to a relevant Rule of Civil Procedure. There is no such rule that permits what the Motion for Costs seeks given the events described in the motion.

Even assuming the *Goad Group* had advanced their Motion for Costs under a Rule of Civil Procedure permitting a cost award, the facts do not support a cost award here. The Preliminary Approval Order entered in this case notified the Class expressly that "the Fairness Hearing may be continued, adjourned or rescheduled by the Court without further notice to

-26-

members of the Settlement Class." *See* Preliminary Approval Order ¶ 12.

Further, late in the afternoon on Friday, July 24, 2009, the Defendants were enjoined by the Tennessee federal court in *Gooch* from seeking approval of the Settlement at the July 27, 2009 Fairness Hearing in this matter. The parties were not able to notify this Court of the injunction until the weekend and the Defendants' lead counsel were ordered to attend a hearing on several motions in another competing federal action in South Carolina on the morning of July 27.

A hearing occurred in this matter nonetheless on July 27 and was attended by counsel for multiple objectors and proposed intervenors, including many who were specifically aware of the injunction and those who had requested it. This Court specifically afforded the objectors and proposed intervenors the opportunity to be heard. At the hearing held on July 27, 2009, the Court announced to the moving counsel that he stood "willing to get accomplished whatever we can get accomplished here today." *See* July 27, 2009 Hearing Transcript at p. 6, lines 20-22. The Court went on to state that it was "game to either let [moving counsel] make arguments or let it be submitted on the briefs and the pleadings or redo at a later date . . . ." *Id.* at p. 7, lines 9-11. The objectors and proposed intervenors who appeared were afforded the right to present their arguments by the Court, even over the objection of Defendants. *Id.* at p. 11(line 22)-12(line 6). The Court finds that, given the circumstances, Defendants are not responsible for any costs or fees incurred by the *Goad Group* and, even if the award sought by *Goad Group* were supported by any relevant authority, this Court would exercise its discretion to decline such an award. The Motion for Costs is, therefore, DENIED.

### III.   DEFENDANTS' MOTION TO STRIKE UNTIMELY FILINGS BY AUDRY HUNTER

On July 23, 2009, the insurance company defendants filed their Motion to Strike

Untimely and Improper Filings By Counsel For Objector Audry Hunter (the "Motion to Strike"),

which requested that this Court strike and disallow the following submissions of counsel filed or

served on behalf of objector Audry Hunter:

(1)   Supplement To Objection To Designate Legal Representative, Objection To Unilateral Pre-Trial Disclosure Requirement And Motion For Order Directing Pre-Hearing Disclosures By The Settling Parties (the "Supplemental Objection," filed July 10, 2009);

(2)   Motion For Admission *Pro Hac Vice* By Comity By Tony Gould On Behalf Of Arkansas Class Member Audry Hunter (filed July 15, 2009); and

(3)   Motion to Intervene By Putative Class Member And Objector, Audrey [sic] Hunter (the "Motion to Intervene," served July 17, 2009).

(collectively, the "Hunter Filings").   Defendants argued that the Hunter Filings should be

stricken because they were untimely and inconsistent with Ms. Hunter's earlier objection; they

violated the Preliminary Approval Order and the requirements Class Notice; and they were filed

for the improper purpose of delaying and disrupting the proceedings.   This Court has already

resolved, *supra*, the Motion to Strike as it relates to the motion for *pro hac vice* admission which

was granted rather than stricken, and the motion to intervene which was denied for the reasons

set forth above.   Accordingly, what remains to be decided is the motion to strike *Hunter's*

Supplemental Objection which, for the reasons below, is GRANTED.

Without any explanation for his delay, without first requesting admission to this Court,

without filing any motion for leave, and well after all relevant deadlines had expired, on July 10,

2009, Attorney Gould filed *Hunter's* new objection to the Settlement in this case.   Mr. Gould

actively participated with other lawyers in an effort to enjoin the Settlement proceedings and the

July 27, 2009 Fairness Hearing.  In addition, Mr. Gould has indicated his desire to stay and delay this action.[25]

Ms. Hunter timely received the Class Notice and served a timely *pro se* objection on May 26, 2009.  Ms. Hunter's original objection, which this Court will consider, objected to the premium rate relief in the Settlement which, she believed, was inadequate for a Class member in her situation because she has "been very upset every time the premium increases (which is often) and wonder in my late years how long I can pay the constant increases."  *See* May 26, 2009 Objection at 1.

Ms. Hunter expressed no objection to the Settlement to the extent it provides for the payment of "Actual Charges" as the "actual amount of money legally owed to pay for the goods or services provided."  *See* Notice at 4.  In fact, Ms. Hunter specifically stated that this provision seemed "fair and reasonable" to her.  *See* May 26, 2009 Objection at 2.  Indeed, this provision is consistent with a statute in Ms. Hunter's home State of Texas which provides that a medical provider's "actual charges" are "the amount actually paid by or on behalf of the insured and accepted by a provider for services provided."  TEX. INS. CODE ANN. § 1201.0601 (2005).  Ms. Hunter did not request an appearance at the Fairness Hearing, nor did she seek to meet the requirement of proving her membership in the Class, or otherwise provide any information necessary to appear at the Fairness Hearing.  *See* Preliminary Approval Order ¶ 15; Notice at 12 (listing prerequisites for appearing at Fairness Hearing).  Ms. Hunter's objection concluded by

---

[25] *Hunter's* new counsel is pursuing related litigation in Oklahoma on behalf of a former Class member who opted-out of this case.  This Court finds that counsel's principal interest is not in the fairness of the Settlement in this action, but rather in advancing his own interests in his competing putative class action.  *Lindley v. Transamerica Life Ins. Co.*, Case No. 4:09-cv-00429-JHP-PJC (N.D. Okla.).

stating that she would "trust the Court to be fair in this matter." *See* May 26, 2009 Objection at 2. The Court intends to honor the trust that Ms. Hunter has placed in it.

On July 10, 2009, the Supplemental Objection was filed by *Hunter's* newly retained counsel. It contradicts rather than supplements Ms. Hunter's own statements regarding the "Actual Charges" provisions in the Settlement. Whereas Ms. Hunter believed the "Actual Charges" provisions of the settlement were "fair and reasonable," the Supplemental Objection characterizes them as an "unconscionable, retroactive and unlawful modification of [her] fixed contractual rights." *See* Supplemental Objection at 1-2. The Supplemental Objection does not mention the Texas statute that defines "actual charges" consistent with the terms of the Settlement.

Also inconsistent with the prior filing, the Supplemental Objection announces that "Hunter will be appearing at the Fairness Hearing by and through her counsel." *See* Supplemental Objection at 1. Hunter's counsel did not file a motion for leave to appear out of time, nor was there any reason given for the untimely request to appear. It is clear from the Supplemental Objection that Ms. Hunter herself still has no intention of attempting to appear at the Fairness Hearing. *Id*. Nor does the Supplemental Objection list any witnesses, describe any evidence, or otherwise state the legal and factual basis for the objections about which Mr. Gould seeks to appear. This information is a prerequisite for appearing at the Fairness Hearing. *See* Preliminary Approval Order ¶ 15.

This Court heard argument on October 1, 2009 from *Hunter's* counsel regarding her new objections to the Settlement. When asked for a reason to excuse the untimely and inconsistent filings, *Hunter's* counsel could not articulate any sound basis why the Motion to Strike should not be granted. The deadlines in the Preliminary Approval Order were designed to prevent delay

-30-

and to allow this case to proceed in an orderly fashion. It is well established that "objectors must

comply with procedural requirements stipulated in the settlement agreement," including timely

filing objections and notices of intent to appear at a fairness hearing. *Turner v. Murphy Oil USA,*

*Inc.*, 472 F. Supp. 2d 830, 853 (E.D. La. 2007). Accordingly, while *Hunter's* counsel is

welcome to observe the Fairness Hearing, this Court grants the Motion to Strike the

Supplemental Objection, including the untimely notice of intent to appear. Ms. Hunter will not

be prejudiced by this Court's enforcement of its Preliminary Approval Order because her timely

objection will be considered by the Court, even though she does not appear. Notice at 10-11 ("If

you send a written Objection, you do not have to come to Court to talk about it. As long as you

filed your written Objection on time, the Court will consider it.").[26]

This Order should in no way be considered or treated as a final order and no Rule 54(b)

certificate is appropriate. IT IS SO ORDERED, this ___8___ day of November, 2009.

_____
CIRCUIT COURT JUDGE JAMES "JAY" MOODY

---

[26] Counsel for *Hunter* made an oral motion at the conclusion of the Court's October 1, 2009 hearing seeking to stay these proceedings pending an appeal of the denial of her motion to intervene. As the Court believes that its ruling does not present an immediately appealable issue under Rule 2 of the Arkansas Rules of Appellate Procedure – Civil and because of the further delay and prejudice that would come to the Class from such a request, said motion is DENIED.

STATE OF ARKANSAS } ss
COUNTY OF PULASKI }

I, Pat O'Brien, County Clerk of the aforesaid County, do
hereby certify that the foregoing instrument is a true and
correct copy of the original.

_ORDER_

filed in this office on the __8__ day of __Dec__, 20__09__
IN TESTIMONY WHEREOF, I have hereunto set my hand and
affixed the seal of this office this __22__ day of __Feb__,
20__10__.

PAT O'BRIEN, Pulaski County Circuit County Clerk

BY_____
Deputy Clerk

