# Exhibit 6

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
THIRD DIVISION

EDISON RUNYAN; DWIGHT PIPES;
EARL L. PURIFOY; JOHN ROSS,
As The Legal Representative Of
ELIZABETH ROSS; MARY WEIDMAN;
DURAIN WEIDMAN; MARION HARRIS;
and VAN R. NOLAN, Each Individually,
And On Behalf Of All Others Similarly Situated                      PLAINTIFFS

v.                                          CASE NO. 09-2006-3

TRANSAMERICA LIFE INSURANCE
COMPANY; LIFE INVESTORS INSURANCE
COMPANY OF AMERICA; MONUMENTAL
LIFE INSURANCE COMPANY; and
AEGON USA, INC.                                                     DEFENDANTS

## AFFIDAVIT OF ROBERT OSEAS

STATE OF OREGON            )
                           ) ss.
COUNTY OF WASHINGTON       )

The undersigned, Robert Oseas, being duly sworn, hereby states the following:

1.      My name is Robert Oseas, and I am over the age of 21 and competent to make this

affidavit. The statements made herein are based on my personal knowledge or the business records

of my employer.

2.      I am a Project Manager employed by Epiq Systems, Class Action & Claims

Solutions ("Epiq") formerly known as Poorman-Douglas Corporation ("PDC", or together with

Epiq, "PDC/Epiq"). PDC/Epiq, was established in 1968 as a full-service data processing

company and has been administering settlements since 1993, including settlements of class

actions, mass tort litigations, Securities and Exchange Commission and Federal Trade

Commission disgorgement actions, bankruptcies, and other major litigation. PDC became an

operating subsidiary of Epiq Systems, incorporated in 2001 upon merger and officially assumed the name Epiq in the summer of 2007.  PDC/Epiq has administered approximately five hundred and fifty (550) settlements of complex cases, including some of the largest and most complex cases ever settled in the United States.

3.      PDC/Epiq has more than twenty years of experience in claims processing and class action settlement administration.  Epiq's current class action case administration services include coordination of all notice requirements, design of direct-mail notice (including both postcard noticing and long form noticing), establishment of fulfillment services, receipt and processing of opt-outs, coordination with the United States Postal Service, claims database management, claims adjudication, funds management, and distribution services. Epiq works with the settling parties, the Court, and the Class members in a neutral facilitation role, taking the negotiated terms of a settlement and implementing settlement administration services.

4.      In connection with a Class Action Settlement Agreement filed in the above captioned *Runyan* matter (the "Settlement Agreement" or "Settlement"), and pursuant to the Order Granting Preliminary Approval entered by the Court on April 23, 2009, Epiq was appointed by the Court in this litigation to act as the Settlement Administrator.  This affidavit will provide certain facts and address certain actions taken by Epiq in its capacity as Settlement Administrator.

5.      Pursuant to the Settlement Agreement and the Court's Order Granting Preliminary Approval, Epiq was responsible for printing copies of the Notice of Proposed Class Action Settlement (the "Notice") approved by the Court and disseminating the Court-approved Notices along with the accompanying Claim Forms ("Notice Packets") to Settlement Class Members as defined in the Settlement Agreement.  A copy of the Notice Packet is attached hereto as Exhibit A.

6.     Upon receiving the Class Mailing List pursuant to the Preliminary Approval Order of April 30, 2009, Epiq cross-referenced the addresses with addresses found in the National Change of Address ("NCOA") database, which is derived from change of address cards filed with the United States Postal Service. As a result of this research, Epiq was able to update 18,295 Settlement Class member addresses. On May 14, 2009, Epiq mailed 250,136 copies of the Notice Packet via first class mail to members of the Settlement Class at the names and addresses on the Class Mailing List as updated through NCOA.  The cost for this mailing totaled approximately $187,852 inclusive of printing and postage.

7.     Pursuant to the Settlement Agreement and the Preliminary Approval Order, Epiq arranged for the Publication Notice to be published in *USA TODAY* on May 26th and 28th 2009. Attached hereto as Exhibit B is the Affidavit of Publication signed by Breona Lantz, Media Coordinator at Epiq, attesting to the placement of these publications.  Attached hereto as Exhibit C is the Verification of Publication of the *USA TODAY* representative together with the Publication Notice tear sheets attesting to this publication.  The Publication Notice contained the Exclusion Deadline, the Objection Deadline, the Internet website address for the Settlement, and a toll-free telephone number for Class members to call the Settlement Administrator to request a copy of the Notice and Claim Forms.  The cost of these publications and relevant formatting equaled approximately $25,075.

8.     Upon mailing the Notice Packet, Epiq established an Interactive Voice Response system ("IVR") along with live operator support to answer questions and provide information about the proposed Settlement by telephone to Settlement Class Members and others seeking information.  The telephone call center was live as of May 14, 2009 and available through the toll-free number (866) 940-3613, which was listed in the Notice.  The toll-free line was available

24 hours a day, 7 days a week.  As of November 2, 2009 the IVR system had responded to 18,490 telephone calls.

9.      Pursuant to the Preliminary Approval Order, Epiq established a Settlement website to provide information and access to important documents at the address set forth in the Notice and Publication Notice: www.supplementalinsurancesettlement.com.   The website provides downloadable access to the Class Action Complaint, the Preliminary Approval Order, the Notice of Proposed Class Action Settlement, the three Claim Forms, the Settlement Agreement, and other documents, as well as frequently asked questions and answers.  The website was live on May 13, 2009.

10.      Epiq also received Claim Forms, Objections, and Request for Exclusions under the Settlement.  Epiq designated a Post Office box to receive communications by mail from Settlement Class members at: Transamerica Life Settlement, P.O. Box 6006, Portland, OR 97228-6006.  This address was published in the Notice, and was also available on the IVR system and the settlement website.

11.      Epiq has received approximately 12,077 timely Claims Forms under the Settlement.

12.      Epiq received objections from 19 individuals postmarked on or before the Objection Deadline.  A report of the objections received by Epiq, including the objectors' names and the postmark dates for each are attached to hereto as Exhibit D.

13.      In connection with the objections referenced in Paragraph 12, Epiq received notices of intent to appear at the Fairness Hearing from 4 law firms on behalf of fourteen individuals.  A report of the persons whose counsel sent notices of intent to appear postmarked on or before the Objection Deadline is attached hereto as Exhibit E.

14.     Epiq received approximately 476 Requests for Exclusion under the Settlement postmarked on or before the Exclusion Deadline, and 9 Requests for Exclusion postmarked after the Exclusion Deadline.  A report listing all Requests for Exclusion is being submitted to the Court under seal as required by the Preliminary Approval Order.

15.     As of November 2, 2009, the total cost incurred by Transamerica Life Insurance Company for all of Epiq's various services as Settlement Administrator under the Settlement totals approximately $375,285.35.

16.     I declare under penalty of perjury under the laws of the United States, and the State of Oregon that the foregoing is true and correct.  This affidavit was executed on November 4, 2009 in Beaverton, Oregon.

Robert Oseas
Project Manager


Subscribed and sworn to before me this 4th day of November 2009.


NOTARY PUBLIC

My Commission Expires: _June 18, 2011_


OFFICIAL SEAL
JOHN L SCHREPFER
NOTARY PUBLIC -- OREGON
COMMISSION NO. 416815
MY COMMISSION EXPIRES JUNE 18, 2011

# Exhibit A to Affidavit of Robert Oseas

Transamerica Life Settlement Administrator
P.O. Box 6006
Portland, OR 97228-6006

---

### IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### CIVIL DIVISION

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*A court authorized this Notice. This is not a solicitation from a lawyer.*
*You are not being sued.*

---

You were sent this Notice because you were identified as an insured or covered person, or the surviving spouse or representative of an insured or covered person, under a cancer insurance policy or certain other specified disease or supplemental insurance policies issued or administered by Transamerica Life Insurance Company ("Transamerica Life"), Life Investors Insurance Company of America ("Life Investors"), or Monumental Life Insurance Company ("Monumental Life") as more fully described below.

The Circuit Court of Pulaski County, Arkansas has granted preliminary approval of a Class Action Settlement Agreement involving certain cancer and specified disease or supplemental insurance policies issued or administered by the companies mentioned above.

**Your legal rights are affected whether you act or do not act.**
**Please read this entire Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | You may have a right to claim certain monetary benefits. You should carefully review all of the information set forth in this Notice to determine your eligibility. Claim forms are attached to this Notice. |
| **EXCLUDE YOURSELF FROM THE CLASS** | Receive no settlement benefits. This is the only option that allows you to ever be part of any other lawsuit against the companies involved in this lawsuit about the legal claims involved in the settlement. |
| **OBJECT** | Write to the Court if you would like to object or disapprove of any part of the settlement. You CANNOT object to the settlement if you exclude yourself from the class. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. You CANNOT attend the hearing if you exclude yourself from the class. |
| **DO NOTHING AND REMAIN IN THE CLASS** | If you do nothing, you will remain in the class and you will receive the non-monetary benefits of the settlement that apply to you. If you are eligible for monetary benefits, you should submit a claim form. |

- The Court still has to decide whether to approve the settlement. Payments will be made only if the Court finally approves the settlement and after the exhaustion of appeals, if any, are resolved. Resolving litigation can take time. Please be patient.

- This Notice is merely a summary of the terms and provisions of the proposed settlement. For a complete description of the terms and provisions of the proposed settlement, you should read the entire Class Action Settlement Agreement filed with the Court which is available at the following website: www.SupplementalInsuranceSettlement.com

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION: WHAT IS THE SETTLEMENT ABOUT
AND WHO IS IN THE SETTLEMENT** ...................................................................................PAGE 3
1.  Why did I receive this Notice?
2.  Key terms used in this Notice and their definitions
3.  How do I know if I am a Settlement Class member?
4.  What is this lawsuit about?
5.  Why did the parties decide to settle?

**THE SETTLEMENT BENEFITS: WHAT YOU GET AND HOW TO RECEIVE
A PAYMENT—SUBMITTING A CLAIM FORM** ..............................................................PAGE 6
6.  What type of benefits does the Settlement provide to Settlement Class members?
7.  How can I receive a payment for monetary benefits under the Settlement?
8.  When would I receive my payment?
9.  What am I giving up to receive a payment or to stay in the Settlement Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**....................................................PAGE 9
10. How do I exclude myself from the Settlement?
11. If I do not exclude myself, may I sue the Defendants later?
12. If I exclude myself, can I receive money from the Settlement?

**THE LAWYERS REPRESENTING YOU** .......................................................................PAGE 10
13. Do I have a lawyer in the case?
14. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .........................................................................PAGE 10
15. How do I tell the Court that I do not like the Settlement?
16. What is the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** .......................................................................PAGE 11
17. When and where will the Court decide whether to give final approval to the Settlement?
18. Do I have to come to the hearing?
19. May I speak at the hearing?

**IF YOU DO NOTHING** ..............................................................................................PAGE 12
20. What happens if I do nothing at all?

**OBTAINING MORE INFORMATION** ..........................................................................PAGE 12
21. Are there more details about the Settlement?
22. How do I get more information?

**EXHIBIT A: CLASS SETTLEMENT RELEASE** ..........................................................PAGE 13

**PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.**
Questions, Comments, or Concerns?  Call Toll Free 1-866-940-3613

1571 v0.03                                                                        2

### BASIC INFORMATION:
### WHAT IS THE SETTLEMENT ABOUT AND WHO IS IN THE SETTLEMENT

---

#### 1. Why did I receive this Notice?

You were identified as an insured or covered person, or the surviving spouse or personal representative of an insured or covered person, under a cancer insurance policy or supplemental insurance policy issued or administered by Life Investors, Transamerica Life, or by Monumental Life in the State of Michigan, and you may be entitled to benefits under a Class Action Settlement (the "Settlement") which has been preliminarily approved by the Court.

The Court directed the parties to send you this Notice because you have a right to know about how the proposed Settlement might affect you, what benefits you might receive under the Settlement, and your rights and options under the Settlement, before the Court decides whether to grant final approval to the Settlement. Upon final Court approval of the Settlement after any appeals, the companies will make the payments that the Settlement provides.

This Notice explains the background of this dispute, the terms of the proposed Settlement, your rights and options, what benefits are provided or available under the Settlement, who is eligible for them, and how to receive them. A full copy of the Class Action Settlement Agreement (the "Settlement Agreement" or "Agreement") is available on-line at: **www.SupplementalInsuranceSettlement.com.**

The Court in charge of the case is the Circuit Court of Pulaski County, Arkansas, and the case is known as *Edison Runyan, et al. v. Transamerica Life Insurance Company, et al.*, Case No. CV-09-2066-3, in the Third Division of the Circuit Court of Pulaski County, Arkansas. The people who sued are called "Plaintiffs," and the companies they sued, Transamerica Life, Life Investors, Monumental Life, and AEGON USA, Inc., are called the "Defendants."

---

#### 2. Key terms used in this Notice and their definitions.

**KEY DEFINITIONS: For purposes of the Settlement, the capitalized terms used throughout this Notice have certain specific meanings as defined in this Notice or in the Settlement Agreement. Some of the key definitions are as follows:**

The **"Company"** means Transamerica Life, including Life Investors (which merged into Transamerica Life effective October 2, 2008), and all of the predecessor companies of Transamerica Life or Life Investors that issued or administered a Cancer Policy or Actual Charges Policy within the Class Period.

A **"Cancer Policy"** means (i) any supplemental cancer insurance policy (including any rider, endorsement, or policy amendment) issued or administered by the Company (regardless of whether it contains a provision that pays benefits based upon the "actual charges" of goods or services), and (ii) any supplemental cancer insurance policy issued by Monumental Life in the State of Michigan which contains a provision that pays benefits based upon the "actual charges" of goods or services.

A **"Non-Cancer Actual Charges Policy"** means any policy (including any rider, endorsement, or policy amendment), other than a Cancer Policy, issued or administered by the Company, or issued by Monumental Life in the State of Michigan, which contains a provision to pay benefits based upon the "actual charges" or "charges" of goods or services (including for example any such heart policy, intensive care policy, or other specified disease policy).

An **"Actual Charges Policy"** means (i) any Cancer Policy which contains a provision to pay benefits based upon the "actual charges" or "charges" of goods or services; or (ii) any Non-Cancer Actual Charges Policy.

---

**PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.**
Questions, Comments, or Concerns?  Call Toll Free 1-866-940-3613

I571 v0.03                                                                 3

An Actual Charges Policy includes any policy issued in the future to a Settlement Class member pursuant to a conversion privilege in an Actual Charges Policy covered by the Settlement.

**"Policy"** or **"Policies"** means individually and collectively each and every Cancer Policy or Actual Charges Policy covered by the Settlement Agreement.

**"Actual Charges Benefits"** means those benefits payable under an Actual Charges Policy which consist of or are measured by the "actual charges" or "charges" for specified goods or services.

**"Actual Charges"** means the amount of money that a healthcare provider (or other vendor) agrees to accept, or is obligated by agreement or operation of law to accept, as payment in full for the particular goods and services provided. The "Actual Charges" are equal to the actual amount of money legally owed for the goods or services provided.

**"List Prices"** means the prices or dollar amounts created or maintained by a healthcare provider (or other vendor) for goods or services, including for example hospital "chargemaster" prices or "full rates," which generally exceed the actual amount legally owed and ultimately paid for the goods or services.

The **"2006 Updated Claims Procedures"** means the effective date in 2006 when the Company implemented its updated claim forms and procedures for submitting proof of loss to support a claim for Actual Charges Benefits under an Actual Charges Policy covered by the Settlement (April 1, 2006 or May 1, 2006 for most Settlement Class members).

---

### 3.  How do I know if I am a Settlement Class member?

The Settlement involves certain types of cancer insurance policies and specified disease or supplemental insurance policies as defined in the Settlement. Everyone who falls within the definition of the Settlement Class is a Settlement Class member. The Settlement Class or Class is defined as follows:

> All persons in the United States: (i) who were an insured, covered person, or beneficiary under a Cancer Policy in force at any time from January 1, 2004 through April 23, 2009; or (ii) who were an insured, covered person, or beneficiary under a Non-Cancer Actual Charges Policy which was in force on April 23, 2009, or who submitted a claim for Actual Charges Benefits under a Non-Cancer Actual Charges Policy after the effective date of the 2006 Updated Claims Procedures (generally April 1 or May 1, 2006 for most people); or (iii) the surviving spouse or legal representative of the persons defined in (i) or (ii).

The following persons are excluded from the Settlement Class:

(a)    All persons who previously (A) entered into a written agreement with the Company releasing all claims relating to the meaning of "actual charges" under their Actual Charges Policy, or (B) entered into a written agreement with the Company surrendering their Actual Charges Policy and releasing all claims relating to their Actual Charges Policy;

(b)    All persons who during the Class Period were officers, directors, or employees of the Company; and

(c)    All persons currently serving as judges or justices in the State courts of Arkansas and the members of their immediate family.

In addition, critical illness or critical disease policies written on the following policy forms are not intended to be included in the Settlement:  1CGCI100, 1CGCI1WF, CC200300, CC200311, CCCI0200, CCCI02AG, CP500700, CP5NR7MD, TCGCI100, TCGCIJCP, TPCI01FL, TPCI0FFL, TPSDC1NY, TPSDC2NY.  Note, however, that you may still be a Settlement Class member if you own or are covered under a separate Cancer Policy or Non-Cancer Actual Charges Policy that is otherwise within the definition of the Settlement Class.

## 4. What is this lawsuit about?

The Plaintiffs in this lawsuit assert a variety of claims on behalf of themselves and a class of other persons relating to cancer insurance policies and other specified disease or supplemental insurance policies. Among other things, Plaintiffs allege the following:

- that the Policies pay certain benefits based upon the "actual charges" for certain services, such as chemotherapy, radiation therapy, blood-related expenses, and ambulance services, and that prior to April 1, 2006, the Defendants paid claims and interpreted "actual charges" to mean any amount that appeared on a medical provider's statement, without reduction for any discount, third-party payment, or write-off of any kind;
- that in early 2006, the Defendants acted unlawfully by sending a form letter to policyholders and announcing an intention to change their claim forms and procedures to interpret "actual charges" as the amount actually owed and paid to the medical provider as payment in full for the services rendered; and that beginning on or about April 1, 2006, the Defendants reduced benefits under the Policies by implementing this change in claim forms and procedures;
- that the Defendants' change in their claim procedures in 2006 created a new definition or interpretation of "actual charges" that was inconsistent with the Defendants' prior practice and course of conduct, and that Plaintiffs and other policyholders interpreted the Policies similar to the prior practice and justifiably relied upon Defendants' prior practice in paying claims; and that by changing its claim procedures, the Defendants' breached the insurance Policies and acted in bad faith;
- that the Defendants acted inconsistently with the way in which the Policies had been marketed and sold, and made misrepresentations at the time of sale regarding coverage and/or benefits payable under the Policies, and subsequently made misrepresentations to insurance regulators and policyholders regarding the reasons and legal authority for their change in procedures;
- that the Defendants reduced benefits and wrongfully denied coverage or failed to pay for a variety of other items covered under the Policies; that the Defendants were motivated by a desire to elevate company profits above their obligations under the Policies; that the Defendants conspired and worked in concert with one another, and that AEGON USA, Inc. is responsible for the wrongful conduct of all other Defendants;
- that many if not all policyholders have experienced premium rate increases and that these premium increases were unfair, improper, and/or in violation of the terms of the Policies and/or state insurance laws; and
- that premium rate increases were the result of actuarial mistakes in pricing the Policies, or the payment of excessive benefits, and that Defendants failed to disclose the likelihood and extent of premium increases and all of the reasons for premium rate increases, including that Defendants had closed and stopped selling one or more policy forms or blocks of policies; and that continually raising premium rates breaches the promise of guaranteed renewability under the Policies and constitutes bad faith and an unfair and deceptive practice.

The Defendants strenuously deny any wrongdoing and maintain that the payment of claims under the Policies, the correction of the claim forms and procedures for the Policies, and all actions taken with respect to premiums and benefits have been proper, lawful, and appropriate in all respects. Among other things, the Defendants contend:

- that the Company sent a letter in 2006 to all policyholders in good faith explaining the need to update claim forms, that the Company is properly paying benefits for "actual charges," and that the "actual charges" are the actual amounts that are being charged by, paid to, and accepted by the provider as payment in full for the services rendered;
- that the Company discovered that it had been overpaying claims for "actual charges" benefits because insureds began submitting statements from healthcare providers that contained "list prices" instead of the "actual charges;" and that the Company has every right to correct its claim practices to prevent unnecessary premium rate increases to other policyholders;

- that all coverage and benefits decisions by the Company have been correctly made in good faith with the intent to correctly apply the language and terms of the Policies; and
- that the Policies are subject to premium rate increases and all such premium rate increases have been lawfully and properly implemented, and filed with state regulators as required.

---

**5.  Why did the parties decide to settle?**

---

The parties have been involved in extensive litigation.  While both Plaintiffs and Defendants believe in the merits of their respective claims and defenses and that they would prevail on class certification in an adversarial setting, both sides recognize that there are substantial risks, uncertainties, expenses, and burdens to continued litigation.   After extensive investigation of the facts, consideration of the risks and benefits of continued litigation, and arms' length negotiations, the parties and their counsel have determined that the proposed Settlement is fair, reasonable, adequate, and provides substantial benefits and is in the best interests of the Settlement Class members.   The Company would like to continue to serve the needs of its customers undistracted by the disruptions caused by continued litigation.

**THE SETTLEMENT BENEFITS:**
**WHAT YOU GET AND HOW TO RECEIVE A PAYMENT—SUBMITTING A CLAIM FORM**

---

**6.  What type of benefits does the Settlement provide to Settlement Class members?**

---

**The settlement includes both monetary and non-monetary benefits to eligible Settlement Class members. Benefits will only be received if the Court grants Final Approval of the Settlement.**

<u>**MONETARY BENEFITS:**</u>

There are three different categories of Settlement Class members who may receive monetary benefits under the proposed Settlement: (1) Past Claimants, (2) Former Cancer Policyholders, and (3) certain deceased Former Cancer Policyholders.   These three groups are defined below.   If you believe that you fall within one of these categories, you should complete the appropriate Claim Form attached to this Notice, include any required information, and mail it to the Settlement Administrator.   In order to be valid, the Claim Form must be postmarked on or before the **Claim Deadline of August 12, 2009**.

1.      **Past Claimants.**  "Past Claimants" include all Settlement Class members who (A) submitted a claim for Actual Charges Benefits under a Policy on or after the effective date of the 2006 Updated Claims Procedures and on or before April 23, 2009, and (B) received benefits under the Policy for such claim based upon Actual Charges and not List Prices.   The monetary benefits under this Section are designed for Past Claimants who dispute or disagree with the Company's interpretation of "actual charges" or the 2006 Updated Claims Procedures.   However, you are entitled to apply for and receive these benefits if you meet the above definition of a Past Claimant and timely submit a Claim Form.

(a)      **Past Claims**.  For purposes of the monetary benefit for Past Claimants, "Past Claims" means all claims for Actual Charges Benefits processed under or subject to the Company's 2006 Updated Claims Procedures which have been received by the Company on or before April 23, 2009.

(b)      **Monetary Benefits for Past Claimants**.  With respect to all Past Claims, Past Claimants who submit a valid Claim Form postmarked by **August 12, 2009** shall qualify for a cash payment equal to forty percent (40%) of the difference between the Actual Charges and the List Prices for the Past Claims up to the lesser of (A) $15,000.00, or (B) any maximum benefit amount as specified in the Class member's Actual Charges Policy (not including any increase in such maximum under the Settlement).   The monetary benefit under this provision of the Settlement is intended to equal but not exceed 40% of the difference, if any, between (A) the amount of the Actual Charges Benefits payable for the Past Claims under the Company's 2006 Updated Claims Procedures, and (B) the amount of Actual Charges Benefits that would have been paid if the Past Claims

**PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.**
Questions, Comments, or Concerns?  Call Toll Free 1-866-940-3613

1571 v0.03                                                                                                      6

had been processed immediately prior to the 2006 Updated Claims Procedures. This provision is not intended to eliminate or affect otherwise applicable Policy limits, caps, or maximum benefit amounts.

(c)     **Payment of Monetary Benefits**. The monetary benefits for Past Claimants will be paid to the insured under the Actual Charges Policy, the surviving spouse of the insured if any, or the estate of the insured.

**2.     Former Cancer Policyholders.** "Former Cancer Policyholders" include all Settlement Class members who were the insured under a Cancer Policy that lapsed or terminated for any reason prior to April 23, 2009, except for those who meet the definition of Past Claimants.

Any Former Cancer Policyholder who, after the date his or her Policy lapsed, is subsequently diagnosed with cancer or receives a new treatment for cancer, is entitled to receive a one time cash benefit of $1,000.00, if they timely submit a Claim Form postmarked on or before **August 12, 2009** and (i) proof of a positive diagnosis of cancer after the date the Policy lapsed, or (ii) proof of a subsequent treatment for cancer after the date the Policy lapsed; provided, however, that the positive diagnosis or subsequent treatment for cancer must occur no later than April 23, 2019, ten years after the date of the Court's Preliminary Approval Order.

The monetary benefits for Former Cancer Policyholders will be paid to the former insured under the Cancer Policy, the surviving spouse of the insured if any, or the estate of the insured.

**3.     Certain Deceased Former Cancer Policyholders.** Any deceased Former Cancer Policyholder who (1) was never diagnosed with cancer, or (2) was diagnosed with cancer but did not receive treatment for cancer after the date his or her Policy lapsed, will be entitled to a monetary payment of $500.00 upon timely submission of a Claim Form by the deceased Former Cancer Policyholder's legal representative postmarked on or before **August 12, 2009** including a Certificate of Death and a statement that the deceased Former Cancer Policyholder was never diagnosed with cancer, or was diagnosed with cancer but did not receive treatment for cancer after the date his or her Policy lapsed. A Settlement Class member is not entitled to both this benefit and the $1,000.00 benefit for Former Cancer Policyholders.

This monetary payment will be made by check payable to the surviving spouse or estate of the deceased Former Cancer Policyholder and mailed to the address provided in the Claim Form by the legal representative.

<ins>NON-MONETARY BENEFITS</ins>:

All Settlement Class Members under the Settlement are entitled to certain non-monetary relief, sometimes called "injunctive relief," including the following:

**1.     Premium Rate Freeze**. The Company has agreed not to file or apply for any premium rate increases with respect to its Cancer Policies and Actual Charges Policies during the calendar year 2009. Premium increases submitted for approval prior to 2009 may take effect in 2009, but no additional applications for rate increases will be filed during the calendar year 2009, which will result in a period of at least 12 months without a premium increase for each Class member owning a Policy.

**2.     "Actual Charges" Benefits**. The Company will be required to pay all claims for Actual Charges Benefits consistent with the definition of "actual charges" as the amount legally owed to the provider, which is consistent with the current definition of "actual charges" in Section 38-71-42(A) of the South Carolina Code and similar laws in Oklahoma, Georgia, and Texas. The parties expect this to confer a substantial benefit on the Class by lessening the amount and frequency of future premium increases.

**3.     Increase to Certain Lifetime Maximum Benefits**. Effective upon Final Approval of the Settlement, for all services rendered on or after the date of Final Approval, all Cancer Policies issued by the Company that contain a lifetime maximum limit on the total amount of benefits for chemotherapy, radiation therapy, or blood benefits (a "lifetime maximum") will be deemed reformed and amended so that the lifetime maximum on these benefits is equal to three times the current amount of the lifetime maximum.

**4.     Provisional Claim Payments**. The Company may make provisional or estimated benefit payments to insureds who do not submit complete information to allow the Company to determine the Actual Charges payable under the Policy. This provision applies as follows:

**PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.**
Questions, Comments, or Concerns?  Call Toll Free 1-866-940-3613

1571 v0.03                                                                                          7

(a)      If a Class member submits a claim for Actual Charges Benefits but fails to submit sufficient documentation to allow the Company to determine the Actual Charges payable, the Company shall have the authority and discretion, but not the obligation, to estimate and provisionally pay the Actual Charges Benefits based upon the amounts allowed by Medicare for the goods or services for which the claim was made, and upon subsequent timely receipt of adequate proof of loss, the Company shall adjust the benefit paid accordingly, if necessary.

(b)      In the event a Class member makes a claim for Actual Charges Benefits and submits proof of loss showing the aggregate Actual Charges for all goods and services received on a particular service date or dates, but not itemized proof of loss showing the Actual Charges for the specific covered goods or services, the Company shall have the authority and discretion, but not the obligation, to determine and pay the Actual Charges Benefits by multiplying the List Price for the covered goods or services by a ratio equal to (A) the aggregate Actual Charges divided by (B) the aggregate List Prices.

**5.      Waiver of Claims Against Settlement Class Members**.  The Company will agree to waive and not pursue any claims or counterclaims for overpayment of benefits that the Company might otherwise have against any Settlement Class Members as of the date of the Final Order and Judgment.

**7.  How can I receive a payment for monetary benefits under the Settlement?**

To receive a payment for monetary benefits you must send in a Claim Form postmarked by the Claim Deadline of **August 12, 2009**.  Copies of the Claim Forms are attached to this Notice.  You should carefully read this Section of the Notice and the Instructions at the top of the Claim Form.  In order for the Claim Form to be valid, you must include all required information and sign the Claim Form.  If you do not submit a properly completed and signed Claim Form postmarked on or before the applicable Claim Deadline, you will be deemed to have waived any claim to monetary benefits.

**1.      Claim Form for Past Claimants**.  In order to be valid, the Claim Form for Past Claimants must be properly addressed to the Settlement Administrator, postmarked on or before **August 12, 2009**, and must include at a minimum the following information:

(a)      The Past Claimant's full name and address; and
(b)      The Past Claimant's policy number, social security number, or date of birth.

**2.      Claim Form for Former Cancer Policyholders**.  In order to be valid, the Claim Form for Former Cancer Policyholders must be properly addressed to the Settlement Administrator, postmarked on or before **August 12, 2009**, and must include at a minimum the following information:

(a)      The Former Cancer Policyholder's full name and address;
(b)      The Former Cancer Policyholder's policy number, social security number, or date of birth; and
(c)      Either (i) proof of a positive diagnosis of cancer after the date the Policy lapsed that satisfies the terms of the lapsed Policy (generally a pathology report), or (ii) proof of a subsequent treatment for cancer after the date the Policy lapsed; provided, however, that, if the positive diagnosis or subsequent treatment has not yet occurred as of the Notice Date, the proof required must be provided to the Company at the address in the Claim Form within 90 days of such positive diagnosis or subsequent treatment.  The positive diagnosis or subsequent treatment for cancer must occur no later than April 23, 2019.

**3.      Claim Form for Certain Deceased Former Cancer Policyholders**.  In order to be valid, the Claim Form for certain deceased Former Cancer Policyholders must be properly addressed to the Settlement Administrator, postmarked on or before **August 12, 2009**, and must include at a minimum the following information:

(a)      The deceased Former Cancer Policyholder's full name and last known address;
(b)      The deceased Former Cancer Policyholder's Policy number, social security number, or date of birth;
(c)      The full name and address of the surviving spouse or legal representative filing the Claim Form;

(d)     A Certificate of Death; and

(e)     A statement that the deceased Former Cancer Policyholder was never diagnosed with cancer, or had been diagnosed with cancer but did not receive treatment for cancer after the date his or her Policy lapsed.

## 8. When would I receive my payment?

The Company will make all payments to Settlement Class members required by the Settlement within 90 days after the Final Approval Date. These Settlement benefits shall be paid by check without interest.

The Court will hold a final Fairness Hearing on July 27, 2009, to decide whether to approve the Settlement. If the Court approves the Settlement, there may be appeals. The process can take time, perhaps more than a year. Please be patient.

## 9. What am I giving up to receive a payment or to stay in the Settlement Class?

If you do not exclude yourself from the Settlement Class, you will be eligible for the benefits discussed above for which you qualify, but you will not be able to sue, continue to sue, or be part of any other lawsuit against any of the Defendants or their predecessors or affiliated companies concerning the claims alleged in this case. If you stay in the Settlement Class, all of the Court's orders will apply to you and legally bind you.

If the Settlement is finally approved by the Court, all individual and class action claims asserted in this lawsuit and any that could have been asserted, will be dismissed on the merits and with prejudice. None of those claims may thereafter be asserted by any Settlement Class member in any other lawsuit or proceeding.

By staying in the Class, you will also be bound by the release of all claims against the Defendants and their affiliates and others, including all claims alleged in this lawsuit and any that could have been alleged. A complete copy of the "Release" that will bind all Settlement Class members is attached to this Notice as Exhibit A. The Release is comprehensive and is an essential term to the Settlement and should be reviewed carefully because it will affect your rights. Anyone not in agreement with the Release should take steps to exclude themselves from the Settlement.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want any of the benefits from the Settlement, or if it is more important for you to keep the right to sue or continue to sue any of the Defendants on your own, then you must take steps to exclude yourself from the Settlement Class. This is sometimes referred to as "opting out" of the Settlement Class.

## 10. How do I exclude myself from the Settlement?

Any Settlement Class member who wishes to opt-out and be excluded from the Settlement Class must mail a written request for exclusion ("Request for Exclusion") to the Settlement Administrator postmarked on or before **June 28, 2009** (the "Exclusion Deadline") at Settlement Administrator, Transamerica Life Settlement, P.O. Box 6006, Portland, OR 97228-6006.

In order to be valid and effective, a Request for Exclusion must be sent by first class mail properly addressed to the Settlement Administrator, postmarked on or before **June 28, 2009**, and (a) must include the Class member's full name and address, (b) must bear the individual signature of the person seeking exclusion, and (c) must clearly state that the Class member desires to be excluded from the Class. No persons are permitted to request exclusion from the Settlement Class on behalf of any other Settlement Class members, except a legal representative or guardian may do so on behalf of a deceased, incapacitated, or minor Class member. *You cannot exclude yourself on the phone or by e-mail.*

If you properly submit a Request for Exclusion to opt out from the Settlement, you will no longer be a member of the Class. You will not get any benefits under the Settlement, and you cannot object to the Settlement.

I571 v0.03

Any Class member who does not mail a timely and proper Request for Exclusion that satisfies all the above requirements postmarked on or before **June 28, 2009** shall be considered a Class member for all purposes under the Settlement Agreement and shall be bound by the Court's Final Order and Judgment.

### 11.  If I do not exclude myself, may I sue the Defendants later?

No.  Unless you exclude yourself, you give up the right to sue the Defendants for the claims that this Settlement resolves and that are described in the attached Release (Exhibit A).  Pending a final determination after the Fairness Hearing whether the Settlement should be approved as fair, reasonable, and adequate, the Court has prohibited all members of the Settlement Class, unless and until they exclude themselves from the Settlement Class, from pursuing any litigation involving claims included in the Settlement.

If you have a pending lawsuit, speak to your lawyer in that lawsuit.  You must exclude yourself from this Settlement to continue your own lawsuit.  Remember, the Exclusion Deadline is **June 28, 2009.**

### 12.  If I exclude myself, can I receive money from the Settlement?

No.  If you exclude yourself, you may not send in a Claim Form to ask for any money.

## THE LAWYERS REPRESENTING YOU

### 13.  Do I have a lawyer in this case?

Philip Bohrer, Esq. and Scott E. Brady, Esq. of Bohrer Law Firm, LLC, Suite B, 8712 Jefferson Highway, Baton Rouge, Louisiana 70809; and Stan P. Baudin, Esq. of Pendley, Baudin & Coffin, L.L.P., 24110 Eden Street, Plaquemine, Louisiana 70764, represent you and other Settlement Class members in this case.  These lawyers are called Class Counsel.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 14.  How will the lawyers be paid?

Class Counsel will ask the Court for payment of attorneys' fees and expenses up to $3,500,000.  The Company has agreed not to oppose an application for fees and expenses that do not exceed this amount, and if approved by the Court, the Company will separately pay these fees and expenses.  The Company has also agreed to separately pay the costs of the Notice and the Settlement Administrator.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

### 15.  How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class member and you do not exclude yourself from the Settlement Class, you can object to the Settlement if you do not like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.  ***To object, you must do so in writing*** by filing with the Court a written Objection, with a copy served to Class Counsel, counsel to the Company, and the Settlement Administrator, by **June 28, 2009** (the "Objection Deadline").  The right to object to the proposed Settlement must be done individually by a Settlement Class Member, not as a member of a group or class and, except in the case of a deceased, incapacitated, or minor Class member, not by another person.  In order to be effective, copies of the Objection must be filed with the Court, mailed to the Settlement Administrator, and sent to Class Counsel and counsel to the Company by first class mail and facsimile, on or before **June 28, 2009**, and must contain:

(a)     A heading which includes the name of this lawsuit (*Runyan v. Transamerica Life Ins. Co., et al.*) and the Case Number CV-09-2066-3;

(b)     The name, address, telephone number, and signature of the Settlement Class member filing the Objection;

(c)     A detailed description of the nature and all grounds for the Objection, including any legal support the Class member intends to bring to the Court's attention, and copies of any documents or evidence that the Class member intends to introduce or present in support of the Objection;

(d)     The name, address, bar number, and telephone number of the objecting Class member's counsel, if represented by an attorney. If the Class member is represented by an attorney, he or she must comply with all applicable Arkansas laws and rules for filing pleadings and documents in Arkansas Courts;

(e)     A statement whether the Objector intends to appear at the Fairness Hearing, either in person or through counsel; and

(f)     A Certificate of Service showing that copies of the Objection were served on Class Counsel, counsel to the Company, and the Settlement Administrator on or before **June 28, 2009**.

You need four copies of your Objection. On or before **June 28, 2009,** your Objection must be filed with the Court, mailed to the Settlement Administrator, and sent by mail <u>and</u> fax to Class Counsel and the Company's counsel:

| **The Court** | **Settlement Administrator** | **Class Counsel** | **Company's Counsel** |
|---|---|---|---|
| Clerk, Circuit Court of | Transamerica Life | Philip Bohrer, Esq. | Markham R. Leventhal, Esq. |
| Pulaski County | Settlement | Bohrer Law Firm, LLC | Jorden Burt LLP |
| 401 W. Markham | P.O. Box 6006 | 8712 Jefferson Highway, | 777 Brickell Ave, Suite 500 |
| Little Rock, AR 72201 | Portland, OR 97228-6006 | Suite B | Miami, FL 33131 |
| | | Baton Rouge, LA 70809 | Fax: (305) 372-0028 |
| | | Fax: (225) 231-7000 | |

### 16. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you remain a member of the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing, called a Fairness Hearing, to decide whether to finally approve the Settlement. You may attend and you may ask to speak, but you do not have to attend or speak.

### 17. When and where will the Court decide whether to give final approval to the Settlement?

The Court has scheduled a Fairness Hearing at **9:30 a.m. on July 27, 2009**, before the Honorable Jay Moody, Circuit Court Judge, in the Third Division of Pulaski County Circuit Court, 401 W. Markham, Little Rock, Arkansas 72201. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to any persons who have properly asked to speak at the hearing. After the hearing and consideration of all the submissions, the Court will decide whether to grant final approval to the Settlement. The Court may also consider the award of attorneys' fees and expenses to Plaintiffs' counsel and an incentive award of $7,500.00 to each of the Plaintiffs. The Court may continue or reschedule the Fairness Hearing to a later date.

### 18. Do I have to come to the hearing?

No. Class Counsel will answer any questions that the Court may have. You are welcome to come at your own expense. If you send a written Objection, you do not have to come to Court to talk about it. As long as you

filed your written Objection on time, the Court will consider it.  You may also pay your own lawyer to attend if you so desire, but it is not necessary.

## 19.  May I speak at the hearing?

If a Settlement Class member or his or her attorney desires permission to speak at the Fairness Hearing for the purpose of objecting to the Settlement, the Settlement Class member must comply with all of the requirements for Objections described above in Section 15 and must file with the Court a notice of intent to appear on or before **June 28, 2009** containing or accompanied by the following information:

(a)    The name, address, and telephone number of the person who intends to appear at the Fairness Hearing and a copy of the written Objection to the Settlement.

(b)    A detailed statement of the specific legal and factual basis for each ground for objection;

(c)    A list of any witnesses that the Objector would like to call at the Fairness Hearing, with the address of each witness and a summary of his or her proposed testimony;

(d)    A detailed description of any and all evidence the Objector may offer at the Fairness Hearing, including copies of any and all exhibits which the Objector may seek to introduce at the Fairness Hearing; and

(e)    Documentary or other proof of membership in the Settlement Class.

You need four copies of your intent to appear.  On or before **June 28, 2009**, your notice of intent to appear must be filed with the Court, mailed to the Settlement Administrator, and sent by mail <u>and</u> fax to Class Counsel and the Company's Counsel at the addresses provided above in Section 15.  You cannot speak at the hearing if you have excluded yourself from the Settlement Class.

## IF YOU DO NOTHING

## 20.  What happens if I do nothing at all?

If you do nothing, you will remain in the Settlement Class.  You will get no money from the Settlement, but you will be entitled to all of the non-monetary benefits.  If you do not exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against any of the Defendants concerning any of the claims or allegations in this case and those described in the Release.

## OBTAINING MORE INFORMATION

## 21.  Are there more details about the Settlement?

Yes.  This Notice summarizes the terms of the proposed Settlement.  More details are available in the Class Action Settlement Agreement, including its Exhibits, and the Court's Order granting preliminary approval to the Settlement.  You can inspect a copy of the Settlement Agreement at the Clerk's Office during normal business hours, or get a copy of the Settlement Agreement by writing to Transamerica Life Settlement, Settlement Administrator, P.O. Box 6006, Portland, OR, 97228-6006, by calling 1-866-940-3613, or by visiting www.SupplementalInsuranceSettlement.com.

## 22.  How do I get more information?

You can call the Settlement Administrator at 1-866-940-3613 toll free, or visit the Settlement website: www.SupplementalInsuranceSettlement.com where you will find access to the Settlement Agreement and Claim Forms, plus other information.

### PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.

Notice Date: May 14, 2009.

PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.
Questions, Comments, or Concerns?  Call Toll Free 1-866-940-3613
12

1571 v0.03

## CLASS SETTLEMENT RELEASE

(a)    **Release**.  Except as expressly provided in subsection (b) below, effective upon Final Approval, all Representative Plaintiffs, and all Settlement Class members who have not properly and timely excluded themselves from the Class, on behalf of themselves and all representatives, heirs, successors, assigns, and any other persons claiming under or through them (collectively, the "Releasing Parties") do hereby expressly and irrevocably waive, release, and forever discharge the Company, Monumental Life, AEGON USA, LLC, and all of their respective current and former officers, directors, stockholders, subsidiaries, parent companies, affiliated companies, employees, agents, attorneys, predecessors, successors, heirs, and assigns (collectively the "Released Parties") from any and all claims, demands, complaints, disputes, causes of action, rights of action, suits, debts, liabilities, obligations, and damages of every nature whatsoever, whether based on federal, state, or local law, statute, ordinance, regulation, common law, private contract, agreement, or any other authority (collectively, "Claims"), whether known or unknown, asserted or unasserted, that the Releasing Parties now have, ever had, or may in the future have, arising out of, resulting from, or relating in any way to a Cancer Policy or an Actual Charges Policy (collectively, a "Policy" or the "Policies"), for the following:

(i)    Any and all Claims asserted or which could have been asserted in the Litigation;

(ii)    Any and all Claims relating to the marketing, sale, or purchase of a Policy, including but not limited to any Claims based upon or relating to any misrepresentations or omissions allegedly made in written materials or by an agent in connection with the sale of a Policy;

(iii)    Any and all Claims relating to premiums or benefits under the Policies including but not limited to Claims relating to the amount of premiums paid or payable, the amount of benefits paid or payable, premium rate increases past, or in the future based in whole or in part on any fact, act, or omission that occurred on or before the date of the Preliminary Approval Order, the reasonableness of premiums in relation to benefits, refunds of premiums, or the calculation of benefits under any Policy;

(iv)    Any and all Claims relating to any type of Actual Charges Benefits paid or payable under a Policy, or the meaning, definition, or interpretation of "actual charges" or "charges" under a Policy;

(v)    Any and all Claims based on alleged misrepresentations, nondisclosure, or inadequate disclosure relating to the Policies, including any such Claims based on or relating to communications made or not made, or documents exchanged, relating to a Policy, or any communications with State Departments of Insurance or other regulatory agencies or government officials;

(vi)    Any and all Claims relating to the Company's administration of the Policies including but not limited to the forms, processes, proof of loss requirements, or procedures used in connection with or relating to the processing of claims and payment of benefits under such Policies, or any changes to such forms, processes, proof of loss requirements, or procedures;

(vii)    Any right to bring a representative or class action claim of any nature whatsoever relating to the Policies based in whole or in part on any fact, act, omission, event, or circumstance, whether known or unknown, in existence or which occurred at any time on or before the date of the Preliminary Approval Order; and

(viii)    Any and all Claims for attorneys' fees, costs, or expenses.

The Representative Plaintiffs and Settlement Class members acknowledge that they are aware that they may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein.  Nevertheless, it is the intention of the Settlement to fully, finally and forever settle and release all such matters and all Claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action).  It is expressly understood that, except for the limited exceptions in subsection 13(b), the Release

PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.
Questions, Comments, or Concerns?  Call Toll Free 1-866-940-3613

1571 v0.03                                                                    13

will extinguish all Claims of every nature regardless of whether the Claims are known at the time of the Settlement or Final Order and Judgment. All Settlement Class members hereby expressly waive and relinquish any and all rights conferred by California Civil Code § 1542 which provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." All Settlement Class members further waive and relinquish any rights conferred by similar laws of any other states that would conflict with or restrict the ability of Settlement Class members to release claims unknown or unsuspected at the time of Settlement or the Final Order and Judgment.

(b) **Scope and Exceptions to Release**. The Release in subsection (a) is intended to be a comprehensive general release relating to the Policies except for the limited exceptions expressly set forth in this subsection. Notwithstanding subsection (a) above, the Release will not operate to terminate or extinguish an otherwise active and in force Policy, or to waive any claims for future benefits under the Policy which may accrue as a result of medical treatment provided subsequent to the end of the Class Period, and any such Policy will continue in full force and effect after the date of the Final Order and Judgment, subject to the continued payment of premiums as they become due, and subject to all terms and conditions of the Policy and the Settlement. The Release will not extinguish any existing dispute between an individual Class member and the Company over whether an insured has submitted proper proof of a Positive Diagnosis of Cancer as defined under a Policy. The limited exceptions to the Release in this subsection shall be strictly construed. Notwithstanding any other provision of this Agreement, under no circumstances shall the Release be interpreted to allow any future claims challenging the Company's interpretation of "actual charges" or "charges," or any claims relating to future premium rate increases based in whole or in part on any fact, act, or omission that occurred on or before the date of the Preliminary Approval Order. The Parties acknowledge that future premium increases are likely and the Company agrees that it will file any such premium rate increases with and obtain the approval of state regulators as required under state law. Nothing in this subsection (b) shall be interpreted to provide any Settlement Class member with any greater rights than those provided under the terms of the Policy, and all conditions, limitations, and exclusions under the Policy shall continue to apply with full force and effect.

\* \* \*

(d) **Injunction**. Upon Final Approval, all Representative Plaintiffs and Class members who have not timely and properly opted out and excluded themselves from the Settlement shall be permanently barred and enjoined:

  (i) from filing, commencing, prosecuting, intervening in, or participating in (individually or in a representative capacity) any lawsuit, action, or proceeding in any jurisdiction asserting or based upon any claims or causes of action released in the Settlement and Final Judgment; and

  (ii) from soliciting or encouraging any other Class members to participate in any such lawsuit, action, or proceeding.

# PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.
## Questions, Comments, or Concerns?
## Call Toll Free 1-866-940-3613

PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT.
Questions, Comments, or Concerns?  Call Toll Free 1-866-940-3613
14

1571 v0.03

Mail to:   Transamerica Life Settlement Administrator
           P.O. Box 6006
           Portland, OR  97228-6006

# CLAIM FORM FOR DECEASED FORMER CANCER POLICYHOLDERS

This Claim Form is intended to provide certain monetary benefits to the surviving spouse or estate of certain deceased Former Cancer Policyholders (as defined under the Class Action Settlement Agreement) who (i) were never diagnosed with cancer, or (ii) were diagnosed with cancer but did not receive treatment for cancer after the date his or her policy terminated.  See page 7 of the Notice of Proposed Class Action Settlement.  If you do not have all of the information, please complete as much information as possible.  Required information includes (i) the deceased Former Cancer Policyholder's full name and last known address, (ii) his or her policy number, social security number, or date of birth, (iii) the full name and address of the surviving spouse or legal representative filing this Claim Form, (iv) a Certificate of Death, and (v) the Claim Statement (below) indicating that the deceased Former Cancer Policyholder was never diagnosed with cancer, or had been diagnosed with cancer but did not receive treatment for cancer after the date his or her policy terminated.

**THIS CLAIM FORM MUST BE POSTMARKED NO LATER THAN AUGUST 12, 2009.**

**IF YOU HAVE ANY QUESTIONS WHILE COMPLETING THIS CLAIM FORM, PLEASE CALL THE SETTLEMENT ADMINISTRATOR AT 1-866-940-3613 FOR ASSISTANCE.**

Name of Deceased Former Cancer Policyholder: _____     Your Name: _____

Policy Number: _____     Your relationship to Deceased Former Cancer Policyholder: _____

Social Security Number: _____     Your Social Security Number: _____

Date of Birth (mm/dd/yyyy): _____     Your Date of Birth (mm/dd/yyyy): _____

Last Known Address of Deceased Former Cancer Policyholder:

| Street | (Apt #) | City | State | Zip |
|---|---|---|---|---|

Are you the surviving spouse of the Deceased Former Cancer Policyholder:  ☐ Yes   ☐ No

Are you the Legal Representative of the Estate of the Deceased Former Cancer Policyholder:  ☐ Yes   ☐ No

Your Mailing Address:

| Street or P.O. Box | City | State | Zip |
|---|---|---|---|

Home Phone Number: (_____) _____     Other Phone Number: (_____) _____

The Deceased Former Cancer Policyholder was never diagnosed with cancer:  ☐ Yes   ☐ No

The Deceased Former Cancer Policyholder was diagnosed with cancer, but did not receive treatment for cancer after the date his or her Policy terminated:   ☐ Yes   ☐ No

I certify that the information submitted above is true and correct to the best of my knowledge and belief.

_____/_____/_____          _____
Date (mm/dd/yyyy)          Signature of Person submitting this Claim Form

1573 v.0.02

Mail to:   Transamerica Life Settlement Administrator
P.O. Box 6006
Portland, OR  97228-6006

# CLAIM FORM FOR FORMER CANCER POLICYHOLDERS

This Claim Form is intended to provide a one-time payment of $1,000 to certain Settlement Class members defined as Former Cancer Policyholders under the Class Action Settlement Agreement. See page 7 of the Notice of Proposed Class Action Settlement.  If you do not have all of the information, please complete as much information as possible.   Required information includes (i) the Former Cancer Policyholder's full name and address, (ii) one of the following:  his or her policy number, social security number, or date of birth, and (iii) proof of a positive diagnosis of cancer for the Former Cancer Policyholder after the date the policy terminated, or proof of a subsequent treatment for cancer for the Former Cancer Policyholder after the date of policy termination.

**THIS CLAIM FORM MUST BE POSTMARKED NO LATER THAN AUGUST 12, 2009.**

**If the Former Cancer Policyholder has not yet had a positive diagnosis of cancer or a subsequent treatment for cancer as of May 14, 2009, the proof of a positive diagnosis of cancer or subsequent treatment for cancer must be mailed within 90 days of the diagnosis or treatment to:  Transamerica Life Insurance Company, Class Action Settlement Claims, 1400 Centerview Drive, Little Rock, Arkansas 72211.  The diagnosis or treatment must occur on or before April 23, 2019.**

> **IF YOU HAVE ANY QUESTIONS WHILE COMPLETING THIS CLAIM FORM, PLEASE CALL THE SETTLEMENT ADMINISTRATOR AT 1-866-940-3613 FOR ASSISTANCE.**

Name of Former Cancer Policyholder: _____   Policy Number: _____

Social Security Number: _____   The Policy terminated prior to April 23, 2009:
 ☐ Yes ☐ No

Date of Birth (mm/dd/yyyy): _____   Date Policy terminated (or approximate date of last premium payment): _____

Address of Former Cancer Policyholder:

_____
  Street or P.O. Box    City   State Zip

Your Name: _____   Your relationship to Former Policyholder:_____

Your Mailing Address:

_____
  Street or P.O. Box    City   State Zip

Has your address changed since we last heard from you? ☐ Yes ☐ No

Home Phone Number: (_____) _____   Other Phone Number: (_____) _____

The Former Cancer Policyholder was positively diagnosed with cancer after the above Policy terminated: ☐ Yes ☐ No

The Former Cancer Policyholder was subsequently treated for cancer after the above Policy terminated: ☐ Yes ☐ No

**Very important:**  In order for this Claim Form to be valid, you must attach proof of a Positive Diagnosis of Cancer for the Former Cancer Policyholder satisfying the terms of the Policy (generally a Pathology Report), or proof of a subsequent treatment for cancer for the Former Cancer Policyholder, occurring after the date the Policy terminated. If the Former Cancer Policyholder has not yet had a positive diagnosis of cancer or a subsequent treatment for cancer as of May 14, 2009, you may submit only the Claim Form at this time, but you must submit the proof of a positive diagnosis of cancer or treatment for cancer for the Former Cancer Policyholder to Transamerica Life Insurance Company (see address above) within 90 days of diagnosis or treatment occurring on or before April 23, 2019.

I certify that the information submitted above is true and correct to the best of my knowledge and belief.

_____/_____/_____   _____
Date (mm/dd/yyyy)    Signature of Former Cancer Policyholder or Person submitting this Claim Form

Mail to:   Transamerica Life Settlement Administrator
P.O. Box 6006
Portland, OR  97228-6006

# CLAIM FORM FOR PAST CLAIMANTS

This Claim Form is intended to provide certain monetary benefits to Settlement Class members defined as Past Claimants under the Class Action Settlement Agreement.  See page 6 of the Notice of Proposed Class Action Settlement.  If you do not have all of the information, please complete as much information as possible. Required information includes (i) the Insured/Policyholder's full name and address, and (ii) one of the following: the Insured/Policyholder's policy number, social security number, or date of birth.

**THIS CLAIM FORM MUST BE POSTMARKED NO LATER THAN AUGUST 12, 2009.**

> **IF YOU HAVE ANY QUESTIONS WHILE COMPLETING THIS CLAIM FORM, PLEASE CALL THE SETTLEMENT ADMINISTRATOR AT 1-866-940-3613 FOR ASSISTANCE.**

Name of Insured/Policyholder: _____

Policy Number: _____

Social Security Number of Insured/Policyholder: _____

Name of Covered Person(s) who received treatment: _____

Date of Birth (mm/dd/yyyy) of Insured/Policyholder: _____

Date of Birth (mm/dd/yyyy) of Covered Person(s): _____

Mailing Address of Insured/Policyholder: _____

Your Name: _____

Home Phone Number:  (_____) _____

Your relationship to Insured: _____

Other Phone Number:  (_____) _____

Your Mailing Address:

_____
Street or P.O. Box                                City                      State          Zip

Has your address changed since we last heard from you?   ☐ Yes   ☐ No

Claims were submitted under the above-referenced policy for benefits based upon the "actual charges" for covered services (for example, chemotherapy, radiation therapy, blood-related benefits, or ambulance service) rendered on or after April 1, 2006.   ☐ Yes   ☐ No

I certify that the information submitted above is true and correct to the best of my knowledge and belief.

_____/_____/_____
Date (mm/dd/yyyy)

_____
Signature of the Insured, Surviving Spouse, or Personal Representative
submitting this Claim Form

1574 v0.02

# Exhibit B to Affidavit of Robert Oseas

# AFFIDAVIT OF PUBLICATION

IN THE MATTER OF: Edison Runyan, et al. v. Transamerica Life Insurance Company, et al

STATE OF OREGON

ss:

COUNTY OF WASHINGTON

I, Breona Lantz, being duly sworn, hereby certify that (a) I am the Media Coordinator at Epiq Systems Class Action & Claims Solutions, an noticing administrator and (b) that the Notice of which the annexed is a copy was **published in the following publications on May 26, 2009 and May 28, 2009:**

*USA Today (National Edition)*

X _Bre Lantz_____
(Signature)

_Media Coordinator_____
(Title)

Sworn to before me this: _28th_ day of _May_____, 2009

_____
Notary Public

OFFICIAL SEAL
**BRANDON SCHWARTZ**
NOTARY PUBLIC-OREGON
COMMISSION NO. 431449
MY COMMISSION EXPIRES AUGUST 10, 2012

# Exhibit C to Affidavit of Robert Oseas



7950 Jones Branch Drive • McLean, Virginia 22108
(703) 854-3400



# VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

_____

Being duly sworn, Antoinette Chase says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: May 26th and 28th 2009 on the following legal advertisement- **If you were covered under a Cancer or Supplemental Insurance Policy issued or administered by Transamerica Life Insurance……..** published in the national edition of **USA Today.**

Principal Clerk of USA TODAY
July 1 2009

This ___1___ day of ___July___ month
___2009___ year.

Notary Public

Marcus Dane Edmonds
Notary Public ID 7165468
Commonwealth of Virginia
My commission expires
09/30/2012



City of Chicago, Department of Aviation

...tween O'Hare and downtown.

...s Steve Schreiber, aviation director for ...tland International.

...till, airport-rail ridership in the USA is ...efully low compared with other ...ntries, says Andrew Sharp, director ...neral of the U.K.-based International ... Rail Organisation. In many European

Sound Transit's voter-approved initiative passed in the late 1990s. Its regional light-rail system, is close to finishing its latest line. The Central Link, a 16-mile line running between downtown Seattle and Sea-Tac airport, will launch later this year. Its airport station is scheduled to open in December.

About a decade ago, Salt Lake City had no public rail. The Utah Transit Authority has since built a system that covers about 150 miles. A 5-mile downtown-to-airport connection is under construction and scheduled to open in 2012, says Michael Allegra of UTA. He expects about 6,000 riders daily when it opens.

One of the largest construction projects in the nation's capital is a 23-mile extension of the region's Metro to Washington Dulles. The new line will also

...ing to buses, he says. For example, LAX's ...provides non-stop rides to various neighborhoods in Southern California, is more convenient for many travelers than the metro.

For some cities, it'd be wiser to spend scarce funds for extending metro to public transportation-friendly suburbs before considering airports, Coogan adds.

"How often does a person go to work? And how often does a person go to Paris in a year?" he says.

In Seattle, where light-rail coverage is still growing, expectations are modest, with 3,000 riders a day expected at the airport station initially. "We're at the beginning. It's a step-by-step process," says Ron Lewis of Sound Transit. "But there are other neighborhoods that will be served by the line along 15 miles."



 USA TODAY usatoday.com  LEGAL TUESDAY  www.marketplace.usatoday.com

Hours of operation: Mon. - Fri., 8:30 am - 7:00 pm (EST)
To advertise call 1.800.872.3433 Toll-free in the U.S. only



Legal Notice

## If you were covered under a Cancer or Supplemental Insurance Policy issued or administered by Transamerica Life Insurance Company or Life Investors Insurance Company of America, you could get a payment from a class action settlement.

A settlement has been proposed in a class action lawsuit involving certain cancer insurance policies and other supplemental insurance policies issued or administered by Transamerica Life Insurance Company or Life Investors Insurance Company of America. The settlement will provide payments to certain current and former policyholders and their heirs. If you qualify, you may send in a Claim Form to get benefits, or you can exclude yourself from the settlement, or object to it.

The Circuit Court for Pulaski County, Arkansas has preliminarily approved the settlement and authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to finally approve the settlement.

**WHO'S INCLUDED?**

You may be included in the settlement if: (a) you were insured or covered under a cancer insurance policy in force at any time from January 1, 2004 through April 23, 2009; or (b) you were insured or covered on April 23, 2009 under another supplemental policy that pays benefits based upon the "actual charges" for medical services, or you submitted a claim for benefits based upon "actual charges" after April 1, 2006; or (c) you are the surviving spouse or legal representative of someone described in (a) or (b).

If you are not sure whether you are included, visit www.SupplementalInsuranceSettlement.com or call toll-free at 1-866 940-3613 to get more information, including a detailed class notice.

**WHAT'S THIS ABOUT?**

This lawsuit claimed that Transamerica Life and certain affiliated companies breached the terms of certain cancer insurance policies and other supplemental insurance policies (the "Policies") by not paying benefits properly, including benefits based upon the "actual charges" for medical services, and by changing the companies' claims procedures in 2006 to require more documentation for claims based on "actual charges." The lawsuit also claimed that Transamerica Life wrongfully increased premiums for the Policies. The companies strenuously deny that they did anything wrong. The Court did not decide which side was right. Both sides agreed to the settlement to resolve the case and get benefits to current and former policyholders. The two sides disagree on how much money,

if any, could have been won and whether a class action would be appropriate if the case went to trial.

**WHAT DOES THE SETTLEMENT PROVIDE?**

The settlement includes both payments of money and non-monetary benefits to qualifying Class members. Not all Class members will qualify for money benefits. The money benefits include a percentage of certain past claims under the Policies up to an additional $15,000; a $1,000 payment to certain former policyholders; and a $500 payment to certain deceased former policyholders. All Class members are entitled to certain non-monetary relief, including a premium rate freeze for twelve months. A Settlement Agreement, available at the website below, describes all of the details about the proposed settlement. To find out if you qualify for money benefits, please visit the website below or call the toll-free number.

**HOW DO YOU ASK FOR A PAYMENT?**

A detailed class notice and claim form package contains everything you need. If you did not receive one by mail, just call or visit the website below to get one. To qualify for a cash payment, you **must** send in a claim form postmarked by August 12, 2009.

**WHAT ARE YOUR OTHER OPTIONS?**

If you don't want to be legally bound by the settlement, you must exclude yourself by June 28, 2009, or you won't be able to sue, or continue to sue Transamerica Life or any of its affiliates about the legal claims involved in the Settlement. If you exclude yourself, you can't get any benefits from this settlement. If you stay in the settlement, you may object to it in writing by June 28, 2009. The detailed notice explains how to exclude yourself or object.

The Court will have a hearing in this case (Runyan v. Transamerica Life Insurance Company, Case No. CV 09 2066 3), in the Third Division of the Circuit Court of Pulaski County, Little Rock, Arkansas, on July 27, 2009, to consider whether to approve the settlement and a request by the lawyers representing all Class Members for $3,500,000 in attorneys' fees and costs. The fees and costs won't reduce the amount of benefits available to qualifying Class members. You may ask to appear at the hearing, but you don't have to. For more information, call the Settlement Administrator toll-free at 1-866-940-3613 or visit the website www.SupplementalInsuranceSettlement.com

1-866-940-3613     www.SupplementalInsuranceSettlement.com

USA TODAY · THURSDAY, MAY 28,

# ARKETPLACE TODAY

usatoday | Hours of operation: Mon. - Fri., 8:30 am - 6:00 pm [EST] | To advertise call **1.800.397.0070** Toll-free in the U.S. only

## LEGAL NOTICES

LEGAL NOTICE

### If you were covered under a Cancer or Supplemental Insurance Policy issued or administered by Transamerica Life Insurance Company or Life Investors Insurance Company of America, you could get a payment from a class action settlement.

A settlement has been proposed in a class action lawsuit involving certain cancer insurance policies and other supplemental insurance policies issued or administered by Transamerica Life Insurance Company or Life Investors Insurance Company of America. The settlement will provide payments to certain current and former policyholders and their heirs. If you qualify, you may send in a Claim Form to get benefits, or you can exclude yourself from the settlement, or object to it.

The Circuit Court for Pulaski County, Arkansas has preliminarily approved the settlement and authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to finally approve the settlement.

#### WHO'S INCLUDED?

You may be included in the settlement if: (a) you were insured or covered under a cancer insurance policy in force at any time from January 1, 2004 through April 23, 2009; or (b) you were insured or covered on April 23, 2009 under another supplemental policy that pays benefits based upon the "actual charges" for medical services, or you submitted a claim for benefits based upon "actual charges" after April 1, 2006; or (c) you are the surviving spouse or legal representative of someone described in (a) or (b).

If you are not sure whether you are included, visit www.SupplementalInsuranceSettlement.com or call toll-free at 1-866 940-3613 to get more information, including a detailed class notice.

#### WHAT'S THIS ABOUT?

This lawsuit claimed that Transamerica Life and certain affiliated companies breached the terms of certain cancer insurance policies and other supplemental insurance policies (the "Policies") by not paying benefits properly, including benefits based upon the "actual charges" for medical services, and by changing the companies' claims procedures in 2006 to require more documentation for claims based on "actual charges." The lawsuit also claimed that Transamerica Life wrongfully increased premiums for the Policies. The companies strenuously deny that they did anything wrong. The Court did not decide which side was right. But both sides agreed to the settlement to resolve the case and get benefits to current and former policyholders. The two sides disagree on how much money,

if any, could have been won and whether a class action would be appropriate if the case went to trial.

#### WHAT DOES THE SETTLEMENT PROVIDE?

The settlement includes both payments of money and non-monetary benefits to qualifying Class members. Not all Class members will qualify for money benefits. The money benefits include a percentage of certain past claims under the Policies up to an additional $15,000; a $1,000 payment to certain former policyholders; and a $500 payment to certain deceased former policyholders. All Class members are entitled to certain non-monetary relief, including a premium rate freeze for twelve months. A Settlement Agreement, available at the website below, describes all of the details about the proposed settlement. To find out if you qualify for money benefits, please visit the website or call the toll-free number.

#### HOW DO YOU ASK FOR A PAYMENT?

A detailed class notice and claim form package contains everything you need. If you did not receive one by mail, just call or visit the website below to get one. To qualify for a cash payment, you **must** send in a claim form **postmarked by August 12, 2009.**

#### WHAT ARE YOUR OTHER OPTIONS?

If you don't want to be legally bound by the settlement, you must exclude yourself by **June 28, 2009**, or you won't be able to sue, or continue to sue Transamerica Life or any of its affiliates about the legal claims involved in the Settlement. If you exclude yourself, you can't get any benefits from the settlement. If you stay in the settlement, you may object to it in writing by June 28, 2009. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in this case (*Runyan v. Transamerica Life Insurance Company,* Case No. CV 09 2066 3), in the Third Division of the Circuit Court of Pulaski County, Little Rock, Arkansas, on **July 27, 2009**, to consider whether to approve the settlement and a request by the lawyers representing all Class Members for $3,500,000 in attorneys' fees and costs. The fees and costs won't reduce the amount of benefits available to qualifying Class members. You may ask to appear at the hearing, but you don't have to. For more information, call the Settlement Administrator toll-free at 1-866-940-3613 or visit the website www.SupplementalInsuranceSettlement.com.

**1-866-940-3613        www.SupplementalInsuranceSettlement.com**

## ANNOUNCEMENTS



### GOVERNMENT OF BOTSWANA

**SUPPLEMENTARY REGISTRATION 19TH TO 29TH MAY 2009**

The Independent Electoral Commission has resolved to set aside the period between 19th May and 29th May 2009 (both dates inclusive) as supplementary voter's registration period.

The Commission has further resolved to declare the 31st May 2009 as the cut-off point for registration of voters for purposes of the 2009 General Elections.

Botswana citizens can register at the following Polling Stations Monday to Friday between the hours of 8 am and 4 pm.

**Embassy of Botswana**
1531-33 New Hampshire Ave NW
Washington, DC 20036
Tel. No. (202) 244-4990
Fax. No. (202) 244-4164

**Permanent Mission of the Republic of Botswana to the United Nations**
154 East 46th Street
New York, NY 10017
Tel. No. (212) 889-2277
Fax. No. (212) 725-5061

## PERSONALS

30,000+ Russian, Latin, Asian singles
Instant contact! Singles Tours
Free catalog. Video! A Foreign Affair
800-578-3367 www.loveme.com

**Fun Local Singles**

## BUSINESS OPPORTUNI

GET PAID UP TO
Distribute our ma
our internet VIP
www.gate4deal.com

## BUSINESS O

**$50 - $5**

Business Credit •
Guarantees • Business
• Complete Fir
• Package • Shelf C
**877-858**

## MARKETPL

## HEALTH/FIT

## SERVING SIN

**VIAG**
CIALIS, LEVITRA,
VALTREX, XENICAL
**OVERNIGHT SHIPPIN**

**ViaME**
SAFE • SECURE •
se habla español (8
**877-484-**
**VIAMEDIC**

INTERNET PHARMACY E
PAIN MEDS 90ct $71 180
Low Rx $ ★ Generic
200 Meds "SCRIPT INC
1-888-507-3415 TeleMe

## VIAGRA / LE

Affordable, disc
Toll-free 1-877-78

## TICKET



# Exhibit D to Affidavit of Robert Oseas



## Transamerica Cancer and Supplemental Insurance Settlement Objection Report

| Full Name | Postmark |
|---|---|
| STEPHEN HEGE | 05/22/2009 |
| JERRY ROLIN | 05/22/2009 |
| BONITA SMITH | 06/18/2009 |
| AUDRY HUNTER | 06/22/2009 |
| JOANNE GIBSON | 06/25/2009 |
| NAOMI CROCKER | 06/25/2009 |
| FRANCES GOAD | 06/25/2009 |
| EMMA BARNHILL | 06/25/2009 |
| JACKIE QUEEN | 06/26/2009 |
| BENITA WHITE | 06/26/2009 |
| EVELYN JONES | 06/26/2009 |
| THOMAS MCCARTHY | 06/26/2009 |
| LINDA MCCARTHY | 06/26/2009 |
| DANIEL CRAGER | 06/26/2009 |
| WILLIAM MCWHORTER | 06/26/2009 |
| KATHLEEN MCWHORTER | 06/26/2009 |
| JAMES CARROLL | 06/26/2009 |
| V CARROLL | 06/26/2009 |
| LILLIAN LOGAN | 06/27/2009 |

# Exhibit E to Affidavit of Robert Oseas



## Transamerica Cancer and Supplemental Insurance Settlement Intent to Appear

| Full Name | Law Firm |
| --- | --- |
| JOANNE GIBSON | HOPKINS & CAMPBELL, LLP |
| EMMA BARNHILL | HOPKINS & CAMPBELL, LLP |
| JACKIE QUEEN | HOPKINS & CAMPBELL, LLP |
| DANIEL CRAGER | JACK NELSON JONES, FINK JILES & GREGORY, P.A. |
| WILLIAM MCWHORTER | JACK NELSON JONES, FINK JILES & GREGORY, P.A. |
| KATHLEEN MCWHORTER | JACK NELSON JONES, FINK JILES & GREGORY, P.A. |
| JAMES CARROLL | JACK NELSON JONES, FINK JILES & GREGORY, P.A. |
| V CARROLL | JACK NELSON JONES, FINK JILES & GREGORY, P.A. |
| FRANCES GOAD | KITTERMAN LAW FIRM, P.A |
| BENITA WHITE | KITTERMAN LAW FIRM, P.A |
| EVELYN JONES | KITTERMAN LAW FIRM, P.A |
| THOMAS MCCARTHY | KITTERMAN LAW FIRM, P.A |
| LINDA MCCARTHY | KITTERMAN LAW FIRM, P.A |
| NAOMI CROCKER | SMITH PHILLIPS |