**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**


ROBERT W. HALL                                                                    PLAINTIFF


v.                                        Case No. 4:11-CV-00086-JLH


EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.                                                                  DEFENDANTS


---

**DEFENDANT AEGON USA, LLC'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

---

Markham R. Leventhal                   John K. Baker (ABA #97024)
Farrokh Jhabvala                       MITCHELL, WILLIAMS, SELIG,
Julianna Thomas McCabe                    GATES & WOODYARD, P.L.L.C.
JORDEN BURT LLP                        425 West Capitol Avenue, Suite 1800
777 Brickell Avenue, Suite 500         Little Rock, Arkansas 72201
Miami, Florida 33131                   Telephone: (501) 688-8800
Telephone: (305) 371-2600              Facsimile: (501) 918-7850
Facsimile: (305) 372-9928


*Attorneys for Defendant AEGON USA, LLC*

# **TABLE OF CONTENTS**

*Page*

INTRODUCTION TO REPLY ............................................................................... 1

REPLY TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT AND OTHER
FACTUAL CONTENTIONS ................................................................................. 3

      "AEGON USA, Inc." Versus "AEGON USA" ................................................ 7

      Market Conduct Examination Report ............................................................. 9

      AEGON Financial Partners ............................................................................ 10

      Plaintiff's Correspondence with Life Investors ............................................ 10

ARGUMENT ........................................................................................................ 12

I.     PLAINTIFF HAS NOT SATISFIED THE LEGAL STANDARD NECESSARY
      TO DEMONSTRATE PERSONAL JURISDICTION OVER AEGON USA, LLC
      IN THIS ACTION ....................................................................................... 13

      A.    Plaintiff's Conspiracy Theory Of Personal Jurisdiction Lacks Merit .................. 13

      B.    Plaintiff's Agency Theory Cannot Establish Personal Jurisdiction ..................... 18

      C.    Plaintiff's Alter-Ego Theory Is Unsupportable .................................................... 21

II.    PLAINTIFF HAS NOT ADDRESSED THE MERITS OF HIS CLAIMS
      AGAINST AEGON USA, LLC, EFFECTIVELY CONCEDING THAT
      SUMMARY JUDGMENT IS APPROPRIATE ............................................ 26

      A.    AEGON USA, LLC Is Entitled To Summary Judgment As a Matter Of
          Law With Respect To Plaintiff's Contract Based Claims ..................................... 28

      B.    AEGON USA, LLC Is Entitled To Summary Judgment As A Matter Of
          Law With Respect To Plaintiff's Claim for Unjust Enrichment ........................... 29

CONCLUSION ..................................................................................................... 30

CERTIFICATE OF SERVICE ............................................................................. 31

Defendant AEGON USA, LLC[1] submits this reply memorandum in further support of its Motion for Summary Judgment (Docket #59) (the "Motion"), and in response to plaintiff's Opposition.[2]

## INTRODUCTION TO REPLY

This is a breach of contract action in which the plaintiff alleges that his claims for Surgery and Anesthesia benefits under a supplemental cancer insurance policy were underpaid. It is undisputed that plaintiff's insurance policy was issued by Equity National Life Insurance Company ("Equity National"), which later merged into Life Investors Insurance Company of America ("Life Investors"), and that Life Investors administered the 2006 insurance claim at issue in this action.[3] It is also undisputed that AEGON USA, LLC is a holding company, not an insurance company, and it has never had any contractual relationship with plaintiff of any kind.

On November 24, 2010, AEGON USA, LLC filed the Motion, which seeks summary judgment on two grounds – first, because AEGON USA, LLC lacks sufficient contacts with the State of Arkansas to support the exercise of either general or specific jurisdiction over it in this case; and, second, because AEGON USA, LLC had no contractual relationship with the plaintiff and no duty to make benefits payments to the plaintiff for the insurance claims at issue in this

---

[1] Effective July 28, 2008, AEGON USA, Inc. converted to a limited liability company and changed its name to AEGON USA, LLC.  *See* Declaration of James Beardsworth, filed November 24, 2010 (Doc. #60-1) ¶ 3 ("Beardsworth Decl.").  All references in this motion to AEGON USA, LLC include AEGON USA, Inc. unless otherwise indicated.

[2] *See* "Plaintiff's Opposition to Defendant AEGON USA, LLC's Motion for Summary Judgment" filed on December 16, 2010 (Doc. #74) (the "Opposition").

[3] In 2008, Life Investors merged into Transamerica Life Insurance Company ("Transamerica").  Plaintiff cancelled his policy in 2010, and it is no longer in force.  *See generally*, Statement of Material Facts in Support of AEGON USA, LLC's Motion for Summary Judgment (Docket #59-1) ¶¶ 1, 4, 30 (hereinafter, "AEGON USA, LLC's Statement").  References in this memorandum to Transamerica prior to 2008 include Life Investors.

action.  *See* Defendant AEGON USA, LLC's Memorandum of Law in Support of Motion for Summary Judgment (Docket #60), at 8-16.

With respect to the latter grounds, plaintiff's Opposition sets forth no specific facts and makes no arguments demonstrating that plaintiff has a legal basis to state a claim against AEGON USA, LLC for breach of contract (Count I), breach of implied duty of good faith and fair dealing (Count II), unjust enrichment and disgorgement (Count III), declaratory judgment and injunctive relief (Count IV), or bad faith (Count V).  Accordingly, AEGON USA, LLC is entitled to summary judgment with respect to all claims pled in the Complaint.  *See Demerath Land Co. v. Sparr*, 48 F.3d 353, 356  (8th Cir. 1995) (affirming summary judgment in favor of defendants where plaintiff "had an opportunity to respond to the [defendants'] challenge to its mail fraud claims, but failed to offer any evidence that a genuine factual dispute existed").

Ignoring the merits of his claims, plaintiff's Opposition is devoted entirely to establishing a "vicarious" theory of personal jurisdiction over AEGON USA, LLC based on conclusory allegations in his Complaint that his insurance policy was "issued" by AEGON USA, LLC "through its wholly owned subsidiaries or the predecessors to those subsidiaries." Complaint ¶ 1. The record is now clear that AEGON USA, LLC is not an insurance company, that it did not issue plaintiff's insurance policy, that it is a holding company which does not provide insurance products or services to any consumers, and that, in any event, the plaintiff's claims were administered and paid by Life Investors through its Louisville, Kentucky office.  Plaintiff's Opposition does not dispute these facts.

Indeed, the plaintiff has wholly abandoned his contention that AEGON USA, LLC has *any* direct connection with Arkansas.  Instead, plaintiff contends that jurisdiction over AEGON USA, LLC arises "vicariously" because it owned a subsidiary insurance company that administered his claims.  Opposition at 1.  Plaintiff requests that the Court "impute" to AEGON

2

USA, LLC a close relationship with Life Investors and AEGON Financial Partners, a service

organization utilized by Life Investors. *Id.* Plaintiff alleges that an "intimate" relationship exists

between AEGON USA, LLC, Life Investors, and AEGON Financial Partners, such that personal

jurisdiction over AEGON USA, LLC in Arkansas exists "under conspiracy, agency, and alter

ego principles." Opposition at 8.    Plaintiff offers no credible evidence to support jurisdiction

under any of these theories, and AEGON USA, LLC is entitled to final summary judgment on

both grounds set forth in its Motion.

**REPLY TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT
AND OTHER FACTUAL CONTENTIONS**

Rather than disputing any of the material facts supported by AEGON USA, LLC's

Motion, plaintiff's Opposition largely ignores those facts, and is replete with unsupported

misstatements, immaterial facts, and mischaracterizations of the record.   Plaintiff submitted

volumes of irrelevant and immaterial documents, some of which are referenced only collectively

in the Opposition, and none of which support the exercise of personal jurisdiction over AEGON

USA, LLC in Arkansas, or the merits of any claims by plaintiff against AEGON USA, LLC.

This Court's Local Rule 56.1 provides in pertinent part:

> In addition to the requirements set forth in Local Rule 7.2, the following
> requirements shall apply in the case of motions for summary judgment.
>
> (a)     Any party moving for summary judgment pursuant to Rule
> 56 of the Federal Rules of Civil Procedure, shall annex to the notice of
> motion a separate, short and concise statement of the material facts as to
> which it contends there is no genuine issue to be tried.
>
> (b)     If the non-moving party opposes the motion, it shall file, in
> addition to any response and brief, a separate, short and concise statement
> of the material facts as to which it contends a genuine issue exists to be
> tried.
>
> (c)     All material facts set forth in the statement filed by the
> moving party pursuant to paragraph (a) shall be deemed admitted unless

controverted by the statement filed by the non-moving party under paragraph (b).

*Id.* AEGON USA, LLC submitted its Statement of Material Facts in Support of AEGON USA, LLC's Motion for Summary Judgment (Docket #59-1) ("AEGON USA, LLC's Statement," *see supra*, note 3) as required under Local Rule 56.1(a).  With his Opposition, plaintiff submitted an opposing statement of facts which makes no attempt to controvert the facts set forth in paragraphs 1-12 and 14-31 of AEGON USA, LLC's Statement.[4]  Thus, in accordance with Local Rule 56.1(c), the facts set forth in paragraphs 1-12 and 14-31 of AEGON USA, LLC's Statement are "deemed admitted."  *See* LR 56.1(c).[5]

The following material facts relevant to personal jurisdiction were not controverted and are now established for purposes of AEGON USA, LLC's Motion:

- AEGON USA, LLC does not have any relationship with the plaintiff, his insurance policy, or his claims.[6]

- AEGON USA, LLC is a holding company, incorporated in the State of Iowa, with its principal office in Cedar Rapids, Iowa, and a second office in Baltimore, Maryland.[7]

---

[4] *See* Statement of Material Facts in Support of Plaintiff's Opposition to Defendant AEGON USA, LLC'S Motion for Summary Judgment (Docket #74-1) ("Plaintiff's Statement").

[5] The first paragraph of Plaintiff's Statement alleges that AEGON USA, LLC "maintains a 'principal office' in Little Rock, Arkansas."  *See* Plaintiff's Statement ¶ 1 (citing Docket #75-1, plaintiff's "Exhibit A, p. 66").  The cited exhibit is a deposition transcript from another action which does not mention AEGON USA, LLC, or any "principal office" of any company, in Little Rock, Arkansas or elsewhere.  This unsupported allegation is the only "fact" alleged by plaintiff which attempts to controvert any part of AEGON USA, LLC's Statement.  *Compare* AEGON USA, LLC's Statement ¶ 13 ("AEGON USA, LLC does not own any property or maintain *any offices in Arkansas* . . . .") (citing Beardsworth Decl. ¶ 9) (emphasis added); *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) ("'A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (other internal quotations and citations omitted).

[6] Beardsworth Decl. ¶¶ 17-19.

- AEGON USA, LLC does not own any real property in Arkansas, and despite the contention in paragraph 1 of Plaintiff's Statement, which is unsupported, AEGON USA, LLC does not maintain any office in Arkansas.[8]

- AEGON USA, LLC is <u>not</u> an insurance company, and does not underwrite or sell insurance policies to consumers in Arkansas or in any other state.[9]  In fact, AEGON USA, LLC does not sell any products or services to consumers in Arkansas.[10]

- AEGON USA, LLC has no sales agents or employees in the State of Arkansas.[11]

- AEGON USA, LLC was not involved in the sale of the plaintiff's cancer insurance policy.[12]

- AEGON USA, LLC is not licensed to do business in Arkansas and does not conduct business or sell any insurance or other goods or services to customers or consumers in Arkansas.[13]

- AEGON USA, LLC was a separate and distinct legal entity from Equity National Life Insurance Company prior to Equity National's merger into Life Investors in June of 1995.[14]

- AEGON USA, LLC was a separate and distinct legal entity from Life Investors prior to Life Investors' merger into Transamerica effective October 2, 2008.[15]

---

[7] *Id.* ¶¶ 5-6.

[8] *Id.* ¶ 9; *supra* note 5.

[9] *Id.* ¶ 6.

[10] *Id.* ¶ 7.

[11] *Id.* ¶ 8.

[12] *Id.* ¶ 18.  A copy of the plaintiff's cancer insurance policy is attached to the Complaint as Exhibit A.  Plaintiff's policy is referred to herein as the "Policy."

[13] *Id.* ¶ 7.  Nor does AEGON USA, LLC file a tax return in Arkansas.  *Id.* at ¶ 10.

[14] *Id.* ¶ 11.

[15] *Id.* ¶ 12.

- AEGON USA, LLC is and has always been a separate and distinct legal entity from Transamerica.[16]

- AEGON USA, LLC is not a direct parent of Transamerica and does not directly own the stock of Transamerica.[17]

- AEGON USA, LLC and Transamerica have at all relevant times observed corporate formalities, including but not limited to maintaining separate books and records.[18] AEGON USA, LLC and Transamerica each have, and have always had, separate Boards of Directors.[19]

- AEGON USA, LLC does not direct the day-to-day business operations and activities of Transamerica, and AEGON USA, LLC did not in the past direct the day-to-day business operations of Equity National or Life Investors.[20]

- Plaintiff applied for and purchased a cancer insurance policy from Equity National, not from AEGON USA, LLC.[21]

- AEGON USA, LLC is not party to any cancer insurance policies issued by Equity National, Life Investors, or Transamerica, including the Policy issued to plaintiff.[22]

- No premiums paid on the cancer insurance policy purchased by plaintiff from Equity National were paid to or accepted by AEGON USA, LLC.[23]

- AEGON USA, LLC did not process, pay, or deny any of plaintiff's claims under the Policy. AEGON USA, LLC does not process or pay claims under any cancer insurance policies issued by Equity National, Life Investors, or Transamerica.[24]

---

[16] *Id.* ¶ 13.

[17] *Id.* ¶ 14.

[18] *Id.* ¶ 15.

[19] *Id.* ¶ 16.

[20] *Id.*

[21] Declaration of Connie Whitlock, filed November 24, 2010 (Docket #60-2) ¶ 5. ("Whitlock Decl.").

[22] Beardsworth Decl. ¶ 17.

[23] *Id.* ¶ 19.

- AEGON USA, LLC does not have any employees engaged in the payment of insurance claims.[25]

- The term "AEGON USA" without the suffix "Inc." or "LLC" is used to refer generally and collectively to all of the AEGON affiliated companies operating in the United States, as distinguished from AEGON USA, Inc., now known as AEGON USA, LLC, which is a single legal entity.[26]

- The term "AEGON Financial Partners" does not refer to AEGON USA, LLC. AEGON Financial Partners is not a division or part of AEGON USA, LLC. AEGON Financial Partners refers to a service organization shared by various operating insurance companies, including Life Investors and Transamerica.[27]

Simply ignoring these facts, which have not been and cannot be disproven by any contrary evidence, plaintiff proffers a host of immaterial documents and inaccurate "factual" arguments in support of his position that personal jurisdiction over AEGON USA, LLC is appropriate in this case. Some of the more egregious examples are discussed below.

**"AEGON USA, Inc." Versus "AEGON USA"**   Plaintiff does not dispute the testimony of James Beardsworth which establishes:

> The term "AEGON USA" without the suffix "Inc." or "LLC" is used to refer generally and collectively to all of the AEGON affiliated companies operating in the United States, as distinguished from AEGON USA, LLC which is a single legal entity. The AEGON affiliated companies operating in Canada are referred to collectively as "AEGON Canada." The AEGON affiliated companies operating in the United States, Canada, and Latin America are referred to collectively as "AEGON Americas."

---

[24] *Id.*

[25] *Id.* Moreover, AEGON USA, LLC was not involved in handling or responding to any complaints by plaintiff to the Alabama Department of Insurance regarding claims under his Policy with Equity National. *Id.*

[26] *Id.* ¶ 20.

[27] *Id.*

Beardsworth Decl. ¶ 20.   Plaintiff ignores this distinction and disingenuously attempts to re-define AEGON USA, LLC as the general term "AEGON USA," which refers to all affiliates in the United States.   *Id*.   Plaintiff's attempted subterfuge renders Plaintiff's Statement immaterial and unsupported.

For example, plaintiff's Statement grossly mischaracterizes a section of an AEGON 2005 Annual Report (the "2005 Report").   *See* Plaintiff's Statement at ¶¶ 2(o)-(p) and Docket #75-5 (plaintiff's Exhibit C).   Rather than supporting plaintiff's position, the 2005 Report confirms Mr. Beardsworth's testimony that AEGON USA, Inc., now known as AEGON USA, LLC, is merely a holding company,[28] and that "AEGON USA" (without "Inc." or "LLC") is used to refer generally to <u>all</u> operating companies within the United States, including Transamerica and other affiliated, independent insurance companies.   The 2005 Report states:

> The ***companies operating in the United States*** are collectively referred to as ***AEGON USA***.   Reference to AEGON USA in this report refers individually or collectively to the corresponding operating companies. The companies operating in Canada are collectively referred to as AEGON Canada.

2005 Report at 66 (emphasis added).   Thus, it is undisputed that "AEGON USA, Inc." refers to a single holding company, whereas "AEGON USA" without "Inc." or "LLC" refers to all of the AEGON affiliated companies operating in the United States.

Throughout his Statement and his Opposition, plaintiff pretends that documents and statements pertaining to AEGON USA are speaking about AEGON USA, Inc. or AEGON USA, LLC.   For example, plaintiff falsely states that AEGON USA, <u>Inc.</u> has "eleven" offices located throughout the United States.   Plaintiff cites to page 66 of the 2005 Report, which is describing

---

[28] 2005 Report at 66 ("AEGON USA, Inc., the principal holding company of AEGON USA, was formed in 1989 when AEGON consolidated its holding companies in the United States under one financial services holding company.").

eleven "principal offices" of various "AEGON USA" companies.   Undisputed testimony establishes that AEGON USA, Inc., now known as AEGON USA, LLC, has offices only in two locations:  Cedar Rapids, Iowa, and Baltimore, Maryland.  *See* Beardsworth Decl. ¶ 5.  Plaintiff also makes the unsupported contention that AEGON USA, LLC has "business operations" that are "conducted through its subsidiaries, including Life Investors and Transamerica."[29]  Similar mischaracterizations permeate plaintiff's entire Opposition, and do not establish any Arkansas minimum contacts by AEGON USA, LLC.[30]

**Market Conduct Examination Report**   Plaintiff attaches to his Opposition an unauthenticated copy of a document styled a Market Conduct Examination Report of the Life and Health Business of Life Investors (the "Market Conduct Report").  *See* Opposition at 7 n.1; Exhibit F.   Referring to this Market Conduct Report, plaintiff alleges that Life Investors Insurance Company of America, a predecessor of Transamerica, "***was actually known as AEGON USA, Inc.***" Opposition at 7 n.1 (emphasis in original) (citing Market Conduct Report at 7).  The Market Conduct Report says no such thing.  Rather, the report states that in February, 1988, "***Life Investors, Inc. (now known as AEGON USA, Inc.*** …) became a direct, wholly-owned subsidiary of AEGON U.S. Holding Corporation."   Market Conduct Report at 7 (emphasis added).  Life Investors, Inc. was an entirely different company from Life Investors

---

[29] *See* Plaintiff's Statement at ¶ 2(s) (citing Docket #75-3 (Exhibit B, pp. 8-10) to the July 20, 2007 Deposition of Jeanne de Cervens in another action.  When testifying about the company, AEGON USA, Inc., however, Ms. de Cervens actually testified that its "operations are limited to holding the stock of its subsidiary companies.  It is a holding company."  *Id.* at p. 10.

[30] In another misstatement, plaintiff cites page 69 of the 2005 Report for the proposition that "AEGON N.V., the ultimate parent, reports Life Investors revenue as attributable to AEGON USA in its SEC filings."  Opposition at 6.  There is no support for this statement on page 69 of the 2005 Report, which makes no mention of SEC filings, and plaintiff fails to demonstrate how any such SEC filing by AEGON N.V. would be material.

Insurance Company of America.  Plaintiff presents no evidence that Life Investors Insurance Company of America was ever known as "Life Investors, Inc.," nor could he.

**AEGON Financial Partners**   Plaintiff also tries to claim jurisdiction by inventing a company called "AEGON Financial Partners, Inc."   Opposition at 1.   Plaintiff provides no evidence for his assertion that this purported company is a "subsidiary" of AEGON USA, LLC. *Id.*   In fact, "AEGON Financial Partners, Inc." does not exist as a legal entity. Mr. Beardsworth's uncontroverted testimony establishes that:

> The term "AEGON Financial Partners" does not refer to AEGON USA, LLC.  AEGON Financial Partners is not a division or part of AEGON USA, LLC.  AEGON Financial Partners refers to a service organization shared by various operating insurance companies, including Life Investors and Transamerica.

Beardsworth Decl. ¶ 20.  This service organization has a connection to Transamerica, but "is not a division or part of AEGON USA, LLC." *Id.*[31]

**Plaintiff's Correspondence with Life Investors**   On page 7 of his Opposition, plaintiff includes a section entitled "AEGON USA's Implied Involvement With Plaintiff's Cancer Policy Through The Use of Life Investors And Similar Circumstances Supporting Said Inference."  The "facts" alleged on this page are either unsupported or immaterial.  For example, with no citation to any evidence, plaintiff alleges that AEGON USA, LLC "has the same PO Box mailing address and phone number as Life Investors listed on mailings and communications with Plaintiff." Opposition at 7.  Plaintiff does not direct the Court to a single piece of correspondence from Life Investors to the plaintiff which includes the name or address for AEGON USA, LLC.  Plaintiff

---

[31] Plaintiff also refers to "AEGON Financial Services," which plaintiff defines as "AEGON Financial" in his Opposition.  *See* Opposition at 2.  "AEGON Financial Services" is neither a subsidiary of AEGON USA, LLC nor a legal entity, and plaintiff provides no evidence to support his invention and conclusory argument that alleged "contacts" of "AEGON Financial Services" should be imputed to AEGON USA, Inc.

references several irrelevant documents which do not support this allegation.  For example,
plaintiff submitted with the Opposition a February 10, 2006 letter from Life Investors'
administrative offices in Louisville, Kentucky to the plaintiff (Docket #75-10, Exhibit H), two
Explanation of Benefits forms to plaintiff from Life Investors' Louisville, Kentucky office
(Docket #75-11, Exhibit I), and copies of two cancelled checks to plaintiff from Life Investors'
Louisville, Kentucky office (Docket #75-12, Exhibit J).  Plaintiff also attached a blank set of
"Instructions and Check-List" for submitting a claim to Life Investors' Louisville, Kentucky
administrative office.  These instructions do not mention AEGON USA, LLC, and nowhere do
they reference AEGON USA, LLC's offices in either Iowa or Maryland.  Docket #75-9,
Exhibit G.  Similarly, not one of these immaterial pieces of correspondence references any
address in Arkansas.[32]

Plaintiff's Opposition is replete with similar shotgun allegations.  Plaintiff repeatedly
asserts that AEGON USA, LLC conducts business "operations" through its subsidiaries, simply
because AEGON USA, LLC owns the stock of certain subsidiary companies.  Plaintiff alleges
that AEGON USA, LLC "uses" employees of its subsidiaries, but provides no evidence and
gives no clue as to how this relates to the State of Arkansas.[33]  Plaintiff alleges an "intimate level

---

[32] In this same paragraph, plaintiff points out that his benefit checks were signed by
Brenda Clancy, who was the Executive Vice President of Life Investors.  Opposition at 7 (citing
Docket #75-12, Exhibit J).  Although plaintiff alleges that Ms. Clancy was also a Vice President
of AEGON USA, Inc., he fails to explain the relevance of such an allegation.  The benefit checks
attached as Exhibit J are checks from "Life Investors Insurance Company of America" in
Louisville, Kentucky, and they are signed, "Life Investors Insurance Company of America, by
Brenda K. Clancy."  Docket #75-12, Exhibit J.  On this same page of his Opposition, plaintiff
also references documents in a different case that make no mention of AEGON USA, Inc. or
AEGON USA, LLC.

[33] Plaintiff's contention that AEGON USA, LLC's "employees who are located in Cedar
Rapids, are generally employed by Life Investors and carry out" AEGON USA, LLC's
operations, Opposition at 6, is contradicted by the Declaration of Mary Taiber, which he cites to

*(footnote continued on next page)*

of cooperation," but cites no evidence to establish any such cooperation involving the holding company with respect to administration of plaintiff's insurance policy.  Opposition at 8.

In sum, plaintiff's Opposition is a conglomeration of unsupportable distortions of the record, and conclusory generalizations, which do not controvert the ***material*** facts set forth in AEGON USA, LLC's Motion and supporting papers.  Plaintiff's conjecture is inadequate to raise a genuine issue of material fact regarding AEGON USA, LLC's contacts with the State of Arkansas, and the Opposition utterly fails to establish any contractual relationship upon which plaintiff could state any claims against AEGON USA, LLC.

## ARGUMENT

Plaintiff's Opposition does not establish minimum contacts between AEGON USA, LLC and the State of Arkansas, and it entirely fails to address the merits of plaintiff's legal claims with respect to AEGON USA, LLC.  Instead, plaintiff ignores the elements of his claims and resorts to three "vicarious" theories in an attempt to establish personal jurisdiction:  conspiracy, agency, and alter ego.  When viewed in light of the facts actually established, the record presents nothing more than the relationship between a holding company and its current and former subsidiaries.  Plaintiff's unsupported contentions do not support personal jurisdiction or any claims against AEGON USA, LLC.  *See Steinbuch v. Cutler*, 518 F.3d 580, (8th Cir. 2008) (affirming dismissal of claims against Disney Publishing Worldwide on personal jurisdiction grounds where plaintiff alleged Disney was responsible for the acts of its subsidiary in Arkansas); *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (A "corporation

---

support this position.  *See* Docket #75-6, Exhibit D (Taiber Decl. ¶ 2) (testifying that AEGON USA, Inc. had "no employees").

is not doing business in a state merely by the presence of its wholly owned subsidiary." )

(citation omitted).

I.   **PLAINTIFF HAS NOT SATISFIED THE LEGAL STANDARD NECESSARY TO DEMONSTRATE PERSONAL JURISDICTION OVER AEGON USA, LLC IN THIS ACTION**

The exercise of jurisdiction over a non-resident defendant, such as AEGON USA, LLC, by an Arkansas court must be consistent with the Arkansas long-arm statute and the United States Constitution.  Due process under the United States Constitution requires that out-of-state defendants have certain "minimum contacts" with the forum state so that defense of the suit does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington Office of Unemployment Compensation & Placement,* 326 U.S. 310, 316 (1945) (citation omitted).   The minimum contacts requirement insures that the defendant's "conduct and connection with the forum State" is such that the defendant "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  It is well-settled that a non-resident defendant's contacts must be more than "random, fortuitous, or attenuated."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Plaintiff has the burden of establishing that the court has personal jurisdiction over AEGON USA, LLC.  *See Comfac Corp. v. The Bradley Factor, Inc.*, 2005 WL 2176938, at *1 (E.D. Ark. Aug. 23, 2005) (citing *Epps*, 327 F.3d at 647).  Plaintiff has not met his burden, particularly in light of the undisputed evidence supporting AEGON USA, LLC's Motion.

A.   **Plaintiff's Conspiracy Theory Of Personal Jurisdiction Lacks Merit**

The Complaint does not allege a "conspiracy" between AEGON USA, LLC and Life Investors, or any other entity, and the deadline for amending the pleadings in this case has long since passed.  Nevertheless, plaintiff now invokes the existence of an alleged conspiracy for purposes of establishing personal jurisdiction over AEGON USA, LLC.  Plaintiff describes the

so-called "conspiracy" as "AEGON USA's agreement with its wholly owned subsidiaries . . . *to sell and administer Cancer Only Policies* on its behalf in Arkansas."   Opposition at 11 (emphasis added).  Plaintiff offers no evidence of any such conspiracy.  The record shows that plaintiff's policy was sold by Equity National on its own behalf, and that plaintiff applied directly to Equity National and years later submitted claims to Life Investors.  There is no evidence in the record that Equity National or Life Investors was acting on behalf of AEGON USA, LLC in connection with plaintiff's insurance policy.

Plaintiff does not cite a single Arkansas or Eighth Circuit decision in support of his argument that personal jurisdiction could be appropriate here based on an alleged conspiracy. Instead, plaintiff relies on inapposite case law from other federal and state courts.  For example, plaintiff relies on *Chenault v. Walker*, 36 S.W.3d 45, 54-55 (Tenn. 2001) a Tennessee case in which a Tennessee resident brought an action against another Tennessee resident and out-of-state defendants, alleging, among other things, a claim of civil conspiracy to defraud him in Tennessee in connection with investments in hotels.  36 S.W.3d at 47, 52.  The plaintiff alleged that the Tennessee defendant committed a tort in Tennessee, and the court addressed "whether by virtue of a civil conspiracy to defraud," the Tennessee defendant's contacts with Tennessee could be imputed to the non-resident defendants.  *Id.* at 51-52.

*Chenault* is clearly distinguishable.  First, the *Chenault* case was not decided under Arkansas law, and Arkansas has not adopted a conspiracy-based theory of personal jurisdiction. Second, the Complaint here does not even allege a civil conspiracy, and plaintiff has submitted no evidence of a conspiracy.  Third, the plaintiff lives in Alabama, not Arkansas, and plaintiff has not alleged or presented any evidence that a tort was committed against him in Arkansas.

Plaintiff also relies on a Tennessee federal district court case, *American Copper & Brass, Inc. v. Mueller Europe, Ltd.*, 452 F. Supp. 2d 821 (W.D. Tenn. 2006).  As the district court in

14

*American Copper* recognized, however, conclusory allegations of a conspiracy such as those raised in the plaintiff's Opposition are insufficient to establish personal jurisdiction, even in a jurisdiction that recognizes a conspiracy theory of personal jurisdiction:

> "The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough.  Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums."

452 F. Supp. 2d at 831 (quoting *Chenault*, 36 S.W.3d at 55).  Similarly, under Arkansas law, "[c]onclusory allegations will not support a civil conspiracy claim."  *Smith v. Barney*, 2009 WL 928978, at *4 (E.D. Ark. March 31, 2009); *accord, Concrete Co. v. Lambert* 510 F. Supp. 2d 570, 587 (M.D. Ala. 2007) (applying substantive law of plaintiff's home state of Alabama to merits of a civil conspiracy claim, and holding that such a claim "justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy") (internal citations omitted).  Thus, plaintiff's reliance on *Chenault* and *American Copper* is misplaced.

Even if Arkansas did recognize a conspiracy theory of personal jurisdiction, plaintiff has not supported any such theory here with any specific material facts demonstrating a genuine issue for trial on the merits of a conspiracy claim.  A conspiracy requires that two or more persons combine to engage in an unlawful activity or a lawful activity through unlawful means. *See Smith*, 2009 WL 928978, at *4 ("To establish a claim for civil conspiracy, Plaintiff must show 'a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some [lawful] purpose . . . by unlawful, oppressive or immoral means, to the injury of another.'"); *Chambers, M.D. v. Stern*, 64 S.W.3d 737, 743-44 (Ark. 2002) (granting summary judgment where party failed to show any acts committed "to accomplish an

unlawful, oppressive, or immoral purpose").[34]   Plaintiff alleges in this case that his insurance claim was allegedly underpaid when it was submitted and administered under Life Investors' 2006 updated claim forms and procedures.

Plaintiff contends that the "conspiracy" alleged in his Opposition "arises out of the fact that at least one key person involved" in Life Investors' decision to implement the use of new claim forms and procedures "had multiple roles by virtue of having numerous titles with various AEGON USA subsidiaries and with AEGON USA directly."   *See* Opposition at 12.   Plaintiff's contention does not establish any element of a conspiracy.   As an initial matter, there is nothing unlawful about an individual holding positions in two different corporate entities.[35]   Moreover, "[c]onclusory allegations will not support a civil conspiracy claim; Plaintiff 'must provide some facts suggesting a ***mutual understanding*** between defendants'" to commit allegedly unlawful acts.   *Smith*, 2009 WL 928978, at *4 (granting summary judgment to defendant on plaintiff's claims for civil conspiracy where plaintiff "provided no evidentiary support for his civil conspiracy claim") (emphasis added; citation omitted).

Plaintiff's contention that a conspiracy existed because Brenda Clancy held titles with both Life Investors and AEGON USA, LLC is legally unsupportable.   *See Epps*, 327 F.3d at 649 ("A parent corporation is not liable for the debts of its subsidiary merely because the parent holds

---

[34] The law in plaintiff's home state of Alabama is similar.   *See Perkins v. City of Creola*, 713 F. Supp. 2d 1326, 1348 (S.D. Ala. 2010) (elements of a civil conspiracy include "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means," and the existence a "valid underlying cause of action").

[35] It is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."   *U.S. v. Bestfoods,* 524 U.S. 51, 69 (1998) (citations omitted).   In this case, plaintiff alleges that the Executive Vice President of Life Investors, Brenda Clancy, was also a Vice President of AEGON USA, LLC.   Opposition at 13.

the controlling interest or because the two are managed by the same officers.") (citation omitted).

Moreover, the only evidence plaintiff submitted that establishes any connection between

Ms. Clancy and his claims is her signature on his benefit checks **on behalf of Life Investors**.

Those checks do not include any reference to AEGON USA, LLC.  *See* Docket #75-12,

Exhibit J; *Compare Bestfoods*, 524 U.S. at 69-70 ("The Government would have to show that,

despite the general presumption to the contrary, the officers and directors were acting in their

capacities as CPC officers and directors, and not as Ott II officers and directors, when they

committed those acts.").

As demonstrated by plaintiff's evidentiary submission, Ms. Clancy was an Executive

Vice President *for Life Investors* based in Cedar Rapids, Iowa.[36]  Plaintiff's allegation that

AEGON USA, LLC was "in the room" when Life Investors decided to implement its new forms

and procedures is based *solely* on the fact that Ms. Clancy also held a position with AEGON

USA, LLC.  Opposition at 12.  This lone contention does not establish a conspiracy.[37]

Plaintiff's conspiracy theory is based on speculation and conclusory allegations, and thus,

he fails to make a showing that personal jurisdiction over AEGON USA, LLC would be

appropriate even if Arkansas recognized personal jurisdiction grounded in a conspiracy claim.

---

[36] *See* Docket #75-1, Deposition of Connie Whitlock, at 53 ("Q:  Who do you report to? A:  Brenda Clancy.  Q:  And what is her title?  A.  Executive vice president of Life Investors.  Q. Is she a Life Investors employee?   A.   I believe her payroll – her paycheck is by Life Investors."); *Id*. at 58 ("Q.  …Is Brenda Clancy based here in Little Rock?  A.  No.  Q.  Where is she based?  A. In Cedar Rapids.").

[37] The record reflects that Ms. Clancy was approached by her Life Investors' subordinate, Connie Whitlock, a Vice President of Life Investors, to confirm Ms. Whitlock's decision to implement Life Investors' new claim forms and procedures effective in early 2006.  Docket #75-2, Deposition of Connie Whitlock. at 101-06 (testifying that she sought Ms. Clancy's agreement with the decision to implement the new forms and procedures, which would enable Life Investors to more accurately calculate and pay benefits based on a medical provider's "actual charges").

*See Hugh Chalmers Motors, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 184 F.3d 761, 763 (8th Cir. 1999) (conclusory allegations of combination or conspiracy were insufficient to avoid summary judgment); *Smith*, 2009 WL 928978, at *4 ("Conclusory allegations will not support a civil conspiracy claim.").

### B.      Plaintiff's Agency Theory Cannot Establish Personal Jurisdiction

Plaintiff's agency theory likewise does not establish personal jurisdiction over AEGON USA, LLC in Arkansas.  Plaintiff purchased his insurance policy from Equity National, and after Equity National merged into Life Investors in 1995, Life Investors assumed the administration of his policy.  *See supra*, note 3.   Plaintiff's 2006 insurance claims were administered by Life Investors, on its own behalf, as the insurance company which owned the contractual obligations under the policy.   AEGON USA, LLC's Statement ¶ 23.   None of the claims examiners who administered plaintiff's claims were employed by AEGON USA, LLC, and AEGON USA, LLC did not process, pay, or deny any of plaintiff's claims.   *Id.* ¶¶ 25-26.   Plaintiff received Life Investors' 2006 updated claim forms and procedures from Life Investors.   *Id.* ¶ 27.   AEGON USA, LLC has never communicated with plaintiff regarding his claims.   *Id.* ¶ 29.   All of these facts are undisputed.   *See supra*, pp. 4-7.

Plaintiff has submitted no evidence that Life Investors was acting as an agent of AEGON USA, LLC in administering plaintiff's policy.   Life Investors was at all relevant times an insurance company that administered insurance policies sold by its agents and the agents of its predecessors.   Life Investors underwrote and was responsible for the obligations under its insurance policies, including the Equity National policy purchased by plaintiff.   There is no basis for plaintiff's conclusory argument that Life Investors' employees were also acting as agents of AEGON USA, LLC when they administered Life Investors' own insurance policies, especially

given that AEGON USA, LLC had no policies that required administration.  Plaintiff's argument is not supported by any record evidence.

In addition, plaintiff's theory of asserting personal jurisdiction over a holding company based solely on its subsidiary's contacts with the jurisdiction has been soundly and repeatedly rejected in this Circuit as a matter of law.  *Steinbuch*, 518 F.3d at 589 ("[M]ere ownership of subsidiary is insufficient to justify personal jurisdiction."); *Epps*, 327 F.3d at 649 ("A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary.") (citation omitted).

The authorities upon which plaintiff relies are inapposite.  For example, plaintiff cites *Romak USA, Inc. v. Rich*, 384 F.3d 979 (8th Cir. 2004), for the proposition that "a court may exercise jurisdiction over a defendant through the acts of his agent."  Opposition at 14.  In *Romak*, the Eighth Circuit <u>affirmed</u> the dismissal of a defendant on personal jurisdiction grounds, rejecting plaintiff's agency theory of personal jurisdiction.  384 F.3d at 985-96.  The court explained that "[a]lthough a court may exercise personal jurisdiction over a defendant through the acts of his agent, '[a] party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority.'"  *Id.* at 985 (citation omitted).  "[E]xpress authority and apparent authority arise from the acts of the principal, not the alleged agent."  *Id.*; *see also BE&K Constr. Co. v. United Bhd. of Carpenters & Joiners of America, AFL-CIO*, 90 F.3d 1318, 1326 (8th Cir. 1996) ("An essential element of any agency claim is that the asserted principal has the right to control the actions of the asserted agent.").[38]

---

[38] Plaintiff's citations to *Anderson v. Dassault Aviation*, 361 F.3d 449 (8th Cir. 2004) and to a concurrence in *Clune v. Alimak*, 233 F.3d 538 (8th Cir. 2000) are unhelpful.  Both of those cases involved foreign manufacturers whose products were sold to U.S. subsidiaries and entered

*(footnote continued on next page)*

Because the plaintiff in *Romak* had submitted no evidence that individuals dealing with the plaintiff were acting within the scope of any agency authority from the non-resident defendant, the Eighth Circuit affirmed the district court's finding that it did not have personal jurisdiction over the non-resident defendant. *Romak*, 384 F.3d at 985. Thus, the *Romak* opinion supports summary judgment in AEGON USA, LLC's favor on personal jurisdiction grounds. Plaintiff has not submitted evidence of any dealings between Life Investors and the plaintiff in Arkansas in which Life Investors was acting as an actual or apparent agent of AEGON USA, LLC. The only evidence in this case is that Life Investors' communications and dealings with the plaintiff were undertaken on its own behalf as plaintiff's insurer.[39]

Plaintiff also relies on *Nixon v. Celotex Corp.*, 693 F. Supp. 547 (W.D. Mich. 1988), an inapposite Michigan case. In *Nixon*, a Michigan court applied Michigan law in an action brought by the plaintiffs claiming age discrimination, among other things, after they were discharged from their employment with defendant Celotex as part of a reduction of force. The plaintiffs also named JWC, Celotex's parent, in the lawsuit. The Michigan district court in *Nixon* determined

---

the stream of commerce in the state asserting personal jurisdiction. The products (an airplane in *Anderson* and a construction hoist in *Clune*) were alleged to be defective and the cause of personal injury. This is not a personal injury action, and it does not involve any product manufactured by AEGON USA, LLC. Rather, in this case, the product at issue is an insurance policy that was sold by Equity National, and subsequently administered by Life Investors and Transamerica. This case is controlled by *Epps*, where the Eighth Circuit rejected plaintiffs' attempts to establish personal jurisdiction in Arkansas over a non-resident holding company of various subsidiaries based on the parent/subsidiary relationship, the existence of common corporate officers, and the parent's inclusion of a subsidiary's assets and liabilities on its own SEC 10-K filings. *Epps*, 327 F.3d at 650-51 (affirming dismissal of non-resident holding company on personal jurisdiction grounds).

[39] On page 15 of the Opposition, plaintiff makes several bizarre references to Life Investors' employees located in Cedar Rapids, Iowa, and refers to the "Plaintiff's dealings with this Cedar Rapids office." *Id.* There is no evidence in the record that plaintiff had any communications or dealings with any Cedar Rapids office.

that it could assert specific personal jurisdiction over JWC because there was evidence that JWC provided Celotex with a personnel manual, that the decision "to reduce the Celotex sales force came from JWC," and because "JWC played a significant part in directing the employment practices and personnel decisions of Celotex" that were at issue in the lawsuit. *See id.* at 551. Thus, the court held, "[a]s a matter of fairness, JWC should be held accountable for its subsidiary's contacts with a forum when a lawsuit arises in that forum concerning conduct ***which JWC controls*.**" *Id.* (emphasis added).

In sharp contrast, the plaintiff here has presented no evidence that AEGON USA, LLC controlled the administration or payment of plaintiff's claims at issue in this case. In fact, all evidence is to the contrary. *See* AEGON USA, LLC's Statement at ¶¶ 16-31 (uncontroverted by plaintiff; establishing AEGON USA, LLC's non-involvement with the activities of its subsidiaries' insurance operations, and the lack of any connection between AEGON USA, LLC and plaintiff's policy and claims).

## C. Plaintiff's Alter-Ego Theory Is Unsupportable

Plaintiff's alter ego theory of personal jurisdiction also fails. The Eighth Circuit's opinion in *Epps* recognizes a strong presumption that separate corporations are to be treated as separate entities. *Epps*, 327 F.3d at 649 (treatment of different corporations as separate entities may be disregarded "only when the privilege of transacting business in corporate form has been ***illegally abused*")** (emphasis added). Plaintiff has not established any basis for the Court to disregard the distinct corporate existence of AEGON USA, LLC and the insurance companies that issued and administered his policy.

Plaintiff's "alter ego" argument is based on his conclusory assertion that AEGON USA, LLC's contact with Arkansas "arises out of AEGON USA's regular practice of disregarding corporate formalities" (Opposition at 17). He provides no evidence of <u>any</u> such disregard of

corporate formalities.   Plaintiff contends that one of AEGON USA, LLC's two business addresses was shared by Life Investors in Cedar Rapids, Iowa.   Plaintiff provides no clue as to how the two different companies' use of an Iowa address which has no connection to the administration of plaintiff's insurance claims disregards a corporate formality.   Opposition at 19.[40]

"Before a party may obtain personal jurisdiction over a parent company, the plaintiff must show that the parent dominates and controls the subsidiary[.]" *Steinbuch*, 518 F.3d at 589 (Disney Publishing Worldwide not subject to personal jurisdiction in Arkansas based on the acts of a subsidiary publisher); *Epps*, 327 F.3d at 648-49 ("[P]ersonal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but *only if* the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego.")  (emphasis added; citations omitted).

As the Eighth Circuit explained in *Epps*:

> Piercing the fiction of a corporate entity should be applied with great caution.   A parent corporation is not liable for the debts of its subsidiary merely because the parent holds the controlling interest or because the two are managed by the same officers.   Rather, it is only when the privilege of

---

[40] Plaintiff's entire "alter ego" argument is based on overreaching conclusions and mischaracterizations of fact.   For example, plaintiff alleges that "nearly all the communications with Plaintiff over his benefits occurred" from the allegedly shared Cedar Rapids address.   This allegation is false.   Plaintiff's claims and correspondence were all administered from Louisville, Kentucky, where Life Investors, but not AEGON USA, LLC, maintained an office.   *See* Docket ##75-9 – 75-12 (Exhibits G, H, I & J).   Plaintiff contends "each entity is interchangeable depending on which facet of the Cancer Only Policy or part of the claims process is involved," but he identifies no part of the claims process or "facet" of his policy allegedly administered by AEGON USA, LLC.   Opposition at 19.   Plaintiff agrees that AEGON USA, LLC "does not have any products," but alleges it "clearly relies on the products marketed and sold by its subsidiaries to generate the revenue ultimately reported upstream."   *Id*.   This is nothing more than an irrelevant generalization that would apply to any stockholder of any company.

> transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded. A corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock.

*Id.* at 649 (internal citations omitted); *see also Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335-38 (1925) (a subsidiary's contacts with a particular state do not confer personal jurisdiction over the parent corporation); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (activities of a subsidiary not sufficient to render a parent subject to a court's jurisdiction, for service of process or otherwise); *Steinbuch*, 518 F.3d at 589 ("[M]ere ownership of subsidiary is insufficient to justify personal jurisdiction."). [41]

The Arkansas cases upon which plaintiff relies to support his "alter ego" theory do not apply here.  First, *Humphries v. Bray*, 611 S.W.2d 791 (Ark. Ct. App. 1981), is an Arkansas worker's compensation case with a highly distinct set of facts, which led to a decision by the Arkansas Court of Appeals to affirm the Worker's Compensation Commission's decision to pierce the corporate veil of a closely-held corporation.  The Commission decided to treat an incorporated entity owned by a single individual as a sole-proprietorship, where the owner ran two other sole-proprietorships from the same location and failed to maintain corporate

---

[41] State substantive law determines "whether and how to pierce the corporate veil." *Epps*, 327 F.3d at 649.  "The concept that a corporation is a legal entity existing separate and apart from those who compose it is a well-settled rule in the State of Alabama." *Co-Ex Plastics, Inc. v. AlaPak, Inc.*, 536 So. 2d 37, 38 (Ala. 1988).  In order to establish "alter ego" liability against AEGON USA, LLC, plaintiff was required, under Alabama law, to demonstrate that the corporate form was "being used to evade personal responsibility," and that AEGON USA, LLC was "controlling" and "subverting" Life Investors "in a manner to make it merely [AEGON USA, LLC's] instrumentality" in the administration of plaintiff's policy and claims. *Messick v. Moring*, 514 So. 2d 892, 894 (Ala. 1987).  The elements "essential for imposition of liability" under an alter ego theory include (1) ***complete control and domination*** of the subservient corporation's finances, policy and business practices" such that "the subservient corporation had no separate mind, will, or existence of its own;" (2) misuse of that complete control; and (3) that the misuse "proximately cause[d] the harm" alleged. *Id.* at 894-95 (emphasis added).  Plaintiff has made no attempt to meet this difficult standard, nor could he.

formalities such as separate books or bank accounts, such that it was "impossible to distinguish at times one business from the other." *Id*. at 792. The Commission's decision effectively treated the owner's employees as collective, in order to reach the five-employee minimum to provide worker's compensation benefits to one employee who had been severely injured on the job. *Id*. at 963-64.

Significantly, the Arkansas intermediate Court of Appeals recognized that the corporate form should not be lightly disregarded, and explained that its decision to affirm would have been different if "faced with a corporation that complied with the principles of corporate law both as to form and practice." *Id*. at 967. Here, AEGON USA, LLC and its subsidiaries "have at all relevant times observed corporate formalities, including but not limited to maintaining separate corporate books and records." Beardsworth Decl. ¶ 15. AEGON USA, LLC "does not direct the day-to-day business operations and activities of Transamerica." *Id*. ¶ 16. And AEGON USA, LLC was not involved in the administration of the plaintiff's insurance policy. *Id*. ¶ 19. Thus, unlike the business owner in *Humphries*, AEGON USA, LLC has at all times "complied with the principles of corporate law both as to form and practice." *Humphries*, 611 S.W.2d at 793.

Plaintiff also relies on *Flynn v. Greg Anthony Construction Co., Inc*, 95 F. App'x 726 (6th Cir. 2003), an unpublished case from the Sixth Circuit in which the court applied an alter ego theory of liability under federal ERISA law. The defendant in *Flynn* was a masonry company that defaulted on its obligation to make reports and financial contributions toward union employee ERISA benefit plans under a collective bargaining agreement. *Id*. at 728. The trustees of the plan joined several individuals and two other masonry companies as defendants. *Id*. at 728-29. The Sixth Circuit affirmed dismissal with respect to the individual defendants on personal jurisdiction grounds, but found that the plaintiff trustees had established a "*prima facie*" showing of personal jurisdiction under Rule 12(b) with respect to the masonry companies. *Id*. at

731.  Plaintiffs alleged that the companies were commingled, were engaged in the exact same type of masonry business, were operated as a single entity, and that Greg Anthony Construction used the other companies' letterhead, including for the submission of the union benefit reports at issue in the case.  *Id*. at 731.  The court determined that these allegations made a *prima facie* showing under federal ERISA law that the companies lacked "separate personalities," and there would be an "element of injustice or fundamental unfairness" absent reversal based on Greg Anthony Construction's apparent financial issues.  *Id*. at 738 (holding that, absent reversal, "[p]laintiffs presumably will be unable to recover the full amount due under the collective bargaining agreements.") (internal quotations omitted).

The *Flynn* case does not apply here for multiple reasons.  First, the legal standards applied by the Sixth Circuit in *Flynn* are not the same as the standards applicable in this case.  *Flynn* was an employee benefits case applying a federal standard for piercing the corporate veil in ERISA actions.  It did not apply the strict Alabama test for determining alter ego liability at issue in this case.  *See supra*, note 41.  Moreover, unlike the Rule 12(b) procedures at issue in *Flynn*, the summary judgment standard required plaintiff in this case to designate specific material facts demonstrating a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The facts here are also distinguishable from the facts at issue in *Flynn*.  Unlike *Flynn*, plaintiff has presented no evidence in this case that Transamerica, as the successor to Equity National and Life Investors, is insolvent or unable to satisfy a judgment.  The undisputed evidence here is, likewise, that AEGON USA, LLC and Transamerica have at all times observed corporate formalities and maintained separate personalities.  Unlike the masonry companies in

25

*Flynn*, AEGON USA, LLC and Transamerica do not engage in the same business.  AEGON

USA, LLC is a financial services holding company, whereas Transamerica is an insurance

company.  *See generally* AEGON USA, LLC's Statement at ¶¶ 16-31 (uncontroverted by

plaintiff).  AEGON USA, LLC is not an insurance company and does not market or sell

insurance.  *Id.* ¶ 12.  AEGON USA, LLC maintains separate books and records from

Transamerica.  *Id.* ¶ 18.  AEGON USA, LLC and Transamerica have separate Boards of

Directors.  *Id.* ¶ 21. AEGON USA, LLC does not direct the day-to-day business operations and

activities of Transamerica.  *Id.* ¶¶ 19-20.   The *Flynn* opinion does not establish plaintiff's alter

ego theory of personal jurisdiction.

Because plaintiff has not met his burden of demonstrating specific facts sufficient to

establish personal jurisdiction over AEGON USA, LLC in this case, AEGON USA, LLC is

entitled to summary judgment.

## II.   PLAINTIFF HAS NOT ADDRESSED THE MERITS OF HIS CLAIMS AGAINST AEGON USA, LLC, EFFECTIVELY CONCEDING THAT SUMMARY JUDGMENT IS APPROPRIATE

Even if a basis for personal jurisdiction over AEGON USA, LLC existed in this case,

which it does not, AEGON USA, LLC  is entitled to summary judgment on the merits of the

plaintiff's claims because plaintiff has failed to come forward with evidence supporting the

elements of any claim against AEGON USA, LLC.  *See Demerath Land Co. v. Sparr*, 48 F.3d

353, 356  (8th Cir. 1995) (affirming summary judgment in favor of defendants where plaintiff

"had an opportunity to respond to the [defendants'] challenge to its mail fraud claims, but failed

to offer any evidence that a genuine factual dispute existed").

To avoid summary judgment, a non-moving party "must do more than simply show that

there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  A party opposing a motion for summary judgment "may

not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *See Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (other internal quotations and citations omitted); *see also Mann v. Yarnell,* 497 F.3d 822, 825 (8th Cir. 2007) ("[t]he nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.") (internal citation and quotation marks omitted).

Plaintiff's failure to even reference the merits of his claims in response to AEGON USA, LLC's properly supported motion for summary judgment effectively conceded that AEGON USA, LLC is entitled to summary judgment.   *See, e.g., Hinsdale v. City of Liberal*, 2001 WL 980781, at *17 (10th Cir. Aug. 28, 2001) (affirming summary judgment for defendant and noting that plaintiff's failure to respond to summary judgment arguments was "fatal"); *Wilkins v. Jackson*, 2010 WL 4627854, at *2 (D.D.C. Nov. 16, 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded."); *Kruszewski v. Gorton*, 2007 WL 707346, at *2, n.3 (M.D. Pa. March 2, 2007) ("Plaintiff ignores this argument in his Brief in Opposition to Summary Judgment and the Court finds, accordingly, that Plaintiff has conceded the issue."); *Finch v. Texarkana Sch. Dist. No. 7 of Miller Cnty.*, 557 F. Supp. 2d 976, 985 (W.D. Ark. 2008) (same).

The plaintiff in this case has failed to set forth any facts establishing a genuine issue for trial with respect to his individual claims against AEGON USA, LLC and summary judgment is thus appropriate.[42]

---

[42] Even if plaintiff had attempted to support his claims against AEGON USA, LLC, for all of the reasons set forth in Transamerica Life Insurance Company's Memorandum of Law in
*(footnote continued on next page)*

**A.      AEGON USA, LLC Is Entitled To Summary Judgment As a Matter Of Law With Respect To Plaintiff's Contract Based Claims**

This action involves a contractual dispute relating to a cancer insurance policy purchased by plaintiff in 1994 from Equity National, a predecessor of Life Investors and Transamerica. Plaintiff alleges that he was diagnosed with cancer in 2007, that he submitted claims under the Policy to Life Investors in 2007, and that Life Investors did not pay him sufficient benefits under the Policy.  *See* Complaint ¶¶ 41-42; *see also* December 21, 2010 Order (Docket #79) at 2.

Under the law of plaintiff's home state of Alabama, a plaintiff asserting a breach of contract claim must establish the following elements:   (1) the existence of a valid contract binding the parties in the action; (2) his own performance under the contract; (3) the defendant's nonperformance; and (4) damages.  *See S.B. v. Saint James Sch.*, 959 So. 2d 72, 87 (Ala. 2006) (affirming summary judgment in favor of defendant on plaintiff's breach of contract claim). AEGON USA, LLC established through its Motion that there is no valid insurance contract between AEGON USA, LLC and the plaintiff, and AEGON USA, LLC has no contractual obligation to perform any act under plaintiff's insurance policy.  Plaintiff has made no attempt to establish the elements of his breach of contract claim.   Thus, AEGON USA, LLC cannot be liable for breach of contract, breach of an implied duty of good faith, declaratory relief under the policy, or bad faith denial of benefits.  *Ligon Furniture Co.,* 551 So. 2d 283, 285 (Ala. 1989) (affirming summary judgment on bad-faith claim where evidence showed that defendant was not a party to insurance contract).  This Court should grant summary judgment in favor of AEGON USA, LLC with respect to Counts I, II, IV and V of the Complaint.

---

Support of its Motion for Summary Judgment (Docket #77), plaintiff's insurance benefits were properly paid by Life Investors, and his claims are not viable as a matter of law.

**B.**      **AEGON USA, LLC Is Entitled To Summary Judgment As A Matter Of Law With Respect To Plaintiff's Claim for Unjust Enrichment**

Plaintiff similarly made no attempt to establish any "specific facts" that would support his unjust enrichment claim against AEGON USA, LLC or show that there is any genuine issue for trial. *Khoury*, 615 F.3d at 952. Plaintiff's unjust enrichment claim is merely a repackaging of his breach of contract claim, based on the conclusory allegation in his Complaint that all "Defendants" were unjustly enriched by collecting "insurance premium payments" and "by denying benefits or paying reduced benefits." Complaint ¶¶ 59-60.

The elements of a claim for unjust enrichment under Alabama law include proof that AEGON USA, LLC "holds money which, in equity and good conscience," belongs to plaintiff, or holds money which was improperly paid" to AEGON USA, LLC "because of mistake or fraud." *N. Assurance Co. of Am. v. Bayside Marine Constr., Inc.*, 2009 WL 151023, at *4 (S.D. Ala. Jan. 21, 2009). It is well-settled, under Alabama law, that "the doctrine of unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law." *Id.*

In this case, it is undisputed that plaintiff entered into a contract with Equity National, that plaintiff made premium payments to Equity National and Life Investors, but not to AEGON USA, LLC, and that plaintiff's insurance claims were administered and paid by Life Investors, not by AEGON USA, LLC. Plaintiff has never made a premium payment to AEGON USA, LLC and there is no evidence that AEGON USA, LLC received or is holding money belonging to plaintiff. Nor is there any evidence that plaintiff lacks an adequate remedy at law for his claims against his insurance company. Based on its "properly supported motion for summary judgment," *Khoury*, 615 F.3d at 952, AEGON USA, LLC is entitled to summary judgment with respect to plaintiff's claim for unjust enrichment and disgorgement (Count III).

## CONCLUSION

For the reasons set forth above and in AEGON USA, LLC's Motion and supporting documents, this Court should enter an order granting summary judgment in favor of AEGON USA, LLC.

This 11th day of February, 2011.

Respectfully submitted,

*/s/ John K. Baker*
John K. Baker, Esq., Ark. Bar No. 97024
MITCHELL, WILLIAMS, SELIG,
  GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas  72201
Telephone:  (501) 688-8800
Facsimile:  (501) 918-7850
jbaker@mwlaw.com

*/s/ Markham R. Leventhal* (with permission)
Markham R. Leventhal, Esq.
Farrokh Jhabvala, Esq.
Julianna Thomas McCabe, Esq.
JORDEN BURT LLP
777 Brickell Avenue, Suite 500
Miami, Florida  33131
Telephone:  (305) 371-2600
Facsimile:  (305) 372-9928
ml@jordenusa.com
fj@jordenusa.com
jt@jordenusa.com

*Attorneys for Defendant AEGON USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL  35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, Florida 32601

*Attorneys for Plaintiff*

The undersigned hereby certifies that a true and correct copy of the foregoing was served by First-Class U.S. mail upon the following on this 11th day of February, 2011:

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, Florida 32601

_____ */s/ John K. Baker* _____