**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

ROBERT W. HALL                                                 PLAINTIFF

v.                          Case No. 4:11-cv-00086-JLH

EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.                                                DEFENDANTS

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL**
**SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANT**
**TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY**
**JUDGMENT**

COMES NOW the Plaintiff, Robert W. Hall ("Hall"), by and through his undersigned

counsel, and hereby files this Memorandum in Support of Plaintiff's Cross-Motion for Partial

Summary Judgment and Response in Opposition to Defendant Transamerica Life Insurance

Company's Motion for Summary Judgment.  In support of this Memorandum, Plaintiff

incorporates the attached exhibits.

**INTRODUCTION**

This action arises out of the breach of a common and uniform insurance policy (hereafter

"the Policy") maintained by Plaintiff Hall with Defendant Transamerica Life Insurance Company

("Transamerica"), Equity National Life Insurance Company ("Equity National"), Life Investors

Insurance Company of America ("Life Investors")  and AEGON USA Inc. ("AEGON")

(hereafter "Defendants").  A true and correct copy of this Policy, filed with the Complaint, is

separately filed as Exhibit 1.  The overarching issue in this case, and particularly in these

summary judgment proceedings, concerns the Defendants' promise to pay benefits equal to the

"actual charges" or "actual fees" for treatments such as the radiation and chemotherapy benefits

1

identified in Parts 11 and 12, respectively, under Section E of the Policy, and the surgery benefits identified in Part 4 of Section E of the Policy.

For the reasons set forth in greater detail below, Hall is entitled to a partial summary judgment as to Count I and Count IV for declaratory and injunctive relief based on: (1) the plain language of the Policy using well-established rules of contractual interpretation; or alternatively (2) Transamerica's long-standing course of conduct involving the payment of "actual charges" benefits based on the amounts of medical bills.  It is clear based on the express terms of the Cancer Only Policy that it unambiguously indexes the amount of "actual charges" benefits to the amounts healthcare providers actually billed (i.e., "charged") for their services, not the discounted amount third party payors ultimately expensed when they tendered payment as Transamerica argues here.  Alternatively, should the Court conclude that the Policy's usage of the term "actual charges" in conjunction with other terms found throughout the policy gives rise to an ambiguity, the history of Transamerica's interpretation of "actual charges" in its supplemental cancer policies conclusively establish Transamerica's intention that "actual charges" benefits were to be paid in amounts equal to healthcare provider bills.

Transamerica has filed a summary judgment motion that seeks resolution across the board as to all claims. In that motion, Transamerica mainly contends Hall's claims fail because its unilateral change of the index for "actual charges" benefits is permitted under the Policy.  In support of that view, Transamerica contends that "actual charges" refers to the discounted amount a third party payor ultimately recorded as an expense for the services provided. Transamerica argues that the phrase "actual charges" in the Policy cannot be reasonably interpreted to mean the amounts charged on medical bills, and thus must mean amounts

ultimately received from third-party payors.  Transamerica cites *Claybrook v. Central United Life Ins. Co.*, 387 F.Supp.2d 1199 (M.D. Ala. 2005) as the main support for this argument.  The problem with Transamerica's heavy reliance upon *Claybrook* is that the policy at issue in that case (hereafter "the *Claybrook* policy", Exhibit 2) is sharply different from the Policy here. The *Claybrook* policy did not use separate terms to describe other indexes according to which various benefits were paid; instead, it used exclusively the term "actual charges" to set benefits. *See* Exhibit 2.  Based on those unique facts, the Court in *Claybrook* held the term "actual charges" in the "context of the policy" favored a construction that the specific policy was referring to the normal, reasonable charges that third party payors expensed.  *Claybrook*, 387 F.Supp.2d at 1204.

The Hall Policy, however, does not lend itself to the same construction.  Unlike the policy in *Claybrook*, the Hall Policy at issue uses a number of different terms to set different benefits. The terms in the Hall Policy relevant to the instant issue are (1) "usual and customary", which, under the express terms of the Policy, indexes certain benefits to the "normal" and "reasonable" charges customarily assessed in the geographic area where the medical service was rendered; and (2) "actual expenses", which on its face refers to the amount a third-party payor expensed.  As discussed in greater detail herein, the Court in *Claybrook* did not have before it a policy like Plaintiff Hall's Policy that included indexes for benefits that, by either express definition (as in the case of "usual and customary") or by plain language and usage ("actual expenses"). Therefore, the Hall Policy's definitions preclude the definition Transamerica seeks to impose upon "actual charges" here.  Transamerica's argument, therefore, ignores the problem created by the closely-related terms "usual and customary charges" and "actual expenses."

Hall respectfully requests that this Court enter a partial summary judgment as to Count

I for breach of contract and Count IV for declaratory and injunctive relief.  Hall further requests

that this Court deny Transamerica's motion for summary judgment as to all claims.

## **RELEVANT FACTS**

Under Section C of the Policy, an insured becomes entitled to benefits after being

"Positively Diagnosed"[1] with "Cancer"[2] while the policy is in force. These benefits are paid

according to provisions appearing throughout the Policy, provided that "(a) The Cancer is first

diagnosed after the 30-day 'waiting period'; and (b) The loss is incurred (e.g., treatment is

received or the service is performed) while this policy is in force, and (c) All other provisions of

this policy apply."  Ex. 1, Policy, Section C, p. 5.  Absent an assignment, these benefits are

payable directly to the policyholder, regardless of whether the insured has other health insurance

coverage in place.  *Id.* at 6.

The Policy uses various indexes for the different coverages offered. For instance,

coverage for different forms of surgical care is expressly indexed to the Policy's Schedule of

Operations[3]; coverages for "usual and customary" charges[4] are indexed to the "normal" and

"reasonable" charges in "the geographic area where provided"; and coverages for "actual

---

[1]The term "Positively Diagnosed" is specifically defined in the Policy, Section A, p. 4.

[2]The term "Cancer" is specifically defined in the Cancer Only Policy, Section A, p. 3.

[3]*See* Policy, Section E, pp. 11-12 ("Schedule of Operations")

[4]*See* Policy, Section A, p. 3 (defining "USUAL AND CUSTOMARY" as "The normal and reasonable charge for a service, an apparatus, or medicine in the geographic area where provided.").

expenses"[5] are indexed to the amount actually paid. Relevant to the instant case, the Policy also has a number of coverages based on "actual charges." Example of such benefits include those for radiation therapy and chemotherapy in Section E, Part 2, Items 11 and 12, p. 7, where Transamerica promises to "pay the actual charges up to the calendar year maximum shown in the Policy Schedule" in paragraph (a) for each Item.

On or about September 17, 1994, Hall purchased the Policy. Deposition of Robert Hall ("Hall Depo.", excerpts of which are attached as Exhibit 3), p. 90. On or about July 22, 2005 Connie Whitlock, Senior Vice President of Transamerica, authored an internal memorandum urging a change in the way in which Transamerica paid "actual charges" benefits after a company actuary expressed concern that the payment of those benefits based on medical bills had become too expensive. Deposition of Connie Whitlock (excerpts of which are attached hereto as Exhibit 4), pp. 15-18, 83-85, 89-91. On or about February 10, 2006, Transamerica allegedly sent Hall a computer-generated form letter ("Form Letter") advising that payment of benefits for "actual charges" would no longer be indexed to medical bills, effective May 1, 2006. *See* Exhibit 5. Hall does not remember receiving that letter or the revised claims forms that allegedly accompanied it. Hall Depo., p. 132. Previously, Transamerica had attempted to purchase Hall's Policy from him multiple times, but he was advised by a friend never to trade in his Policy because it was one of the old types of policies that paid actual charges. Hall Depo., pp. 196-197. In 2005, Hall requested that his primary care physician refer him to a specialist after he began exhibiting possible symptoms of prostate cancer. Hall Depo., p. 137. The specialist, Dr. Wade,

---

[5]*See, e.g.,* Policy, Section E, Parts 11, 12, and 17 pp. 7-9 (Alopecia benefits under Chemotherapy and Radiation Therapy and transportation and lodging benefits under Bone Marrow Donor Expenses).

monitored Hall's condition until about June 5, 2006, when Dr. Wade took a biopsy and

confirmed that Hall had prostate cancer.  Hall Depo., p. 137.  After he was diagnosed with

prostate cancer, Hall had to contact Transamerica to request claims forms.  Hall Depo., p. 134.

Hall had his prostate removed because of the cancer.  Hall Depo., pp. 112-13.  Hall's first claims

submission to Transamerica was sent on or about July 18, 2006.  Hall Depo., pp. 133-34.  In

August 2006 Hall received an Explanation of Benefits from Transamerica requesting more

information about his claim.  Hall Depo., pp. 143-44.  In response to that request, Hall sent a

second claims submission to Transamerica in March 2007.  Hall Depo., pp. 146-47.

Transamerica paid Hall's benefits in the amount that Hall's doctor accepted from Medicare for

his service.  See Transamerica Life Insurance Company's Motion for Summary Judgment, Doc.

76 ("Doc. 76"), Ex. 3, Ex. D (Life Investors' Explanation of Benefits ("EOB") for Hall's claim);

Doc. 76, Ex. 3, Ex. F (United Healthcare EOB).  The "amount charged" for Hall's surgery was

$4166.00, but the amount Dr. Wade accepted from Medicare was $1483.58.  See Doc. 76, Ex. 3,

Ex. F (United Healthcare EOB).  When Hall called Transamerica to complain about the

underpayment of his benefits, Transamerica's representative was extremely rude, so the next day

Hall called the Alabama Insurance Commissioner to lodge a complaint against Transamerica.

Hall Depo., p. 165.  On or about October 7, 2010 Hall wrote a letter to Transamerica cancelling

the Policy.  Hall Depo., p. 186.  Hall cancelled the Policy because "[Transamerica] didn't do

[him] right this time.  If [he has] cancer again, they're not going to do [him] right next time."

Hall Depo., pp. 186-87.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions,

6

answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* For the reasons below, Hall is entitled to partial summary judgment as to Count IV seeking declaratory and injunctive relief. Additionally, Transamerica's motion for summary judgment as to all claims should be denied in its entirety.

I.    **HALL IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON COUNT I FOR BREACH OF CONTRACT AND COUNT IV FOR DECLARATORY AND INJUNCTIVE RELIEF.**

The Policy obligates Transamerica to use medical bills as its contractual index for paying "actual charges"[6] benefits because of (1) the manner in which the term "actual charges" is used

---

[6]The surgical portion of the Policy stated that Transamerica would pay "actual fees," while other portions (e.g., radiation and chemotherapy) indexed benefits to "actual charges." "Fees" and "charges" are substantially similar terms, both contemplating the price of a service. "Expenses," however, clearly contemplates what some entity actually paid for a service. All references to the interpretation of "actual charges" in this document shall also refer to the interpretation of the phrase "actual fees."

and (2) Transamerica's longstanding interpretation of that term in its supplemental cancer policies.  Transamerica's argument that the phrase "actual charges" in the Policy clearly refers to amounts actually paid by third party payors is belied by other terms in the Policy, as discussed above.  Transamerica is unable to escape from the Policy it drafted.  It also cannot escape the stubborn fact of its long-standing performance under substantially similar policies consistent with Hall's interpretation of "actual charges," as discussed herein.  The plain language of *this* Policy, as well as Transamerica's multi-year course of dealing regarding policies substantially similar to this one, supports partial summary judgment for Hall as to Counts I and IV.

**A.  The Four Corners of the Policy Establish That Hall Is Entitled to Benefits in the Amount of the Healthcare Providers' Statements Showing "Actual Charges."**

In interpreting a contract, the contractual language is to be given its ordinary meaning. *Penick v. Most Worshipful Prince Grand Hall Lodge F&AM of Alabama, Inc.*, 46 So.3d 416, 428 (Ala. 2010).  As an initial matter, the court must determine whether the language of the contract is ambiguous.  *Alfa Life Ins. Corp. v. Johnson*, 822 So.2d 400, 404 (Ala. 2001).  The intent of the contracting parties is discerned from the whole of the contract.  *Homes of Legend, Inc. McCollough*, 776 So.2d 741, 746 (Ala. 2000).

The key to defining "actual charges" lies in how that term is used in connection with others that similarly establish indexes for certain Policy benefits. For "actual charges" to have substantive effect in the policy, it must necessarily have a different meaning than both "usual and customary" charges and "actual expenses."[7] *See, e.g., United States v. Pielago*, 135 F.3d 703,

---

[7]Importantly, this billed amount, if charged to Hall or the policyholder directly, would likewise be the amount of money the healthcare provider received, because neither Hall nor any other private individual, as a practical matter, is able to negotiate a partial payment they lack the bargaining power exerted by entities such a private insurers or the force of law of Medicare or

715 (11th Cir. 1998) ("It is a time-honored principle of contract construction that contracts should be interpreted so as to give meaning to each and every word.").

### 1. Inclusion of the term "Usual and Customary" precludes a definition of "actual charges" based on purported pricing norms within the healthcare industry.

Transamerica seems to argue that, as a result of alleged improper billing practices in the healthcare industry, it should not have to pay anything more than the normal or reasonable charge doctors and hospitals customarily accept as payment from Medicare and large health insurers who were able to negotiate their payments. The problem with this definition is that it has already been expressly claimed by the term "usual and customary," which is separately defined in the Policy.

The Policy draws a clear distinction between an "actual charge" as reflected in provider statements and a "usual and customary" charge that is "[t]he normal and reasonable charge for a service, an apparatus, or medicine in the geographic area where provided." Policy, Section A, p. 3 (defining "USUAL AND CUSTOMARY").  Transamerica essentially is arguing for the definition of "usual and customary" to mean the same thing as "actual charges", and contends that medical bills do not reflect either "normal" or "reasonable" charges based on its allegation that these bills are inflated.  *See generally* Transamerica Life Insurance Company's Memorandum of Law in Support of Its Motion for Summary Judgment, Doc. 77 ("Doc. 77"). However, this argument is foreclosed by the well-established principle that all words and phrases in a contract must be given effect whenever possible.  *See Russell v. Garrett*, 93 So. 711, 713 (Ala. 1922), declined to extend on other grounds, *Bon Harbor, LLC v. United Bank*, 2010 WL

---

Medicaid regulations.

2629418 (Ala. June 30, 2010).  "Actual charges" and "usual and customary" charges cannot have the same meaning.

> ### 2. Inclusion of the term "actual expenses" precludes a definition of "actual charges" based on post-negotiation amounts expensed by third party payors like Medicare and private insurers.

The Policy forecloses Transamerica's argument for any definition of "actual charges" based on the amount another party expensed when making payment, because that definition has been claimed by "actual expenses."  In drafting the Policy, Transamerica uses the term "actual expenses" side by side with "actual charges" in several places in the Benefits section.  For example, for both Radiation Therapy and Chemotherapy, the Policy index for treatments and related services under sub-parts (a) and (b) is "actual charges", but the index for Alopecia benefits under sub-part (c) is "actual expenses." Policy, Section E, Part 2, pp. 7-8. The section dealing with Bone Marrow Donor benefits draws a similar distinction, using "actual expenses" to describe the applicable index under sub-sections (a) and (c), while using "actual charges" to index medical benefits under subjection (b).  *Id.*  Therefore, "actual charges" and "actual expenses" cannot mean the same thing.

Transamerica goes to great lengths to misdirect this Court's focus onto the terms "actual" and "incurred," arguing that the Policy uses "'actual charges' synonymously and consistent with an incurred expense."  Doc. 77, p. 25.  Transamerica studiously avoids any reference to the existence of the phrase "actual expense" in the Policy, which clearly occupies the meaning Transamerica would like to give to the phrase "actual charges," that is, amounts actually paid by third party payors.  Transamerica cannot reasonably argue that the two phrases share the same meaning, which leads to the inexorable conclusion that "actual charges" must mean exactly what

Hall thought it meant, and exactly was Transamerica acted like it meant from the inception of these "actual charges" policies until it realized it was losing money on them in 2006. *See Hege v. Aegon USA*, 2011 WL 206318, *1 (D.S.C. Jan. 21, 2011).

### B. At A Minimum, The Context In Which "Actual Charges" Is Used Gives Rise To An Ambiguity That, As A Matter Of Law, Resolves In Favor Of Hall.

Even if the Court was to look beyond the four corners of the Policy, undisputed evidence of matters outside of the Policy *still* support partial summary judgment for Hall. Where the terms of a written contract are unambiguous, a court should not look to extrinsic evidence to determine the meaning of the terms. *Air Conditioning Engineers, Inc. v. Small*, 65 So.2d 698, 703 (Ala. 1953). However, when a contract is determined to be ambiguous, extraneous evidence is admissible to aid the court in arriving at the true intent of the parties as it is expressed in the terms of the contract. *John Hancock Mut. Life Ins. Co. v. Welsh*, 267 F.2d 152, 154 (5th Cir. 1959). A contract is ambiguous when it is reasonably susceptible to more than one interpretation. *Groover v. Michelin North America, Inc.*, 90 F.Supp.2d 1236, 1245 (M.D. Ala. 2000) (citation omitted). Where the language of an insurance policy is vague, uncertain, and subject to two different interpretations, the court should adopt the interpretation most favorable to the insured. *Green v. Merrill*, 308 So.2d 702, 704 (Ala. 1975).[8] "Any ambiguity in an

---

[8]Regarding whether the resolution of an ambiguity in a contract may be a question of law to be determined by the court, or a factual question for the jury, the *Alfa* case, *supra*, noted that where factual issues arise, the resolution of the ambiguity becomes a jury question. *Alfa Life Ins. Corp*, 822 So.2d at 404-05. However, the *Alfa* court went on to state that "if the trial court finds the contract to be ambiguous, it 'must employ established rules of contract construction to resolve the ambiguity.' If the application of such rules is not sufficient to resolve the ambiguity, ... the resolution of the ambiguity becomes a task for the jury." *Id.* at 405. The Eleventh Circuit has held that "the existence of an ambiguity in a contractual term, ... does not automatically require that we remand for the fact-finder to resolve the ambiguity." *Mega Life And Health Ins. Co. v. Pieniozek*, 516 F.3d 985, 992 (11th Cir. 2008). Thus, Hall is entitled to partial summary

insurance contract should be strictly construed against the drafter and liberally in favor of the

insured." *Mega Life And Health Ins. Co. v. Pieniozek*, 516 F.3d 985, 992 (11th Cir. 2008)

(citations omitted).  As a matter of law, an ambiguity as to the meaning of "actual charges"

entitles Hall to partial summary judgment as to Counts I and IV because (1) Transamerica

instructed Hall and other claimants to submit medical bills to establish the amount of benefits to

which they were entitled, and (2) Transamerica's undisputed extensive practice of paying "actual

charges" benefits to insureds under substantially similar policies equal to medical providers'

statements.  Here, Transamerica's sustained course of conduct involved paying "actual charges"

benefits indexed to medical providers' statements, *not* to EOBs or similar statements reflecting

charges that a third-party payor actually expensed.  *See Hege v. Aegon USA*, 2011 WL 206318,

*1 (D.S.C. Jan. 21, 2011).

> Historically, Transamerica had interpreted "actual charges" to mean the amount that
> the policyholder's healthcare provider initially billed to the policyholder, rather than
> the amount that the provider may have initially accepted as payment in full. [Footnote
> omitted].  Claims were therefore paid according to how much the provider billed the
> policyholder.  However, in 2006, Transamerica revised its claims process so that it
> would pay only the amount that the provider accepted as payment in full.  This often
> resulted in policyholders receiving substantially smaller payouts than they would
> have received under the pre-2006 practice.

*Id.*

If Transamerica had thought its Policies allowed the restriction of amounts payable on

the materially lower amount paid by third party payors such as private insurers and

Medicaid/Medicare, it would have construed its policies in that manner from the beginning.

Transamerica's original interpretation, to which it adhered for many years, reveals its true belief

---

judgment even if this Court determines that the phrase "actual charges" is ambiguous because of
Transamerica's longstanding interpretation of the phrase consistent with the meaning proffered
by Hall.

in the actual bargain it struck with policyholders, including Hall.  It was not until Transamerica

realized that its bottom line was being severely affected that it decided to change the

interpretation of the meaning of "actual charges" in order to increase its profits at the expense of

its policyholders.  That course of conduct entitles Hall to partial summary judgment in the event

the Court determines that "actual charges" is an ambiguous term.

II.    **DEFENDANTS' ARGUMENTS FOR SUMMARY JUDGMENT IN ITS FAVOR
       ARE WITHOUT MERIT AND IGNORE BOTH THE PLAIN MEANING OF THE
       POLICY AND TRANSAMERICA'S LONGSTANDING INTERPRETATION OF
       "ACTUAL CHARGES."**

        Transamerica's argument for summary judgment as to Counts I through V respectively

for breach of contract (I), breach of implied duty of good faith and fair dealing (II), unjust

enrichment and disgorgement (III), declaratory judgment and injunctive relief (IV), and bad faith

denial of full benefits (V) is that its change of index for "actual charges" benefits was

lawful under the Policy.  Specifically, with respect to each Count, Transamerica contends that it

did not breach a legal duty when it switched its "actual charges" index from medical bills to

"reasonable" and "normal" charges or amounts third parties actually expensed.  To justify its

position, Transamerica argues that the phrase "actual charges" unambiguously refers to the

amount a third party payor actually expensed on the insured's behalf.  Transamerica bases its

contention on the assertion that *Claybrook* and *Buckles* necessitate its interpretation, and on a

strained reading of the phrase "actual charges" with the term "incurred."  Transamerica also

contends that current conditions in the healthcare industry excuse it from continuing to index

"actual charges" benefits to medical bills.  Finally, Transamerica asserts that its basis for paying

"actual charges" benefits is not a contractually established index, but rather a "claims procedure"

subject to change at any time. None of these arguments have merit under the facts or the law given both the plain language of the Policy and Transamerica's long-term interpretation of the same. Its arguments are also faulty for other reasons discussed below. Transamerica's motion for summary judgment as to Counts I, II, III, IV and V should therefore be denied.

### A. "Actual charges" Must Be Interpreted Within The Context In Which It Is Used To Describe Policy Benefits.

Transamerica first argues that undefined phrases in the Policy should be given their plain and ordinary meaning. Doc. 77, p. 20. Transamerica follows up a recitation of the hornbook law of contractual interpretation with an extensive discussion of *Claybrook, Buckles*, and other cases that Transamerica proffers as support for its contention that "actual charges" unambiguously refers to amounts actually paid by third party payors, which permits its current indexing of "actual charges" benefits to EOBs and similar third-party statements. Doc. 77, pp. 21-24. Transamerica goes on to argue that the phrase "actual charges" must be read in conjunction with certain other general phrases in the Policy, including the term "incurred," and that such a reading further supports its argument that "actual charges" unambiguously refers to amounts that third party payors have paid. Doc. 77, pp. 24-25. However, Transamerica fails to mention the most important distinction between *Claybrook* and the instant case: the policy in *Claybrook* did not include any other indices for benefits other than the phrase "actual charges," while the Policy in this case indexes benefits not only to "actual charges" or "actual fees" but also to "usual and customary" and "actual expenses." *See Claybrook* policy, Ex. 2, Hall Policy, Ex. 1. In its argument that all phrases in the Policy should be read in concert, Transamerica has conveniently omitted any discussion of these terms and their effect on the interpretation of "actual charges."

14

Transamerica's argument that the phrase "actual charges" should be given its plain and ordinary meaning when read in conjunction with other terms in the Policy actually supports Hall's position, not Transamerica's, and leads to one of two conclusions: either the phrase "actual charges" cannot mean what Transamerica suggests (the amounts actually paid by third party payors), but must mean the prices of services as listed by providers; or that "actual charges" is ambiguous, in which case the Policy must be interpreted in favor of coverage and the Court can consider the extensive history of Transamerica's own interpretations of the phrase "actual charges" in its form policies, of which the Policy is one.  *See Hege*, 2011 WL 206318 at *1.

In support of its argument, Transamerica refers the Court to *Claybrook* and ignores the context in which "actual charges" was used in that case in comparison to the context at issue in the instant Policy. The fundamental premise of *Claybrook* was that "actual charges", when used in isolation, took on its dictionary meaning. *Claybrook*, 387 F. Supp. 2d at 1203-04 (discussing actual charges in the context of a policy [Exhibit 2] that did not use ***any other term*** to describe other forms of benefits).  The *Claybrook* policy did not use other terms in conjunction with "actual charges"; rather, the policy used exclusively the term "actual charges" to refer to benefits payable. *See generally Claybrook* policy, Ex. 2.  In particular, the *Claybrook* policy based ***no*** benefits upon "usual and customary charges" or "actual expenses." *Id.*  Accordingly, in *Claybrook* the Court did not need to apply the rule (discussed in Section I.A., *supra*) that each term must be given meaning when interpreting a contract.[9]

---

[9]Transamerica has previously used *Ward v. Dixie Nat. Life Ins. Co.*, 2006 WL 1529398, *4 (D.S.C. May 10, 2006) to argue that "actual charges" is unambiguous and should refer to actual payments from third parties.  The policy at issue there is distinguishable from that in the instant case because "nowhere within the four corners of the Policy [Exhibit 6] is the term "actual charges" used inconsistently or in a special or technical sense;" like the *Claybrook* policy,

Transamerica also relies on the case of *Philadelphia American Life Ins. Co. v. Buckles*, 350 Fed. Appx. 376 (11th Cir. Oct. 23, 2009), an unpublished Eleventh Circuit opinion, to support its interpretation of "actual charges." Doc. 77, pp. 22-24. Importantly, *Buckles* does not even address the meaning of "actual charges," instead interpreting the phrase "actual charges incurred." *Buckles*, 350 Fed. Appx. at 379. In fact, the district court in *Buckles* concluded that the phrase "actual charges" was ***unambiguous*** and referred to the "amount billed by the provider, and that 'actual charges incurred' is the reduced amount that the hospital accepts from an insurance company as full payment." *Id.* Furthermore, the Policy in the instant case does not include the phrase "actual charges incurred," which is the phrase *Buckles* was interpreting. *See id.* To the extent *Buckles* is relevant, it supports Hall's position, not Transamerica's.

The two other cases that Transamerica uses to support its argument that "actual charges" cannot mean what Hall suggests are not only distinguishable from the instant case, those cases actually support Hall's position. The *Gray* case supports Hall's contention that the definition Transamerica would like to ascribe to the phrase "actual charges" is actually occupied in the Policy by the phrase "actual expense." The *Gray* court noted that under the terms of the policy, "the defendant had obligated itself to pay 'items of actual hospital expense.'" *Protective Industrial Ins. Co. of Alabama v. Gray*, 118 So.2d 289, 290 (Ala. Civ. App. 1960). The *Gray* court found that where the plaintiff has no obligation to pay anything, there no claim for "'items of actual hospital expense.'" *Id.* at 291. The *St. Paul Mercury* case involved the interpretation of

---

the *Ward* policy did not index benefits to anything other than "actual charges." Additionally, the Fourth Circuit, in *Ward v. Dixie Nat'l Life Ins. Co.*, 257 Fed. Appx. 620 (4th Cir. 2007), has since overruled the district court's decision, and found that the phrase "actual charges" is ambiguous, even where there were not other indices of benefits, such as "usual and customary" and "actual expenses," as there are in the instant case.

16

the phrase "expenses actually incurred," and found that the Veterans Administration, which had taken assignment of veteran's rights under a polio policy, could not recover from insurer since the insured had incurred no liability for his care.  *U.S. v. St. Paul Mercury Indem. Co.*, 238 F.2d 594, 595, 598 (8th Cir. 1956).  Thus, both cases interpreted phrases with meanings wholly different from the phrase "actual charges," at issue in the instant case.  In fact, *Gray* and *St. Paul Mercury* actually support Hall's argument, stated herein, that the presence of the phrase "actual expense" in the Policy precludes Transamerica's proffered interpretation of the phrase "actual charges."

The present case involves a far different situation.  Unlike the *Claybrook* policy, the Policy uses separate index terms (i.e., "usual and customary charges" and "actual expenses") already encompassing other potential definitions for "actual charges."  *Compare* Exhibit 2 (the *Claybrook* policy) with Exhibit 1 (the Hall Policy).  The respective definitions of "usual and customary" charges and "actual expenses" based on (1) the amount another party expensed for the item or service and (2) the normalcy or reasonableness of the charge, respectively, usurp and preempt Transamerica's proffered definition of "actual charges."  As discussed *supra*, for "usual and customary charges", "actual expenses" and "actual charges" to each have separate meanings, "actual charges" cannot mean anything other than the amount medical providers originally billed for their services.  To the extent the Court concludes instead that these other terms render the meaning of "actual charges" unclear or capable of more than one construction, an ambiguity arises.  *See Groover*, 90 F.Supp.2d at 1245.  In either event, the unique word smithing of the Transamerica Policy instantly distinguishes it from the *Claybrook* policy.

In arguing against the existence of an ambiguity, Transamerica also contends that the

insuring clause somehow compels construction in its favor.  Transamerica points to the inclusion

of the word "incurred" in that clause, and argues this term removes all doubt that "actual

charges" refers to the amount the healthcare provider eventually accepted from the policyholder's

other insurance providers.  That same argument has been rejected by other Courts.  *Connor v.*

*American Public Life Ins. Co.*, 448 F. Supp. 2d 762 (N.D. Miss. 2006) and *Metzger v. American*

*Fidelity Assurance Co*., 2006 WL 2792435 (W.D. Okla. Sept. 26, 2006) squarely discredit

Transamerica's insuring-clause argument.  In *Connor*, the insurer made the same argument

Transamerica makes here, which is that "actual charges", when read in conjunction with

"expenses incurred", unambiguously refers to the negotiated amount the policyholder's other

insurer paid.  *Connor*, 448 F. Supp. 2d at 765.  However, the *Connor* Court rejected that

contention, concluding "this argument does not defeat or assuage the inherent ambiguity in the

undefined term 'actual charges.'"  *Id.* at 766.[10]  In *Metzger*, the insurer likewise asserted

Transamerica's position that the phrase "actual charges", when read in conjunction with the term

"expenses incurred", referred to the post-negotiation amount actually paid.  *Metzger*, 2006 WL

2792435, at *4.  The *Metzger* Court rejected this argument as well, and entered a summary

judgment for the Plaintiff pursuant to her cross-motion based on the fact the insurer had

previously paid "actual charges" benefits equal to the Plaintiff's medical bills.  *Id.* at *5.

In the context of the present case, *Connor* and *Metzger* represent an even stronger rejection of

Transamerica's "loss incurred" argument.  Here, the phrases "usual and customary charges" and

---

[10]In holding that "actual charges" was an ambiguous term in the *Connor* Policy, the Court noted its "thorough consideration" of *Claybrook* and other unnamed cases, but stated that the particular policy before it compelled its conclusion that an ambiguity existed. *Connor*, 448 F. Supp. 2d at 765.

"actual expenses" clarify the naked ambiguity resulting from the definitional tension between "loss incurred" and "actual charges" by laying claim to all possible alternative definitions. Accordingly, the inclusion of these terms together in the same policy – something that was not before the Courts in *Connor*[11] or *Metzger*[12] – establish on the face of the Policy that "actual charges" means the pre-negotiation amount billed.  At a minimum, however, these terms further confuse the meaning of "actual charges" in light of the already-existing ambiguity created by the word "incurred" in the insuring clause.

The recent case of *Smith v. Life Investors Ins. Co. of America*, 2009 WL 3756911, *2 (W.D. Penn. Nov. 6, 2009) noted that "numerous lawsuits throughout the country have raised similar issues regarding the interpretation of the term 'actual charges' in supplemental insurance policies.  The vast majority of the cases have concluded that the term 'actual charges' is ambiguous.  *See Pierce v. Central United Life Ins. Co.*, 2009 WL 2132690 (D.Ariz.2009); *Lindley v. Life Investors Ins. Co. of America*, 2009 WL 2163513 (N.D.Okla.2009); *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177 (5th Cir.2007); *Ward v. Dixie Nat'l Life Ins. Co.*, 257 Fed. Appx. 620 (4th Cir. 2007); *Hodges v. American Fidelity Assur. Co.*, 2008 WL 723994 (S.D.Miss. 2008); *Connor v. American Public Life Ins. Co.*, 448 F.Supp.2d 762 (N.D.Miss.2006); *Metzger v. American Fidelity Assurance Co.*, 2006 WL 2792435 (W.D.Okla. 2006)."  After thoroughly reviewing the defendant's argument in *Smith*, which is essentially the

---

[11]While the *Connor* Policy (Exhibit 7) includes the term "actual expenses", it does not include the term "usual and customary". Therefore, the *Connor* Policy, on its face, left open the possibility for "actual charges" to refer to normal and reasonable charges, unlike the Transamerica Policy here.

[12]The *Metzger* Policy (Exhibit 8) has neither "actual expenses" nor "usual and customary" charges as separate indexes, unlike the Transamerica Policy.

same argument set forth by Transamerica in the instant case, the *Smith* court determined that "the term 'actual charges' is, at a minimum, ambiguous.   The term can reasonably be construed to mean: (1) the amount set forth on the statement sent by the medical provider to the patient; or (2) the amount accepted as payment by the medical provider from a third party." *Id.* at *5.   The *Smith* court found the reasoning relied on by the "majority of the prior cases to have considered this issue is by far the more compelling and Defendant's attempts to distinguish these cases are entirely unpersuasive." *Id.*   The court also found the following issue, applicable to the instant case, highly relevant:

> It would have been simple for Life Investors to avoid [the ambiguity in the term "actual charges"] by defining the term "actual charges."   For example, certain provisions in the Policy provide for reimbursement of "Usual and Customary charges"... The term "Usual and Customary charges" *is* defined in the Policy and means the "normal and reasonable charge for a service, an apparatus, or medicine in the geographic area where provided" [emphasis in the original].   The failure to provide a similar definition for "actual charges" is glaring.   The Policy clearly treats coverages for "actual charges" as distinct and different from coverage for "Usual and Customary charges."...   If Life Investors had intended to limit its coverage to the amount that medical providers usually and customarily charge or the amount they usually and customarily accept payment from Medicare or other third-party payors, it knew how to draft such a provision.   It failed to do so.

*Id.*   In the Policy in the instant case, "Usual and Customary charges" was also defined in the same way it was defined in the *Smith* case, and "actual charges" is similarly not defined. Transamerica's failure to provide a definition for "actual charges" is similarly glaring.

The *Smith* court also rejected the defendant's assertion that the amounts set forth on statements sent to patients are fictitious, finding that Life Investors had conceded that the "chargemaster" prices are paid by a small percentage of customers and that even if "medical providers routinely accept discounted payments from third-party payors, these 'list' prices

indisputably exist (i.e., they are 'actual')." *Id.* at *6.  The court found that because the policy was

a supplemental insurance policy not designed to reimburse the policyholder to the exact amount

of out-of-pocket expenditures, that the payment of benefits exceeding actual expenses is not

unreasonable. *Id.*  Furthermore, the court found that the plaintiff's interpretation of "actual

charges" was "not inconsistent with the usage in the industry":

> The Center for Medicare and Medicaid Services defines "actual charge" to mean:
> "The amount of money a doctor or supplier charges for a certain medical service or
> supply.  This amount is often more than the amount Medicare approves."  The
> McGraw-Hill Essential Dictionary of Healthcare (1988) defines "actual charge" as
> "the amount a physician or other practitioner actually bills a patient for his insurance
> for a medical service or procedure.  The actual charge may differ from the customary,
> prevailing, and/or reasonable charges under Medicare and other insurance programs."
> (Emphasis in the original).  See also Mosby's Medical, Nursing & Allied Health
> Dictionary (4th ed.1994 amd 6th ed.2002) (explaining that "actual charge" may not
> be "the same as that paid for the service by an insurance plan.").

*Id.* at *7.  The court found that Life Investors' course of performance "fails to demonstrate that

Defendant's proposed interpretation is unambiguously correct."  *Id.*

Regarding evidence of Transamerica's course of performance in relation to its

supplemental cancer policies that index benefits to actual charges, the background in *Hege,* 2011

WL 206318 at *1 is informative:

> Historically, Transamerica had interpreted "actual charges" to mean the amount that
> the policyholder's healthcare provider initially billed to the policyholder, rather than
> the amount that the provider may have initially accepted as payment in full. [Footnote
> omitted].  Claims were therefore paid according to how much the provider billed the
> policyholder.  However, in 2006, Transamerica revised its claims process so that it
> would pay only the amount that the provider accepted as payment in full.  This often
> resulted in policyholders receiving substantially smaller payouts than they would
> have received under the pre-2006 practice.

In the event of an ambiguity, Transamerica's conduct outside of the four corners of the

Policy becomes dispositive.  "If the language within the four corners of the contract is

ambiguous.... extrinsic evidence must be looked to in order to determine the intentions of the parties." *Bad Ass Coffee Co. of Hawaii, Inc. v. Naughty Donkey Enterprises, LLC*, 2010 WL 4910856, *3 (Ala. Civ. App. 2010).  It is a well-established rule of contract construction that any ambiguity in a contract must be construed against the drafter.  *SouthTrust Bank v. Copeland One, L.L.C.*, 886 So.2d 38, 43 (Ala. 2003).  As discussed above, Transamerica established a long-term pattern of paying benefits based on medical bills, not on "usual or customary charges" or on "actual expenses," as it asserts.  *See Hege*, 2011 WL 206318, *1.  This long-standing course of dealing with substantially similar, if not identical, policies proves Transamerica, as the drafter of the Policy, intended at the time of contracting to pay "actual charges" equal to amounts reflected in the statements of healthcare service providers.

**B.  The Failure Of The Foregoing Arguments By Transamerica Should Result In The Denial Of Its Motion For Summary Judgment As To Count I (Breach of Contract), Count II (Breach Of Implied Duty Of Good Faith And Fair Dealing), Count III (Unjust Enrichment and Disgorgement), Count IV (Declaratory and Injunctive Relief), And Count V (Bad Faith Denial of Full Benefits).**

Transamerica begins its argument section with a thorough discussion of its purported view that it has done no wrong under the Policy and that Hall's claim for breach of contract (Count I) should be dismissed.  Doc. 77,  pp. 18-28.  Transamerica then incorporates that same argument in response to Hall's claim for breach of implied duty of good faith and fair dealing (Count II), for bad faith denial of full benefits (Count V), for unjust enrichment and disgorgement (Count III), and for declaratory relief (Count IV).  Doc. 77, pp. 28-36.  As set forth above, the argument that Transamerica had no contractual duty to pay "actual charges" benefits in the amount of medical bills is without merit.  However, Transamerica makes a handful of extraneous arguments with respect to these other claims that Hall will address here and show to

be equally faulty.

For instance, as to Count II for "Breach of Implied Duty of Good Faith and Fair Dealing", Transamerica argues that Alabama law bars this claim.  The proposition that no claim exists under Alabama law is untrue. *See Lake Martin/Ala. Power Licensee Ass'n v. Ala. Power Co.*, 601 So. 2d 942, 944 (Ala. 1992) (The Court is "not prepared to extend the tort of bad faith beyond the area of insurance policy cases" and it "d[oes] not recognize a bad faith claim under contract law absent a breach of … contract.")  *Lake Martin* is inapplicable because Hall ***has*** successfully established breach of contract.  Transamerica's motion as to Count II therefore should be denied.

As to Count III for unjust enrichment, Transamerica argues that an unjust enrichment claim cannot be maintained along with a breach of contract claim.  Doc. 77, pp. 31-32.  However, the Alabama Supreme Court has considered claims for breach of contract and unjust enrichment in the same action, without holding them mutually exclusive.  *See Stone v. Mellon Mortg. Co.*, 771 So.2d 451, 456 (Ala. 2000).  Thus, Hall's unjust enrichment claim should be permitted to proceed.

Transamerica argues with respect to Hall's claim for declaratory relief (Count IV) that it should be denied because Hall no longer maintains a supplemental cancer policy with Transamerica, and all damages are in the past, thus there is not a controversy of sufficient immediacy to justify declaratory relief.  Doc. 77, pp. 34-35.  However, such a position is not substantiated by Alabama law.  *See VanLoock v. Curran*, 489 So.2d 525, 531 (Ala. 1986).  In *VanLoock*, the court allowed both a breach of contract claim and a claim for declaratory relief based on the breach of contract to proceed, even when the declaratory relief related to injuries for a time already past, and where there was no continuing contract, because Alabama's declaratory

23

judgment act provides that a "'contract may be construed [in a declaratory judgment action] either before or after there has been a breach,' [Alabama] Code 1975, § 6-6-224..." *Id.* Thus, Hall's claims for declaratory relief should be permitted to stand.

With respect to Count V for "Bad Faith Denial of Full Benefits", Transamerica argues that Alabama law applies and that "bad faith" has not been established. Doc. 77, pp. 28-30. Transamerica's assertion that "bad faith" has not been established is wrong under Alabama law. *See United Services Auto Ass'n v. Hobbs*, 858 So. 2d 966, 974 (Ala. Civ. App. 2003) (discussing the elements of bad faith under Alabama law). Hall has established that Transamerica intentionally breached the Policy. Transamerica's intentional refusal to pay Hall the money to which he was entitled for "actual charges" benefits is a clear example of bad faith. No legitimate or arguable reason exists as to why Transamerica would suddenly attempt to change its established index for payment of "actual charges" benefits in the face of clear Policy terms. The only reason why Transamerica would change the amount of benefits it pays to its insureds is to simply pay out less money, a clear example of bad faith under Alabama law.

## CONCLUSION

For the foregoing reasons, Hall respectfully requests that this Court enter a partial summary judgment against Transamerica as to Count I and Count IV. Hall further respectfully requests that this Court deny Transamerica's Motion for Summary Judgment as to each claim asserted in the Complaint.

Respectfully submitted this 15th day of February, 2011.

_____/s/ Paul S. Rothstein_____
Paul S. Rothstein

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of February, 2011, a true and correct copy of the above and foregoing instrument was duly served on the other parties herein by electronic correspondence to:

Mr. John K. Baker
Mitchell, Williams, Selig,
Gates & Woodyard, PLLC.
425 West Capitol Ave., Suite 1800
Little Rock, Arkansas  72201

Mr. Markham R. Leventhal
Jorden Burt LLP
777 Brickell Ave., Suite 500
Miami, Florida 33131

   /s/ Paul S. Rothstein   
Paul S. Rothstein
Attorney for Plaintiffs
Florida Bar No.: 310123
626 N. E. First Street
Gainesville, Florida 32601
Phone: (352) 376-7650
Fax: (352) 374-7133
