# Exhibit 1

# *Equity National*

## Life Insurance Company

A Stock Company (Hereinafter called: We, our or us)
Home Office: 1020 West 4th Street, Little Rock, AR 72201

We agree to insure you for loss incurred, while this policy is in force, from Cancer first Positively Diagnosed after the "waiting period", subject to the provisions on the following pages of this policy.

This policy is issued in consideration of statements made in your application and the payment of the full first premium shown on the POLICY SCHEDULE page.

**IMPORTANT NOTICE** Please read the copy of the application attached to this policy. Carefully check the application and write to Equity National Life Insurance Company, Home Office, P. O. Box 8063, Little Rock, Arkansas 72203 within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

### NOTICE OF TEN DAY RIGHT TO EXAMINE POLICY

If you are not satisfied with this policy, it may be returned for a full refund of premium. This may be done by delivering it or mailing it to us; or to the agent who took your application. This must be done not later than ten (10) days after you receive the policy. Immediately upon such delivery or mailing, this policy will be deemed void as of the Effective Date. Any premium paid for it will be refunded.

### PREMIUM RATE SUBJECT TO CHANGE – GUARANTEED RENEWABLE FOR LIFE

This policy can be continued for life. As long as the premium is paid before the end of the grace period we cannot cancel this policy. However, we may from time to time change the table of rates that apply to your premiums. Any such change will apply to all policies issued in your Class. No change in the table of rates will take effect for this policy until the Renewal Date next following the date of such change. We will give the Insured written notice at least 31 days prior to any rate change.

Signed for EQUITY NATIONAL LIFE INSURANCE COMPANY by:

M. P. Ray

Secretary

President

_____

Countersignature - Licensed Resident Agent
(If Required By Law)

Insured - ROBERT W HALL          Policy Date - 09-17-1994          Policy Number - 01E122807

Term -   MONTHLY                 Term Premium -   $114.56

**CANCER ONLY POLICY
GUARANTEED RENEWABLE FOR LIFE
PREMIUMS SUBJECT TO CHANGE BY CLASS**

EPC530

07/19/2007 15:02 FAX 15025602140      AEGON FINANCIAL/LEGAL                    ☑005

# SECTION A - DEFINITIONS

## YOU, YOUR, OR YOURS

The Insured or any other Covered Person under a: Single Parent Family Policy or Family Policy.

## INSURED

The person who has answered the questions and signed the application and/or whose name appears on the POLICY SCHEDULE page.

## COVERED PERSON(S)

"Covered Person" means a person who has been accepted by us for coverage and includes only the Insured, the Insured's Spouse and/or Dependent Children who have/has provided Evidence of Insurability.

Any eligible Spouse or Dependent Child who does not become a Covered Person on the Effective Date may be added to the policy by our endorsement subject to:

(1) The completion of an application providing Evidence of Insurability; and

(2) payment of the additional premium, if required.

## SPOUSE

The Insured's legally married Spouse named in the application or the Insured's common law Spouse named in the application if legally recognized in the state where this policy was issued.

## INDIVIDUAL POLICY

Provides coverage for the Insured only.

## SINGLE PARENT FAMILY POLICY

Provides coverage for the Insured and at least one other Covered Person who is not the Insured's Spouse.

## FAMILY POLICY

Provides coverage for the Insured, the Insured's Spouse, and any other Covered Person.

## POLICY DATE

The date on which premium payments begin. It is the date shown on the face page of the policy. All renewal and anniversary dates are based on this date.

## EFFECTIVE DATE

The date on which the 30 day "waiting period" begins. The Effective Date is the date shown on the policy schedule page for all persons accepted for coverage at time of issue provided the application has been accepted by us, the policy is issued and the full first premium has been paid; or the date shown by endorsement for all persons added to coverage after the policy is issued.

## RENEWAL DATE

The date on which the next premium (Renewal Premium) is due. Renewal Dates are determined from the Effective Date by the mode of premium selected.

## POLICY ANNIVERSARY

The same day and month as the Effective Date for each year this policy remains in force.

## CONVERSION DATE

(1) The date upon which this policy becomes eligible for conversion (see SECTION J); or (2) the first Renewal Date after this policy becomes eligible for conversion if the premium payment mode is monthly; or (3) any other later date under (1), or any other later Renewal Date under (2) indicated in writing by the Insured.

## IMMEDIATE FAMILY

Your Spouse, father, mother, brothers, sisters, or children.

## USUAL AND CUSTOMARY

The normal and reasonable charge for a service, an apparatus, or medicine in the geographic area where provided.

## CLASS

Any group of individually insured persons under the same policy form who can be identified by the following characteristics: age at issue, sex, occupation, or original state of issue.

## COMMON CARRIER

Commercial airline, inter-city busline, or passenger train.

## EVIDENCE OF INSURABILITY

Correct and complete answers to the questions in the application, and your medical history if necessary, which are used by us to base our acceptance of you for coverage under this policy.

## CANCER

A disease evidenced by the presence of a malignancy characterized by the uncontrolled and abnormal growth and spread of malignant cells in any part of the body. This includes: Carcinoma, sarcoma, malignant melanoma, lymphoma, leukemia, Hodgkin's Disease or any malignant tumor. Cancer does not include: Leukoplakia, carcinoids, hyperplasia, polycythemia, moles, lesions, or similar diseases.

## SKIN CANCER

Basal cell epithelioma or squamous cell carcinoma. It does not include malignant melanoma or mycosis fungoides. These are not considered Skin Cancers under this policy for the purpose of paying benefits under Item 22, SECTION E, "Skin Cancer".

## VITAL ORGAN

A Vital Organ is any organ of the body whose functioning is necessary to the continuation of life. For the purposes of this definition, a Vital Organ shall include one of two lungs or one of two kidneys.

07/19/2007 15:02 FAX 15025602140          AEGON FINANCIAL/LEGAL                                    ☒006

**4**

## POSITIVE DIAGNOSIS/POSITIVELY DIAGNOSED

A diagnosis made by a Pathologist based on a microscopic examination of fixed tissue or preparations from the hemic system either during life or post mortem (i.e. a pathological diagnosis). The Pathologist's judgment for establishing the diagnosis shall be based solely on the criteria of malignancy as accepted by the American Board of Pathology or the Osteopathic Board of Pathology after a study of the histocytologic architecture or pattern of the suspect tumor or tissue specimen. We will accept a clinical diagnosis in lieu of a pathological diagnosis only when: (a) The latter cannot be made; medical evidence substantially documents the diagnosis; and you receive definitive treatment for the Cancer; or (b) we pay benefits under Item 22, SECTION E, "Skin Cancer".

## DATE OF POSITIVE DIAGNOSIS

It is the day on which:

(a) Tissue specimen is taken, or the definitive diagnostic test is performed which confirms Positive Diagnosis when performed by a Pathologist; or

(b) Positive Diagnosis is pronounced when a clinical diagnosis is made.

## TOTAL DISABILITY

A sickness or injury which results in a person being:

(a) Unable to perform all of the substantial or material duties of his or her regular occupation during the first two (2) years beginning with the commencement of such sickness or injury; and

(b) unable to engage in any employment or occupation for which he or she is or becomes qualified by reason of education, training, or experience after the first two (2) years beginning with the commencement of such sickness or injury; and

(c) under the regular care and attendance of a Physician.

Successive periods of Total Disability separated by 60 days or less shall be considered one period of Total Disability.

## TOTALLY DISABLED

A person who meets the definition of Total Disability.

## DATE OF TOTAL DISABILITY

The first day on which a person meets the definition of Total Disability.

## HOSPITAL

"Hospital" means an institution which:

(1) is operated pursuant to law; and

(2) is primarily engaged in providing or operating either on its premises or in facilities available to the hospital on a prearranged basis and under supervision of a staff of one or more duly licensed Physicians, medical, diagnostic, and major surgery facilities for medical care and treatment of sick and injured persons on an in patient basis; and

(3) provides 24 hour nursing service by or under the supervision of registered graduate professional nurses (RN's).

"Hospital" does not include an institution or that part of an institution operated as a:

(1) convalescent home; convalescent, rest, or nursing care facility, or hospice care center; or

(2) facility primarily affording custodial, rehabilitative or educational care; or

(3) facility for the aged, drug addicts, or alcoholics.

## HOSPITAL CONFINED

A Hospital stay during which you are charged for room and board each day.

## PERIOD OF HOSPITAL CONFINEMENT

A Hospital confinement for which you are charged room and board for each day you are confined. Successive confinements separated by 30 days or less shall be considered as one Period of Hospital Confinement.

## OUTPATIENT

A person who is: Admitted to a Hospital for medical tests, treatment or services; released on the same day; and not charged for room and board. A person who receives treatment at: A Physician's office, an Ambulatory Surgical Center, or an Outpatient medical clinic is also an Outpatient.

## PHYSICIAN

Anyone, other than you or a member of your Immediate Family, who is duly licensed and certified as a practitioner of the healing arts, and legally licensed to diagnose and treat any sickness or injury within the scope of his or her license.

## PATHOLOGIST

A physician who has been certified by: The American Board of Pathology, or the Osteopathic Board of Pathology to practice pathological anatomy.

## RADIATION THERAPIST

A physician certified by the American Board of Radiology to administer therapeutic radiation.

## PHYSICAL THERAPIST

Anyone, other than you or a member of your Immediate Family, who is licensed and certified to treat physically disabled or handicapped persons with physical agents and methods such as: Massage, manipulation, therapeutic exercises, cold, heat, hydrotherapy, electrical stimulation and light to assist in rehabilitation.

## SPEECH PATHOLOGIST/THERAPIST

Anyone, other than you or a member of your Immediate Family, who is licensed and certified to practice speech pathology.

## PRIVATE DUTY NURSE

Anyone, other than you or a member of your immediate family who is a Licensed Practical Nurse (L.P.N.), a Licensed Vocational Nurse (L.V.N.), or a graduate Registered Nurse (R.N.).

## AMBULATORY SURGICAL FACILITY

A licensed surgical facility consisting of: An operating room, facilities for the administration of general anesthesia, and a post-surgery recovery room. It must also require that the patient be: Admitted, treated, and released during a twenty four hour period.

## EXTENDED CARE FACILITY

An institution or that part of an institution licensed or accredited to provided nursing or rehabilitative care under the supervision of a Physician or a Registered Nurse which provides 24 hour skilled nursing service and maintains daily medical records on each patient. It does not include institutions or parts of institutions which are primarily for the care and treatment of: The aged, drug addicts, or alcoholics.

## HOSPICE CENTER

A facility which provides short periods of confinement for terminally ill patients. A Hospice Center must operate a program of hospice care which meets the standards set forth by the National Hospice Organization. It must also be: Directed by a Physician, supervised by a Nurse, and licensed or certified by the state in which it is located.

## HOSPICE TEAM

A team of professionals including a Physician and a Nurse. It may also include: A social worker, clergyman, clinical psychologist, physical therapist, or counselor. It must exist primarily to administer a hospice care program meeting the standards of the National Hospice Organization in the patients home with care available 24 hours a day, seven (7) days a week.

## SECTION B - FAMILY MEMBER ELIGIBILITY

Family members who are eligible to become Covered Persons under a Family Policy are:

(1) the Insured's Spouse; and

(2) the Insured's unmarried dependent children under age 19; and

(3) the Insured's unmarried dependent children under age 25 who are full time students at a regular educational institution.

Eligible family members to become Covered Persons under a Single Parent Family Policy include all of the above except the Insured's Spouse.

Dependent children include only: Natural born children of the Insured or the Insured's Spouse, or legally adopted children by both or either the Insured and/or the Insured's Spouse.

Any eligible family member who does not become a Covered Person on the Effective Date (except those who are excluded) must be added to the policy by our endorsement subject to:

(1) The completion of an application providing Evidence of Insurability; and

(2) payment of the additional premium, if required.

Any child of the Insured's born or adopted while this policy is in force as a Single Parent Family Policy or Family Policy is automatically covered from the moment of birth or the date of placement for adoption, respectively. We do not require an additional premium for such child. The Insured does not need to notify us of the child's birth or adoption.

## SECTION C - BEGINNING OF BENEFIT PAYMENTS

(1) If you are Positively Diagnosed with Cancer while this policy is in force, we will pay benefits according to the benefit provisions of this policy provided that:

(a) The Cancer is first diagnosed after the 30 day "waiting period"; and

(b) The loss is incurred while this policy is in force; and

(c) All other provisions of this policy apply.

(2) Our benefits will begin on the Date of Positive Diagnosis, or as follows:

(a) On the date you are admitted to the Hospital, if Positive Diagnosis is made during the same Period of Hospital Confinement; but not more than 15 days prior to the Date of Positive Diagnosis; or

(b) not more than 30 days before the Date of Positive Diagnosis for benefits payable under Items 21, "Outpatient Surgery"; or not more than 90 days before the Date of Positive Diagnosis for benefits payable under Item 20, "Outpatient Positive Diagnostic Testing" both under SECTION E; or

(c) on the date of terminal admission to the Hospital when Positive Diagnosis can only be made post-mortem; but not more than 45 days prior to the date of death.

EPC530                                        5                                    01E122807

Benefit payments will be made directly to the Insured, unless assigned according to the provision "Assignment" under SECTION K, for losses incurred by any Covered Person under this policy. Proof of loss must be submitted to us for each incurred expense.

Under no condition will we pay any benefits for losses or medical expenses incurred prior to the end of the 30 day "waiting period".

## SECTION D - HOSPITAL INDEMNITY BENEFIT

We will pay the Hospital Indemnity Benefit shown on the POLICY SCHEDULE page each day you are Hospital Confined for the treatment of Cancer. The maximum number of days we will pay this benefit during a continuous confinement shall not exceed 90. Beginning on the 91st day, our payments for Hospital Confinement will be made under Item 27, SECTION E, "Extended Benefits."

## SECTION E - SCHEDULE OF BENEFITS

We will pay the benefits in this section for the necessary treatment of Cancer:

1. **DRUGS AND MEDICINES**

   We will pay the actual charges for drugs and medicines given to you while Hospital Confined. Our maximum payment during a Period of Hospital Confinement shall not exceed the greater of:

   (a) $250; or

   (b) $25 times the number of days during your Period of Hospital Confinement.

2. **LABORATORY TESTS**

   We will pay the actual charges for laboratory tests performed while you are Hospital Confined not to exceed $150 during a Period of Hospital Confinement. In lieu of this benefit we will pay the actual charges for laboratory tests not to exceed $300 prior to the Period of Hospital Confinement when performed on an Outpatient basis not more than 30 days before admission to the Hospital.

3. **DIAGNOSTIC TESTS**

   We will pay the following benefits for diagnostic tests while you are Hospital Confined:

   (a) The actual charges for diagnostic tests, excluding biopsies, not to exceed $150 during a Period of Hospital Confinement; and

   (b) an amount not to exceed the scheduled fee in the Schedule of Operations (Pages 11-12) when a biopsy is performed. Non-scheduled biopsies will be paid on a comparable basis not to exceed the lesser of:

   (i) The Usual and Customary charge; or

   (ii) an amount determined by the 1974 California Relative Value Schedule (5th edition, revised) with a conversion factor of $120; or

   (iii) $300.

   Biopsy includes any of the following procedures: Needle or aspiration, endoscopic, punch, incisional, or excisional biopsies. If a biopsy is performed with another surgical procedure through the same incision, we will only pay for the procedure having the highest benefit as determined by this provision and Item 4 "Surgery" in this section. We will only pay benefits under this provision when a biopsy confirms Positive Diagnosis during the same Period of Hospital Confinement, subject to the limitations in SECTION C.

   In lieu of the benefit under Item (a) above, we will pay the actual charges for diagnostic tests not to exceed $300 prior to a Period of Hospital Confinement when performed on an Outpatient basis not more than 30 days before admission to the Hospital.

4. **SURGERY**

   We will pay the actual fee for a surgical operation (conventional, laser or stereotactic) and post operative care not to exceed the amount shown for that operation in the SCHEDULE OF OPERATIONS (pages 11-12) while you are Hospital Confined. Non-scheduled operations will be paid on a comparable basis not to exceed the lesser of:

   (a) The Usual and Customary charge; or

   (b) an amount determined by the 1974 California Relative Value Schedule, (5th edition, revised) with a conversion factor of $120; or

   (c) $3000.

   If two or more surgical procedures are performed through the same incision, we will only pay for the procedure having the highest benefit as determined by this provision.

5. **ANESTHESIA**

   While you are Hospital Confined, we will pay the actual charges for anesthesia not to exceed 25% of the surgical fee, per procedure/operation, as determined by: Item 3(b) under "Diagnostic Tests"; or Item 4, "Surgery," in this section. Anesthesia must be given by or under the direction of an Anesthesiologist; or by an Anesthetist under the direction of Physician.

## 6.   RECONSTRUCTIVE SURGERY

We will pay the Usual and Customary charges for: Reconstructive surgery, anesthesia, and post-operative care for the general forms of Cancer listed below not to exceed the stated maximums:

| General Form of Cancer | Maximum |
| --- | --- |
| (a) Skin Cancer-as defined in SECTION A | $250 |
| (b) Malignant melanoma | $350 |
| (c) Breast Cancer-after simple or total mastectomy-each breast | $350 |
| (d) Breast Cancer-after radical mastectomy each breast | $500 |
| (e) Cancers of the male or female genitalia | $500 |
| (f) Cancers of the head or neck, including oral cancers but excluding Skin Cancer and malignant melanoma | $750 |

Reconstructive surgery must be performed by a licensed plastic surgeon not more than two (2) years following the initial surgery to remove the Cancer.  If reconstructive surgery is performed on the same day as the implantation of a prosthetic device we will pay only for the procedure having the higher benefit value. The lifetime maximum benefit for Skin Cancer is $500.  We will not pay any benefits under this provision for Skin Cancer which is removed under Item 22 "Skin Cancer" in this section.

## 7.   ADDITIONAL SURGICAL OPINIONS

We will pay the actual charges not to exceed $150 for the opinion of a second surgeon payable when your prescribed treatment is surgery as determined by the first surgeon.  If the second opinion contradicts the first, we will pay for a third opinion not to exceed $150.  You may use this benefit at your discretion. None of the other benefits in this policy will be affected by your decision.  This benefit is payable only after Positive Diagnosis has been made.  Second or third surgical opinions must be received before surgery is performed.  This benefit is not payable for Skin Cancer treated under Item 22, "Skin Cancer" in this section.  We require that you send us in writing the initial surgical opinion in addition to the second or third surgical opinions.

## 8.   PROSTHESIS

We will pay the Usual and Customary charges for a prosthetic device and its implantation not to exceed $1000 per prosthesis.  The prosthesis must be authorized by your attending Physician and must require surgical implantation.

## 9.   ATTENDING PHYSICIAN

We will pay the actual charges by your attending Physician, other than the surgeon who performed surgery, to visit you while Hospital Confined:

(a) not to exceed $45 on the first day of confinement; and

(b) not to exceed $30 per day beginning on the second and each additional day of confinement.

A visit shall mean a personal visit to you by your attending Physician.  We will only pay for one (1) visit in any one 24 hour period.

## 10.   PRIVATE DUTY NURSING SERVICES

We will pay the actual charges for private duty nursing services not to exceed $100 per day during any one 24 hour period while you are Hospital Confined. Private duty nursing services must be:

(a) authorized by your attending Physician; and

(b) provided by a Nurse who is not a regular staff member of the Hospital in which you are confined and who is other than you or a member of your Immediate Family.

## 11.   RADIATION THERAPY

(a) Treatments - We will pay the actual charges for radiation therapy treatments authorized and administered by a Radiation Therapist. Under this provision, we will not pay related expenses for: Prescribed medications, physical exams, checkups, laboratory or diagnostic tests, treatment consultations and planning, or any similar such expenses.  Radiation Therapy does not include Laser or Stereotactic Surgery (See Section E, item 4).

(b) Associated Expenses - We will pay the actual charges not to exceed $250 per calendar year for the following radiation therapy related expenses: Prescribed medications for side effects, treatment consultations and planning, physical exams, checkups, and laboratory or diagnostic tests. We will only pay for expenses incurred for the items listed when such expenses have been submitted to us and authorized by the Radiation Therapist. Transportation expenses are not included as associated expenses.  We will not pay benefits under this provision when they are paid under any other benefit in Section E.

(c) Alopecia - We will pay the actual expenses for a wig or hairpiece not to exceed a lifetime maximum of $75 if you experience hair loss as a result of your radiation therapy treatment.  The benefit is not payable when it has been paid under Item 12(c) in this section.

## 12.   CHEMOTHERAPY

(a) Treatments - We will pay the actual charges for cancericidal chemical substances including their administration.  Such cancericidal chemical substances must be approved by the United States Food and Drug Administration.  They must also be administered by or under the direction of a Physician.  Under this provision we will not pay related expenses for:  Prescribed medications, physical exams, checkups, laboratory or diagnostic tests, treatment consultations and planning, or any similar such expenses.

EPC530                                    7                        01E122807

8

(b) **Associated Expenses:** We will pay the actual charges not to exceed $250 per calendar year for the following chemotherapy related expenses: Prescribed medications for side effects, treatment consultations and planning, physical exams, checkups, and laboratory or diagnostic tests. We will only pay for expenses incurred for the items listed when such expenses have been submitted to us and authorized by a Physician. Transportation expenses are not included as associated expenses. We will not pay benefits under this provision when they are paid under any other benefit in Section B.

(c) **Alopecia** - We will pay the actual expense for a wig or hairpiece not to exceed a lifetime maximum of $75 if you experience hair loss as a result of your chemotherapy treatments. This benefit is not payable when it has been paid under Item 11(c) in this section.

## 13. EXPERIMENTAL TREATMENT

We will pay the Usual and Customary charges for experimental or investigational treatments of Cancer not to exceed $4000 per calendar year. This policy defines experimental or investigational treatment to be: (a) Drugs or chemical substances approved by the United States Food and Drug Administration for the experimental use on humans; and (b) surgery or therapy endorsed by either the National Cancer Institute or the American Cancer Society for experimental studies.

Examples of such treatments which meet our definition are:

(a) Chemotherapy using experimental drugs or chemicals;

(b) Immunotherapy;

(c) Hyperthermia;

(d) Atomic Particle Therapy.

The following restrictions and limitations shall apply to this benefit:

(a) The maximum benefit for all forms of experimental treatments shall not exceed $4000 calendar year in the aggregate: and

(b) experimental treatment must be received in a Hospital in the United States or in one of its territories; and

(c) your attending Physician has authorized the treatment.

## 14. BLOOD, PLASMA, AND BLOOD COMPONENTS

We will pay the actual charges while you are Hospital Confined or for Outpatient treatment:

(a) blood, plasma, and blood components;

(b) the administration of (a);

(c) transfusions;

(d) processing and procurement;

(e) crossmatching.

We will not pay for the cost of blood, plasma, or blood components that is/are replaced by donors. We will not pay any benefits related to the administration of chemotherapy under this provision.

## 15. PHYSICAL THERAPY, SPEECH THERAPY

We will pay the actual charges not to exceed $25 per therapy session for:

(a) Physical therapy treatments given by a licensed Physical Therapist at: An Institute of Physical Medicine and Rehabilitation, a Hospital, or your home; and

(b) speech therapy given by a licensed Speech Pathologist/Therapist.

Physical therapy or speech therapy must be given on an Outpatient basis; unless, the primary purpose of your Hospital confinement is for treatment of Cancer other than with physical therapy or speech therapy. The lifetime maximum benefit is $1000.

## 16. EXTENDED CARE FACILITY

We will pay the actual charges not to exceed $40 per day when you are confined in an Extended Care Facility, after a period of Hospital confinement. Confinement must begin not later than 14 days after such confinement. The maximum number of days of confinement shall not exceed the number of days in the last period of Hospital confinement.

## 17. BONE MARROW DONOR'S EXPENSES

If you undergo a bone marrow transplant we will pay the following expenses incurred by your donor:

(a) The actual expense of roundtrip transportation by Common Carrier to the Hospital where the transplant is performed; and

(b) the actual charges not to exceed $1000 for medical expenses, including any Hospital charges, directly related to the transplant; and

(c) the actual expenses for lodging and meals not to exceed $75 per day when the donor is asked to remain near the Hospital after the transplant for the possible donation of additional blood components.

07/19/2007 15:04 FAX 15025602140          AEGON FINANCIAL/LEGAL                                    ☑011

Benefits under this provision do not apply if you donate bone marrow to yourself. We will not pay any benefits under Items 18(c) or 19 for transportation or lodging expenses incurred by a donor who is an Immediate Family Member of yours. Items (a) and (c) above are not payable if the donor lives in the same county in which the transplant is performed. The maximum number of days for which we will pay benefits under Item (c) above shall not exceed 21 per transplant. We require receipts for all expenses incurred and submitted for payment under this provision. We will not pay any medical expenses under Item (b) above which are provided free of charge.

## 18. TRANSPORTATION

If your prescribed treatment is not available locally, we will pay your transportation expenses to the nearest non-local Hospital in the United States providing such treatment. Our payments for such transportation expenses will be as follows:

(a) Your actual round trip charge by Common Carrier; or

(b) a private vehicle allowance of 35¢ per mile. Mileage is to be measured from your residence to the Hospital in which you are confined. We will accept your mileage figures if reasonable. We will not pay for mileage in excess of 700 miles round trip.

(c) the Insured or the Insured's Spouse's actual round trip expenses by a Common Carrier, to accompany a child who is a Covered Person under this policy and if confined in a non-local Hospital.

Non-local means a distance from your residence to the nearest Hospital which provides your prescribed treatment in excess of 50 miles. We will only pay this benefit once per Period of Hospital Confinement in a non-local Hospital. We will not pay for: Visits to a Covered Person receiving treatment (other than as indicated in (c) above) or Outpatient: Treatments, checkups, or tests of any kind.

## 19. FAMILY MEMBER LODGING AND TRANSPORTATION

We will pay the following expenses for one adult member of your Immediate Family to be with you when you are confined in a non-local Hospital in the United States:

(a) Lodging expenses at a motel, hotel or other accommodations acceptable to us not to exceed $40 per day payable for the number of days you are Hospital Confined. The maximum benefit for any one Period of Hospital Confinement shall not exceed $2400; and

(b) the actual round trip fare by Common Carrier to the city in which you are Hospital Confined.

These benefits are payable when your prescribed treatment is not available locally and non-local Hospital confinement is authorized by your attending Physician. In addition, the following restrictions apply:

(a) Benefits are not payable if the adult lives in the same county in which you are Hospital Confined; and

(b) We will not pay any transportation expenses under this provision when Item 18(c) is paid for the same confinement.

## 20. OUTPATIENT POSITIVE DIAGNOSTIC TESTING

We will pay the actual charges for any diagnostic tests (excluding biopsies) performed to: Detect, support, or confirm Positive Diagnosis. Each test must be performed by or under the direction of a Physician. Positive Diagnosis must be made not more than 90 days after a test is performed. Our maximum payment per Positive Diagnosis shall not exceed $300. This benefit is not payable for recurring Cancers.

## 21. OUTPATIENT SURGERY

We will pay the following benefits for surgery performed at an Ambulatory Surgical Facility or at a Hospital when you are an Outpatient:

(a) The actual charges for a biopsy not to exceed 150% of the surgical fee as determined by Item 3(b) under "Diagnostic Tests" in this section; and

(b) the actual charges for surgery and post operative care not to exceed 150% of the surgical fee as determined by Item 4, "Surgery" in this section; and

(c) the actual charges for anesthesia not to exceed 25% of the benefit payable under Items (a) or (b) above. Anesthesia must be given by or under the direction of an Anesthesiologist; or by an Anesthetist under the direction of a Physician; and

(d) the actual charges not to exceed $250 for: Drugs, medicines, and laboratory tests (otherwise not payable under any of the other benefits in this section) performed on an Outpatient basis and directly related to your surgery and/or biopsy. Such expenses must be incurred not more than 30 days before or after the surgery and/or biopsy; and

(e) one visit by your attending Physician on the day surgery and/or biopsy is performed (when such Physician is not the surgeon who performed the surgery and/or biopsy) not to exceed $60.

If a biopsy is performed with another surgical procedure through the same incision we will only pay for the procedure having the highest benefit as determined by Items (a) and (b) above.

We will pay benefits under this provision for Skin Cancer upon which Positive Diagnosis is made, removed at a Physician's office or other licensed medical facility.

EPC530                                          9                                          01E122807

**10**

If you are admitted to a Hospital within 30 days following Outpatient surgery (excluding biopsies) other than due to: Complications of the surgery or for reasons totally unrelated to the surgery: we will pay benefits as if you were Hospital Confined for the surgery and the benefits for surgery and all other charges related to the surgery under this provision shall be null and void.

## 22. SKIN CANCER

We will pay the actual charges not to exceed $150 per diagnosis for the removal of Skin Cancer by a Physician. We will accept a written summary of the clinical diagnosis by a Physician who is not a Pathologist. This benefit is payable only when Skin Cancer is removed on an Outpatient basis. This benefit is paid in lieu of any of the benefits under: Item 20, "Outpatient Positive Diagnostic Testing", or Item 21, "Outpatient Surgery"; or any other benefits payable on an Outpatient basis, in this section. If a Positive Diagnosis is made of the Skin Cancer, benefits will be paid according to the other applicable benefits in this policy. Our maximum payments during any one calendar year shall not exceed $300.

## 23. AMBULANCE

We will pay the actual charges by a licensed professional ambulance service up to $2,000 per trip for:

(a) Your transportation to a Hospital in which you are admitted; and

(b) your transportation from a Hospital from which you have been released to a different Hospital in which you are admitted.

Ambulance transportation in excess of 100 miles from your point of origin must be to the nearest Hospital which provides your necessary medical treatment.

## 24. HOSPICE CARE

We will pay the actual charges for Hospice Care not to exceed: $55 per day of confinement in a Hospice Center; or $55 per visit at your home by a Hospice Team limited to one visit per day. Our payments will be based on the following conditions being met:

(a) You have been given a prognosis as being terminally ill with an estimated life expectancy of 6 months or less; and

(b) we have received a written summary of such prognosis by your attending Physician.

We will not pay this benefit while you are Hospital Confined. The lifetime maximum benefit of this provision is $5500.

## 25. GOVERNMENT OR CHARITY HOSPITAL

We will pay the following benefits when you are confined or treated in a government or charity Hospital:

(a) $200 per day for each day of confinement; for the first ten (10) days; and

(b) $125 per day for each day of confinement beginning on the 11th day until you are released; and

(c) $75 per treatment, limited to one (1) treatment per day, for Outpatient radiation therapy or chemotherapy at such a Hospital.

Confinement must be in a Hospital owned or operated by the United States Government; or a Hospital that does not charge you for its services. Continued confinement must be primarily for the treatment of Cancer. Benefits under this provision are paid in lieu of all other benefits in this policy when you are confined or treated in a government or charity Hospital.

## 26. VITAL ORGAN AND BONE MARROW TRANSPLANT BENEFIT

If, during a Hospital Confinement, you require a Bone Marrow transplant or the replacement of a cancerous Vital Organ by transplant, we will pay you a lump sum benefit of $20,000. This benefit shall be payable in lieu of all other benefits under this policy. Once this benefit is payable, we will not pay for:

(a) any losses incurred during such Hospital Confinement starting 5 days prior to the date of the transplant and thereafter until your release from the Hospital;

(b) any losses incurred for subsequent Hospital Confinements resulting from the transplanted Vital Organ or Bone Marrow or any complications resulting therefrom; and

(c) any losses incurred for outpatient treatment resulting from the transplanted Vital Organ or Bone Marrow or any complications resulting therefrom.

This benefit shall be payable for each Bone Marrow transplant or replacement of a cancerous Vital Organ by transplant provided the transplant surgery is done in separate Hospital Confinements.

## 27. EXTENDED BENEFITS

If you have been continuously confined to a hospital for the definitive treatment of Cancer, except for any Hospital Confinement covered by the Vital Organ and Bone Marrow Transplant Benefit, for a period of ninety (90) days, we will pay the usual and customary Hospital charges for: Hospital room and board, drugs, medicines, supplies, laboratory work, diagnostic tests, and any other medically related Hospital charges, beginning with the ninety-first (91st) day of continuous confinement until discharge from the Hospital. This benefit is paid in lieu of all other benefits under this policy, including any riders attached hereto, except for Surgery and Anesthesia which will continue to be payable under their applicable benefit provisions. This benefit is not paid for any charges incurred during any Hospital Confinement covered by the Vital Organ and Bone Marrow Transplant Benefit.

07/19/2007 15:04 FAX 15025602140        AEGON FINANCIAL/LEGAL                    ☑013

# SCHEDULE OF OPERATIONS

| Procedure | Maximum Amount |
|---|---|
| **EYE AND EAR** | |
| Biopsy of external ear | 60.00 |
| Biopsy of Cornea | 70.00 |
| Iridectomy | 900.00 |
| Mastoidectomy | |
| (a) complete | 1200.00 |
| (b) radical | 1600.00 |
| Iridectomy with cyclectomy | 1600.00 |
| **HEAD, NECK, & SPINE** | |
| Oropharynx biopsy, excisional | 70.00 |
| Thyroid biopsy, needle | 100.00 |
| Laryngoscopy with biopsy | 300.00 |
| Pharyngectomy | |
| without radical neck dissection | 1050.00 |
| Laryngectomy | |
| (a) subtotal, with bilateral node dissection | 1150.00 |
| (b) total, with radical neck dissection | 1850.00 |
| Adrenalectomy, partial or complete | 1500.00 |
| Thyroidectomy | |
| (a) subtotal, with limited neck dissection | 1700.00 |
| (b) total, with radical neck dissection | 2200.00 |
| Laminectomy for Intraspinal Malignancy | 2300.00 |
| Excision of Malignant Brain Tumor | |
| (a) All tumors except meningioma | 2500.00 |
| (b) Meningioma | 2900.00 |
| Hemispherectomy | 3000.00 |
| **SKIN AND ORAL** | |
| Biopsy | |
| (a) Skin surface | 60.00 |
| (b) Mouth or tongue | 90.00 |
| Excision of malignant lesion | |
| (a) skin surface | 350.00 |
| (b) lip or mouth with resection | 800.00 |
| Glossectomy | |
| (a) less than one-half of tongue | 650.00 |
| (b) complete or total | 1400.00 |
| (c) with radical neck dissection | 1700.00 |
| **THORAX** | |
| Breast biopsy | |
| (a) needle | 60.00 |
| (b) incisional, unilateral | 250.00 |
| Lung biopsy, needle | 90.00 |
| Thoracoscopy with biopsy | 300.00 |
| Bronchoscopy with biopsy | 300.00 |
| Lumpectomy, unilateral | 450.00 |
| Mastectomy, simple | |
| (a) unilateral | 650.00 |
| (b) bilateral | 900.00 |
| Mastectomy, radical including axillary lymph nodes, unilateral | 1400.00 |
| Lobectomy of Lung, total or segmented | 1850.00 |
| Pneumonectomy | 2100.00 |

| Procedure | Maximum Amount |
|---|---|
| **ABDOMEN AND PELVIS** | |
| Liver biopsy | 175.00 |
| Colonoscopy with biopsy | 280.00 |
| Gastroscopy with biopsy | 300.00 |
| Enterectomy: resection of small intestine with anastomosis | 1300.00 |
| Gastrectomy | |
| (a) partial | 1400.00 |
| (b) total, with intestinal anastomosis | 1950.00 |
| Hepatectomy, partial lobectomy | 1500.00 |
| Colectomy, partial with clostomy | 1600.00 |
| Colectomy, total, abdominal, with ileostomy | 1950.00 |
| Abdomino-perineal, resection, with permanent sigmoid colostomy | 2100.00 |
| Esophagectomy | 2300.00 |
| Pancreatectomy, Whipple Type | 2500.00 |
| Esophagogastrectomy | 3000.00 |
| **URINARY TRACT** | |
| Cystoscopy with biopsy | 140.00 |
| Ureteral endoscopy with biopsy | 140.00 |
| Renal biopsy, needle | 200.00 |
| Cystectomy | |
| (a) partial, simple | 1050.00 |
| (b) complete | 1400.00 |
| (c) complete, with uretero-cutaneous transplant | 2400.00 |
| Urethrectomy, total, with cystostomy | 1150.00 |
| Ureterectomy, with bladder cuff | 1400.00 |
| Nephrectomy, radical with excision of regional lymph nodes | 2100.00 |
| **RECTUM** | |
| Proctosigmoidoscopy with biopsy | 120.00 |
| Rectal biopsy, incisional | 300.00 |
| Proctectomy, complete | 1850.00 |
| **MALE GENITALIA** | |
| Biopsy of Penis, cutaneous | 60.00 |
| Prostate biopsy | |
| (a) non-incisional | 125.00 |
| (b) incisional | 300.00 |
| Biopsy of Testis, incisional | |
| (a) unilateral | 220.00 |
| (b) bilateral | 275.00 |
| Orchiectomy, simple | |
| (a) unilateral | 425.00 |
| (b) bilateral | 575.00 |
| Amputation of Penis | |
| (a) partial | 700.00 |
| (b) complete | 1400.00 |
| Prostatectomy, radical | 1700.00 |

12

| Procedure | Maximum Amount |
|---|---|
| **FEMALE GENITALIA** | |
| Biopsy of Vulva | 60.00 |
| Biopsy of Vaginal Mucosa | 60.00 |
| Cervical biopsy | 140.00 |
| Trachelectomy, partial, with dilation and curettage | 375.00 |
| Colpectomy, complete | 825.00 |
| Vulvectomy (a) partial | 850.00 |
| (b) complete | 1150.00 |
| Oophorectomy | 975.00 |
| Uterine Myomectomy, abdominal approach | 1050.00 |
| Vulvectomy, radical with excision of regional lymph nodes | 1700.00 |
| Hysterectomy, (a) Total | 1250.00 |
| (b) Wertheim Type | 2300.00 |
| **GENERAL AMPUTATIONS** | |
| Finger or toe, each | 225.00 |

| Procedure | Maximum Amount |
|---|---|
| **GENERAL AMPUTATIONS (Con't)** | |
| Foot, each | 800.00 |
| Arm, forearm, or lower leg, each | 1050.00 |
| Thigh | 1400.00 |
| Hemipelvectomy | 3000.00 |
| **MISCELLANEOUS** | |
| Muscle biopsy, excisional (a) superficial | 120.00 |
| (b) deep | 225.00 |
| Bone marrow aspiration | 120.00 |
| Superficial lymph node biopsy | 140.00 |
| Sequestrectomy for osteomyelitis (a) scapula or clavicle, with suction or irrigation | 575.00 |
| (b) humeral head to surgical neck, with suction irrigation | 1300.00 |
| Laparotomy (exploratory procedure) | 850.00 |
| Splenectomy | 1500.00 |

## SECTION F - WAIVER OF PREMIUM

If the Insured has been Positively Diagnosed with Cancer and is Totally Disabled for a period of 90 consecutive days beginning on the Date of Total Disability due to such Cancer we will:

(a) Waive each Renewal Premium that becomes due after such 90 day period as long as the Insured is Totally Disabled; and

(b) return to the Insured any premiums that become due and were paid during such 90 day period.

During any period for which we have waived a Renewal Premium, this policy shall be subject to all of its other applicable provisions. Our waiver of Renewal Premiums will end on any Renewal Date upon which the Insured is not Totally Disabled. Total Disability ending between Renewal Dates will be considered by us to end at the next Renewal Date. Upon the end of Total Disability, the Insured must resume payment of Renewal Premiums.

This provision does not apply to Total Disability which begins on or after the Insured's 70th birthday.

## SECTION G - OPTIONAL CANCER DISABILITY COMPENSATION (In Lieu of All Other Benefits)

If you have been Positively Diagnosed with Cancer and you have other health insurance, under one or more policies or service contracts in force, you may elect to receive optional disability compensation. However, if this provision is prohibited in the state where this policy was issued, this provision shall be null and void. (In addition, this policy will contain an endorsement to this effect, if required by law in the state of issue).

If this option is elected we will pay the following benefits:

1. $1400 per week not to exceed 52 weeks while you are Hospital Confined for any one Cancer; and

2. $280 per week not to exceed 104 weeks while you are confined in an Extended Care Facility for any one Cancer. Admission must begin not more than 14 days after your release from a Hospital; and

3. $350 per week not to exceed 26 weeks if you are released from a Hospital with a prognosis of terminal illness and an estimated life expectancy of 6 months or less.

In addition, the election of this option is subject to the following conditions:

1. You must request to elect this option before any payments from the other benefits of this policy are made for each Cancer that is Positively Diagnosed; and

2. you must provide proof acceptable to us that you have other health insurance in force which contains a reduction, or coordination of benefits clause.

Once this option has been elected for Cancer all future benefits payable with respect to the Cancer will be paid under this provision, subject to the above maximums. Benefits paid for periods less than one week will be paid pro rata.

Once elected, the benefits of this provision are in lieu of all other benefits in this policy for Cancer.

## SECTION H - EXCEPTIONS AND LIMITATIONS

1.  This policy provides benefits only for Cancer defined in Section A, "Definitions", which is Positively Diagnosed while this policy is in force, subject to the "waiting period" (see number 2, below). It does not provide benefits for any other illness or disease.

2.  This policy contains a 30 day "waiting period". This means that no benefits are provided for any person diagnosed with Cancer during the first 30 days from the Effective Date of such person's coverage.

3.  We will only pay for loss as a direct result of Cancer, including direct extension, metastatic spread or recurrence. Proof of Positive Diagnosis must be submitted to us for each new claim (except as stated under Section E, item 22, "Skin Cancer"). We will not pay for any other disease or incapacity that has been: Caused, complicated, worsened or affected by or as a result of Cancer.

4.  We may reduce or deny a claim or void the policy for loss incurred by a Covered Person: (a) during the first 2 years from the Effective Date of such coverage for any misstatements in the application which would have materially affected our acceptance of the risk; or (b) at any time for fraudulent misstatements in the application.

5.  Under no condition will we pay any benefits for losses or medical expenses incurred prior to the end of the 30 day "waiting period".

## SECTION I - CONTINUATION AND TERMINATION (END) OF COVERAGE

1.  **CONTINUATION**

    (a) We will endorse this policy to continue coverage and waive premiums for each eligible dependent child to their 18th birthday if this policy is: in full force as a Single Parent Family Policy at your (the Insured's) death; or in full force as a Family Policy if you (the Insured) and your Spouse die at the same time.

    At that time the coverage may be converted according to the applicable provisions under Item 1, SECTION J, "Conversion of Individual Coverage". A Covered Person not eligible for the continued coverage may convert his or her coverage according to the applicable provisions under Item 1, SECTION J, "Conversion of Individual Coverage".

    (b) If this is a Family Policy the Insured's Spouse shall become the Insured at the Insured's death. We will convert this policy to a Single Parent Family Policy or an Individual

Policy, whichever applies, according to the provisions under Item 3, SECTION J, "Conversion of a Family Policy or a Single Parent Family to an Individual Policy; Conversion of a Family Policy to a Single Parent Family Policy".

Any unpaid Renewal Premiums for this policy must be paid before we continue coverage.

2.  **TERMINATION**

    (a) Under a Family Policy, your (the Insured's) Spouse's coverage will end upon the earlier of your Spouse's:

        i.   Death; or

        ii.  valid decree of divorce from you; or

        iii. end of coverage by reason of your request, effective upon our receipt of your written notice

    (b) Under a Single Parent Family Policy, or a Family Policy, coverage will end on a Dependent Child at the earlier of the child's:

        i.   death; or

        ii.  marriage; or

        iii. attainment of age 19; or

        iv.  attainment of age 25 if a full time student at a regular educational institution; or

        v.   written notice to end coverage effective upon receipt by us.

    (c) Coverage on the Insured will end upon the earlier of the Insured's:

        i.   death; or

        ii.  failure to pay the Renewal Premium before the grace period ends; or

        iii. written notice to end coverage, effective upon receipt by us.

    (d) Coverage will end on each Covered Person if the Renewal Premium is not paid before the grace period ends.

Termination under the conditions: (a) (iii); (b) (ii), (iii), or (iv); or (c) (iii) will be on the next Renewal Date following the occurrence of the condition. If you fail to notify us promptly of the above conditions, we will refund the applicable portion of the premium at the time we are notified.

Terminations due to your (the Insured's) written request may be made later than as specified above when indicated on your written notice. However, any such later termination date will be on a Renewal Date.

14

Coverage will not end on a Covered Person who is an un-married dependent child unable to self-sustain employment by reason of mental retardation or physical handicap (who became so unable prior to the attainment of the limiting age for eligibility under this policy), and who is chiefly dependent upon you (the Insured) for support and maintenance. Proof of such inability and dependency must be furnished to us not more than 31 days from the date the child's coverage ends. Proof of continued inability and dependency must be furnished at our request, but no more than annually after two years following the child's 25th birthday.

Coverage ending pursuant to Items (ii) or (iii) under (b) shall be without prejudice to any continuous claim beginning while coverage was in force. However, such an extension of benefits after coverage ends shall not exceed a period of 90 days.

## SECTION J - CONVERSION PRIVILEGES

### 1.   CONVERSION OF INDIVIDUAL COVERAGE

(a) If this is a Single Parent Family Policy or a Family Policy, we will issue a new policy to a child who is a Covered Person. The new policy will be issued without Evidence of Insurability. It is subject to the child being a Covered Person under this policy when his or her coverage ends.  (b) If this is a Family Policy and the Insured and the Insured's Spouse dissolve their marriage by valid decree of divorce, we will issue a new policy to the Spouse. The new policy will be issued without Evidence of Insurability. It is subject to the Insured's Spouse being a Covered Person at final decree of divorce.

Under either (a) or (b) above the new policy will be issued on a form then available from us that is most like this policy. Benefits under the new policy shall not exceed those under this policy unless Evidence of Insurability is provided. Covered Persons (excluding the Insured) under this policy may become Covered Persons under the divorced Spouse's new policy as the Insured and the divorced Spouse may elect; however, in no case will any Covered Person be covered under both this policy and the divorced Spouse's new policy at the same time.

The conversion privileges described in Items (a) and (b) above are subject to the following conditions:

(a)   Application for the new policy must be made not more than 31 days after coverage ends under Item (a), and before coverage ends under Item (b); and

(b)   the premium for the new policy will be at the rates for the Class to which the Covered Person belongs at such Covered Person's age, for the policy form, and the amount of insurance provided as of the Effective Date of the new policy; and

(c)   any condition specifically excluded from coverage in this policy will also be excluded under the new policy, unless we decide otherwise when the new policy is issued; and

(d)   benefits payable to a Covered Person under the new policy will be reduced by benefits payable under this policy after coverage under this policy ends; and

(e)   this policy must be in force on the Conversion Date.

### 2.   CONVERSION OF AN INDIVIDUAL POLICY TO A SINGLE PARENT OR A FAMILY POLICY; CONVERSION OF A SINGLE PARENT FAMILY POLICY TO A FAMILY POLICY:

If this is an Individual Policy, the Insured may convert it to a Single Parent Family Policy or a Family Policy with the addition of: Eligible family members by endorsement; or when a child of the Insured's is born. If this is a Single Parent Family Policy, the Insured may convert it to a Family Policy with the addition of the Insured's Spouse by endorsement. Such conversions are subject to the following conditions:

(a)   An application is submitted to us providing Evidence of Insurability for each eligible family member applying for coverage (if two or more are applying at the same time one application may be submitted); or in the case of the Insured's newborn child written notice is submitted to us not more than 31 days after the child's birth; and

(b)   the required premium is paid for a Single Parent Family Policy or a Family Policy, whichever applies.

We will convert this policy by endorsement to either a Single Parent Family Policy or a Family Policy, whichever applies, effective at the Conversion Date. Conversion is subject to the payment of all due Renewal Premiums to the Conversion Date.

### 3.   CONVERSION OF A FAMILY POLICY OR A SINGLE PARENT FAMILY POLICY TO AN INDIVIDUAL POLICY; CONVERSION OF A FAMILY POLICY TO A SINGLE PARENT FAMILY POLICY:

If this is a Family Policy or a Single Parent Family Policy, the Insured may convert it to an Individual Policy if any of the events under Item 2, SECTION I, "Termination", causes coverage to end on a Covered Person. This must result in the Insured becoming the only Covered Person under this policy. If this is a Family Policy, the Insured may convert it to a Single Parent Family Policy if any of the events under Item 2(a), SECTION I, "Termination", causes coverage to end on the Insured's Spouse. We will convert this Policy by endorsement and change the Renewal Premium to that for an Individual Policy or a Single Parent Family Policy, whichever applies, effective at the Conversion Date. Conversion is subject to the payment of all due Renewal Premiums to the Conversion Date and our receipt of written notice to convert this policy.

If possible, notice should be sent in advance of the Conversion Date. However, if we receive written notice after the Conversion Date, we will make the conversion retroactive to that date. If a conversion is retroactive, we will refund to the Insured the difference between: All Renewal Premiums paid for this policy after the Conversion Date, and the Renewal Premiums we would have charged had we received written notice on or before the Conversion Date. If a refund of premium is requested when exercising a conversion privilege, written notice must include a copy of a document verifying that coverage has ended for the Covered Person (e.g. death certificate, divorce decree, birth certificate, etc.) making this policy eligible for conversion.

## SECTION K - GENERAL PROVISIONS

### 1. ENTIRE CONTRACT CHANGES

This policy, including the application, and any endorsements or attached papers, is the entire contract. No change in this policy will be effective until approved by a company officer. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions.

### 2. TIME LIMIT ON CERTAIN DEFENSES

(a) After two (2) years from the date on which a person becomes a Covered Person under this policy, no misstatements (except fraudulent misstatements), made in the application for coverage of such person shall be used to void the policy or to deny a claim for loss incurred or disability commencing after the expiration of such two (2) year period.

(b) After two (2) years from the date on which a person becomes a Covered Person under this policy, no claim for loss incurred or disability commencing with respect to any Covered Person shall be reduced or denied on the grounds that a disease or physical condition not disclosed or excluded from coverage by name or specific description effective on the date of loss had existed prior to the Effective Date of coverage of such person.

### 3. FRAUDULENT MISSTATEMENT

If a fraudulent misstatement is made in the application for this policy we may reduce or deny any claim or void the policy at any time.

### 4. GRACE PERIOD

A grace period of thirty-one (31) days will be granted for the payment of each Renewal Premium falling due after the initial premium. During the grace period the policy will remain in force.

### 5. REINSTATEMENT

If the Renewal Premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by an agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy. If we or our agent requires an application, the Insured will be given a conditional receipt for the premium. If the application is approved, the Policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt, unless we have previously written the Insured of its disapproval. The reinstated policy will cover only losses resulting from Cancer that is Positively Diagnosed more than 10 days after the date of reinstatement. In all other respects, your rights and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

### 6. NOTICE OF CLAIM

Written notice of claim must be given to us within sixty (60) days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of you to our Home Office in Little Rock, Arkansas or to our agent shall be deemed notice to us. The notice should include the name of the Insured and the policy number.

### 7. CLAIM FORMS

When we receive the notice of claim, we will send the Insured such forms as are usually furnished by us for filing proof of loss. If such forms are not sent within ten (10) days you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss with the time stated in the "Proofs of Loss" provision, in this section.

### 8. PROOFS OF LOSS

Written proof of loss must be given to us within ninety (90) days after the date of such loss. If it was not reasonably possible to give written proof in the time required, we shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the time specified, unless the claimant was legally incapacitated.

### 9. TIME PAYMENT OF CLAIMS

Indemnities payable under this policy for any loss will be paid as soon as we receive proper written proof of loss.

Case 4:11-cv-00086-JLH  Document 106-1  Filed 02/15/11  Page 16 of 18
07/19/2007 15:06 FAX 15025602140       AEGON FINANCIAL/LEGAL                    ☒018

16

### 10. PAYMENT OF CLAIMS

Benefits are payable to the insured. Any accrued benefits unpaid at such insured's death will be paid to the spouse of such insured, if living, otherwise to the estate of such insured. If benefits are payable to the insured's estate or a beneficiary who cannot execute a valid release, we can pay benefits up to $1,000.00 to one related to the insured or beneficiary by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payments made in good faith.

We may pay all or a portion of any indemnities provided for health care services to the provider, unless the insured directs otherwise in writing by the time proofs of loss are filed. The Company cannot require that the services be rendered by a particular provider.

### 11. PHYSICAL EXAMINATION AND AUTOPSY

We, at our expense, have the right to have the covered person examined as often as reasonably necessary while a claim is pending. We may also have an autopsy performed, if necessary, unless prohibited by law.

### 12. LEGAL ACTIONS

No action at law or in equity shall be brought to recover on this policy within sixty (60) days after written proof of loss has been furnished in accordance with requirements of this policy. No such action may be brought after five (5) years from the time written proof of loss is required to be given.

### 13. CONFORMITY WITH STATE STATUTES

Any provision of this policy which, on its Effective Date, is in conflict with the laws of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such laws.

### 14. TERMINATION OF COVERED PERSON

Upon the termination of coverage of a Covered Person (see SECTION J) our acceptance of premium shall be considered as premium for only the Insured and the remaining Covered Persons.

### 15. OTHER INSURANCE WITH THIS INSURER

If the Insured has more than one policy like this policy with us, only one policy chosen by the Insured, the beneficiary or the Insured's estate, as the case may be, will be effective. We will refund all premiums paid for all other such policies.

### 16. CHANGE OF BENEFICIARY

Unless the Insured makes an irrevocable designation of beneficiary, the right to change beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of the policy or to any change of beneficiaries, or to any other changes in this policy.

### 17. TERM OF COVERAGE

(a) The initial term of this Policy starts on the Effective Date at 12:01 a.m. Standard Time at the Insured's place of residence. It ends 12:01 a.m. on the same Standard Time on the First Renewal Date. (b) Each time this policy is renewed the new term begins and the old term ends. If a Renewal Premium is not paid when it is due the policy will remain in force during the grace period.

### 18. POLICY SCHEDULE

The POLICY SCHEDULE page and the information thereon is a part of this policy to the same extent as if it preceded the execution clause.

### 19. ASSIGNMENT

The Insured may assign benefits under this policy. We assume no responsibility for the validity or effect of any assignment of this policy or any interest in it. The assignment must be in writing and filed with us.

### 20. UNPAID PREMIUMS

Upon the payment of a claim under this policy, any premium then due and unpaid may be deducted from such payment.

### 21. CLERICAL ERROR

A clerical error by us shall not invalidate insurance otherwise in force, nor continue insurance otherwise not validly in force.

### 22. NONPARTICIPATION

This policy shall not participate in the distribution of our surplus.

### 23. REFUND OF UNEARNED PREMIUM

You may cancel this policy at any time by written notice delivered or mailed to us, effective upon receipt of the notice or on a later date as specified. In the event of cancellation or death of the Insured, we will promptly return the unearned portion of any premium paid. Cancellation shall be without prejudice to any claim originating prior to the effective date of cancellation.

# INDEX

Insuring Clause ............................... 1

Policy Schedule .............................. 2

Renewability Clause .......................... 1

Ten-Day Right to Examine Policy ............... 1

**SECTION A**
Definitions ................................. 3-5

**SECTION B**
Family Member Eligibility ...................... 5

**SECTION C**
Beginning of Benefit Payments ................ 5

**SECTION D**
Hospital Indemnity Benefit ..................... 6

**SECTION E**
Schedule of Benefits ........................ 6-10
Surgical Schedule .......................... 11-12

**SECTION F**
Waiver of Premium Benefit .................... 12

**SECTION G**
Optional Cancer
Disability Compensation ...................... 12

**SECTION H**
Exceptions and Limitations ................... 13

**SECTION I**
Continuation and Termination
(End) of Coverage ......................... 13-14

**SECTION J**
Conversion Privileges ...................... 14-15

**SECTION K**
General Provisions ......................... 15-16

Please examine your policy and the attached copy of the application carefully. Contact us at our Home Office in Little Rock, Arkansas, if you desire additional service or information.

If you change your address, please notify us giving your full name and policy number.

Your policy is a valuable asset. For your own protection, let us advise you regarding any suggestion to terminate this policy.

EPC530

01E122807

07/19/2007 15:06 FAX 15025602140          AEGON FINANCIAL/LEGAL                    ☒020

# *Equity National*

## Life Insurance Company

A Stock Company (Hereinafter called: We, our or us)
Home Office: 1020 West 4th Street, Little Rock, AR 72201