**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**ROBERT W. HALL**                                                                          **PLAINTIFF**

**v.**                                        **Case No. 4:11-cv-00086-JLH**

**EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.**                                                                    **DEFENDANTS**

**DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S
RESPONSE TO PLAINTIFF'S STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant Transamerica Life Insurance Company ("Transamerica") hereby responds to plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion for Partial Summary Judgment ("Plaintiff's Statement") (Docket #107):

1.      Admitted in part.  Transamerica admits that on September 17, 1994, plaintiff Robert W. Hall applied for a "Cancer Expense Policy" from Equity National Life Insurance Company ("Equity National").  The "Hall Policy" referenced in Plaintiff's Statement is incomplete.  A complete duplicate copy of plaintiff's Policy, including the Policy Application, is attached as Exhibit B to the Declaration of Connie Whitlock in Support of Transamerica's Motion for Summary Judgment ("Whitlock Decl.").  Motion, Exh 1.  In June 1995, Equity National merged into Life Investors Insurance Company of America ("Life Investors").  Declaration of Connie Whitlock in Support of AEGON USA, LLC's Motion for Summary

Judgment ¶ 6, filed Nov. 24, 2010 (Docket #60-2).  Effective October 2, 2008, Life Investors merged into Transamerica.  *Id*. ¶ 2.  All references to Transamerica in this response include Life Investors.

2.      Denied as immaterial.  The testimony cited in support of Paragraph 2 also lacks the required clarity and specificity to constitute probative and admissible evidence under Federal Rule of Civil Procedure 56.

3.      Denied as immaterial.  The testimony cited in support of Paragraph 3 also lacks the required clarity and specificity to constitute probative and admissible evidence under Federal Rule of Civil Procedure 56.

4.      Denied.  The terms of plaintiff's Policy speak for themselves.  Benefits under the Policy are not "indexed."  The Policy does not even employ the word "index."  Whitlock Decl., Exh. B.   Transamerica also denies Paragraph 4 as immaterial.   There are no radiation or chemotherapy benefits at issue in this case.  Complaint ¶ 42.

5.      Denied.  The terms of plaintiff's Policy speak for themselves.  Benefits under the Policy are not "indexed."  The Policy does not even employ the word "index."  Whitlock Decl., Exh. B.  The surgery provision in the Policy states:

> We will pay the actual fee for a surgical operation (conventional, laser or stereotactic) and post operative care not to exceed the amount shown for that operation in the SCHEDULE OF OPERATIONS (pages 11-12) while you are Hospital Confined. Non-scheduled operations will be paid on a comparable basis not to exceed the lesser of:
>
> (a) The Usual and Customary charge; or
>
> (b) an amount determined by the 1974 California Relative Value Schedule, (5th edition, revised) with a conversion factor of $120; or
>
> (c) $3000.

> If two or more surgical procedures are performed through the same incision, we will only pay for the procedure having the highest benefit as determined by this provision.

Policy, Section E, ¶ 4 at p. 6.  The maximum amount scheduled for plaintiff's prostate surgery at issue in this case was $1,700.00.  Policy, Schedule of Benefits, p. 11.

6.     Denied.   The development of Transamerica's claim forms and procedures is established in the sworn and unrebutted testimony of Connie Whitlock:

> 5.   Equity National . . . began selling a cancer insurance policy containing "actual charges" benefits (form EN4212) in its home state of Arkansas in 1975. . . .   The "actual charges" language found in Equity National policies originated at a time when doctors and other healthcare providers were issuing genuine "bills" which reflected their actual charges, *i.e.*, the actual amounts legally owed and the amounts actually being charged by and paid to the providers for the services rendered. Transamerica's claims examiners would accept as "proof of loss" under the policies these "bills" showing the real charges that were actually owed and being paid for the services rendered.
>
> * * *
>
> 10.  . . . Over time, Transamerica had begun paying some claims in excess of the "actual charges" because insureds were submitting, and claims examiners were incorrectly accepting as proof of loss, documents from healthcare providers which were not genuine "bills" and which contained "list" prices instead of the actual charges being paid to and accepted by the medical providers as payment for their services.   After review, Transamerica determined that it needed to correct and update its claim forms and procedures to ensure that it would receive the information and documentation necessary to accurately pay claims for "actual charges" going forward.   This action was necessary to pay claims correctly under the terms of the policies and to protect the policyholders from larger and more frequent premium rate increases.   The company's action was taken in good faith and for the benefit of the policyholders as a whole.
>
> * * *
>
> 12.  In a July 22, 2005 memorandum to the managers of the Little Rock, Arkansas and Louisville, Kentucky Claims Departments that handle these policies, I announced Transamerica's decision to correct and update its claims forms and procedures to properly pay "actual charges" benefits going forward. . . .

> 13. Beginning in early 2006, Transamerica sent a letter to its Alabama policyholders, including Robert Hall, who owned a supplemental cancer insurance policy that paid benefits based on "actual charges." . . . The 2006 Letter explained the meaning of the phrase "actual charges" as used in Hall's Policy, how Transamerica (then, Life Investors) interpreted "actual charges," and what type of "proof of loss" would be required under the Policy to support a claim for benefits based on actual charges. ...

Ms. Whitlock's deposition testimony from the *Gooch* case cited by plaintiff in Paragraph 6 is consistent with Ms. Whitlock's declaration testimony in this action. Whitlock Dep. at 86 (Q. Are you proposing a change [in your 2005 memorandum]? . . . A. We're proposing that we're correcting procedures and some of the forms and things that we use.).

7. Denied for the reasons stated in Transamerica's response to Paragraph 6, and based on the evidence cited therein.

8. Denied. Whitlock Decl. ¶¶ 5, 9 ("The 'actual charges' language found in Equity National policies originated at a time when doctors and other healthcare providers were issuing genuine 'bills' which reflected their actual charges, *i.e.*, the actual amounts legally owed and the amounts actually being charged by and paid to the providers for the services rendered. . . . The Policy as a whole makes clear that any benefits for 'actual charges' must be based on a 'loss incurred,' and written 'proof of loss' of the 'incurred expense' must be presented to support a claim for benefits. Fictitious prices which do not represent a 'loss incurred' or 'incurred expense' are not 'actual charges' under the Policy.").

9. Denied. Whitlock Decl. ¶¶ 10, 12 (Transamerica corrected its claim forms and procedures "to pay claims correctly under the terms of the policies and to protect the policyholders from larger and more frequent premium rate increases." The July 22, 2005 memorandum "announced Transamerica's decision to correct and update its claims forms and procedures to properly pay "actual charges" benefits going forward."). Ms. Whitlock's

deposition testimony from the *Gooch* case cited by plaintiff in Paragraph 9 is consistent with Ms. Whitlock's declaration testimony in this action.  Whitlock Dep. at 89 (Transamerica undertook a review of its claims procedures after an actuary "expressed concern[] about continuing to do – continuing rate increases.").

10.     Denied as immaterial and inadmissible hearsay.  *See* Federal Rules of Evidence 801-802.

11.     Admitted but immaterial.

12.     Denied as immaterial to the extent plaintiff alleges "he had to call" Transamerica to obtain his claim forms.  Transamerica sent plaintiff a letter on February 10, 2006 enclosing claim forms.  Whitlock Decl. ¶ 13; Motion, Exh. 3 ¶ 5 (Declaration of James Byrne in Support of Transamerica's Motion for Summary Judgment).

13.     Denied as a legal conclusion, and immaterial given plaintiff's testimony that he does not recall receiving the February 10, 2006 letter.  Motion, Exh. 5 at 132 (Excerpts from Deposition of Robert W. Hall, December 14, 2010 ("Hall Dep.")).  The terms of the letter speak for themselves.  Whitlock Decl., Exh. D.

14.     Denied for the reasons stated in Transamerica's response to Paragraph 6, and based on the evidence cited therein.

15.     Denied.  Motion, Exh. 4 (Declaration of Kathy Holdiness) ¶ 12 ("On July 27, 2006, Management Services Organization physician Dr. Stanley A. Wade performed prostate surgery on Mr. Hall. Although Management Services Organization's maximum rate for treatment related to the surgery was $4,166.00, ***the total fee to Mr. Hall for this surgery was $1,483.58***, which was the Medicare Allowed Amount. Medicare paid $1,186.86, and UnitedHealthcare paid the balance of $296.72.  Under federal law, neither Medicare nor Mr. Hall

or UnitedHealthcare were obligated to Management Services Organization or Dr. Wade for any amount in excess of the $1,483.58 Medicare Allowed Amount. Management Services Organization **did not charge its maximum rates to Mr. Hall** and did not otherwise attempt to obtain any payments from Mr. Hall or UnitedHealthcare in excess of the Medicare Allowed Amount.") (emphasis added).

16.     Denied.  *See* Hall Dep. at 209 (Q. And do you think that you were entitled to get paid more than your doctor got paid for any particular service or treatment?  A. No, ma'am, but that's not the point I mean, that's not the question.).  Because plaintiff did not read his Policy, he had no understanding when he submitted claims that the Policy was limited to the benefits listed and scheduled in the Policy.  *Id.* at 97-99; 161-62.

17.     Denied.  Hall Dep. at 49-50 (Q. Did you know Mr. Hutsler?  A. No, ma'am, not at that time.  Q. And he just called you out of the blue?  A. Yes, ma'am.).

Respectfully submitted,

*/s/ John K. Baker*

| | |
|---|---|
| Markham R. Leventhal, Esq. | John K. Baker, Esq., Ark. Bar No. 97024 |
| Farrokh Jhabvala, Esq. | **MITCHELL, WILLIAMS, SELIG,** |
| Julianna Thomas McCabe | **GATES & WOODYARD, P.L.L.C.** |
| **JORDEN BURT LLP** | 425 West Capitol Avenue, Suite 1800 |
| 777 Brickell Avenue, Suite 500 | Little Rock, Arkansas  72201 |
| Miami, Florida  33131 | Telephone:  (501) 688-8800 |
| Telephone:  (305) 371-2600 | Facsimile:  (501) 918-7850 |
| Facsimile:  (305) 372-9928 | jbaker@mwlaw.com |
| ml@jordenusa.com | |
| fj@jordenusa.com | |
| jt@jordenusa.com | *Attorneys for Defendant Transamerica Life Insurance Company* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2011, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL  35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, FL  32601

*Attorneys for Plaintiff*

The undersigned hereby certifies that a true and correct copy of the foregoing was served

by First-Class U.S. mail upon the following on this 11th day of March, 2011:

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, FL 32601

<u>        /s/ John K. Baker        </u>
John K. Baker