**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**


**ROBERT W. HALL**                                                          **PLAINTIFF**


**v.**                         **Case No. 4:11-cv-00086-JLH**


**EQUITY NATIONAL LIFE INSURANCE**
**COMPANY, et al.**                                                **DEFENDANTS**

---

**TRANSAMERICA LIFE INSURANCE COMPANY'S**
**REPLY MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT AND**
**RESPONSE IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

---

Markham R. Leventhal            John K. Baker (ABA #97024)
Farrokh Jhabvala                 MITCHELL, WILLIAMS, SELIG,
Julianna Thomas McCabe          GATES & WOODYARD, P.L.L.C.
JORDEN BURT LLP               425 West Capitol Avenue, Suite 1800
777 Brickell Avenue, Suite 500      Little Rock, Arkansas  72201
Miami, Florida  33131               Telephone:  (501) 688-8800
Telephone:  (305) 371-2600        Facsimile:  (501) 918-7850
Facsimile:  (305) 372-9928


*Attorneys for Defendants Transamerica*
*Life Insurance Company and AEGON USA, LLC*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.     PLAINTIFF'S CONCLUSORY RULE 56.1 STATEMENT IS INSUFFICIENT
       TO OPPOSE TRANSAMERICA'S STATEMENT OF MATERIAL FACTS ................. 4

II.    TRANSAMERICA IS ENTITLED TO SUMMARY JUDGMENT WITH
       RESPECT TO PLAINTIFF'S BREACH OF CONTRACT CLAIM, AND
       PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED .............................................. 9

       A.     The Parties Agree That Plaintiff's Claims Are Governed By Alabama Law ......... 9

       B.     Plaintiff's Response Makes No Attempt To Rebut Transamerica's
              Material Evidence And Does Not Establish That There Is A Genuine Issue
              For Trial Regarding The Surgery And Anesthesia Claims .................................... 9

       C.     Plaintiff's Attempt To Distinguish The *Claybrook* Case By Applying A
              Series Of Fictional "Indices" And Mischaracterizing Transamerica's
              Position Is Insufficient To Defeat Transamerica's Summary Judgment
              Motion ............................................................................................................... 12

              1.     The *Claybrook* Court's Conclusion Is Even More Appropriate
                     Here, Where Plaintiff's Policy Insures Only For "Loss Incurred" ........... 13

              2.     Plaintiff's Course Of Performance Argument Is Unsupportable
                     Because There Was No Past Course Of Performance Between
                     Transamerica And The Plaintiff .............................................................. 16

       D.     Plaintiff's Reliance On Inapposite Authorities From Other Jurisdictions Is
              Misplaced .......................................................................................................... 18

III.   TRANSAMERICA IS ENTITLED TO SUMMARY JUDGMENT WITH
       RESPECT TO PLAINTIFF'S BAD FAITH CLAIM ....................................................... 21

IV.    TRANSAMERICA IS ENTITLED TO SUMMARY JUDGMENT WITH
       RESPECT TO PLAINTIFF'S UNJUST ENRICHMENT CLAIM .................................. 25

V.     TRANSAMERICA IS ENTITLED TO SUMMARY JUDGMENT WITH
       RESPECT TO PLAINTIFF'S CLAIM FOR DECLARATORY AND
       INJUNCTIVE RELIEF AND PLAINTIFF'S CROSS-MOTION SHOULD BE
       DENIED .............................................................................................................................. 26

# TABLE OF CONTENTS
(continued)

*Page*

CONCLUSION.................................................................................................29

CERTIFICATE OF SERVICE .........................................................................30

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Alabama Farm Bureau Mutual Casualty Insurance Co. v. Preston*,
253 So. 2d 4 (Ala. 1971) .................................................................................................. 15

*American Liberty Insurance Co. v. Carpenter*,
547 So. 2d 402 (Ala. 1989) ........................................................................................ 19, 20

*American National Property & Casualty Co. v. Blocker*,
165 F. Supp. 2d 1288 (S.D. Ala. 2001) .......................................................................... 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................................... 9, 11

*Anuforo v. Commissioner of Internal Revenue*,
614 F.3d 799 (8th Cir. 2010) .......................................................................................... 8

*Arkansas Blue Cross & Blue Shield, Inc. v. Foerster*,
832 S.W.2d 280 (Ark. Ct. App. 1992) ........................................................................... 15

*Arnett v. Arnett*,
812 So. 2d 1246 (Ala. Civ. App. 2001) .......................................................................... 15

*Babcock v. Smith*,
234 So. 2d 573 (1970) ..................................................................................................... 17

*Carrell v. Masonite Corp.*,
775 So. 2d 121 (Ala. 2000) ............................................................................................. 28

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................................ 11

*Celtic Life Insurance Co. v. McLendon*,
814 So. 2d 222 (Ala. 2001) ............................................................................................. 13

*Cincinnati Insurance Co. v. Holbrook*,
867 F.2d 1332 (11th Cir. 1989) ...................................................................................... 28

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......................................................................................................... 26

*Clark v. Transamerica Life Insurance Co.*,
2010 WL 2771916 (E.D. Ark. June 18, 2010) ............................................................... 19

# TABLE OF AUTHORITIES
(continued)

*Page*

*Claybrook v. Central United Life Insurance Co.*,
    387 F. Supp. 2d 1199 (M.D. Ala. 2005) ................................................................. passim

*Conner v. American Public Life Insurance Co.*,
    448 F. Supp. 2d 762 (N.D. Miss. 2006)................................................................... 21

*Duvall v. City of Rogers, Arkansas*,
    2005 WL 3784932 (W.D. Ark. Dec. 20, 2005) ....................................................... 8

*Federal Kemper Insurance Co. v. Rauscher*,
    807 F.2d 345 (3d Cir. 1986)..................................................................................... 27

*Golden v. Zwickler*,
    394 U.S. 103 (1969).................................................................................................. 26

*Hartnagel v. Norman*,
    953 F.2d 394 (8th Cir. 1992) ................................................................................... 11

*Hillery v. Allstate Indemnity Co.*,
    705 F. Supp. 2d 1343 (S.D. Ala. 2010).................................................................... 21

*Hilley v. Allstate Insurance Co.*,
    562 So. 2d 184 (Ala. 1990)...................................................................................... 21

*Hodges v. American Fidelity Assurance Co.*,
    2008 WL 723994 (S.D. Miss. Mar. 17, 2008) ........................................................ 21

*Holland v. Sam's Club*,
    487 F.3d 641 (8th Cir. 2007) ................................................................................... 9

*Khoury v. Group Health Plan, Inc.*,
    615 F.3d 946 (8th Cir. 2010) ................................................................................ 9, 11

*Lake Martin/Alabama Power Licensee Ass'n v. Alabama Power Co.*,
    601 So. 2d 942 (Ala. 1992)...................................................................................... 22

*Lambert v. Coregis Insurance Co.*,
    950 So. 2d 1156 (Ala. 2006) ................................................................................ 10, 19

*Lark v. West*,
    182 F. Supp. 794 (D.D.C. 1960) .............................................................................. 8

**TABLE OF AUTHORITIES**
(continued)

*Page*

*Lindley v. Life Investors Insurance Co. of America*,
2009 WL 2163513 (N.D. Okla. July 17, 2009) ............................................ 21

*Lindley v. Life Investors Insurance Co. of America*,
2010 WL 723670 (N.D. Okla. Feb. 22, 2010) .............................................. 21

*Martin v. Sargent*,
780 F.2d 1334 (8th Cir. 1985) .................................................................... 26

*Matsushita Electric Industry Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................................... 11

*Metz v. U.S. Life Insurance Co.*,
2010 WL 3703810 (S.D.N.Y. Sept. 21, 2010) ............................................. 20

*Metzger v. American Fidelity Assurance Co.*,
2006 WL 2792435 (W.D. Okla. Sept. 26, 2006) .......................................... 20

*Moody v. St. Charles County*,
23 F.3d 1410 (8th Cir. 1994) .................................................................... 4, 8

*National Savings Life Insurance Co. v. Dutton*,
419 So. 2d 1357 (Ala. 1982) ....................................................................... 22

*National Security Fire & Casualty Co. v. Bowen*,
417 So. 2d 179 (Ala. 1982) .......................................................................... 22

*Northern Assurance Co. of America v. Bayside Marine Construction, Inc.*,
2009 WL 151023 (S.D. Ala. Jan. 21, 2009) ................................................. 25

*Oliver v. Oliver*,
178 F.3d 1285 WL 308594 (May 17, 1999 4th Cir.) .................................... 27

*Pace v. Colonial Penn Insurance Co.*,
690 So. 2d 369 (Ala. Civ. App. 1996) ......................................................... 22

*Peachtree Casualty Insurance Co. v. Sharpton*,
2001 WL 286919 (M.D. Ala. Mar. 20, 2001) ................................. 22, 23, 25

*Philadelphia American Life Insurance Co. v. Buckles*,
350 F. App'x 376 (11th Cir. 2009) .................................................. 14, 16, 20

# TABLE OF AUTHORITIES
(continued)

*Page*

*Philson v. Arkansas Department of Human Services,*
    2010 WL 4683898 (W.D. Ark. Nov. 10, 2010) ............................................................... 8

*Pierce v. Central United Life Insurance Co.,*
    2009 WL 2132690 (D. Ariz. July 15, 2009) ................................................................. 21

*Pritchett v. State Farm Mutual Automobile Insurance Co.,*
    834 So. 2d 785 (Ala. Civ. App. 2002) ......................................................................... 13

*Protective Industrial Insurance Co. of Alabama v. Gray,*
    118 So. 2d 289 (Ala. Civ. App. 1960) ......................................................................... 15

*S.B. v. Saint James School,*
    959 So. 2d 72 (Ala. 2006) ............................................................................................ 10

*Safeway Insurance Co. of Alabama, Inc. v. Herrera,*
    912 So. 2d 1140 (Ala. 2005) ........................................................................................ 15

*Skelly Oil v. Phillips Petroleum Co.,*
    339 U.S. 667 (1950) ..................................................................................................... 28

*Smith v. Life Investors Insurance Co. of America,*
    2009 WL 3756911 (W.D. Pa. Nov. 6, 2009) ......................................................... 18, 20

*Stone v. Mellon Mortgage Co.,*
    771 So. 2d 451 (Ala. 2000) ..................................................................................... 25, 26

*Summit Properties International, LLC v. LPGA,*
    2010 WL 2382405 (S.D.N.Y. June 14, 2010) ............................................................. 29

*U.S. Fire Insurance Co. v. Massey Irrigation & Liquidation,*
    40 F.3d 385, 1994 WL 652520 (5th Cir. Nov. 3, 1994) ............................................... 27

*U.S. v. St. Paul Mercury Indemnity Co.,*
    238 F.2d 594 (8th Cir. 1956) ....................................................................................... 15

*VanLoock v. Curran,*
    489 So. 2d 525 (Ala. 1986) .......................................................................................... 28

*Ward v. Dixie National Life Insurance Co.,*
    257 F. App'x 620 (4th Cir. 2007) ................................................................................ 21

**TABLE OF AUTHORITIES**
(continued)

*Page*

*Webb v. International Indemnity Co.*,
  599 So. 2d. 1144 (Ala. 1992) .......................................................................... 22

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ........................................................................................ 28

**Statutes**

28 U.S.C. § 2201 ............................................................................................... 27

Alabama Code § 6-6-224 .................................................................................. 27

**Other Authorities**

Federal Rule of Civil Procedure 56 .................................................................... 1

Local Rule 56.1 ........................................................................................... 1, 4, 7

**Rules**

12 James Wm. Moore, et al., *Moore's Federal Practice* § 57.04[2] (3d ed. 2011)...................... 27

The American Heritage® Dictionary of the English Language, Fourth Edition, Copyright
  © 2000 by Houghton Mifflin Company ......................................................... 19

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant Transamerica Life Insurance Company ("Transamerica") submits this memorandum (the "Reply") in further support of its Motion for Summary Judgment (Docket #76) (the "Motion"), in reply to plaintiff's Response to the Motion, and in opposition to Plaintiff's Cross-Motion for Partial Summary Judgment (the "Cross-Motion").[1]  For the reasons set forth below, the Court should enter summary judgment in favor of Transamerica with respect to all remaining claims, including plaintiff's breach of contract claim (Count I) with respect to the "Surgery and Anesthesia Claims,"[2] and plaintiff's claims for bad faith (Counts II and V), unjust enrichment (Count III), and injunctive and declaratory relief (Count IV).  The Cross-Motion should be denied.

## INTRODUCTION

This is a breach of contract action in which the plaintiff alleges that two benefit payments under a supplemental cancer insurance policy for his 2007 Surgery and Anesthesia Claims were underpaid.[3]  Transamerica has submitted direct evidence regarding these claims, including testimony from the billing agent of the medical provider regarding the actual amounts charged, billed, owed, and paid for the Surgery and Anesthesia Claims.  Plaintiff alleged in the Complaint that he "incurred charges and was billed" for Dr. Wade's maximum rate or list price of $4,166.00

---

[1] Plaintiff's Response to Transamerica's Motion was integrated with the memorandum of law submitted in support of his Cross-Motion.  *See* Memorandum in Support of Plaintiff's Cross-Motion for Partial Summary Judgment and Response in Opposition to Defendant Transamerica Life Insurance Company's Motion for Summary Judgment (Docket #106).  Plaintiff's combined memorandum of law (Docket #106) is referenced herein as the "Response."

[2] Complaint ¶ 42.  By Order dated July 9, 2010, this Court dismissed plaintiff's class action allegations.  Docket #40.  Transamerica's Motion and this Reply address plaintiff's individual claims.

[3] A duplicate copy of plaintiff's Policy is attached to the Motion (Docket #76).  *See* Motion, Exh. 1, Declaration of Connie Whitlock (the "Whitlock Decl.") (Exhibit B - Policy).

for the Surgery.   Complaint ¶ 42.   The undisputed evidence now shows that allegation is not correct.   *See* Motion, Exh. 4, Declaration of Kathy Holdiness ¶¶ 8, 12 (the "Holdiness Decl.") ("No amount in excess of the Medicare Allowance can be billed or charged by Management Services Organization to the Medicare insured, Medicare, or any other insurance plan owned by the Medicare insured for covered services," and Management Services Organization "did not charge its maximum rates to Mr. Hall").   The only fee "billed" and the only charge "incurred" for the Surgery (Complaint ¶ 42) was $1,483.58, of which "Medicare paid $1,186.86, and United Healthcare paid the balance of $296.72."   Holdiness Decl. ¶ 12.

Plaintiff's Response entirely ignores his provider's testimony and virtually all of the specific facts surrounding the two claims at issue in this case.   Instead of facts, plaintiff relies on a confusing series of conclusory arguments seeking to convince the Court that the words "actual charges" and "actual fee" in his Policy can mean a price that neither he, nor anyone else, was actually charged, billed, or expected to pay for his medical care.   For example, plaintiff argues that his Policy benefits are based on an "index," despite that the word "index" appears nowhere in the Policy.   Response at 2.   Plaintiff avers that the "overarching issue" in this case relates to "radiation and chemotherapy" benefits in his Policy (Response at 1), despite that neither of the claims at issue are chemotherapy or radiation claims.   Plaintiff also implies that Transamerica based the calculation of his benefits on irrelevant "Usual and Customary" language that does not apply to the claims at issue here.   This case has nothing to do with "Usual and Customary" benefits.   Plaintiff's claims are based on the "actual fee" and "actual charges" for his medical treatment.

While plaintiff agrees that the terms "actual fee" and "actual charges" are used synonymously in the Policy (Response at 7 n.6), he makes the contradictory and illogical argument that synonymous phrases in an insurance policy cannot "share the same meaning."

Response at 10.  Plaintiff's argument makes no sense, and is simply an ill-conceived attempt to detract from the undisputed fact that he was never billed or charged, never incurred a loss or expense, and was never legally obligated to pay any fee greater than $1,483.58 for his Surgery, or any charge greater than $189.11 for the related Anesthesia.

Plaintiff's Response does not distinguish this case from *Claybrook*, in which the court applied the law of plaintiff's home state of Alabama and granted summary judgment to the insurer on similar claims related to the payment of "actual charges" benefits.  *Claybrook v. Central United Life Ins. Co.*, 387 F. Supp. 2d 1199 (M.D. Ala. 2005).  The court in *Claybrook* determined that under Alabama law, the phrase "actual charges" could only reasonably mean the amount "accepted in full and final payment" for services to a Medicare patient.  *Id*. at 1204. That conclusion applies even more aptly under the language of the Policy here.  Plaintiff's Policy is described in the Application and Policy Schedule Page as a "Cancer Expense Policy."  The Policy insures only for "loss incurred," and provides that "[i]ndemnities" under the Policy "will be paid" upon receipt of a "proof of loss" which "must be submitted to us for each incurred expense."  Policy, Section C, p. 6, and Section K, ¶¶ 8-9, p. 15.

Rather than addressing the facts and Policy language at issue in this case, plaintiff cites inapposite authorities from other jurisdictions, none of which were decided on the same type of developed record that exists here.  In addition to avoiding the record evidence from his provider, plaintiff ignores the Alabama Department of Insurance letter which expressly informed him that, in the Department's opinion, his claims were properly paid.  *See* Motion, Exh. 9.  Because the undisputed record evidence in this case establishes that the total amount actually charged, owed, and paid for plaintiff's Surgery was $1,483.58, the same amount Transamerica paid plaintiff under his Policy, and the total amount charged, owed, and paid for Anesthesia was $189.11,

much less than the $370.90 anesthesia benefit paid to plaintiff, Transamerica is entitled to summary judgment on these contract claims.

## ARGUMENT

I.   **PLAINTIFF'S CONCLUSORY RULE 56.1 STATEMENT IS INSUFFICIENT TO OPPOSE TRANSAMERICA'S STATEMENT OF MATERIAL FACTS**

To withstand a properly supported motion for summary judgment, the respondent "must substantiate his allegations with 'sufficient probative evidence.'"  *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (citation omitted) (affirming summary judgment as "appropriately granted" where responding party failed to present evidence other than "naked assertions").  Plaintiff's Response does not meet this standard.

As required under Local Rule 56.1(a), Transamerica submitted with its Motion a Statement of Material Facts in Support of Transamerica Life Insurance Company's Motion for Summary Judgment (Docket #78) ("Transamerica's Statement").  Rather than disputing the material facts supported by Transamerica's Motion, plaintiff submitted an alternative statement of alleged "facts" in support of his Cross-Motion.  *See* Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion for Partial Summary Judgment (Docket #107) ("Plaintiff's Statement").[4]  Plaintiff's Statement ignores virtually all of the *material* facts, such as the dispositive testimony of his own doctor's billing company, and makes numerous immaterial allegations unsupported by probative or admissible evidence.

As a result of plaintiff's failure to contest or submit contrary evidence, the following material facts are now undisputed:

_____

[4] Because Plaintiff's Statement was submitted in support of his Cross-Motion, Transamerica is contemporaneously herewith submitting a separate short and concise statement which controverts and is responsive to Plaintiff's Statement.  Plaintiff did not submit any such statement in direct response to Transamerica's Motion as required by Local Rule 56.1.

- On September 17, 1994, plaintiff Robert W. Hall, an Alabama resident, applied in Linden, Alabama for a "Cancer Expense Policy" from Equity National Life Insurance Company.

- The Policy insures only for "loss incurred" from cancer, and the specific benefits provided are scheduled in the Policy.  Policy at p. 1.

- In order to receive benefits under the Policy, the insured must submit a written "proof of loss" for each "incurred expense."  Policy, Section C, at p. 6; Policy, Section K, ¶¶ 8, 9.

- Certain benefits in the Policy are subject to a limit or "cap."  *See, e.g.*, Policy, Section E, ¶¶ 1, 2.  The Policy cover page states in large bold font "***THIS IS A LIMITED POLICY – READ IT CAREFULLY***" (capitalization and emphasis in original).  Policy at p. 1.

- The Policy benefits at issue here are based on the medical provider's "actual fee" or "actual charges" for treatment, up to a specified maximum.  Policy, Section E, p. 6 (Surgery and Anesthesia).

- In February 2006, Transamerica adopted new claim forms and procedures to ensure that Transamerica would receive the information and documentation necessary to accurately calculate and pay "actual charges" claims, based on the amounts legally owed and actually being charged by and paid to medical providers for services rendered in today's healthcare environment.  Whitlock Decl. ¶¶ 5, 10; Byrne Decl. ¶5.

- Plaintiff never submitted any claims under his Policy prior to Transamerica's adoption in 2006 of the claim forms and procedures Transamerica uses today.  Plaintiff first called the company to request claim forms after his diagnosis of prostate cancer in June 2006.   Byrne Decl. ¶¶ 5, 7; Deposition of Robert W. Hall, December 14, 2010 ("Hall Dep.") at 116.[5]

- Plaintiff's individual claims in this case are based on his contention that, in 2007, Transamerica underpaid his Surgery and Anesthesia Claims under the Policy.

- Because plaintiff did not read his Policy, he had no understanding when he submitted claims that the Policy was limited to the benefits listed and scheduled in the Policy.  Hall Dep. at 97-99; 161-62.  Plaintiff thought his claims should result in a benefit payment in excess of $27,000, an amount he saw listed on a hospital printout, without regard to the Policy's schedule or benefits.  Hall Dep. at 125.

---

[5] Transamerica's Motion attached certain excerpts of the Hall deposition.  *See* Motion, Exh. 5.  Plaintiff's Response attaches a different set of excerpts from the same deposition.  For the sake of completeness, the entire transcript of Mr. Hall's December 14, 2010 deposition testimony (without exhibits) is attached to this Reply at Exhibit 1.

- The Policy provision covering plaintiff's Surgery Claim provides in relevant part: "We will pay the *actual fee* for a surgical operation . . . *not to exceed* the amount shown for that operation in the SCHEDULE OF OPERATIONS (pages 11-12) while you are Hospital Confined. . . ." Policy, Section E, ¶ 4 at p. 6 (emphasis added).

- The Policy provision covering plaintiff's Anesthesia Claim provides in relevant part: "While you are Hospital Confined, we will pay the *actual charges* for anesthesia *not to exceed* 25% of the surgical fee, per procedure/operation, as determined by: . . . Item 4, "Surgery," in this section. . . ." Policy, Section E, ¶ 5, at p. 6 (emphasis added).

- At all relevant times, plaintiff was covered by Medicare with secondary coverage provided by United Healthcare. Chapman Decl. ¶ 7. Plaintiff does not generally make any payments out of pocket for his medical care. Hall Dep. at 206.

- Dr. Wade, who performed plaintiff's prostate surgery, was only permitted to bill plaintiff and his insurers the Medicare-allowed amount of $1,483.58 for the surgery. Chapman Decl. ¶ 14; Holdiness Decl. ¶ 12.

- The "actual fee" for the surgery was $1,483.58, which was paid in part by Medicare, and in part by United Healthcare. Holdiness Decl. ¶ 12; *see also* Chapman Decl. ¶ 14. Medicare paid $1,186.86, and United Healthcare paid $296.72 for the surgery. *Id.*; Holdiness Decl. ¶ 12; Hall Dep. at 204-05.

- Under federal law, neither Medicare, nor plaintiff Hall, nor United Healthcare were obligated to Dr. Wade or his billing company in excess of the $1,483.58 Medicare allowed amount. Holdiness Decl. ¶¶ 6-8, 10-12.

- Neither Dr. Wade nor his billing company made any attempt to bill, charge, or obtain any payments from plaintiff or United Healthcare in excess of the Medicare-allowed amount. Holdiness Decl. ¶¶ 6-8, 10-12.

- Transamerica paid a benefit of $1,483.58 to plaintiff for the Surgery Claim, which was exactly equal to the amount owed and paid by Medicare and United Healthcare, and accepted by Dr. Wade as payment in full. Byrne Decl. ¶ 14; Holdiness Decl. ¶¶ 6-8, 10-12.

- Plaintiff did not have any expectation that he was entitled to be paid more than his doctor for any particular service or treatment. Hall Dep. at 209.

- For the Anesthesia Claim, Transamerica paid 25% of the benefit for the Surgery Claim, or $370.90. Byrne Decl. ¶ 15.

- Plaintiff did not suffer a "loss incurred" nor did he submit proof of any "incurred expense" exceeding $1,483.58 for his Surgery or $189.11 for the related Anesthesia. Holdiness Decl. ¶¶ 6-8, 10-12; Byrne Decl. ¶¶ 14-15; Chapman Decl. ¶ 14.

- Dr. Wade maintains a maximum rate for prostate surgery known as a "list price." The healthcare industry has seen "the evolution of what appears to be two sets of often highly divergent prices for medical services": "'list prices,' which are not the real prices at all and are rarely if ever actually paid; . . . [and] actual charges or real prices, which are the amounts that providers actually request to be paid, collect and accept as payment in full." Melnick Decl. ¶ 6.

- "The amounts generally listed on provider statements to patients are based on a provider's 'charge master,' a database containing a list of the different services along with the list prices, which are 'marked up' above the actual or real prices that providers actually bill and are paid." Melnick Decl. ¶ 6.

- Because "list prices are not the basis on which transactions are adjudicated, they do not represent the true or actual loss in most instances." Melnick Decl. ¶ 9.

- List prices "can be grossly inflated above legitimate market prices and they are generally not the actual prices billed, charged, and collected for the medical services rendered to most patients." Chapman Decl. ¶ 6.

- "The documents or statements issued by medical providers which include 'list prices' are not genuine 'bills' and do not reflect an incurred expense or incurred loss, unless they contain a demand for payment or reflect an amount owed that must be paid, and then only to the extent of the amount that must be paid." Gwin Decl. ¶ 4.

- Five states have now adopted statutes that provide for the payment of benefits based on "actual fee" or "actual charges" in a supplemental insurance policy consistent with Transamerica's payment practices. Motion at 10 n.14. No state has adopted a statute that requires the payment of "list prices."

- Dr. Wade's "list price" of $4,166.00 for prostate surgery was not billed or charged to plaintiff for the surgery at issue in this case. Dr. Wade's "maximum rate for treatment related to [plaintiff's] surgery was $4,166.00, but Dr. Wade's billing company "did not charge its maximum rates to Mr. Hall." Holdness Dec. ¶ 12. The "total fee to Mr. Hall for this surgery was $1,483.58." *Id*.

In a footnote in Plaintiff's Statement, he makes the inappropriate, blanket assertion that plaintiff "denies all other facts stated in Transamerica's Statement of Material Facts in Support of Transamerica Life Insurance Company's Motion for Summary Judgment that are inconsistent with the facts stated herein." Plaintiff's Statement at 1 n.1. This assertion does not comply with Local Rule 56.1. *See* LR 56.1(c) ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) ***shall be deemed admitted unless controverted by the***

***statement filed by the non-moving party*** under paragraph (b).”); *see also Philson v. Ark. Dep't of Human Servs.*, 2010 WL 4683898, at *1 (W.D. Ark. Nov. 10, 2010) (holding, where plaintiff “relied on speculation, denials or allegations, without a proper basis in fact or clear citation to facts already in the record,” the court would “view such facts as essentially undisputed” and “those facts not specifically controverted by [plaintiff] will be deemed to have been admitted pursuant to Local Rule 56.1”); *Duvall v. City of Rogers, Ark.*, 2005 WL 3784932, at *1 (W.D. Ark. Dec. 20, 2005) (“[W]hen a material fact is not agreed upon and the moving party puts forth evidence to support his contention with respect to it, the non-moving party is obliged to respond with contrary evidence if any he has.”).

Plaintiff's attempt to base his summary judgment opposition on “naked assertions” or contentions unsupported by probative evidence likewise does not meet the well-settled legal standard for opposing summary judgment in this Circuit. *Moody*, 23 F.3d at 1412 (affirming summary judgment where respondent's opposition was based on “naked assertions”); *see also Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010) (affirming summary judgment, holding that “self-serving allegations and denials are insufficient to create a genuine issue of material fact”) (citation omitted). [6]

> In ruling on a motion for summary judgment, the district court is not
> obligated to wade through and search the entire record for some specific

---

[6] After submitting his Response, plaintiff filed a Motion for Leave (Docket #115) to submit a new, self-serving declaration in which he states: “I believe that the actual charges for the surgery . . . were $4,166.00.” Motion for Leave, Exh. A ¶ 6. Plaintiff's belated declaration of his opinion is inconsistent with the record, including his own deposition testimony. *See* Hall Dep. at 204-05 (Q. “…And is it your understanding that the $1,483.58 is what Dr. Wade was actually paid for the surgery?” A. “Yes, ma'am.”). Plaintiff's supplement is insufficient as a matter of law to establish a genuine issue of material fact to avoid summary judgment. *Lark v. West*, 182 F. Supp. 794, 798 (D.D.C. 1960) (“[B]elief, no matter how sincere, is not equivalent to knowledge, and . . . the facts set forth in an affidavit in opposition to a motion for summary judgment must be such as would be admissible in evidence should they be given from the witness stand during the trial of a case.”).

> facts which might support the nonmoving party's claim, rather the
> nonmoving party must designate the specific genuine issues of material
> fact that preclude summary judgment.

*Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007); *Khoury v. Group Health Plan, Inc.*,

615 F.3d 946, 952 (8th Cir. 2010) (opposing party "'must set forth specific facts showing that

there is a genuine issue for trial'" to avoid summary judgment) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (other internal quotations and citations omitted).

## II.   TRANSAMERICA IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S BREACH OF CONTRACT CLAIM, AND PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED

### A.   The Parties Agree That Plaintiff's Claims Are Governed By Alabama Law

Transamerica's Memorandum of Law submitted with the Motion established, and

plaintiff does not dispute, that Alabama law governs plaintiff's contract claims in this action.

*Compare* Transamerica Life Insurance Company's Memorandum of Law in Support of Its

Motion for Summary Judgment (Docket #77) (the "Memorandum"), at 16-17 (collecting

authorities and explaining significant relationship and contacts between Alabama, the plaintiff

and plaintiff's dispute alleged in this case), *with* Response at 11 (citing Alabama law).  Plaintiff

lives in Alabama, submitted his claims from Alabama, received his benefit payments in

Alabama, and lodged a consumer complaint with the Alabama Department of Insurance

regarding this dispute.   Memorandum at 17; Motion, Exh. 9 (response letter from Alabama

Department of Insurance informing plaintiff that his claims were properly administered and

paid).

### B.   Plaintiff's Response Makes No Attempt To Rebut Transamerica's Material Evidence And Does Not Establish That There Is A Genuine Issue For Trial Regarding The Surgery And Anesthesia Claims

Plaintiff's failure to rebut Transamerica's evidence regarding the cost of his medical

treatment establishes that Transamerica is entitled to summary judgment with respect to

plaintiff's breach of contract claim.   To avoid summary judgment, plaintiff was required to designate specific facts showing that there is a genuine issue for trial regarding:  (1) the existence of a valid contract binding the parties in the action; (2) his own performance under the contract; (3) the defendant's nonperformance; or (4) damages.   *See S.B. v. Saint James Sch.*, 959 So. 2d 72, 87 (Ala. 2006) (affirming summary judgment in favor of defendant on plaintiff's breach of contract claim).   Under Alabama law, plaintiff's Policy language must be applied in light of the particular facts and circumstances in this case, and not in a hypothetical vacuum as plaintiff's Response suggests.   *See, e.g.*, *Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1164 (Ala. 2006) ("[C]ontract terms should be interpreted according to their plain and common meaning in the context of, and applied to, the particular facts of the case.").

Transamerica's Memorandum established that plaintiff received a Surgery benefit equal to the exact amount of his doctor's "fee"; *i.e.*, the exact amount his doctor actually billed and charged for his surgery.   Memorandum at 12-13.   Transamerica also established that plaintiff received an Anesthesia benefit equal to exactly 25% of the amount his doctor billed and charged for his Surgery, and that this was actually an overpayment because the Policy limits the Anesthesia benefit to the *lesser of* the physician's "actual charges" for Anesthesia, or 25% of the surgical fee.   *Id.* at 14.   Plaintiff's Response does not address any of the *evidence* Transamerica submitted to establish these facts, and instead invites the Court engage in a speculative exercise about what "actual charges" might be to an insured based on hypothetical "medical bills" that do not exist in this case.   Response at 7 (alleging Transamerica should use "medical bills" as its "index for paying 'actual charges' benefits," but failing to address unrebutted evidence that Transamerica's benefit payment for his surgery was equal to the amount billed).   "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Declaration of Kathy Holdiness, which plaintiff ignores entirely, provides testimony from his surgeon's own billing company about the amount of fees and charges billed for plaintiff's medical treatment. *See* Motion, Exh. 4. Plaintiff also disregards the Declaration of James Byrne, Transamerica's Director of Claims Analysis, which attaches plaintiff's "proof of loss" and details the calculation of his benefit payments for the Surgery and Anesthesia Claims based on the loss plaintiff incurred for these treatments. *See* Motion, Exh. 3; *see also* Transamerica's Statement ¶¶ 8-9, 30-46. Plaintiff's Response pretends that Dr. Wade "actually charged" him $4,166.00 for a Surgery, when the sworn testimony of Ms. Holdiness is directly to the contrary. Holdiness Decl. ¶¶ 6-8, 10-12.[7]

To avoid summary judgment, plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *See Khoury v. Group Health Plan, Inc.*, 615 F.3d at 952 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (other internal quotations and citations omitted). "The court must assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citation omitted). Because

---

[7] Plaintiff references a United Healthcare explanation of benefits form which fails to support his position that Dr. Wade's $4,166.00 list price was the actual fee for his surgery. Response at 6. The United Healthcare form expressly states that the "provider of services has agreed to accept Medicare's approved charge as full payment." Motion, Exh. 3, Exh. F (Docket #76-3 at 36). The United Healthcare form is consistent with Ms. Holdiness's testimony that Dr. Wade did not charge and plaintiff did not owe the $4,166.00 for the surgery.

plaintiff's Response does not adequately address the factual record in this case or make a showing sufficient to carry his burden of proof at trial, the Response is insufficient to oppose summary judgment with respect to his breach of contract claim.[8]

**C.     Plaintiff's Attempt To Distinguish The *Claybrook* Case By Applying A Series Of Fictional "Indices" And Mischaracterizing Transamerica's Position Is Insufficient To Defeat Transamerica's Summary Judgment Motion**

Plaintiff seeks to avoid *Claybrook's* application of Alabama law by mischaracterizing Transamerica's position, and referring to a series of "indices" that are not mentioned anywhere in his Policy.  Plaintiff first alleges incorrectly that Transamerica interprets the phrase "actual charges" to mean "the amount another party 'expensed' when making payment."  Response at 10.  Transamerica does not pay "actual charges" benefits based on the amount "another party expensed," but instead pays "actual charges" benefits in an amount equal to the total amount actually owed, incurred, and accepted as payment in full for the services rendered, consistent with the plain and ordinary meaning of the words used.[9]  Transamerica's methodology is

---

[8] Plaintiff's Response also fails entirely to address, effectively conceding as true, the testimony of Transamerica's two expert witnesses regarding the historical evolution of healthcare pricing that has resulted in most medical providers adopting a set of "'list prices' which are not the real prices at all" and which are not "the amounts that providers actually request to be paid, collect and accept as payment in full."  *See* Transamerica's Statement ¶ 14 (citing Melnick Decl., Motion, Exh. 6).  Doctors' "list" prices or maximum rates are substantially inflated, are not tied to the marketplace in any economically meaningful way, and can be many multiples of the actual prices being charged and paid by patients like the plaintiff.  *See* Transamerica's Statement ¶¶ 12-18.  In this particular case, Dr. Wade's "list price" for prostate surgery exceeded the charge for plaintiff's Surgery by more than 180%.  Motion, Exh. 7 (Chapman Decl. ¶ 14).  Similarly, the provider's "list price" for anesthesia exceeded the charge to plaintiff for his Anesthesia by nearly 540%.  *Id.*

[9] Similarly, Transamerica did not interpret "actual charges" or "actual fee" in plaintiff's Policy to mean "Usual and Customary," which is defined in the Policy as "[t]he normal and reasonable charge for a service . . . in the geographic area where provided."  Response at 9 (erroneously arguing that Transamerica applies this definition to the "actual charges" language in plaintiff's Policy).  Transamerica also does not *limit* the payment of a provider's "actual charges" or "actual fee" to amounts paid by "third party payors" (Response at 8), but, rather, makes

*(footnote continued on next page)*

consistent with *all* state statutes defining "actual charges," and with Alabama law.   *See Claybrook v. Central United Life Ins. Co.*, 387 F. Supp. 2d 1199, 1204-05 (M.D. Ala. 2005) (holding "actual charges" is unambiguous "when given its ordinary and plain meaning in the context of the policy," and granting summary judgment to insurer who paid actual charges benefits in an amount equal to what the plaintiff's "providers accepted in full and final payment for their services to her. . . ."); *see also* Memorandum at 10 n.14 (collecting statutes).

### 1.   The *Claybrook* Court's Conclusion Is Even More Appropriate Here, Where Plaintiff's Policy Insures Only For "Loss Incurred"

Plaintiff's attempt to distinguish *Claybrook* and other relevant Alabama authority fails. Contrary to plaintiff's Response argument, the *Claybrook* court's analysis of the "actual charges" language as unambiguously meaning the amount "accepted in full and final payment" for medical treatment is even more appropriate here.   Plaintiff's Cancer Expense Policy is replete with references to its "limited" benefits, all of which are conditioned upon a "proof of loss," for "indemnities," related to "loss incurred," for "each incurred expense."   *See* Policy at Schedule Page, Application, Cover Page, Section C, at p. 6, Section K, ¶¶ 8-9, at p. 15; *see also* Motion, Exh. 9 (Alabama DOI letter to plaintiff explaining that his policy is a "Limited Benefits Contract").   The Policy's "actual fee" and "actual charges" language cannot be read in isolation, as plaintiff proposes, but must be examined "in the context of all other provisions."   *See Celtic Life Ins. Co. v. McLendon*, 814 So. 2d 222, 224 (Ala. 2001); *Pritchett v. State Farm Mut. Auto. Ins. Co.*, 834 So. 2d 785, 791 (Ala. Civ. App. 2002) (court must construe the policy "as a whole").

---

benefit determinations based on the *total amount owed* to the provider for the policyholder's treatment, by whatever source or combination of sources.

Plaintiff's Policy repeatedly uses "actual charges" synonymously with "expenses."[10] Although he concedes that the phrases "actual fee" and "actual charges" are used synonymously in the Policy, plaintiff ignores the provisions of his Policy which require a proof of loss for each "incurred expense" and takes the entirely inconsistent position that actual charges "cannot mean" expenses. Response at 7-8. Plaintiff's position is contrary to *Claybrook* and leads directly to the result the Eleventh Circuit characterized as "absurd" in *Buckles*. *Philadelphia Am. Life Ins. Co. v. Buckles*, 350 F. App'x 376, 380 (11th Cir. 2009) ("Neither [the insured] nor his primary insurer are liable for the amount above the $1,600,000 figure. The language of the contract does not compel a reading which would require payment of the higher amount, and it is unreasonable to believe that the drafter of the insurance contract would have intended such a result.").[11]

---

[10] For example, as established in the Motion, the provision on "Bone Marrow Donor's Expenses" states that the Policy "will pay the following *expenses incurred* by your donor" and lists the "*actual charges*" for certain medical expenses as a type of "expense incurred" covered under this provision. *See* Policy, Section E, ¶ 17, at p. 8 (emphasis added). Similarly, the "Transportation" benefit provision lists the "*actual round trip charge* by Common Carrier" as one of the "*transportation expenses*" covered by the Policy. Policy, Section E, ¶ 18, at p. 9 (emphasis added). For all benefit payments, the Policy requires proof of loss to be submitted "for each incurred expense." Policy, Section C, at p. 6.

[11] Like his other arguments which ignore the "loss incurred" language in the Policy, plaintiff's Response tries to avoid the Eleventh Circuit's well-reasoned opinion in *Buckles*. Response at 16. Plaintiff relies on the reversed, lower court decision in *Buckles* to argue that "actual charges" without the word "incurred" refers to the "amount billed" by a provider. Response at 16. Plaintiff's argument is misplaced for several reasons. First, the record in this case establishes that plaintiff is seeking to recover a benefit based on "list" prices which are greater than any "amount billed." Plaintiff was actually paid a benefit by Transamerica equal to the exact amount billed for his Surgery. Second, plaintiff ignores that the Eleventh Circuit's opinion did not review the district court's decision regarding the meaning of the phrase "actual charges." As the Eleventh Circuit explained in *Buckles*: "The district court concluded that the phrase 'actual charges,' standing alone, is unambiguous and refers to the total amount billed by the hospital. *That may or may not be correct. We find it unnecessary to consider the meaning of 'actual charges' standing alone*; we need only consider whether the phrase 'actual charges incurred' is unambiguous." *Buckles*, 350 F. App'x at 379 (emphasis added). Similarly, here, the Court need not construe the meaning of "actual charges" standing alone; rather, it must construe "actual charges" in accordance with the other provisions of the Policy as a whole that insure for "loss incurred" and require "proof of loss" of "each *incurred* expense."

Plaintiff's argument is, likewise, contrary to other Alabama authorities which recognize that a medical provider's unpaid "list" prices or maximum rates cannot constitute an amount billed or an expense incurred.  *See, e.g.*, *Protective Indus. Ins. Co. of Ala. v. Gray*, 118 So. 2d 289 (Ala. Civ. App. 1960) (plaintiff did not incur a hospital "bill" of $850.00 where record evidence reflected the hospital's arrangement with the State to accept $414.50 as full and final payment for the operation performed, plaintiff "was not billed" for the higher amount, and she "never paid the hospital anything").   The *Gray* case is directly on point and establishes that plaintiff is not entitled to be paid more than his doctor was paid for his Surgery.  *See also U.S. v. St. Paul Mercury Indem. Co.*, 238 F.2d 594, 598 (8th Cir. 1956) (holding an amount for which there is no obligation to pay cannot be construed as "expenses actually incurred"); *Arnett v. Arnett*, 812 So. 2d 1246, 1251 (Ala. Civ. App. 2001) ("The word 'incur' means 'to become liable or subject to.'"); *accord Ark. Blue Cross & Blue Shield, Inc. v. Foerster*, 832 S.W.2d 280, 282 (Ark. Ct. App. 1992) ("[I]f a policy provides coverage for **expenses or charges**, it is the incurring of expenses which is considered the contingency that gives rise to the insurer's liability.") (emphasis added).

Plaintiff's unpersuasive attempt to distinguish relevant cases is based on his strained and unnatural reading of the Policy language, including the invention of an "indexing" concept that appears nowhere in the Policy.  *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005) (court will not interpret policy terms "by inserting strained or twisted reasoning") (internal citation and quotations omitted); *Ala. Farm Bureau Mut. Casualty Ins. Co. v. Preston*, 253 So. 2d 4, 6 (Ala. 1971) ("Insurance contracts, like other contracts, are not to be construed so technically as to defeat the intention of the parties, but are to be given a rational and practical construction."); *Am. Nat'l Prop. & Cas. Co. v. Blocker*, 165 F. Supp. 2d 1288, 1295 (S.D. Ala. 2001) ("[C]ourts may not rewrite the terms of a policy or interpret unambiguous policy language

to provide coverage that was not intended by the parties."); *accord Buckles*, 360 F. App'x at 350 ("Construing the contract in the manner advanced by [the insured] would give him a benefit based on a fictional amount and lead to an absurd result.").

2.    **Plaintiff's Course Of Performance Argument Is Unsupportable Because There Was No Past Course Of Performance Between Transamerica And The Plaintiff**

Plaintiff argues, in the alternative, that his Policy is ambiguous and he should be entitled to collect benefits based on his provider's "list" prices, because of a prior "long-standing performance" that does not apply to him.   Response at 8.   Plaintiff bases his course of performance argument on Transamerica's February 2006 distribution of updated claim forms and procedures designed to ensure that the Company would receive the information and documentation necessary to accurately calculate and pay "actual charges" claims based on the amounts legally owed and actually being charged by and paid to medical providers.   Whitlock Decl. ¶¶ 5, 10.   Plaintiff argues that the new forms and procedures altered a prior "course of performance" under which Transamerica based "actual charges" benefits on "medical bills." Response at 13.[12]

Plaintiff's argument fails for multiple reasons.   The evidence is undisputed, for example, that plaintiff never submitted claims under Transamerica's pre-2006 procedures.   Plaintiff did not submit his first claim until after he was diagnosed with prostate cancer in June 2006.   Byrne Decl. ¶ 7; Hall Dep. at 116.   Thus, plaintiff has no evidentiary basis for his argument that a prior "course of conduct" entitled him to higher benefit payments.   Response at 12.   Plaintiff also cannot avoid his own testimony that he had no expectation of being paid more than his doctor

_____

[12] The evolution of Transamerica's claims procedures for supplemental cancer insurance policies is described in detail in the unrebutted Declaration of Connie Whitlock ¶¶ 5, 10-14. Motion, Exh. 1.

received for his medical treatment.   Hall Dep. at 209 (Q. "And do you think that you were entitled to get paid more than your doctor got paid for any particular service or treatment?" A.  "No, ma'am….").

To the extent plaintiff is relying on a course of performance between other parties to other contracts, he mischaracterizes Transamerica's prior procedures,[13] and cites no authority in support of the proposition that a course of performance that does not apply to him should be used to interpret his Policy.  Plaintiff effectively argues that Transamerica was not entitled to update its claims procedures that, over time, had resulted in overpayments to some policyholders (but not to him) when they submitted physician statements that did not reflect the actual charges incurred for their treatments.  Moreover, the Alabama district court in *Claybrook* expressly rejected the argument that a prior course of performance was relevant to the interpretation of "actual charges" in a supplemental cancer insurance policy.  *Claybrook*, 387 F. Supp. 2d at 1204 ("To be sure, Central United paid benefits of more than the actual charges for a period of time. But Alabama law is clear that, 'Any subsequent conduct of the parties in supposed observance of [a contract's] terms, cannot be considered by us as aids in its construction.'") (quoting *Babcock v. Smith*, 234 So. 2d 573, 577 (1970)).  Plaintiff's course of performance argument is even less tenable here, because, unlike the Claybrooks, he never submitted claims under Transamerica's

---

[13] Transamerica's pre-2006 procedures were originally developed in the 1970s, when providers routinely issued genuine "bills" to their patients.  Whitlock Decl. ¶ 5.  Over time, the documents Transamerica's claims examiners had always accepted as proof of loss, became obsolete.  Policyholders began sending documents that were no longer "bills," but instead contained "list" prices rather than the actual charges being paid to and accepted by the medical providers as payment for their services.  Whitlock Decl. ¶ 10.  When Transamerica discovered this problem during an investigation into the cause of premium rate increases, Transamerica changed its forms and procedures to obtain additional documentation of the actual amounts being billed, charged, owed, and accepted as payment in full for medical treatment.  Whitlock Decl. ¶¶ 10-12.  The new forms and procedures have been in place since early 2006, before plaintiff submitted his first claim.

prior claims procedures.  *Cf. Claybrook*, 387 F. Supp. 2d at 1202 (noting the Claybrooks' insurer changed its claim processing procedures in 2003, and the Claybrooks "received some supplemental benefits from Central United using th[e] old claims-processing procedure"). Moreover, to the extent plaintiff contends that Transamerica's prior procedures would have entitled him to benefit payments based on amounts "billed," plaintiff has not put forth any probative evidence that he was "billed" any amount in excess of the benefits he was paid. Indeed, all record evidence is to the contrary.  *See supra*, pp. 6-7 (summarizing evidence of amounts billed and charged for plaintiff's Surgery and Anesthesia Claims).   Accordingly, plaintiff's allegation of a past "course of performance" is insufficient to support his Response or Cross-Motion.

**D.** **Plaintiff's Reliance On Inapposite Authorities From Other Jurisdictions Is Misplaced**

Plaintiff relies on a series of cases from other jurisdictions, which did not apply Alabama law as discussed in *Claybrook*.  Plaintiff's reliance on these cases is misplaced.  For example, plaintiff cites *Smith v. Life Investors Ins. Co. of America*, 2009 WL 3756911 (W.D. Pa. Nov. 6, 2009), a case applying Pennsylvania's unique rules of contract construction on a record that, unlike this case, did not include any evidence or testimony from the plaintiffs' medical providers regarding their billing practices or charges for the treatments at issue.  In sharp contrast, plaintiff's medical provider in this case has presented sworn testimony that the "total fee" for plaintiff's surgery was $1,483.58, and that plaintiff was never billed or charged the $4,166.00 maximum rate upon which he would like to calculate his Surgery and Anesthesia Claims.  *See* Holdiness Decl. ¶ 12.

Moreover, the court in *Smith* determined that the phrase "actual charges" was ambiguous under Pennsylvania law, in part because the phrase was not defined in the policy.   2009

WL 3756911, at *5.  Alabama law, however, does not deem a policy ambiguous based on the absence of a definition.  *See Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1161 (Ala. 2006) ("[T]he mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous.").  Rather, undefined terms in an Alabama insurance policy are to be ascribed their plain and ordinary meaning, and Alabama courts will look to dictionary definitions to interpret commonly used words.  *See, Claybrook*, 387 F. Supp. 2d at 1204 (undefined term "actual charges" was unambiguous under Alabama law; relying on "everyday and plain language" definition of "actual" as "real," "existing," not "potential" or "possible") (citing The American Heritage® Dictionary of the English Language, Fourth Edition, Copyright © 2000 by Houghton Mifflin Company.).

Similarly, Alabama law does not permit a finding of ambiguity in an insurance policy simply because the parties ascribe different meanings to the language. *See Lambert*, 950 So. 2d at 1161 ("[T]he parties cannot create ambiguities by setting forth different interpretations or by inserting strained or twisted reasoning.") (internal quotations and citations omitted); *accord Clark v. Transamerica Life Ins. Co.*, 2010 WL 2771916, at *3 (E.D. Ark. June 18, 2010) (Eisele, J.) (denying plaintiff's motion for judgment on the pleadings in similar "actual charges" case, "declin[ing] on the parties' pleadings to determine that the phrase 'actual charges' is ambiguous," and finding the term was "not ambiguous merely because the parties" sought to interpret it in different ways) (citation and quotations omitted).  Undefined words in an insurance policy must be given a "rational and practical construction" under Alabama law.  *Am. Liberty Ins. Co. v. Carpenter*, 547 So. 2d 402 (Ala. 1989).  On the facts established in this case, plaintiff's attempt to construe "actual charges" as the highest price he can find on a piece of paper, no matter how disconnected from the actual loss incurred for his treatment, is a "tortured

construction" impermissible under Alabama law. *Id.* at 404 (refusing to apply tortured construction advocated by plaintiff to the phrase "residents of your household," even where other cases had deemed the phrase ambiguous, because there was no ambiguity when the policy term was "considered in light of the facts" of that case).

For this same reason, another court recently expressed disagreement with the Pennsylvania court's analysis in *Smith. See Metz v. U.S. Life Ins. Co.*, 2010 WL 3703810, at *3 n.2 (S.D.N.Y. Sept. 21, 2010) (finding the *Smith* court's "analysis unpersuasive and follow[ing] the Eleventh Circuit in *Philadelphia Am. Life Ins. v. Buckles*. . . ."). In *Metz*, the court held that a plaintiff was not entitled to recover her medical provider's list prices under a supplemental, catastrophic major medical policy that provided benefits for "covered charges incurred." *Id.* at *1. Although the term "incurred" was not defined in plaintiff's policy, plaintiff was a Medicare patient, and her provider had signed an agreement to accept the Medicare approved amounts as payment in full. *Id.* at *3. The court explained that it was "essentially impossible that Plaintiff would ever face liability for a provider's hypothetical full fee." *Id.* Accordingly, the *Metz* court rejected the analysis in *Smith* and the plaintiff's contention that the policy was ambiguous. Instead, the court adopted the Eleventh Circuit's reasoning in *Buckles*, that "'actual charges incurred' were the amounts a provider accepted for full satisfaction of liability." *Id.* (quoting *Buckles*, 350 F. App'x at 379).

Plaintiff's reliance on other cases which found an ambiguity in the phrase "actual charges" under other States' laws, is also misplaced. Most of the decisions cited by plaintiff were rendered without the benefit of a fully developed factual record, and most were based on incorrect factual assumptions regarding the meaning of "list" prices. *See, e.g.*, *Metzger v. Am. Fidelity Assur. Co.*, 2006 WL 2792435 (W.D. Okla. Sept. 26, 2006) (applying Oklahoma law; assuming incorrectly that the provider's list price or maximum rate was a genuine legal liability);

*Conner v. Am. Public Life Ins. Co.*, 448 F. Supp. 2d 762, 764 (N.D. Miss. 2006) (applying Mississippi law; denying insurer's motion for judgment on the pleadings with no factual record); *Hodges v. Am. Fidelity Assur. Co.*, 2008 WL 723994 (S.D. Miss. Mar. 17, 2008) (denying motion to dismiss under Mississippi law, and permitting discovery as to the parties' intent).[14] Because none of the courts in these cases applied Alabama law, and none analyzed or addressed testimony from the plaintiffs' treating physicians about the amounts actually and genuinely billed and charged for the treatment at issue, all of these cases are unpersuasive and none preclude summary judgment in Transamerica's favor on plaintiff's Surgery and Anesthesia Claims.

## III.   TRANSAMERICA IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S BAD FAITH CLAIM

Transamerica is entitled to summary judgment with respect to plaintiff's bad faith claim for two independent reasons.  First, Transamerica could not have acted in bad faith in its administration and payment of plaintiff's claims as a matter of law, where Transamerica did not breach the insurance contract.  *See, e.g., Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343, 1364 (S.D. Ala. 2010) ("Alabama law is clear that contractual liability is a prerequisite to recovery" on a bad faith claim); *Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 190 (Ala. 1990) ("Having affirmed Allstate's summary judgment" with respect to a breach of contract claim for replacement cost, court would also affirm summary judgment "as to the Hilleys' bad faith claim

---

[14] *Ward v. Dixie Nat'l Life Ins. Co.*, 257 F. App'x 620 (4th Cir. 2007) (unpublished decision assuming provider's list price was actually "billed" to the plaintiff).  This case, and others like it, are inapposite here were the undisputed evidence reflects that Dr. Wade's list price was not "billed" to the plaintiff.  *See* Holdiness Decl. ¶ 12.  *Pierce v. Central United Life Ins. Co.*, 2009 WL 2132690 (D. Ariz. July 15, 2009) (finding "actual charges" ambiguous under Arizona law upon assuming the provider genuinely "billed" its list price); *Lindley v. Life Investors Ins. Co. of Am.*, 2009 WL 2163513, at *7 (N.D. Okla. July 17, 2009) (applying Oklahoma law, and accepting plaintiff's allegations as true under Rule 12(c)); *but see Lindley v. Life Investors Ins. Co. of Am.*, 2010 WL 723670, at *8 (N.D. Okla. Feb. 22, 2010) (subsequent order clarifying that, under Rule 12(c), the court had "accepted as true plaintiff's allegations that bills from his medical providers represented full payment of his expenses").

with regard to replacement cost.").[15]   Plaintiff's Response makes no attempt to refute this general proposition.

Second, plaintiff cannot prove the other elements of bad faith under Alabama law.  In addition to proving a breach of contract to establish his bad faith claim, plaintiff is required to prove (1) "the absence of any reasonably legitimate or arguable reason (the absence of a debatable reason)" to deny a claim *and* (2) that Transamerica had "actual knowledge of the absence of any legitimate or arguable reason."  *Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1361 (Ala. 1982).  In addition, "the Alabama Supreme Court, 'has made it abundantly clear that an action for bad faith lies only where the insurer has acted with an intent to injure.'"  *Peachtree Cas. Ins. Co. v. Sharpton*, 2001 WL 286919, at *5 (M.D. Ala. Mar. 20, 2001) (citing *Webb v. Int'l Indem. Co.*, 599 So. 2d. 1144, 1146 (Ala. 1992)).

Plaintiff's Response contends in conclusory fashion that the Court should deny summary judgment on his bad faith claims because Transamerica had "[n]o legitimate or arguable reason" for its payment of "actual charges" benefits.  Response at 24.  However, as plaintiff concedes, Transamerica's payment of benefits to plaintiff was entirely consistent with *Claybrook*, the only Alabama authority addressing the meaning of "actual charges," and every state statute defining "actual charges."  Thus, Transamerica had, at a minimum, an arguable basis for its payment of benefits, and plaintiff's bad faith claim fails as a matter of law.  *See, e.g.*, *Pace v. Colonial Penn Ins. Co.*, 690 So. 2d 369, 371 (Ala. Civ. App. 1996) (affirming summary judgment on bad faith claim where insurer had a "legal and factual defense" to the insured's claim); *see also Nat'l Sec.*

---

[15] Transamerica's Motion established that plaintiff also has no independent cause of action for breach of "an implied duty of good faith and fair dealing" sounding in contract.  *See Lake Martin/Ala. Power Licensee Ass'n v. Ala. Power Co.*, 601 So. 2d 942, 945 (Ala. 1992) ("This Court has explicitly held that there is no good faith contractual cause of action.") (internal citations omitted).  Plaintiff's Response concedes that his Count for "Breach of Implied Duty of Good Faith and Fair Dealing" is simply a restatement of his bad faith claim.  Response at 23.

*Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 185 (Ala. 1982) ("If [plaintiff's] evidence fails to eliminate any arguable reason for denying payment, any fairly debatable reason on a matter of fact or a matter of law, he cannot recover under the tort of 'bad faith refusal.'").

Plaintiff has not provided any evidence that Transamerica had "actual knowledge" that it paid plaintiff's Surgery and Anesthesia claims with no arguable basis.  Indeed, the Alabama Department of Insurance reviewed plaintiff's claim submissions and specifically informed him that, in its opinion, Transamerica paid his claims correctly.  Motion, Exh. 9 (letter from Alabama DOI to Robert W. Hall:  "We are sorry you[r] policy could not pay more toward your claims but due to it being a Limited Benefit Contract it does not.").  Plaintiff cannot credibly contend that Transamerica knew it lacked an arguable basis for its payment of benefits when the Alabama Department of Insurance expressly approved of Transamerica's benefit payments.  Thus, summary judgment on plaintiff's bad faith claim is proper.  *See, e.g., Peachtree Cas. Ins.*, 2001 WL 286919, at *7 (granting summary judgment where insured could not contend that the insurer knew it lacked an arguable basis).

Further, plaintiff cannot establish and has presented no evidence that Transamerica acted with the requisite "intent to injure" necessary for plaintiff to maintain a bad faith claim.  With no record support, plaintiff summarily contends "[t]he only reason why Transamerica would change the amount of benefits it pays to insureds is to simply pay out less money."  Response at 24.[16]

---

[16] Mischaracterizing excerpts from a deposition taken in another case, *Gooch v. Life Investors Ins. Co. of Am.*, Case No. 1:07-cv-0016 (M.D. Tenn.), plaintiff contends that Transamerica changed its claim forms and procedures "after a company actuary expressed concern that the payment of those benefits based on medical bills had become too expensive." Plaintiff's Statement ¶ 9 (citing Whitlock Dep., pp. 15-18, 83-85, 89-91) (a copy of the *Gooch* Whitlock Dep. is attached to the Response as Exhibit 4); *see also* Response at 5.  Ms. Whitlock made no such statement during her deposition in *Gooch*.  Rather, Ms. Whitlock testified in *Gooch*, consistent with her sworn testimony here, that Transamerica undertook a review of its claims procedures after an actuary "expressed concern[] about continuing . . . rate increases." Whitlock Dep. at 89.  Plaintiff's mischaracterization of Ms. Whitlock's testimony in the *Gooch*

*(footnote continued on next page)*

Plaintiff also entirely failed to address or rebut (thereby admitting) Ms. Whitlock's testimony in this case:

> In 2004, Transamerica began to investigate the causes of premium rate increases for its policyholders and discovered that it had been overpaying claims to some policyholders for benefits based on "actual charges." . . . After review, Transamerica determined that it needed to correct and update its claim forms and procedures to ensure that it would receive the information and documentation necessary to accurately pay claims for "actual charges" going forward. *This action was necessary to pay claims correctly under the terms of the policies and to protect the policyholders from larger and more frequent premium rate increases. The company's action was taken in good faith and for the benefit of the policyholders as a whole.*

Whitlock Decl. ¶ 10 (emphasis added).   Similarly, Stephen Gwin, an actuary employed by an affiliate of Transamerica, testified that "Transamerica's updated forms and procedures were designed to eliminate overpayments for 'actual charges,' to reduce the amount of future premium rate increases, and to benefit the policyholders as a whole."  *See* Motion, Exh. 4 (Declaration of Stephen B. Gwin) ¶ 3 (the "Gwin Decl."). Mr. Gwin further testified:

> Failure to correct the proof of loss forms and procedures in 2006 would have resulted in greater premium increases for Alabama insureds to date and in the future. *Greater premium increases, in turn, would have reduced the affordability of Transamerica's cancer insurance policies and would have reduced the ability of many policyholders to keep their policies in force and maintain coverage.*

*Id*. ¶ 7 (emphasis added).[17]   The undisputed record evidence in this case establishes that Transamerica corrected its claim procedures for the benefit of its policyholders in order to reduce

---

case is not evidence, and cannot create a genuine issue of material fact sufficient to avoid summary judgment on plaintiff's bad faith claim in this case.

   [17] Mr. Gwin explained that paying "actual charges" benefits based on "list prices" "would likely result in the average monthly premium for Alabama insureds that own the EPC530 policy form increasing from $128.67 to approximately $360.52 over the next five years" whereas the "average monthly premium in five years will likely be approximately $205.01" if benefits are correctly paid based on the amounts actually charged and accepted as payment in full for services rendered. *Id*. ¶ 8.

the amount of future premium rate increases; not with the requisite "intent to injure" necessary to support plaintiff's bad faith claim. *See, e.g.*, *Peachtree Cas. Ins.*, 2001 WL 286919, at *5 (granting summary judgment where there was no evidence of "conscious intent to injure").

Plaintiff has not submitted any evidence sufficient to create a genuine issue of material fact for trial as to any of the elements of his bad faith claim, and Transamerica is therefore entitled to summary judgment.

## IV.   TRANSAMERICA IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S UNJUST ENRICHMENT CLAIM

The Court should grant summary judgment in favor of Transamerica on plaintiff's unjust enrichment claim because plaintiff has an adequate remedy at law. *See, e.g.*, *N. Assur. Co. of Am. v. Bayside Marine Constr., Inc.*, 2009 WL 151023, at *4 (S.D. Ala. Jan. 21, 2009) ("In Alabama, the doctrine of unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law."). Plaintiff's Response completely ignores *Northern Assurance*, a case which dismissed an unjust enrichment claim based on allegations virtually identical to those made by plaintiff in this case. *See* Memorandum at 31-32. Instead, plaintiff summarily contends that this Court should deny summary judgment on his unjust enrichment claim because "the Alabama Supreme Court has considered claims for breach of contract and unjust enrichment in the same action, without holding them mutually exclusive." Response at 23.

Plaintiff relies on *Stone v. Mellon Mortg. Co.*, 771 So. 2d 451 (Ala. 2000), a case that does not remotely stand for the proposition that his unjust enrichment claim can survive summary judgment. In fact, in *Stone*, the Alabama Supreme Court *affirmed* the trial court's ruling which granted summary judgment to the defendant on an unjust enrichment claim. 771 So. 2d at 454. *Stone* does not include any discussion of whether a plaintiff is entitled to pursue an unjust enrichment claim where there is an adequate remedy at law.

Moreover, *Stone* demonstrates that Transamerica is entitled to summary judgment on plaintiff's unjust enrichment claim on a separate ground. The *Stone* court granted summary judgment on the unjust enrichment claim because under Alabama law, unjust enrichment claims "are precluded by proof that the plaintiff voluntarily paid what he or she is seeking to recover." *Id*. Here, on his unjust enrichment claim, plaintiff is seeking to recover premiums he paid under his Policy. Complaint ¶¶ 60-61. There is no dispute that plaintiff voluntarily paid his premiums, and his unjust enrichment claim is untenable under Alabama law for this additional reason.

## V.   TRANSAMERICA IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF AND PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED

It is undisputed that plaintiff cancelled his insurance policy in October 2010, and has no pending or possible future claims. Nevertheless, plaintiff's Cross-Motion remarkably seeks summary judgment on his claim for declaratory and injunctive relief. Plaintiff's Response fails to address *any* of the authority cited by Transamerica which unequivocally demonstrates that because plaintiff no longer owns his policy and has no possibility of future harm, there is no actual controversy of "sufficient immediacy" to warrant declaratory relief in this case. *See Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (fact that it was "unlikely" that alleged dispute would occur "precluded a finding that there was 'sufficient immediacy and reality'" necessary for declaratory relief); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (plaintiff did "not have standing to seek declaratory relief" where he was no longer subject to conditions at issue). Similarly, plaintiff is precluded from seeking injunctive relief in this case because there is no "sufficient likelihood" that he will be harmed in the future by any interpretation of the Policy. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("[a]bsent a sufficient likelihood that he will again be wronged in a similar way," the plaintiff did not have standing to pursue injunctive relief). Instead, plaintiff's sole contention is that the Court should deny

Transamerica's Motion with respect to his declaratory relief claim because he is entitled to seek a declaration under Alabama law pursuant to Ala. Code § 6-6-224.[18]   Plaintiff's argument is without merit.[19]

Plaintiff's declaratory relief claim in this Court is governed by 28 U.S.C. § 2201, not by state law.[20]   "It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases." *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986); *see also* 12 James Wm. Moore, et al., *Moore's Federal Practice* § 57.04[2] (3d ed. 2011) ("whether a declaratory action may be heard in federal court constitutes a federal matter to be resolved by federal law.")   Thus, "a federal court decides the standing of a party to demand declaratory relief and the existence of an actual controversy under federal law." *Id.*   Alabama's declaratory judgment statute and Alabama state court decisions construing that statute are therefore irrelevant to plaintiff's declaratory relief claim in this Court. *See, e.g.*, *Oliver v. Oliver*, 178 F.3d 1285, 1999 WL 308594, at *1 (4th Cir. May 17, 1999) ("state procedural rule which would allow [plaintiffs] to bring an action for declaratory judgment in superior court" was "not binding on federal courts"); *U.S. Fire Ins. Co. v. Massey Irrigation & Liquidation*, 40 F.3d 385, 1994 WL 652520, at *3 n.2 (5th Cir. Nov. 3, 1994) ("[T]he federal

---

[18] Ala. Code § 6-6-224, which is part of the Alabama Declaratory Judgment Act, provides:  "A contract may be construed either before or after there has been a breach thereof." Plaintiff's Complaint does not cite Ala. Code § 6-6-224.

[19] Plaintiff's Response makes *no* argument in support of his claim for injunctive relief. Accordingly, the Court should unquestionably grant summary judgment in favor of Transamerica with respect plaintiff's injunctive relief claim.

[20] The Declaratory Judgment Act, 28 U.S.C. § 2201, provides: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *See* Memorandum at 34 (establishing that plaintiff lacks standing to pursue declaratory relief under the Federal Declaratory Judgment Act).

courts are not controlled by state procedural law in entertaining a declaratory judgment action.")

(citing *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 674 (1950)); *Cincinnati Ins. Co. v.

Holbrook*, 867 F.2d 1332-33 (11th Cir. 1989) (explaining 28 U.S.C. § 2201 governs declaratory

relief in federal court and declining to consider Georgia law on the justiciability of declaratory

judgments), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

Because plaintiff does not, and cannot, dispute that he is precluded from pursuing his declaratory

relief claim under federal law, the Court should dismiss plaintiff's declaratory and injunctive

relief claim.[21]

Moreover, even if plaintiff could establish an entitlement to declaratory relief under

federal law, which he cannot, plaintiff's Response offers no argument that the declaration sought

would serve any useful purpose in this case.  Accordingly, the Court should dismiss plaintiff's

claim.  *Wilton*, 515 U.S. at 288 ("If a district court, in the sound exercise of its judgment,

determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it

cannot be incumbent upon that court to proceed to the merits before staying or dismissing the

---

[21] Even if the Alabama Declaratory Judgment Act did apply, summary judgment would still be proper on plaintiff's claims because there is no threat of future injury.  In *Carrell v. Masonite Corp.*, 775 So. 2d 121 (Ala. 2000), the Alabama supreme court affirmed summary judgment on a claim under the Alabama Declaratory Judgment Act, explaining: "[t]he plaintiffs' claims are being decided on the merits.  In cases, such as this one, in which a cause of action has already accrued, a court will not enter a declaratory judgment if there is not an anticipated future injury."  *Id.* at 125.  The *VanLoock* case cited by plaintiff is inapposite.  Response at 23-24 (citing *VanLoock v. Curran*, 489 So. 2d 525 (Ala. 1986)).  In *VanLoock*, the plaintiffs sought numerous declarations based on an alleged breach of contract and denial of due process.  *Id.* at 528.  The defendants moved to dismiss the declaratory relief claims arguing that the contract at issue had expired and there was no continuing contract.  *Id.* at 531.  The court noted that the plaintiff's declaratory relief claims were likely to be denied to the extent they sought specific performance of the expired contract, but denied the motion to dismiss because the plaintiff's declaratory relief claim "request[ed] relief other than specific performance of the contract."  *Id.* Here, plaintiff solely seeks a declaration regarding the meaning of a policy which he no longer owns.  Complaint ¶ 64.  Consistent with *Carrell*, plaintiff's declaratory relief claims should be dismissed because there is no "anticipated future injury."

action."); *see also Summit Props. Int'l, LLC v. LPGA*, 2010 WL 2382405, at *6 (S.D.N.Y.

June 14, 2010) (dismissing declaratory relief claim which served no useful purpose because "the

declaratory judgment [wa]s duplicative of the breach of contract claim").[22]

## CONCLUSION

For all of the reasons set forth above, Transamerica respectfully requests that the Court

enter an order granting summary judgment to Transamerica and such further relief that the Court

finds just and equitable.

Respectfully submitted,

/s/ *John K. Baker*

Markham R. Leventhal, Esq.
Farrokh Jhabvala, Esq.
Julianna Thomas McCabe, Esq.
JORDEN BURT LLP
777 Brickell Avenue, Suite 500
Miami, Florida 33131
Telephone: (305) 371-2600
Facsimile: (305) 372-9928
ml@jordenusa.com
fj@jordenusa.com
jt@jordenusa.com

John K. Baker, Esq., Ark. Bar No. 97024
MITCHELL, WILLIAMS, SELIG,
 GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone: (501) 688-8800
Facsimile: (501) 918-7850
jbaker@mwlaw.com

*Attorneys for Defendants Transamerica Life
Insurance Company and AEGON USA, LLC*

---

[22] Plaintiff's Response does not even address Transamerica's argument that the declaratory relief claim should be dismissed because plaintiff's proposed declaration is circular, defective, and would lead to confusion. Motion at 35-36.

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2011, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, Arkansas 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, Alabama 35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, Florida 32601

*Attorneys for Plaintiff*

The undersigned hereby certifies that a true and correct copy of the foregoing was served

by First-Class U.S. mail upon the following on this 11th day of March, 2011:

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, Florida 32601

/s/ *John K. Baker*
John K. Baker