**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**ROBERT W. HALL**                                                      **PLAINTIFF**

**v.**                              **Case No. 4:11-cv-00086-JLH**

**EQUITY NATIONAL LIFE INSURANCE**
**COMPANY, et al.**                                                      **DEFENDANTS**

TRANSAMERICA LIFE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE THE
"SUPPLEMENTAL DECLARATION OF KATHY HOLDINESS"

Defendant Transamerica Life Insurance Company ("Transamerica") hereby moves to strike the "Supplemental Declaration of Kathy Holdiness" (Docket #129-2) (the "Second Holdiness Declaration"), filed with plaintiff's reply in support of his cross-motion for partial summary judgment (Docket #129) (the "Reply").  As demonstrated below, the Second Holdiness Declaration is not only untimely, but demonstrably untrustworthy, irreconcilable, and inadmissible under Rule 56.

## INTRODUCTION AND BACKGROUND

This case involves a dispute over the amount of benefits due for Surgery and Anesthesia Claims plaintiff submitted to Transamerica in 2007 under a limited benefit cancer insurance policy.[1]  The two benefit payments at issue are based upon the physician's "actual fee" or the "actual charges" incurred for the Surgery and Anesthesia Claims.  There is no dispute that the policy insures only for "loss incurred," and requires "proof of loss" for "each incurred expense"

---

[1] *See* Transamerica Life Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment at 1-3 (Docket #77).

as a condition precedent to the payment of benefits.  Nevertheless, plaintiff contends he should be paid more than his own doctors are permitted to charge and more than they in fact received and accepted as payment in full.  Plaintiff testified he filed this case after a lawyer called him "out of the blue."[2]  During the discovery period set by this Court, Transamerica diligently pursued all factual information necessary to defend plaintiff's claims and to establish that the benefits for plaintiff's Surgery and Anesthesia Claims were properly paid.  Transamerica served interrogatories, document requests, requests for admission, and obtained the plaintiff's videotaped deposition.  Transamerica also served third party subpoenas, including a subpoena issued to Management Services Organization ("MSO"), the Meridian, Mississippi billing company for plaintiff's surgeon, Dr. Stanley Wade.[3]

Pursuant to the subpoena, and after discussions with counsel for Dr. Wade's billing provider, on August 30, 2010, Transamerica obtained the Declaration of Kathy Holdiness.[4] Transamerica produced a copy of the Holdiness Declaration and related documents to plaintiff's counsel four days later, on September 3, 2010, more than *three months* before the expiration of the December 16, 2010 discovery deadline.  *See* September 3, 2010 correspondence from Transamerica's counsel to plaintiff's counsel, attached hereto as Exhibit C.

---

[2] *See* Transamerica Life Insurance Company's Motion for Summary Judgment (Docket #76) ("Summary Judgment Motion"), at Exhibit 5 (Excerpts of Deposition of Robert Hall, December 14, 2010) ("Hall Dep."), at 49-50 ("Q. Did you know Mr. Hutsler?  A. No, ma'am, not at that time.  Q. And he just called you out of the blue?  A. Yes, ma'am.").  This case was originally filed as a class action.  By Order dated July 9, 2010, this Court dismissed plaintiff's class action allegations, and plaintiff is proceeding on his individual claims.  Docket #40.

[3] A copy of the subpoena served on MSO is attached hereto as Exhibit A.

[4] *See* Summary Judgment Motion (Docket #76), at Exhibit 4 (Declaration of Kathy Holdiness, executed August 19, 2010) (hereinafter, "Holdiness Declaration" or "Holdiness Decl.").  A copy of the August 30, 2010 cover letter from MSO's counsel to Transamerica's counsel, enclosing the Holdiness Declaration and MSO's document production is attached hereto as Exhibit B.

The Holdiness Declaration clearly and unequivocally attested that the total amount billed and charged for the surgery performed by Dr. Wade was $1,483.58, exactly equal to the Medicare Allowance, and that Dr. Wade's "list price" or maximum rate for the surgery of $4,166 was not charged, billed, or paid in this case. Ms. Holdiness testified in pertinent part:

> 6. … In 2006 and continuing through 2008, Robert Hall was covered by Medicare. Medicare regulations dictated the amounts that Management Services Organization physicians could bill or charge to Mr. Hall for the covered services and treatments he received as a Medicare-eligible patient, also known as the "Medicare Allowance." … *Management Services Organization did not charge Mr. Hall for any amount beyond the Medicare Allowance.*

> 7. In addition to his Medicare eligibility, Mr. Hall was covered by a UnitedHealthcare Railroad Plan. Because Mr. Hall was also covered by Medicare, Management Services Organization was not permitted to bill either Mr. Hall or UnitedHealthcare for any amounts greater than Mr. Hall's portion of the Medicare Allowance.

> 8. Management Services Organization is not permitted to bill or charge a Medicare insured whatever amount it chooses to bill for covered services; instead Management Services Organization … has agreed to accept certain Medicare "Allowances" as payment in full by Medicare and the Medicare insured for covered services provided to the Medicare insured. *No amount in excess of the Medicare Allowance can be billed or charged by Management Services Organization* to the Medicare insured, Medicare, or any other insurance plan owned by the Medicare insured for covered services, such as a UnitedHealthcare Plan.

>        * * *

> 10. When a Medicare insured receives services or treatments, the total amount that Management Services Organization can collect from Medicare and the Medicare insured for covered services to the Medicare insured cannot exceed the Medicare Allowance, which is the *maximum amount that could ever be owed* to Management Services Organization by the Medicare insured, Medicare, or any other insurance owned by the Medicare insured under the terms of the Agreements.

> 11. Management Services Organization abides by Medicare regulations *and does not bill any Medicare insured more than the Medicare Allowance* for any treatments or services provided at Management Services Organization. . . .

12. On July 27, 2006, Management Services Organization physician Dr. Stanley A. Wade performed prostate surgery on Mr. Hall. Although Management Services Organization's maximum rate for treatment related to the surgery was $4,166.00, **the total fee to Mr. Hall for this surgery was $1,483.58**, which was the Medicare Allowed Amount. Medicare paid $1,186.86, and UnitedHealthcare paid the balance of $296.72. Under federal law, neither Medicare nor Mr. Hall or UnitedHealthcare were obligated to Management Services Organization or Dr. Wade for any amount in excess of the $1,483.58 Medicare Allowed Amount. Management Services Organization **did not charge its maximum rates to Mr. Hall** and did not otherwise attempt to obtain any payments from Mr. Hall or UnitedHealthcare in excess of the Medicare Allowed Amount.

Holdiness Decl. ¶¶ 6-8, 10-12 (emphasis added). This testimony was not surprising given that

federal Medicare regulations *prohibit* Dr. Wade from charging more than the Medicare

Allowance as a matter of law.[5]

During the discovery period, plaintiff gave no indication that he disagreed with the

Holdiness Declaration, and he made no effort to depose or cross-examine Ms. Holdiness.

Indeed, plaintiff failed to take *any* depositions or serve any interrogatories or requests for

production in this case. Nor did plaintiff issue any subpoenas or give any notice of an intent to

subpoena Ms. Holdiness. Similarly, plaintiff gave no notice to defense counsel that he intended

to contest Ms. Holdiness's straightforward testimony. Indeed, plaintiff responded to

Transamerica's Motion for Summary Judgment and filed his own Cross-Motion without ever

---

[5] *See Metz v. U.S. Life Ins. Co.*, 2010 WL 3703810, at *3 (S.D.N.Y. Sept. 21, 2010) ("Where Medicare contracts with a medical provider to set fees for a given service, the Medicare beneficiary is **never liable** for the amount forgone by a doctor under that agreement.") (emphasis added); *see also* 42 C.F.R. § 489.20(a) (Centers for Medicare & Medicaid regulations, Subpart B, Essentials of Provider Agreements, stating: "Basic commitments. The provider agrees to the following: (a) **To limit its charges to beneficiaries and to other individuals on their behalf**, in accordance with provisions of Subpart C ["Allowable Charges"] of this part.") (emphasis added); 42 C.F.R. § 489.21(a) (Centers for Medicare & Medicaid regulations, Subpart B, Essentials of Provider Agreements, stating: "Specific limitations on charges. Except as specified in subpart C ["Allowable Charges"] of this part, the provider **agrees not to charge a beneficiary** for any of the following: (a) Services for which the beneficiary is entitled to have payment made under Medicare.") (emphasis added").

contesting the Holdiness Declaration.[6]  Now, more than *six months after* he was served with the Holdiness Declaration, more than three months after the close of discovery, after the completion of briefing on Transamerica's Summary Judgment Motion,[7] and after Transamerica has responded to his Cross-Motion, plaintiff has filed with his Reply brief a new declaration of Ms. Holdiness which he calls "Supplemental."  This Second Holdiness Declaration states that "[u]pon performance of the surgery, Mr. Hall became contractually obligated to pay the amount of $4,166."  This statement is false.

Plaintiff's surprise filing is part of a pattern of discovery violations in this action, and plaintiff has failed to produce any documents supporting his new claim of "contractual liability" for an amount prohibited by federal Medicare law.  Plaintiff failed to respond to Transamerica's interrogatories and requests for production for more than four months, forcing Transamerica to file a Motion to Compel.  *See* Transamerica's Motion to Compel (Docket #57) (the "Motion to Compel").  This Court granted Transamerica's Motion to Compel (Nov. 8, 2010 Order (Docket #58)), yet plaintiff still failed to respond to Transamerica's document requests.[8]  Plaintiff belatedly complied with the Court's Order on December 10, 2010, less than one week before the

---

[6] *See* Plaintiff's Cross-Motion for Partial Summary Judgment (Docket #105) (the "Cross-Motion"); Memorandum in Support of Plaintiff's Cross-Motion for Partial Summary Judgment and Response in Opposition to Defendant Transamerica Life Insurance Company's Motion for Summary Judgment (Docket #106).

[7] Briefing with respect to Transamerica's Motion for Summary Judgment closed on March 11, 2011, six days before the Second Holdiness Declaration was even signed.  *See* Transamerica Life Insurance Company's Reply Memorandum in Support of its Motion for Summary Judgment and Response in Opposition to Plaintiff's Cross-Motion (Docket #121).

[8] Although the Court's November 8th Order required that responses to Transamerica's requests for production "must be served on or before November 18, 2010," Transamerica's counsel was forced to expend further resources sending multiple letters to plaintiff's counsel to obtain compliance.  *See* November 19, 2010 and December 7, 2010 correspondence, attached hereto as composite Exhibit D.

discovery deadline, but never produced any documents supporting his new claim that, despite his status as a Medicare beneficiary, he became "contractually liable" for an amount nearly three times what Medicare law allows his physician to charge.  Nor did plaintiff ever supplement his Rule 26(a) disclosures or his discovery responses to produce any "contract" or "proof of loss" to support his remarkable new contention.[9]  When asked to produce "[a]ll correspondence and communications relating to your medical treatment for cancer, including notes of conversations or communications, with any **employee, agent, or representative** of Dr. Stanely A. Wade, Jr. [or Rush Foundation Hospital] from January 1, 2005 to the present," plaintiff answered "none" and produced none.  *See* Responses to Transamerica's First Requests for Production Nos. 14-15 (relevant excerpts attached hereto as Exhibit E).

The Second Holdiness Declaration is factually inaccurate, completely contrary to federal Medicare law, and squarely contradicts multiple representations Ms. Holdiness made in her original declaration.  *See* Second Holdiness Declaration (Docket #129-2) (signed March 17, 2011).  The Second Holdiness Declaration cannot be reconciled with Ms. Holdiness's original testimony.[10]  Given the surreptitious manner in which the Second Holdiness Declaration was obtained, after the discovery period with no notice to Transamerica, Transamerica's undersigned counsel contacted plaintiff's Arkansas counsel, who indicated that plaintiff's Arkansas law firm

---

[9] Plaintiff did produce a key document he had been withholding – a letter from the Alabama Department of Insurance expressing the Department's belief that Transamerica had properly paid plaintiff's claim.  *See* Transamerica's Summary Judgment Motion (Docket #76) at Exhibit 9 (Letter from Ronnie McGough, Alabama Department of Insurance to Robert W. Hall).

[10] *Compare* Ms. Holdiness's original testimony that MSO "did not charge" Dr. Wade's maximum rates to Mr. Hall, and that Mr. Hall was never "obligated to Management Services Organization or Dr. Wade for any amount in excess of the $1,483.58 Medicare Allowed Amount," (Holdiness Decl. ¶ 12) *with* the statement in the Second Holdiness Declaration that Mr. Hall was "contractually obligated" to pay Dr. Wade $4,166.00 for the surgery.  Second Holdiness Decl. ¶ 8.  No contract is attached to the second declaration and none exists.  *See, e.g., supra* note 4.

of Matthews, Sanders & Sayes was not involved in procuring or filing the Second Holdiness Declaration.[11]

Plaintiff's subversive tactics and untimely filing are improper and highly prejudicial. Plaintiff had three months during the discovery period to cross-examine Ms. Holdiness about her testimony if he believed it was incomplete or required supplementation.  If plaintiff intended to subpoena or obtain a second statement from Ms. Holdiness, he should have done so, above-board, within the discovery timeline, and he should have disclosed the document to Transamerica, such that Transamerica could have tested the reliability and trustworthiness of the contradictory statements through discovery.  Plaintiff made no effort to do so.

Nor did plaintiff timely file the Second Holdiness Declaration under the summary judgment rules.   The Second Holdiness Declaration was not submitted in response to Transamerica's Summary Judgment Motion, or in support of plaintiff's Cross-Motion.  Rather, plaintiff waited until all briefing on Transamerica's Motion was complete and submitted a new declaration, along with thirteen other new exhibits, for the first time with his Reply.  For that reason alone, the declaration should be stricken.  *See J.S. & A.S. v. E. End Sch. Dist.*, 2007 WL 1029559, at *1 n.2 (E.D. Ark. April 3, 2007) (refusing to consider summary judgment exhibits submitted for the first time on reply).  Modern federal practice does not permit the type of "trial by ambush" that plaintiff has attempted here.  *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968) ("[T]he purpose of our modern discovery procedure is to narrow the issues, to

---

[11]   Transamerica's counsel also contacted counsel for Dr. Wade's billing provider Management Services Organization.  MSO's counsel indicated that she "had no idea" about how the Second Holdiness Declaration was procured.   While MSO's counsel explained she was vaguely aware that an attorney had contacted MSO for "another" declaration, MSO's counsel was under the impression that the declaration was being requested by the same party.  Thus, the complete circumstances of how Kathy Holdiness came to sign the inaccurate Second Holdiness Declaration are unknown to Transamerica's counsel.

eliminate surprise, and to achieve substantial justice."); *Ryan v. Bd. of Police Cmm'rs of St. Louis*, 96 F.3d 1076, 1082-84 (8th Cir. 1996) (reversing judgment grounded on surprise evidence upon holding, "what occurred was in fact trial by ambush"); *Spurlock v. Lawson*, 881 F. Supp. 436, 438 (E.D. Ark. 1995) (modern discovery eliminates the "sporting theory of justice" and prevents trial from becoming a "game of blind man's bluff") (internal quotations and citation omitted).   The Second Holdiness Declaration should be stricken.   Transamerica further respectfully requests that this Court award Transamerica its reasonable attorney's fees under Federal Rules of Civil Procedure 37(c) and 56(h) incurred in preparing this Motion to Strike.

## ARGUMENT

I.   **TRANSAMERICA'S SUMMARY JUDGMENT BRIEFING ESTABLISHED THAT PLAINTIFF'S BENEFIT PAYMENTS WERE BASED ON THE ACTUAL CHARGES PLAINTIFF INCURRED FOR HIS TREATMENT**

Discovery closed in this case on December 16, 2010 and, on December 21, 2010, Transamerica filed its Summary Judgment Motion.[12] Transamerica's Summary Judgment Motion, Memorandum, and Statement of Undisputed Material Facts established that plaintiff's benefit payments were based on the actual charges incurred for his surgery and related anesthesia.   The Summary Judgment Motion established that plaintiff is a Medicare patient, that his medical providers cannot bill or charge him any amount in excess of the Medicare allowed amounts, and that the full amount owed to Dr. Wade for plaintiff's prostate surgery at issue in this action was $1,483.58 – not MSO's "list" price or maximum rate of $4,166.00.

Transamerica's supporting evidence included not only the declaration testimony of Ms. Holdiness, but also the declaration of Transamerica's Director of Claims, the reports of two

---

[12] *See also* Transamerica Life Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment (Docket #77) (the "Memorandum"); Transamerica's Local Rule 56.1 Statement of Undisputed Material Facts ("Transamerica's Statement") (Docket #78).

well-known experts, and the plaintiff's own medical records and testimony.   For example, Transamerica's Director of Claims Analysis, James A. Byrne attached the "proof of loss" submitted by plaintiff for his surgery and anesthesia claims, and explained that plaintiff only incurred an expense of $1,483.58 for the surgery and $189.11 for related anesthesia, the amounts his physicians actually charged and accepted as payment in full from Medicare and UnitedHealthcare.   Summary Judgment Motion at Exhibit 3, Declaration of James A. Byrne ¶¶ 14, 15.[13]

On February 15, 2011, plaintiff filed his Response to Transamerica's Summary Judgment Motion (Docket #106) and the Cross-Motion (Docket #105).   Plaintiff submitted an alternative statement (Docket #107) of alleged "facts" in support of his Cross-Motion which ignored virtually all material facts set forth in Transamerica's Statement.[14]   In particular, plaintiff's statement completely ignored and made no attempt to refute the sworn testimony of MSO in the Declaration of Kathy Holdiness.   *See* Transamerica Life Insurance Company's Reply

_____

[13] *See also* Summary Judgment Motion at Exhibit 6, Declaration of Glenn Alan Melnick, Ph.D. (explaining historical development of medical billing practices and fictional nature of "list" prices); *id.* at Exhibit 7, Declaration of Marc Chapman ¶¶ 7-14 (establishing that plaintiff Hall is a Medicare patient and that the fees his physicians are permitted to charge for his medical care are "strictly regulated by statute" and limited to the "pre-set Medicare fee schedule, which is issued by federal regulation"); *id.* at Exhibit 5, Excerpts of Deposition of Robert Hall at 204-06 (agreeing that Medicare allowed amounts were paid by Medicare and UnitedHealthcare as payment in full for his surgery, and that plaintiff is generally fully covered for his medical treatments and rarely even makes a co-payment).

[14] Those facts were deemed admitted.  *See* LR 56.1(c) ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) ***shall be deemed admitted unless controverted by the statement filed by the non-moving party*** under paragraph (b).") (emphasis added); *see also Philson v. Ark. Dep't of Human Servs.*, 2010 WL 4683898, at *1 (W.D. Ark. Nov. 10, 2010) (holding "facts not specifically controverted by [plaintiff] will be deemed to have been admitted" where plaintiff "relied on speculation, denials or allegations, without a proper basis in fact or clear citation to facts already in the record"); *Duvall v. City of Rogers, Ark.*, 2005 WL 3784932, at *1 (W.D. Ark. Dec. 20, 2005) ("[W]hen a material fact is not agreed upon and the moving party puts forth evidence to support his contention with respect to it, the non-moving party is obliged to respond with contrary evidence if any he has.").

Memorandum in Support of its Motion for Summary Judgment and Response in Opposition to Plaintiff's Cross-Motion (Docket #121) at 4-9 (addressing plaintiff's failure to contest the facts set forth in Transamerica's Statement).  Plaintiff did not dispute that he is a Medicare patient, that his physicians accept Medicare assignment, or that Transamerica based his benefit payments on the Medicare allowed amounts, which were the exact amounts owed to, paid to, and accepted by his doctors as payment in full.

On February 28, 2011, plaintiff filed a Motion to Supplement the Cross-Motion (Docket #115) with two new exhibits, including his own new, self-serving and inadmissible declaration which stated, "I believe that the actual charges for the surgery . . . were $4,166.00."  (Docket 115-1 ¶ 6).[15]   In his Motion to Supplement, plaintiff argued that Transamerica would "not be prejudiced in any way" by the filing of his two new exhibits, because "Transamerica has not yet filed a reply to Hall's response in opposition to its motion for summary judgment, or a response to Plaintiff's motion for summary judgment."   Docket #115, at 2.   Like his prior summary judgment filings, plaintiff's Motion to Supplement failed to address the material evidence supporting Transamerica's Summary Judgment Motion which established the actual charges for his treatment.    Plaintiff's Motion to Supplement the Cross-Motion did not mention Ms. Holdiness or her declaration testimony.

_____

[15] Plaintiff also submitted excerpts from a different plaintiff's deposition in a different case.  Docket #115-2.  Plaintiff's Motion to Supplement offered no explanation as to how the two new exhibits, not addressed in his prior briefs, would support his Cross-Motion or his response to Transamerica's Motion for Summary Judgment.   Moreover, plaintiff's belated declaration of his opinion was inconsistent with the record, including his own deposition testimony.  *See* Docket #121-1 at 204-05 (Q. "…And is it your understanding that the $1,483.58 is what Dr. Wade was actually paid for the surgery?" A. "Yes, ma'am.").   Transamerica pointed out in response that the supplement was insufficient as a matter of law to establish a genuine issue of material fact to avoid summary judgment. *Lark v. West*, 182 F. Supp. 794, 798 (D.D.C. 1960) ("[B]elief, no matter how sincere, is not equivalent to knowledge, and . . . the facts set forth in an affidavit in opposition to a motion for summary judgment must be such as would be admissible in evidence should they be given from the witness stand during the trial of a case.").

On March 11, 2011, Transamerica filed its consolidated Reply Memorandum in Support of its Motion for Summary Judgment and Response in Opposition to Plaintiff's Cross-Motion, thus closing briefing on Transamerica's Motion for Summary Judgment.  After an enlargement of time, plaintiff's Reply on the Cross-Motion was due to be filed on March 23, 2011.  With no justification or excuse, however, and without leave of court, on March 23, 2011 plaintiff filed *fourteen* new exhibits and essentially a second opposition to Transamerica's Summary Judgment Motion.  *See* "Reply Memorandum in Support of Plaintiff's Cross-Motion for Partial Summary Judgment *and in Opposition to Transamerica's Motion for Summary Judgment*" (Docket #129; Exhibit A-N) (emphasis added).  Plaintiff's so-called Reply is comprised almost entirely of new arguments and materials not raised in plaintiff's prior summary judgment briefs.[16]  For example, while the Cross-Motion ignored the Holdiness Declaration, and all testimony about the expenses plaintiff genuinely incurred for his cancer treatment, the Reply now argues, *inter alia*, that plaintiff was "contractually obligated" to Dr. Wade to pay the "list" price for his surgery.

## II.   THE SECOND HOLDINESS DECLARATION SHOULD BE STRICKEN AS UNTIMELY, PREJUDICIAL, AND FUNDAMENTALLY UNFAIR

The Second Holdiness Declaration should be stricken because it was untimely filed for the first time with plaintiff's Reply.  Plaintiff's Cross-Motion failed to meet plaintiff's burden under Rule 56 to "substantiate his allegations with 'sufficient probative evidence.'"  *See*

---

[16] The exhibits to the Reply include the Second Holdiness Declaration, as well as another self-serving and inadmissible declaration by the plaintiff, and multiple irrelevant and unauthenticated documents that were never identified by plaintiff in discovery, despite Transamerica's comprehensive discovery requests.  Transamerica respectfully submits that all fourteen exhibits and plaintiff's improper Reply should be stricken or disregarded because they violate the discovery rules and Rule 56.  The demonstrably inaccurate Second Holdiness Declaration is by far the most egregious of these exhibits and was unquestionably procured and filed in bad faith.  Transamerica intends to file a separate motion for leave to file a surreply that will address the inadmissibility and immateriality of all fourteen new exhibits.  None of the exhibits presents a genuine dispute over any fact material to the plaintiff's two claims at issue in this action.

Transamerica Life Insurance Company's Reply Memorandum in Support of its Motion for Summary Judgment and Response in Opposition to Plaintiff's Cross-Motion at 4 (quoting *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) as affirming summary judgment where responding party failed to "substantiate his allegations with 'sufficient probative evidence'"). Plaintiff ignored virtually all of the material facts identified in Transamerica's Statement of Undisputed Material Facts, including MSO's testimony that plaintiff was billed and charged only the Medicare allowed amount for his prostate surgery. *Id.* at 6-7. All of the facts set forth in the Holdiness Declaration were deemed admitted when plaintiff failed to timely offer any evidence to refute them.[17] Thus, even if it were admissible, which it is not, the Second Holdiness Declaration would be untimely. *J.S. & A.S. v. E. End Sch. Dist.*, 2007 WL 1029559, at *1 n.2 (E.D. Ark. April 3, 2007) ("The Court notes that [the movant] submitted several new exhibits in connection with her Reply Brief. The Court has not considered such exhibits in rendering its decision herein."). Plaintiff cannot now avoid summary judgment by filing an improper and inadmissible new affidavit. "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

A party's attempt to change prior testimony or obtain previously undisclosed testimony after the expiration of the time for discovery is highly improper and unfairly prejudicial. "If testimony under oath . . . can be abandoned many months later by the filing of an affidavit,

---

[17] *See supra*, n.12 (citing Local Rule 56.1(c) ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) ***shall be deemed admitted unless controverted by the statement filed by the non-moving party*** under paragraph (b).") (emphasis added).

probably no cases would be appropriate for summary judgment." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983)).  Courts routinely reject such practices because to "hold otherwise would allow [a party] to ambush" an opponent with "unchallenged declarations by making an end run around the rules for discovery." *See Arnold v. Cargill Inc.*, 2004 WL 1853149, at *1 (D. Minn. Aug. 12, 2004) (upholding order striking post-deadline declarations); *see also Huggins v. Fed. Express Corp.*, 2008 WL 1777438, at *3 (E.D. Mo. April 16, 2008) (granting summary judgment and precluding plaintiff from taking "unfair advantage" with late testimony, where the plaintiff "opted against timely interviewing, deposing, and/or securing the affidavit"); *Ryan v. Bd. of Police Cmm'rs of St. Louis*, 96 F.3d 1076, 1082-84 (8th Cir. 1996) (reversing judgment where surprise evidence introduced at trial had been requested by, but not produced to, the opposing party in discovery); *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968) (reversing verdict after trial where plaintiff failed to disclose her previous hospitalization in response to interrogatories); *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999) (change in expert's conclusions improper, where previously undisclosed opinions denied defendant the opportunity for cross-examination or the presentation of additional, relevant evidence, thereby creating "fundamental unfairness").  The Second Holdiness Declaration should be stricken.

## III.   THE SECOND HOLDINESS DECLARATION SHOULD BE STRICKEN BECAUSE IT IS INACCURATE AND IRRECONCILABLE

Even if the Second Holdiness Declaration were timely, it is inadmissible because it includes testimony that is inaccurate and cannot be reconciled with Ms. Holdiness's earlier testimony.  Recognizing that his claims fail under *Claybrook* and Alabama law on the facts presented here, plaintiff has coaxed the witness for Dr. Wade's billing provider into signing a

declaration that conflicts with her original, sworn testimony and is entirely inconsistent with federal case law and statutes.

For the first time in his Reply, plaintiff now pretends that he owed and was "contractually obligated" to pay $4,166 for his surgery and $1,210 for anesthesia until his claims were processed and paid by Medicare.  This contention is simply false.  "Medicare regulations dictated the amounts that [plaintiff's] physicians could bill or charge to Mr. Hall" for the services he received.  Holdiness Declaration ¶ 6.  Plaintiff does not dispute that he is a Medicare patient, and that Dr. Wade is a participating provider in Medicare.  A Medicare participating provider must "limit its charges to beneficiaries and to other individuals [paying] on their behalf" to the amounts allowed under Medicare.  42 C.F.R. § 489.20(a).  Moreover, Medicare participating providers must not "charge" a beneficiary for "[s]ervices for which the beneficiary is entitled to have payment made under Medicare."  42 C.F.R. § 489.21(a).  As one court recently explained:

> Where Medicare contracts with a medical provider to set fees for a given service, the Medicare beneficiary is *never liable* for the amount forgone by a doctor under that agreement.  A doctor who accepts Medicare assignment "has signed an agreement with Medicare to accept the Medicare-approved amount as full payment for covered services.... They agree to only charge you the Medicare deductible and coinsurance amount and wait for Medicare to pay its share." (Medicare & You, http://www.medicare.gov/ Publications/Pubs/pdf/10050.pdf, at p. 47, 375 N.Y.S.2d 229). Given this agreement, it is essentially impossible that Plaintiff would ever face liability for a provider's hypothetical full fee.

*Metz v. U.S. Life Ins. Co.*, 2010 WL 3703810, at *3, n.2 (S.D.N.Y. Sept. 21, 2010) (emphasis added).  The Medicare Participating Physician or Supplier Agreement, which is executed by all participating providers, including Dr. Wade, reads:

> 1.     **Meaning of Assignment**:  For purposes of this agreement, accepting assignment of the Medicare Part B payment means requesting direct Part B payment from the Medicare program.  *Under an assignment, **the approved charge**, determined by the MAC/carrier, **shall be the full charge** for the service covered*

> *under Part B.*   The participant shall not collect from the beneficiary or other person or organization for covered services more than the applicable deductible and coinsurance.

*See* https://www.cms.gov/cmsforms/downloads/cms460.pdf (last visited April 8, 2011) (emphasis added).

There can be no question that plaintiff was never billed or liable for Dr. Wade's maximum rates, and Dr. Wade was never entitled to be paid more than the Medicare Allowance for the Surgery and Anesthesia Claims.   Thus, multiple statements in the Second Holdiness Declaration which conflict with the first Holdiness Declaration and Transamerica's other admissible summary judgment evidence are demonstrably false.   The statement that MSO actually charges patients its maximum rates regardless of whether they have Medicare is not only unsupportable but would be subject to civil and criminal penalties if true.[18]   The statement that Mr. Hall was "contractually obligated" to pay Dr. Wade's maximum rates is also inaccurate and, in any event, such a contract would be illegal and unenforceable.   *Nursing Home Consultants, Inc. v. Quantum Health Servcs. Inc.*, 926 F. Supp. 835, 842 (E.D. Ark. 1996) (holding if an agreement "violates the law and/or policy underlying the federal Medicare system, as expressed in the Medicare statutes and regulations, it is illegal in any state in the Union").   Because the Second Holdiness Declaration is an untrustworthy manipulation, it is insufficient to oppose Transamerica's Motion for Summary Judgment and it should be stricken.   *See Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 112 (8th Cir. 1997) ("the district court

---

[18] 42 U.S.C.  § 1320a-7a(a)(2) (providing that a person who "knowingly presents or causes to be presented to any person a request for payment" which violates the terms of "an agreement to be a participating physician" under Medicare is subject to civil money penalties); 42 U.S.C. § 1320a-7b(e) ("Whoever accepts assignments [under Medicare] or agrees to be a participating physician" and "knowingly, willfully, and repeatedly violates the terms of such assignments or agreement, shall be guilty of a misdemeanor" and subject to criminal penalties upon conviction).

correctly disregarded the subsequent manufactured contradictory testimony of American and concluded that no factual issue for trial existed . . . ."); *Nickerson v. Allied Mut. Ins. Co.*, 1999 WL 980933, at *1-2 (8th Cir. Oct. 28, 1999) (disregarding conflicting affidavit as a party may not "create sham issues of fact in an effort to defeat summary judgment"); *see also Gander Mountain Co. v. Cabela's Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) ("A properly supported motion for summary judgment is not defeated by self-serving affidavits.") (citations omitted).

**CONCLUSION**

For the reasons set forth herein and in the Motion, Transamerica respectfully requests that the Court strike the Second Holdiness Declaration from the record and award Transamerica its reasonable attorney's fees for investigating and preparing the Motion to Strike.

Respectfully submitted,

/s/ John K. Baker

| | |
|---|---|
| Markham R. Leventhal, Esq. | John K. Baker, Esq., Ark. Bar No. 97024 |
| Farrokh Jhabvala, Esq. | **MITCHELL, WILLIAMS, SELIG,** |
| Julianna Thomas McCabe | **GATES & WOODYARD, P.L.L.C.** |
| **JORDEN BURT LLP** | 425 West Capitol Avenue, Suite 1800 |
| 777 Brickell Avenue, Suite 500 | Little Rock, Arkansas 72201 |
| Miami, Florida 33131 | Telephone: (501) 688-8800 |
| Telephone: (305) 371-2600 | Facsimile: (501) 918-7850 |
| Facsimile: (305) 372-9928 | jbaker@mwlaw.com |
| ml@jordenusa.com | |
| fj@jordenusa.com | |
| jt@jordenusa.com | *Attorneys for Defendant Transamerica Life Insurance Company* |

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2011, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL  35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, FL 32601

*Attorneys for Plaintiff*

The undersigned hereby certifies that a true and correct copy of the foregoing was served

by First-Class U.S. mail upon the following on this 8th day of April, 2011:

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, FL 32601

*Attorney for Plaintiff*

_____   /s/ John K. Baker   _____