**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

ROBERT W. HALL PLAINTIFF

v. Case No. 4:11-cv-00086-JLH

EQUITY NATIONAL LIFE INSURANCE COMPANY, et al. DEFENDANTS

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO STRIKE THE SUPPLEMENTAL DECLARATION OF KATHY HOLDINESS**

Pursuant to E.D. Ark. Local Rule 7.2(b), Plaintiff Robert W. Hall ("Hall") submits this response in opposition to Transamerica Life Insurance Company's ("Transamerica") Motion to Strike the Supplemental Declaration of Kathy Holdiness ("Motion"). For the reasons set forth below, this Court should deny Transamerica's motion to strike.

## INTRODUCTION

Transamerica's Motion is filled with unsupported allegations, mischaracterizations, and irrelevant ad hominem attacks on Hall's counsel. Despite the sound and fury of the Motion, this Court should not be distracted from the actual issues. This case is about Transamerica rewriting, out of the blue, Hall's then twelve-year-old supplemental cancer policy ("Policy"). Transamerica would like nothing better than to turn this case into a squabble over semantics and Medicare law, and to ignore its own admissions and decades-long interpretation of actual charges, which firmly support Hall's position. Hall detailed those admissions and interpretation in his Reply. *See generally* Plaintiff's Reply Memorandum In Support of Plaintiff's Cross-Motion For Partial Summary Judgment And In Opposition To Transamerica's Motion for Summary Judgment

("Reply"). Misdirection and amnesia are exactly what Transamerica's Motion to Strike is designed to promote.[1]

Transamerica, in direct negation of its former purpose when originally marketing the supplemental cancer policies it drafted and sold, now desires that its contractual obligations under those Policies should be limited by reference to third-party contracts between medical care providers and Medicare or private insurers. See Motion, pp. 2-3 ("... plaintiff contends he should be paid more than his own doctors are permitted to charge and more than they in fact received and accepted as payment in full."). As Hall has shown in his previous pleadings, under supplemental cancer policies, "'the insurance company pays cash benefits directly to the insured when an insured patient undergoes covered cancer treatment, regardless of whether the insured's

---

[1]As part of this misdirection, Transamerica claims that Hall's statement of facts in support of his Cross-Motion for Partial Summary Judgment ignored Transamerica's statement of facts, and thus that Transamerica's facts, including the facts set forth in the Holdiness Declaration, were deemed admitted. Motion, p. 9, fn. 14, p. 12.

Hall's statement of facts, both standing alone and also when read in conjunction with the new documentary evidence filed with Hall's Reply, clearly controverts Transamerica's statement of facts, and establishes, not that summary judgment for Transamerica is proper, but that there is no issue of material fact and therefore summary judgment should be entered in favor of Hall. See Hall Statement of Facts, Doc. 107; Transamerica Statement of Facts, Doc. 78. When Hall's statement of facts was drafted, Hall did not have the evidence of Transamerica's admissions that "actual charges" does not refer to the lower amounts accepted by providers in full payment which he filed with his Reply. As a case cited by Transamerica in its Motion has held, "when a material fact is not agreed upon and the moving party puts forth evidence to support his contention with respect to it, the non-moving party is obliged to respond with contrary evidence if any he has." *Duvall v. City of Rogers, Ark.*, 2005 WL 3784932, at *1 (W.D. Ark. Dec. 20, 2005); see Motion , p. 9, fn. 14. Hall's statement of facts details the responsive evidence Hall had at the time, and the documentary evidence filed with his Reply is further evidence in opposition to Transamerica's statement of facts. In his statement of facts, Hall did assert that the amount charged for his surgery was $4,166.00. See Hall Statement of Facts, ¶ 15.

In order to put the matter to rest, Hall has filed contemporaneously with this response a motion for leave to file a response to Transamerica's statement of facts in support of its motion for summary judgment, and a substituted statement of facts in support of Hall's Cross-Motion for Partial Summary Judgment.

medical expenses are paid by other insurance.'" *See* Reply, p. 2, quoting *Pedicini v. Life Ins. Co. of Alabama*, 686 F.Supp.2d 692, 694 (W.D.Ky. 2010). Transamerica would like to unilaterally fuse Hall's supplemental cancer policy and the third-party agreements between Hall's provider and Medicare or private insurance companies. *See* Motion, p. 2. Those third-party contracts have nothing to do with Hall's agreement with Defendant Transamerica, and, as Hall argued in his Reply, tying Transamerica Policy benefits to amounts accepted by medical providers under Medicare contracts, when Hall did not even have Medicare at the time he entered into the Policy, would make the Policy void *ab initio* for failure of an essential term. *See* Reply, p. 7-8, fn. 5.

Transamerica claims that Hall has adopted a new position in his Reply[2], however, Hall's position has been consistent throughout this litigation: the actual fee for his surgery was $4,166.00, and the actual charges for the anesthesia were $1,210.00. The fact that Hall became obligated to pay those amounts at the time the services were rendered, as described in the Supplemental Holdiness Declaration, supports Hall's unchanging position.

Transamerica makes various *ad hominem* attacks on Plaintiff's counsel, including implying on the second page of their Motion that Plaintiff's counsel engaged in improper solicitation and that Plaintiff's counsel obtained the Supplemental Declaration of Kathy Holdiness through deception. *See* Motion, p. 2, 7, fn. 11. According to Transamerica, Hall has "coaxed" Ms. Holdiness to sign the supplemental declaration (Motion p. 13), and Management Services Organization's ("MSO") counsel "was under the impression that the [supplemental] declaration was being requested by the same party." Motion, p. 7, fn. 11. Hall is not sure what to make of these unsupported and offensive insinuations that the supplemental declaration was

[2]Motion, p. 6

procured by fraud, except to deny them. These allegations are totally unsupported and unsupportable, and Transamerica is certainly in no position to raise any issues concerning counsel's character. It was the attorneys from Jorden Burt, LLP, Markham R. Leventhal, Julianna Thomas McCabe, and Irma Reboso Solares, counsel in the instant case, whose *pro hac vice* admissions were revoked by Judge G. Ross Anderson in South Carolina, in the case of *Belue v. Aegon USA Inc.*, No. 7:09-CV-3830-GRA, another supplemental cancer policy case pertaining to these same issues. The Jorden Burt attorneys' *pro hac* status was revoked for, *inter alia*, filing inappropriate, dilatory, and groundless motions in bad faith, intentionally failing to comply with the local rules, and arguing conflicting positions in bad faith.[3] *Belue v. Aegon USA Inc.*, No.

---

[3]In the hearing on July 27, 2009, Judge Anderson, referring to Jorden Burt, LLP and/or one or more of the following attorneys: Leventhal, McCabe, and Solares, stated:

> . . . I am revoking their *pro hac vice* status, right now. I don't want to hear another thing from them. (Transcript of July 27, 2009 Hearing in No. 7:09-CV-3830-GRA (relevant excerpts of which are attached as Exhibit A), p. 21).
>
> I permitted those people to come in as a matter of grace, a matter of discretion. And now they have violated it. And I'm not going to let them stay. All they want to do is file papers, file papers, file papers. And then run out of this courtroom, go back to Miami and say, we won another one in a difficult jurisdiction. That's the kind of lawyers they are. I don't want anything to do with them, or anybody of that same ilk. I think they are a disgrace to the profession. (Exhibit A, p. 22).
>
> You're in this Court. You've got to show some facts. . . And there's none here. . . And it is one of those cases where if she doesn't win, you are against her. And she is going to move to have you disqualified. She has that reputation. I've checked on her. (Exhibit A, p. 6-7).
>
> First of all, you don't know what the local rules are – none of you, including your associate counsel. Under the local rules, I can revoke their privilege at my discretion. And I've got numerous grounds to do that. You were given until 9:00 A.M. on July 21 to file your response to the Plaintiff's motion for class certification. At 7:30 A.M. on that day, a motion was filed requesting leave to file pages in excess of the page limit. And I denied it. I mean, they do that. What I call them, they are a law firm who is interested not in seeing justice, but to load the Court down with so much paperwork, they couldn't possibly have time to read it before time. That's

7:08-CV-3830-GRA, 2009 WL 2257607, *1-*3 (D.S.C. July 29, 2009).

Transamerica uses its Motion to reassert its flawed arguments that it has properly paid Hall's benefits under the Policy. However, the language used in the Motion is actually a concession to Hall. Transamerica claims that it "established that plaintiff's benefit payments were based on the **actual charges incurred** for his surgery and related anesthesia." Motion, p. 8 (emphasis added). As Hall has shown numerous times, the Policy pays benefits for surgery based on the "actual fee" and for anesthesia based on "actual charges." Policy, p. 6. The term "incurred" occurs nowhere in those sections.[4] Policy, p. 6. Hall has dismissed the impact of Transamerica's expert declarations, referenced in the Motion on page 8-9 in his Reply, p. 7. The

---

what we've got a local rule for. We also have a local rule to discuss your motions with the other side. . . And she violated that rule. (Exhibit A, p. 9).

This Court takes notice of the fact that they did not discuss any of these motions with the opposing counsel, in violation of Rule 7.02, nor were they asserted in good faith, and seemed to conflict with the doctrine of judicial estoppel. . . And they filed an emergency motion on the 14th to continue class certification hearing to establish a discovery period and a supplemental class certification briefing was not submitted in good faith. (Exhibit A, p. 9-10).

I find that the motion for recusal is inappropriate. Nothing presented in the motion for recusal demonstrates any alleged bias against the defendants. I will not go any further into that settlement, because I am already raising the issue initially, and that was initially, saying that it would not pass the smell test. . . You can come in here shouting, yelling, waving your arms, but you are not going to intimidate this Court. (Exhibit A, p. 11).

You've just got to come in here correct and quit twisting the law to suit yourself. (Exhibit A, p. 12).

Oh, we've got a motion for every hour of the day. . . This is one of those law firms that try to cover you up. (Exhibit A, p. 20).

They did nothing about trying to follow the local rules. I mean, they are just a loose cannon. (Exhibit A, p. 21).

[4]To the extent Transamerica has argued that the single use of the term "incurred" in the insuring clause on the first page of the Policy means that Hall's benefits should be paid based on "actual charges incurred," Hall has already dismissed that argument in his Reply, pp. 9-12.

declaration of James A. Byrne, Transamerica's Director of Claims Analysis, referenced in the Motion on page 9, is an example of the self-serving affidavits Transamerica rails against at other places in the Motion.

## ARGUMENT

### I. The Supplemental Holdiness Declaration was Properly Obtained and Timely Filed to Supplement a Prior Incomplete Declaration.

The Supplemental Holdiness Declaration is merely an expansion of an incomplete, and consequently, misleading declaration previously filed by Transamerica, an expansion which rebuts the arguments made by Transamerica based on its own incomplete and misleading presentation of facts, an expansion which is nothing like new evidence from an entirely new witness. Transamerica chose to obtain testimony from Ms. Holdiness, and Hall, finding that her testimony was incomplete, had a right to supplement it. Hall is not attempting to change prior testimony, contrary to Transamerica's argument at pages 13-16 of its Motion, and as detailed below, the two Declarations are consistent. Hall has obtained a very limited supplement to Transamerica's incomplete, artfully drafted and self-serving declaration.

The district court has broad discretion in permitting supplementation of the summary judgment record, which is reviewed under an abuse-of-discretion standard. *DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 826 (8th Cir. 2009); *see Morgan v. United Parcel Serv. of Am., Inc.*, 380 F.3d 459, 467-68 (8th Cir.2004) (stating that this court "defer[s] to admissibility determinations under an abuse-of-discretion standard of review, even at summary judgment"). Northern District of Arkansas Local Rule 7.2(c) states: "If a motion requires consideration of facts not appearing in the record, the parties may serve and file copies

of all photographs, documents, or other evidence deemed necessary in support of or in opposition to the motion, in addition to affidavits required or permitted under the Federal Rules of Civil Procedure." Here the supplemental Holdiness Declaration is properly filed in support of Hall's Cross-Motion for Partial Summary Judgment and in opposition to Transamerica's Motion for Summary Judgment because it is supplementary, not contradictory, information obtained to augment an incomplete declaration filed by Transamerica.

Though the two declarations are not contradictory, even if they were the supplemental declaration would be appropriate. A subsequent contradictory affidavit is appropriate to clarify or explain aspects of the prior testimony. *See Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000); *see also Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983). Even if the supplemental declaration contradicted the first, it would still be sufficient to create a genuine factual issue to defeat summary judgment. *See Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893-94 (5th Cir. 1980). In the *Kennett-Murray* case, the Fifth Circuit outlined the general rule on affidavits that conflict with earlier testimony:

> In considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *See, e. g., Camerlin v. New York Central R. Co.*, 199 F.2d 698, 701 (1st Cir. 1952); *Adams v. United States*, 392 F.Supp. 1272, 1274 (E.D.Wis.1975). "An opposing party's affidavit should be considered although it differs from or varies his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." 6 Moore's Federal Practice P 56-15(4), p. 56-522 (2d Ed.) (footnote omitted). *See generally Guarantee Insurance Agency Co. v. Mid-Continental Realty Corp.*, 57 F.R.D. 555, 563(D. C.). Thus, a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition. . .
>
> Certainly, every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. *See Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir. 1977) (summary judgment was improper even though party's

> testimony was "not a paradigm of cogency or persuasiveness," since it was not a "transparent sham"), *cert. denied sub. nom. Indiana v. Choudhry*, 434 U.S. 997, 98 S.Ct. 634, 54 L.Ed.2d 491 (1977). In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition.

*Id*. The *Kennett-Murray* court held that even if the prior testimony "was unequivocal", because the affidavit in question did not purport to raise a new matter, but to clarify and explain aspects of the prior testimony, it was sufficient to "create a genuine issue that would preclude summary judgment." *Id.* at 894. So, as a threshold issue, the general rule is that contradictions between an affidavit and prior testimony do not require the district court to disregard the affidavit. In the instant case, however, the declarations are not contradictory, and the supplemental declaration, as its name suggests, clarifies and expands upon aspects of the prior declaration. It is important to note that Kathy Holdiness is ***totally disinterested*** in the case and that these circumstances are nothing like those found in cases where ***parties to the suit*** have attempted to defeat summary judgement by filing ***their own*** affidavits which contradict ***their own*** earlier testimony. Ms. Holdiness has no reason to sign a "sham declaration," as Transamerica suggests her supplemental declaration is, in order to create an issue of material fact. If Transamerica has even a scintilla of evidence that Hall employed either deception or incentives to "coax" Ms. Holdiness to sign the supplemental declaration, let them present it plainly to the Court, instead of casting aspersions upon Hall with thinly-veiled and wholly groundless insinuations.

Transamerica cites the case of *J.S. & A.S. v. E. End Sch. Dist.*, 2007 WL 1029559 (E.D. Ark. April 3, 2007) to argue that the supplemental declaration is untimely and should not be considered by this Court. Motion, p. 12. The *J.S. & A.S.* court only mentioned in a footnote that several new exhibits were submitted in connection with the reply brief, and that the court had not

considered those in rendering its decision. *Id.* at *1 fn. 2. The court did not offer any legal of factual analysis, or state a rule that new exhibits filed with a reply should never be considered. Additionally, there is no evidence that any of the new exhibits were in rebuttal to an exhibit used in the non-movant's response, as in the instant case. The *Hartnagel* and *Moody* cases articulate generally the summary judgment standard, but do not address the timeliness of filing a supplemental declaration. *See generally, Hartnagel v. Norman*, 953 F.2d 394 (8th Cir. 1992); *Moody v. St. Charles Cnty.*, 23 F.3d 1410 (8th Cir. 1994). Of course a party responding to a motion for summary judgment must show there is a genuine issue of material fact for trial, however, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The cases cited by Transamerica for their argument that the Supplemental Holdiness Declaration is unfair are either inapplicable to these facts, are from a court with no precedential authority in this court, or both. In the instant case, Hall has supplemented, in a non-contradictory way, the declaration of a totally disinterested witness whose testimony was first solicited by Transamerica. Defendant cites *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) to say that allowing a party to submit contradictory testimony after the close of discovery is improper and prejudicial.

In *Popoalii*, plaintiff's expert witness signed an affidavit contradicting her prior deposition testimony. The first difference between that case and this one is that in *Popoalii*, the testimony was contradictory; the second is that the *Popoalii* testimony was contradicting a deposition, where both the plaintiff and the defendant had a chance to elicit and prove testimony;

and the third is that the witness there was the plaintiff's own expert, not, as here, a totally disinterested person. *Id.* In fact, the *Popoalii* court stated that if the additional affidavit elaborates on information already conveyed, then the district court should consider the affidavit. *Id.* at 498.

In the *Arnold* case, an unreported case from the District of Minnesota, the plaintiff was ordered to produce the declarants of declarations obtained after the deadline, and when the plaintiff failed to do so, the declarations were struck. *Arnold v. Cargill Inc.*, 2004 WL 1853149, at *2 (D. Minn. Aug. 12, 2004) ("Because Plaintiffs failed to produce the 19 declarants as required by the Order, their respective declarations are appropriately stricken from the record."). The *Huggins* case is an unreported case from the Eastern District of Missouri. *Huggins v. Fed. Express Corp.*, 2008 WL 1777438, at *3 (E.D. Mo. April 16, 2008). In the *Ryan* case, judgment was reversed when surprise evidence was revealed at trial; the decision was not in a summary judgment context. *Ryan v. Bd. of Police Cmm'rs of St. Louis*, 96 F.3d 1076, 1084-85 (8th Cir. 1996). Furthermore, in *Ryan* the evidence was in defendants's possession for six months before it was disclosed at trial. *Id.* at 1083.

By contrast, here the supplemental declaration was in Hall's possession for only six days before it was filed with the Reply, and on April 15, 2011 Hall served supplemental answers to Transamerica's interrogatories and request for production, which dealt with the supplemental Holdiness declaration, on Transamerica by United States Mail. The *Greyhound* case is also inapplicable because there the case went all the way to trial before the plaintiff's failure to disclose an answer to an interrogatory came to light. *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 144-45 (8th Cir. 1968). The *Tenbarge* case dealt with a plaintiff's expert who changed his

conclusions at trial to conflict with his earlier deposition testimony. *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999). Unlike any of the foregoing cases relied on by Defendant, Ms. Holdiness is a totally disinterested witness, whose testimony was first solicited by Transamerica. Her supplemental declaration is not inconsistent with her first declaration. Most importantly, this case is at the summary judgment stage, not at trial.

## II. The Supplemental Holdiness Declaration is Factually Accurate, Consistent with Medicare Law, and Consistent with the Previous Holdiness Declaration.

Knowing acceptance of medical services creates an implied contract that obligates the patient to pay for those services. *See Ex parte University of South Alabama*, 737 So.2d 1049, 1053 (Ala. 1999) (reversing and remanding with instructions to enter a judgment as a matter of law in favor of the hospital, where there was no question that the patient knowingly accepted the hospital's services); *see also K.A.L. v. Southern Medical Business Services*, 854 So.2d 106, 107 (Ala. Civ. App. 2003). When Medicare denies coverage for a service, the patient is liable for the debt, and even under amendments to Medicare meant to alleviate the effect of that personal liability for services subsequently determined to be uncovered, "a Medicare recipient can be held personally liable for medical bills incurred before he is indemnified for his payments." *Himmler v. Califano*, 611 F.2d 137, 145 (6th Cir. 1979). Of course, the application of Medicare or private insurance agreements determines the amount that the provider can ***collect*** in payment for services, however, hospitals and other medical providers ***charge*** every patient the same amount across the board for the same services, whether they are uninsured or have Medicare or private health insurance. *See Eufaula Hosp. Corp. v. Lawrence*, 32 So. 3d 30, 36 (Ala. 2009) (". . . [the plaintiff's health economist expert] testified that. . . [a]ll three [Medicare, Medicaid, and Blue

Cross]-along with self-pay or uninsured patients-are charged the chargemaster rate, but they actually pay lesser amounts."); *University of Southern Alabama Hospitals v. Blackmon*, 42 So.3d 1258, 1260 (Ala. Civ. App. 2009) ("To rebut the hospital's assertion that its charges were reasonable, the Robertses elicited testimony that the hospital accepted less than the full amount charged to patients who were insured by commercial health-insurance carriers such as Blue Cross/Blue Shield and government payors such as Medicare and Medicaid."), *reh'g denied* (Jan. 29, 2010); *Roberts v. Univ. of Alabama Hosp.*, 27 So. 3d 512, 515 (Ala. Civ. App. 2008) ("[The director] testified that he set prices on a schedule known as a Charge Master, which is a price list for services rendered by the hospital to inpatients. It is an industry standard to work from the said Charge Master. [The manager] testified that regardless of the means or methods of payment from the patient, the price list is applied uniformly across the board to all patients in order to establish the cost of services rendered."). Thus, in at least three Alabama cases regarding whether the Charge Master amounts were reasonable charges for hospital services, the hospital itself presented testimony that all patients, whether they have Medicare, private insurance, or no insurance, are charged the Charge Master prices for medical services. The fact that Ms. Holdiness's supplemental declaration is consistent with the testimony of an expert health economist and another hospital billing manager prove that it is anything but an "untrustworthy manipulation," as Transamerica contends it is. Motion, p. 15.

The *Metz* case, an unreported opinion from the Southern District of New York, cited by Transamerica to undermine the supplemental declaration, deals with a totally different type of supplemental policy, and in fact references the type of supplemental policy at issue in this case. *Metz v. U.S. Life Ins. Co.*, 2010 WL 3703810, *3 (S.D.N.Y. Sept. 21, 2010). The *Metz*

supplemental policy dealt only with major medical, and "only reimburses for out-of-pocket expenses actually paid for medical services." *Id.* at *3. The *Metz* court noted: "Certainly, supplemental insurance plans do exist that pay an insured party cash benefits, regardless of payment by other insurance plans, essentially providing a claimant with double recovery." *Id.* Furthermore, the *Metz* plaintiff never alleged that she ever actually faced liability for the list price amount, unlike Hall. *See id.*; Hall Statement of Facts, Doc. 107, ¶ 15; Supplemental Declaration of Kathy Holdiness, ¶ 8.

The two declarations of Kathy Holdiness are wholly consistent, despite Transamerica's assertions to the contrary. *See* Motion, pp. 13-16. Transamerica's Holdiness Declaration may be technically "true," but it does not tell the whole truth. The major difference between the declarations is that Transamerica's addresses the time period after Medicare has been billed for a covered service, and Hall's deals with the time period after the service is rendered but before any coverage determinations are made under Medicare or a third-party insurer. Transamerica's repetitive assertions that no one has ever had to pay the maximum rates misses the real issue and ignores the purpose of supplemental insurance. As the cases cited above show, at the time medical services are rendered, the patient becomes liable for the full amount of those services. These cases are consistent with the Supplemental Holdiness Declaration. At that point, Medicare has not been billed for the service, and any agreements the provider has with Medicare to accept lower amounts for services have not become effective with regard to the treatment. Patients, even Medicare patients, thus are obligated to pay the maximum rates at the time of service, even if they do not end up paying those rates, or any amount, due to the action of separate agreements between the provider and Medicare or the insurer. Holdiness's statements that (1) "Upon

performance of the surgery, Mr. Hall became contractually obligated to pay the amount of $4,166.00," (Supplemental Holdiness Declaration, ¶ 8), and (2) "Because Mr. Hall was also covered by Medicare, Management Services Organization was not permitted to bill either Mr. Hall or UnitedHealthcare for any amounts greater than Mr. Hall's portion of the Medicare Allowance" (Holdiness Declaration, ¶ 7), and (3) "When a Medicare insured receives services or treatments, the total amount that Management Services Organization can collect from Medicare and the Medicare insured for covered services to the Medicare insured cannot exceed the Medicare Allowance..." (Holdiness Declaration, ¶ 10) are all true. These statements describe two different points in the process of physician accounting and billing. Transamerica would like to ignore the uncontroverted fact that for decades they paid actual charges benefits according to the physician-patient contractually incurred amounts, not according to arbitrary and constantly changing amounts later accepted by providers under contracts with Medicare or third-party insurers. The amounts Transamerica would now like to pay as benefits its insureds have no nexus whatsoever to the actual contract it drafted. Transamerica has simply unilaterally rewritten that contract more to its liking.

The fact that there is a disparity between the amounts charged by providers and the amounts accepted by them as full payment does not alter Transamerica's obligations under the Policy. Hall established in his Reply, pp. 2-4, that as early as 1997 Transamerica knew that there was such a disparity, and admitted that actual charges benefits should not be paid according to any reduced amount eventually accepted as full payment. That admission directly contradicts Transamerica's position in this case. The Supplemental Holdiness Declaration is trustworthy and

properly supplements the incomplete previous declaration.[5]

**CONCLUSION**

Defendant has seized this opportunity to make its own contractual obligations determined by reference to whatever amount a medical provider is permitted to receive as payment under Medicare. This bit of alchemy fits nicely into their story of the case. Lead does not transmute into gold no matter how desperately the alchemist would like it to. As Plaintiff Hall has made abundantly clear in his previous filings, including the Reply, this Court need not consider any evidence other than the Policy and the EOBs from United Healthcare which show the "Amount Charged" to be the amount Hall became obligated to pay at the time of his treatment, which Ms. Holdiness in her supplemental declaration identifies as the *actual charge* for the surgery and anesthesia. Third party discounts arising after this point of obligation for Mr. Hall are simply irrelevant and meaningless as to performance of the unrelated contract between Mr. Hall and Defendant, who are the only parties to this action. The supplemental declaration of Kathy Holdiness, as shown above, is consistent with her previous declaration as well as with case law and testimony of hospital billing practices in other cases, and was properly obtained and filed to augment the incomplete declaration filed by Transamerica. Transamerica's motion to strike the

[5]The cases cited by Transamerica to argue that the supplemental declaration is untrustworthy and should be stricken all pertain to parties to the case, or their experts, changing their testimony. *See Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108 (8th Cir. 1997); *Nickerson v. Allied Mut. Ins. Co.*, 1999 WL 980933 (8th Cir. Oct. 28, 1999); *Gander Mountain Co. v. Cabela's Inc.*, 540 F.3d 827 (8th Cir. 2008). By contrast, Holdiness is not a party to a case, nor a party's expert, and she has not changed her testimony but supplemented it to make it more complete and truthful. Even if the supplemental declaration was inconsistent with the first declaration, and its described billing practices conflicted with Medicare law, the supplemental declaration would only be considered more reliable than the first declaration, since it would have been against the interests of the declarant.

supplemental declaration should be denied.

Respectfully submitted this 22nd day of April, 2011.

/s/ Paul S. Rothstein

Paul S. Rothstein
Attorney for Plaintiffs
Florida Bar No.: 310123
626 N. E. First Street
Gainesville, Florida 32601
Phone: (352) 376-7650
Fax: (352) 374-7133
psr@rothsteinforjustice.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of April, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. John K. Baker
Mitchell, Williams, Selig,
Gates & Woodyard, PLLC.
425 West Capitol Ave., Suite 1800
Little Rock, Arkansas 72201

Mr. Markham R. Leventhal
Jorden Burt LLP
777 Brickell Ave., Suite 500
Miami, Florida 33131

/s/ Paul S. Rothstein
Paul S. Rothstein