**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**ROBERT W. HALL**                                                                             **PLAINTIFF**

v.                               **Case No. 4:11-cv-00086-JLH**

**EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.**                                                   **DEFENDANTS**

TRANSAMERICA LIFE INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION TO STRIKE THE
"SUPPLEMENTAL DECLARATION OF KATHY HOLDINESS"

Defendant Transamerica Life Insurance Company ("Transamerica") submits this memorandum in further support of its "Motion to Strike the 'Supplemental Declaration of Kathy Holdiness'" (Docket #133) (the "Motion") and supporting Memorandum of Law (Docket #134) (the "Memorandum"),[1] and in reply to "Plaintiff's Response in Opposition to Defendant Transamerica Life Insurance Company's Motion to Strike the Supplemental Declaration of Kathy Holdiness" (Docket #137) (the "Response").

As set forth in the Motion to Strike, the Second Holdiness Declaration (Docket #129-2) was untimely, and was obtained and filed in violation of the Court's deadlines, the discovery rules, and the summary judgment rules. It contains demonstrably false statements which contradict prior sworn testimony, and it was designed solely to create a "sham" issue of fact in opposition to a fully briefed summary judgment motion. Under well-settled Eighth Circuit law, "parties to a motion for summary judgment cannot create sham issues of fact in an effort to

---

[1] The Motion and Memorandum are collectively referenced herein as the "Motion to Strike."

defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)). Accordingly, the Second Holdiness Declaration should be stricken.

## REPLY

**I. PLAINTIFF'S RESPONSE TO THE MOTION TO STRIKE PROVIDES NO LEGITIMATE JUSTIFICATION FOR PLAINTIFF'S UNTIMELINESS IN OBTAINING OR FILING THE SECOND HOLDINESS DECLARATION**

Transamerica's Motion to Strike established conclusively that plaintiff was aware of Ms. Holdiness as a witness and had been provided with a copy of Ms. Holdiness's sworn testimony three months before the expiration of the December 16, 2010 discovery deadline in this case. *See, e.g.*, Memorandum at 2. Plaintiff made no attempt to depose Ms. Holdiness or seek any discovery from her or anyone else at Rush Health Systems, Inc., the billing company for Management Services Organization, within the discovery period set by the Court's schedule, or by any of the methods of discovery permitted or contemplated under the Federal Rules of Civil Procedure. After Transamerica filed the first Holdiness Declaration along with other material evidence in support of its Motion for Summary Judgment, plaintiff chose to ignore Ms. Holdiness's testimony in his Response to Transamerica's Summary Judgment Motion (Docket #106) *and* in his own Cross-Motion (Docket #105).

It is well-settled that a party opposing summary judgment must substantiate his allegations with "sufficient probative evidence." *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (affirming summary judgment where responding party failed to "substantiate his allegations with 'sufficient probative evidence'") (citation omitted). When plaintiff failed to respond or even dispute the allegations in the Holdiness Declaration, the material facts therein were "deemed admitted." *See* Memorandum at 12, n.17 (quoting Local Rule 56.1(c)). Plaintiff did not seek or obtain the Second Holdiness Declaration until after briefing had closed on

2

Transamerica's Summary Judgment Motion.[2]

In his Response, plaintiff offers no excuse or justification for his decision to stand on the sidelines for thirteen months and engage in no discovery. Plaintiff simply argues in conclusory fashion that the Second Holdiness Declaration is timely because he "had a right to supplement it." Response at 6. Plaintiff fails entirely to address the timing of his alleged supplementation, which resulted in prejudice by preventing Transamerica from testing the reliability and trustworthiness of the Second Holdiness Declaration during the discovery process, and which resulted in a filing after all of Transamerica's scheduled opportunities for briefing on summary judgment had passed.[3]

Plaintiff's response that he disclosed the Second Holdiness Declaration *when* he filed it three months after the close of discovery misses the point. Plaintiff's effort to obtain and use new sources of evidence that he never previously identified, which were readily available to him well within the discovery deadline, is improper.[4] Plaintiff's position ignores the language and

---

[2] Briefing with respect to Transamerica's Motion for Summary Judgment closed on March 11, 2011. *See* Transamerica Life Insurance Company's Reply Memorandum in Support of its Motion for Summary Judgment and Response in Opposition to Plaintiff's Cross-Motion (Docket #121).

[3] Transamerica produced a copy of the first Holdiness Declaration and related documents to plaintiff's counsel on September 3, 2010, more than three months before the December 16, 2010 discovery deadline. Memorandum at 2. If plaintiff thought the Holdiness Declaration was at all "misleading" or "incomplete," as he argues in the Response, he had ample time to depose Ms. Holdiness or obtain and produce a supplemental declaration in compliance with the discovery deadline. Plaintiff, however, elected not to pursue any discovery from Ms. Holdiness and gave no indication that he believed the Holdiness Declaration to be "incomplete" or "misleading" until he ambushed Transamerica with the Second Holdiness Declaration when it was first filed on March 23, 2011.

[4] Plaintiff goes so far as to argue that the Second Holdiness Declaration is not comparable to untimely "evidence" stricken or disregarded in other cases because he retroactively served the Second Holdiness Declaration as an allegedly "supplemental" discovery response on April 15, 2011. Response at 10. This position is nonsensical. The discovery period expired four months

3

purpose of Rule 56, his obligations under the discovery rules, and the Court's own schedule. Plaintiff gave no notice of any intent to subpoena Ms. Holdiness or that he intended to seek her testimony. Plaintiff's strategy to obtain the Second Holdiness Declaration after the discovery deadline and after briefing on Transamerica's Motion for Summary Judgment had closed is inexcusable and improper. *See J.S. & A.S. v. E. End Sch. Dist.*, 2007 WL 1029559, at *1 n.2 (E.D. Ark. April 3, 2007) (refusing to consider summary judgment exhibits submitted for the first time on reply); *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) (striking affidavit filed in response to summary judgment motion after the close of discovery); *Huggins v. Fed. Express Corp.*, 2008 WL 1777438, at *3 (E.D. Mo. April 16, 2008) (granting summary judgment and precluding plaintiff from taking "unfair advantage" with late testimony, where the plaintiff "opted against timely interviewing, deposing, and/or securing the affidavit").[5]

In sum, plaintiff has offered no justification for his dilatory and highly prejudicial conduct in obtaining and filing a contradictory and untrustworthy declaration well after all

---

earlier, in December 2010, and plaintiff's service of the Second Holdiness Declaration nearly a month after he belatedly filed the document does not cure its untimeliness.

[5] Plaintiff's attempts to distinguish these cases are unavailing. Plaintiff argues that *Popoalii* is different because it addresses an affidavit that contradicted prior deposition testimony, where both parties had an opportunity to depose the witness. Response at 9. Plaintiff's argument ignores that the reason the affidavit was stricken in *Popoalii* is the same reason the Second Holdiness Declaration should be stricken here. The court in *Popoalii* struck the affidavit because "the defendants had no opportunity to depose" the witness, plaintiff's expert, on his "*new* opinions before the close of discovery." *Popoalii*, 512 F.3d at 498 (emphasis added). Plaintiff also observes that the witness whose testimony was stricken in *Popoalii* was the plaintiff's expert, and not a "disinterested" witness. Response at 9-10. Plaintiff, however, fails to explain the relevance of any such distinction. Indeed, it is always improper to submit an untimely declaration from a witness which unjustifiably contradicts the witness's prior testimony. Finally, plaintiff complains that the *Huggins* opinion "is an unreported case from the Eastern District of Missouri" (Response at 10), ignoring that the Eighth Circuit *affirmed* the district court's decision in *Huggins* to preclude plaintiff from using an affidavit that was of "potential significance" where the plaintiff failed to obtain the affidavit until after the discovery and dispositive motions deadlines. *Huggins v. FedEx Ground Packaging Sys., Inc.*, 592 F.3d 853, 856 (8th Cir. 2010).

relevant deadlines had passed. The Second Holdiness Declaration should be stricken.[6]

## II. THE COURT SHOULD STRIKE THE SECOND HOLDINESS DECLARATION BECAUSE IT IS DEMONSTRABLY FALSE AND WAS FILED TO CREATE A "SHAM ISSUE OF FACT"

Contrary to plaintiff's position that the Second Holdiness Declaration is merely "supplemental," Transamerica's Motion established that the Second Holdiness Declaration is materially different than and cannot be reconciled with Ms. Holdiness's original, sworn testimony provided in this case many months ago. *See generally* Memorandum at 11-16. In response, plaintiff argues that the first Holdiness Declaration was "incomplete" and "misleading," and that the Second Holdiness Declaration is merely an "expansion" of Ms. Holdiness's testimony which is not "new evidence." Response at 6. Alternatively, plaintiff argues that the Second Holdiness Declaration, to the extent it contradicts the first, is "still sufficient to create a genuine factual issue to defeat summary judgment." *Id*. at 7. In making these arguments, plaintiff misreads the testimony of Ms. Holdiness as well as Eighth Circuit authorities demonstrating that the Second Holdiness Declaration is improper and cannot be used to create a fact issue on summary judgment.

### A. Plaintiff Cannot Avoid Summary Judgment By Manufacturing A "Sham" Issue Of Fact Through The Second Holdiness Declaration

---

[6] Plaintiff's Response seeks to impugn Transamerica and its counsel by referencing an order entered nearly two years ago in *Belue v. AEGON, USA, Inc*., C/A No. 7:08-cv-3830 GRA (D.S.C.). Response at 4-5. This is not the first time plaintiff has raised the *Belue* order to detract from relevant issues pending before the Court. *See* Defendants' Reply Memorandum in Further Support of Their Motion to Deny Class Certification and Eliminate Plaintiff's Class Allegations (Docket #36) at 16, n.13 (discussing plaintiff's reference to the *Belue* Order in response to the motion to deny class certification). The district judge in *Belue* made highly disparaging comments regarding the Arkansas judiciary, and in particular, Judge Susan Webber Wright, after being informed that she had denied class certification in a similar case. *Belue* Docket #72-2. As a result, Transamerica filed a motion to recuse the district court judge, who then revoked the *pro hac vice* status of every out-of-state lawyer who had entered an appearance for the defendants. The *Belue* order cited by plaintiff is irrelevant to the Motion to Strike.

5

Where, as here, a party files a new affidavit which contradicts prior sworn testimony in response to a well-supported summary judgment motion, for the sole purpose of creating a factual issue that would prevent summary judgment, the affidavit is considered an improper sham. The Eighth Circuit "has long held that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)).

The Eighth Circuit first adopted this rule more than two decades ago in *Camfield Tires, Inc.*, when it affirmed summary judgment in favor of the defendant, despite a material conflict between the plaintiff's deposition testimony and a later affidavit that he filed "expressly for the purpose of opposing summary judgment." *Camfield Tires, Inc.*, 719 F.2d at 1365. The Court held that plaintiff's filing of the new affidavit created a "sham issue of fact instead of a genuine one" and did not prevent summary judgment in the defendant's favor. *Id*. A substantial body of Eighth Circuit authority has since developed following *Camfield Tires, Inc.*

In *RSBI Aerospace* for example, in the face of conflicting sworn statements, the Eighth Circuit affirmed the district court's order granting summary judgment to the defendant insurer on an insured's claim for coverage under a commercial fire insurance policy. 49 F.3d at 404. The material issue in *RSBI* was whether, for the purpose of applying a policy exclusion, an individual who intentionally started a fire was employed by the insured company on the date of the fire. The insurer moved for summary judgment based, in part, on the testimony of two company officers that the arsonist was employed on the relevant date. *Id*. at 401. The company responded to the summary judgment motion by filing new affidavits from the same officers, asserting that

the arsonist had been terminated prior to the date of the fire and was merely consulting for the company when he started the fire. *Id*. As the court in *RSBI* explained:

> This circuit has long held that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment. . . . . In this case, RSBI's officers repeatedly represented in sworn statements that [the arsonist] was employed at RSBI on the date of the fire. However, after Affiliated filed its motion for summary judgment, the same officers submitted affidavits which contradicted their earlier testimony. These affidavits do not mention the difference in testimony, nor do they contain statements explaining why the affiants repeatedly took one position before the motion for summary judgment, but another inconsistent position after. Without having any evidence before it of misunderstanding or confusion which would reconcile the inconsistent statements, the district court decided the issue under the principles enunciated in *Camfield Tires*, and correctly determined that the affidavits did not create a genuine issue of material fact.

*Id*. at 402 (citing *Camfield Tires, Inc.*, 719 F.2d at 1361). The *Camfield Tires* rule regarding "sham" issues of fact has been extended to non-party testimony as well, where that testimony has been procured by a party solely to manufacture a sham issue of fact to avoid summary judgment. *See American Airlines, Inc. v. KLM Royal Dutch Airlines*, 114 F.3d 108, 111-12 (8th Cir. 1997) (district court properly disregarded subsequent deposition testimony of expert hired by airline, where expert's new testimony contradicted his previous deposition testimony, and party had "attempted to manufacture a material issue of fact just to evade the impact of summary judgment by inexplicably changing" the expert's testimony).

Similarly, courts have rejected unpersuasive efforts by counsel to explain away a contradictory affidavit by pretending, as plaintiff does here, that it is somehow consistent with prior testimony. *Schiernbeck v. Davis*, 143 F.3d 434, 438 (8th Cir. 1998) (affirming summary judgment in favor of defendant and rejecting plaintiff's argument that statements in her affidavit were "in accord with her earlier deposition testimony," where a "careful review" of plaintiff's

7

deposition demonstrated "that the statements are plainly inconsistent" and the district court "correctly determined that [plaintiff's] affidavit did not create a genuine issue of material fact").

### B. The Second Holdiness Declaration Contradicts The Original Holdiness Declaration And Does Not Address Any Confusion Or Misunderstanding

Under *Camfield Tires, Inc.* and its progeny, the Second Holdiness Declaration should be stricken or disregarded, even if it were timely filed. There is no question that the Second Holdiness Declaration directly contradicts and is irreconcilable with the original Holdiness Declaration. The first Holdiness Declaration was filed with Transamerica's Motion for Summary Judgment. Docket #76-4. In the first Holdiness Declaration, Ms. Holdiness testified unequivocally that "Management Services Organization *did not charge* Mr. Hall for any amount beyond the Medicare Allowance," that Management Services Organization "does not bill *any* Medicare insured more than the Medicare Allowance for any treatments or services provided," that "the total fee to Mr. Hall for this surgery was $1,483.58," and that "Management Services Organization *did not charge its maximum rates to Mr. Hall*." Holdiness Declaration ¶¶ 6, 11- 12 (emphasis added).

The Second Holdiness Declaration was obtained and filed solely to create a factual issue that would preclude summary judgment. Contrary to plaintiff's creative attempts to describe the Second Holdiness Declaration as "supplemental," the new testimony in the Second Holdiness Declaration directly conflicts with Ms. Holdiness's earlier, material testimony. For example, the Second Holdiness Declaration states that "Management Services actually charges patients its maximum rates, regardless of whether they have Medicare," and that "Mr. Hall became contractually obligated to pay the maximum rate of $4,166.00" and "the maximum rate for [the anesthesia service] which was $1,210.00." Second Holdiness Declaration ¶¶ 6, 8. These statements cannot be reconciled with Ms. Holdiness's original testimony. The declarations are in

direct conflict and the issues plaintiff has injected, as the court held in *Camfield Tires, Inc.*, are "not genuine." 719 F.2d at 1365; *see also Nickerson v. Allied Mut. Ins. Co.*, 198 F.3d 250, 1999 WL 980933, at *1 (8th Cir. 1999) (holding, where party's affidavit contradicted earlier testimony, "we *must* disregard her affidavit") (emphasis added).

Plaintiff's Response alternatively makes an unconvincing attempt to invoke a narrow exception to the "sham" affidavit rule, by alleging that the Second Holdiness Declaration was necessary to clarify or explain the original testimony. Response at 7-8. Plaintiff relies on a Fifth Circuit case which concluded that a genuine issue can be raised by a party's affidavit that conflicts with prior testimony, if the new affidavit explains confusion in the prior testimony and is, therefore, "not inherently inconsistent." *See Camfield Tires, Inc.*, 719 F.2d at 1364 (quoting, but not following, *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980), and explaining that "the limited facts in *Kennett-Murray* suggested that the party did not file an inconsistent affidavit for the purpose of circumventing Rue 56").

The situation addressed by the Fifth Circuit in *Kennett-Murray* does not apply here. The Holdiness Declaration does not reflect any testimony that was the result of confusion or a misunderstanding. Indeed, Ms. Holdiness was unequivocal in her testimony that "the total fee to Mr. Hall for this surgery was $1,483.58" and that "Management Services Organization *did not charge its maximum rates to Mr. Hall*." Holdiness Declaration ¶ 12 (emphasis added). Moreover, the Second Holdiness Declaration filed by plaintiff in response to Transamerica's Summary Judgment Motion does not even mention the prior declaration. *See RSBI Aerospace, Inc.* 49 F.3d at 402 (disregarding new, conflicting affidavits which did not "reconcile" the previous testimony, "mention the difference in testimony," or "contain statements explaining why the affiants repeatedly took one position before the motion for summary judgment, but another inconsistent position after"); *Hottinger v. Contel of Ark., Inc.*, 65 F.3d 172, 1995 WL

9

492892, at *2 (8th Cir. 1995) (disregarding new, contradictory affidavit because "[c]ontradictory affidavits preclude summary judgment *only* if the prior affidavits reflect confusion on the part of the affiant and the subsequent affidavits *explain why* the earlier affidavits contain conflicting statements") (emphasis added); *Schiernbeck*, 143 F.3d at 438 (rejecting contradictory affidavit where plaintiff "made no explanation" as to why her new statements contradicted earlier testimony and made no attempt to show confusion or misunderstanding).

### C. The Second Holdiness Declaration Is Demonstrably False

Transamerica's Motion to Strike also demonstrated through evidence and legal authority that various statements in the Second Holdiness Declaration are inaccurate and unsupportable. *See* Memorandum at 8-9, 14-15 (summarizing testimony of other witnesses, and collecting legal authorities and regulations). Plaintiff attempts to overcome this substantial evidence, and justify the Second Holdiness Declaration, by alleging that Ms. Holdiness's two declarations address different "time period[s]." Response at 13-14. Plaintiff's theory is unsupportable. The original Holdiness Declaration is not limited to any specific time period, but, consistent with Medicare regulations, demonstrates that Mr. Hall was never billed or charged, and never owed, Dr. Wade's "list" prices or maximum rates. Although plaintiff alleges that the Second Holdiness Declaration is describing a "time period after the service is rendered but before any coverage determinations are made under Medicare" (Response at 13), the declaration contains absolutely no discussion of any "time period" before "coverage determinations."

Moreover, plaintiff's contention that Medicare law permits a provider to "charge" arbitrary "list" prices to a Medicare insured during some "preliminary" time period is baseless and unsupported by any cases plaintiff cites.

> Where Medicare contracts with a medical provider to set fees for a given service, the Medicare beneficiary i*s **never liable*** for the amount forgone by a doctor under that agreement. A doctor who

10

> accepts Medicare assignment "has signed an agreement with Medicare to accept the Medicare-approved amount as full payment for covered services.... They agree to only charge you the Medicare deductible and coinsurance amount and wait for Medicare to pay its share." (Medicare & You, http://www.medicare.gov/Publications/Pubs/pdf/10050.pdf, at p. 47, 375 N.Y.S.2d 229). Given this agreement, it is essentially impossible that Plaintiff would ever face liability for a provider's hypothetical full fee.

*Metz v. U.S. Life Ins. Co.*, 2010 WL 3703810, at *3 (S.D.N.Y. Sept. 21, 2010) (emphasis added); *see also* 42 C.F.R. § 489.20(a) (A Medicare participating provider must "limit its charges to beneficiaries and to other individuals [paying] on their behalf" to the amounts allowed under Medicare); 42 C.F.R. § 489.21(a) (Medicare participating providers must not "charge" a beneficiary for "[s]ervices for which the beneficiary is entitled to have payment made under Medicare.").

Plaintiff does not dispute the *Metz* court's analysis of Medicare law, but rather contends that *Metz* is distinguishable because it "deals with a totally different type of supplemental policy." Response at 12. The type of policy at issue in *Metz*, however, is completely irrelevant to the court's analysis of federal Medicare law. Plaintiff relies on three cases to support his position, none of which include any analysis or conclusion by a court that would support plaintiff's allegation that he was "charged" and contractually liable to pay nearly *three times* the amount allowed by Medicare law. Rather, plaintiff's cases merely summarize inapposite testimony by witnesses about hospital "Charge Master" price lists. *See, e.g.*, Response at 12 (summarizing testimony in various cases about hospitals' "Charge Master" prices). Ms. Holdiness, however, attested that "Management Services Organization abides by Medicare regulations *and does not bill any Medicare insured more than the Medicare Allowance* for any treatments or services provided at Management Services Organization." Holdiness Declaration ¶ 11 (emphasis added). Testimony regarding the billing practices of other hospitals in other cases

11

does not alter the fact that Mr. Hall was *never actually charged*, never incurred an expense, and was never expected to pay Dr. Wade's maximum price of $4,166.00 for the surgery at issue in this case.[7]

Plaintiff's new argument that Mr. Hall was "charged" Management Services Organization's "list price" and was "contractually liable" for that amount at some preliminary stage before Medicare was billed is unsupportable, contrary to Medicare law, and contrary to the original Holdiness Declaration. Accordingly, the Court should grant the Motion to Strike.

## **CONCLUSION**

For the reasons set forth herein and in the Motion to Strike, Transamerica respectfully requests that the Court strike the Second Holdiness Declaration from the record and award Transamerica its reasonable attorney's fees for investigating and preparing the Motion to Strike.

---

[7] Plaintiff also cites two irrelevant cases for the unremarkable proposition that "[k]nowing acceptance of medical services creates an implied contract." Response at 11. In *Ex Parte University of South Alabama*, 737 So.2d 1049, 1052-53 (Ala. 1999), the court found that an insured who "knowingly accepted" services at a hospital where her insurer only covered 80% of the hospital charges was liable for the remaining 20%. In *K.A.L v. Southern Medical Business Services*, 854 So.2d 106, 108 (Ala. Civ. App. 2003), the court held that an inmate was liable for a "reasonable fee" for medically necessary services provided by a hospital despite that the inmate was unconscious upon admission and did not expressly consent to the treatment. Neither case involved any discussion of provider "list" prices or the cost for medical care and billing arrangements of a provider accepting Medicare assignments. These cases do not support plaintiff's allegation that he "owed" $4,166.00 for the surgery at issue in this case. Similarly, *Himmler v. Califano*, 611 F.2d 137 (6th Cir. 1979), is inapposite and does not support plaintiff's contention that he was "contractually liable" to pay Dr. Wade's list prices. *Himmler* addressed the procedures for determining whether post-hospital extended care services are "medically necessary." It was decided more than 30 years ago, long before the development of grossly inflated list prices. *Himmler* includes no discussion of whether a Medicare insured is contractually obligated to pay a medical provider's list prices, but instead merely discusses potential financial liability to an extended care facility after Medicare had declined coverage. Here, it is indisputable that all of plaintiff's claims were covered and paid by Medicare, and that plaintiff was never billed for, never owed, and never paid Dr. Wade's list prices for the Surgery and Anesthesia claims at issue in this lawsuit.

<div style="display: flex;">

<div>

Markham R. Leventhal, Esq.
Farrokh Jhabvala, Esq.
Julianna Thomas McCabe
**JORDEN BURT LLP**
777 Brickell Avenue, Suite 500
Miami, Florida  33131
Telephone:  (305) 371-2600
Facsimile:  (305) 372-9928
ml@jordenusa.com
fj@jordenusa.com
jt@jordenusa.com

</div>

<div>

Respectfully submitted,

*/s/ John K. Baker*
John K. Baker, Esq., Ark. Bar No. 97024
**MITCHELL, WILLIAMS, SELIG,
 GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas  72201
Telephone:  (501) 688-8800
Facsimile:  (501) 918-7850
jbaker@mwlaw.com


*Attorneys for Defendant Transamerica Life Insurance Company*

</div>

</div>

CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL  35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, FL 32601

*Attorneys for Plaintiff*

The undersigned hereby certifies that a true and correct copy of the foregoing was served by First-Class U.S. mail upon the following on this 4th day of May, 2011:

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, FL 32601

*/s/ John K. Baker*
JOHN K. BAKER

# Exhibit A

| | |
|---|---|
| **From:** | McCabe, Julianna Thomas |
| **Sent:** | Tuesday, July 20, 2010 5:32 PM |
| **To:** | 'htomlinson@bellsouth.net'; 'dchandler@msslawfirm.com' |
| **Cc:** | John Baker; Leventhal, Markham; Jhabvala, Farrokh; Mary Lawrence; Dombroski, Elizabeth |
| **Subject:** | Hall v. Equity: Subpoenas to Rush Medical Group, P.A., et al. |
| **Attachments:** | Hall Ltr. 2010-07-20 to K. Bailey re Rush Medical Subpoenas.pdf |

All:

Please see my attached letter to counsel for the various Rush entities cancelling the depositions that were scheduled for tomorrow.

Thank you,

*Julianna Thomas McCabe*
*Jorden Burt LLP*
*777 Brickell Avenue, Suite 500*
*Miami, Florida 33131*
*Main Telephone No. 305-371-2600*
*Direct Telephone No. 305-347-6870*

7/20/2010



# JORDEN BURT

777 BRICKELL AVENUE
SUITE 500
MIAMI, FL 33131-2803
(305) 371-2600
FAX: (305) 372-9928

JULIANNA THOMAS MCCABE
(305) 347-6870
jt@jordenusa.com

1025 THOMAS JEFFERSON STREET, N.W.
SUITE 400 EAST
WASHINGTON, D.C. 20007-5208
(202) 965-8100
FAX: (202) 965-8104

175 POWDER FOREST DRIVE
SUITE 301
SIMSBURY, CT 06089-9658
(860) 392-5000
FAX: (860) 392-5058

July 20, 2010

<u>Via Facsimile and E-Mail</u>

Kacey Guy Bailey, Esq.
Hammack, Barry, Thaggard & May, LLP
505 Constitution Avenue
Meridian, Mississippi 39302-2009

    Re:   *Robert W. Hall v. Equity National Life Ins. Co.*
            Case No. 1:09cv00057 (E.D. Arkansas)

Dear Ms. Bailey:

    This will confirm the cancellation of the depositions of Rush Medical Group, P.A., Rush Medical Group, Inc., Rush Medical Group of Newton, P.A., Rush Medical Foundation, and Rush Health Systems, Inc. that were scheduled to take place tomorrow, June 21, 2010.

    We understand that Rush Health Systems, Inc. will be producing documents responsive to the subpoenas tomorrow via Federal Express.

    Thank you for your cooperation.

                                        Very truly yours,

                                        Julianna Thomas McCabe

JTM/ed
cc:   John K. Baker, Esq.
#187977