# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**


**ROBERT W. HALL**                                                                                   **PLAINTIFF**


**v.**                                  **Case No. 4:11-cv-00086-JLH**


**EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.**                                                                         **DEFENDANTS**


TRANSAMERICA LIFE INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION TO STRIKE THE
"SUPPLEMENTAL DECLARATION OF KATHY HOLDINESS"

Defendant Transamerica Life Insurance Company ("Transamerica") submits this memorandum in further support of its "Motion to Strike the 'Supplemental Declaration of Kathy Holdiness'" (Docket #133) (the "Motion") and supporting Memorandum of Law (Docket #134) (the "Memorandum"),[1] and in reply to "Plaintiff's Response in Opposition to Defendant Transamerica Life Insurance Company's Motion to Strike the Supplemental Declaration of Kathy Holdiness" (Docket #137) (the "Response").

As set forth in the Motion to Strike, the Second Holdiness Declaration (Docket #129-2) was untimely, and was obtained and filed in violation of the Court's deadlines, the discovery rules, and the summary judgment rules.  It contains demonstrably false statements which contradict prior sworn testimony, and it was designed solely to create a "sham" issue of fact in opposition to a fully briefed summary judgment motion.  Under well-settled Eighth Circuit law, "parties to a motion for summary judgment cannot create sham issues of fact in an effort to

---

[1] The Motion and Memorandum are collectively referenced herein as the "Motion to Strike."

defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)). Accordingly, the Second Holdiness Declaration should be stricken.

## REPLY

## I. PLAINTIFF'S RESPONSE TO THE MOTION TO STRIKE PROVIDES NO LEGITIMATE JUSTIFICATION FOR PLAINTIFF'S UNTIMELINESS IN OBTAINING OR FILING THE SECOND HOLDINESS DECLARATION

Transamerica's Motion to Strike established conclusively that plaintiff was aware of Ms. Holdiness as a witness and had been provided with a copy of Ms. Holdiness's sworn testimony three months before the expiration of the December 16, 2010 discovery deadline in this case. *See, e.g.*, Memorandum at 2. Plaintiff made no attempt to depose Ms. Holdiness or seek any discovery from her or anyone else at Rush Health Systems, Inc., the billing company for Management Services Organization, within the discovery period set by the Court's schedule, or by any of the methods of discovery permitted or contemplated under the Federal Rules of Civil Procedure. After Transamerica filed the first Holdiness Declaration along with other material evidence in support of its Motion for Summary Judgment, plaintiff chose to ignore Ms. Holdiness's testimony in his Response to Transamerica's Summary Judgment Motion (Docket #106) *and* in his own Cross-Motion (Docket #105).

It is well-settled that a party opposing summary judgment must substantiate his allegations with "sufficient probative evidence." *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (affirming summary judgment where responding party failed to "substantiate his allegations with 'sufficient probative evidence'") (citation omitted). When plaintiff failed to respond or even dispute the allegations in the Holdiness Declaration, the material facts therein were "deemed admitted." *See* Memorandum at 12, n.17 (quoting Local Rule 56.1(c)). Plaintiff did not seek or obtain the Second Holdiness Declaration until after briefing had closed on

Transamerica's Summary Judgment Motion.[2]

In his Response, plaintiff offers no excuse or justification for his decision to stand on the sidelines for thirteen months and engage in no discovery.  Plaintiff simply argues in conclusory fashion that the Second Holdiness Declaration is timely because he "had a right to supplement it."  Response at 6.  Plaintiff fails entirely to address the timing of his alleged supplementation, which resulted in prejudice by preventing Transamerica from testing the reliability and trustworthiness of the Second Holdiness Declaration during the discovery process, and which resulted in a filing after all of Transamerica's scheduled opportunities for briefing on summary judgment had passed.[3]

Plaintiff's response that he disclosed the Second Holdiness Declaration **when** he filed it three months after the close of discovery misses the point.  Plaintiff's effort to obtain and use new sources of evidence that he never previously identified, which were readily available to him well within the discovery deadline, is improper.[4]  Plaintiff's position ignores the language and

---

[2] Briefing with respect to Transamerica's Motion for Summary Judgment closed on March 11, 2011.  *See* Transamerica Life Insurance Company's Reply Memorandum in Support of its Motion for Summary Judgment and Response in Opposition to Plaintiff's Cross-Motion (Docket #121).

[3] Transamerica produced a copy of the first Holdiness Declaration and related documents to plaintiff's counsel on September 3, 2010, more than three months before the December 16, 2010 discovery deadline.  Memorandum at 2.  If plaintiff thought the Holdiness Declaration was at all "misleading" or "incomplete," as he argues in the Response, he had ample time to depose Ms. Holdiness or obtain and produce a supplemental declaration in compliance with the discovery deadline.  Plaintiff, however, elected not to pursue any discovery from Ms. Holdiness and gave no indication that he believed the Holdiness Declaration to be "incomplete" or "misleading" until he ambushed Transamerica with the Second Holdiness Declaration when it was first filed on March 23, 2011.

[4] Plaintiff goes so far as to argue that the Second Holdiness Declaration is not comparable to untimely "evidence" stricken or disregarded in other cases because he retroactively served the Second Holdiness Declaration as an allegedly "supplemental" discovery response on April 15, 2011.  Response at 10.  This position is nonsensical.  The discovery period expired four months

purpose of Rule 56, his obligations under the discovery rules, and the Court's own schedule. Plaintiff gave no notice of any intent to subpoena Ms. Holdiness or that he intended to seek her testimony. Plaintiff's strategy to obtain the Second Holdiness Declaration after the discovery deadline and after briefing on Transamerica's Motion for Summary Judgment had closed is inexcusable and improper. *See J.S. & A.S. v. E. End Sch. Dist.*, 2007 WL 1029559, at *1 n.2 (E.D. Ark. April 3, 2007) (refusing to consider summary judgment exhibits submitted for the first time on reply); *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) (striking affidavit filed in response to summary judgment motion after the close of discovery); *Huggins v. Fed. Express Corp.*, 2008 WL 1777438, at *3 (E.D. Mo. April 16, 2008) (granting summary judgment and precluding plaintiff from taking "unfair advantage" with late testimony, where the plaintiff "opted against timely interviewing, deposing, and/or securing the affidavit").[5]

In sum, plaintiff has offered no justification for his dilatory and highly prejudicial conduct in obtaining and filing a contradictory and untrustworthy declaration well after all

---

earlier, in December 2010, and plaintiff's service of the Second Holdiness Declaration nearly a month after he belatedly filed the document does not cure its untimeliness.

[5] Plaintiff's attempts to distinguish these cases are unavailing. Plaintiff argues that *Popoalii* is different because it addresses an affidavit that contradicted prior deposition testimony, where both parties had an opportunity to depose the witness. Response at 9. Plaintiff's argument ignores that the reason the affidavit was stricken in *Popoalii* is the same reason the Second Holdiness Declaration should be stricken here. The court in *Popoalii* struck the affidavit because "the defendants had no opportunity to depose" the witness, plaintiff's expert, on his "*new* opinions before the close of discovery." *Popoalii*, 512 F.3d at 498 (emphasis added). Plaintiff also observes that the witness whose testimony was stricken in *Popoalii* was the plaintiff's expert, and not a "disinterested" witness. Response at 9-10. Plaintiff, however, fails to explain the relevance of any such distinction. Indeed, it is always improper to submit an untimely declaration from a witness which unjustifiably contradicts the witness's prior testimony. Finally, plaintiff complains that the *Huggins* opinion "is an unreported case from the Eastern District of Missouri" (Response at 10), ignoring that the Eighth Circuit *affirmed* the district court's decision in *Huggins* to preclude plaintiff from using an affidavit that was of "potential significance" where the plaintiff failed to obtain the affidavit until after the discovery and dispositive motions deadlines. *Huggins v. FedEx Ground Packaging Sys., Inc.*, 592 F.3d 853, 856 (8th Cir. 2010).

relevant deadlines had passed.  The Second Holdiness Declaration should be stricken.

II.    **THE COURT SHOULD STRIKE THE SECOND HOLDINESS DECLARATION BECAUSE IT IS DEMONSTRABLY FALSE AND WAS FILED TO CREATE A "SHAM ISSUE OF FACT"**

Contrary to plaintiff's position that the Second Holdiness Declaration is merely "supplemental," Transamerica's Motion established that the Second Holdiness Declaration is materially different than and cannot be reconciled with Ms. Holdiness's original, sworn testimony provided in this case many months ago.  *See generally* Memorandum at 11-16.  In response, plaintiff argues that the first Holdiness Declaration was "incomplete" and "misleading," and that the Second Holdiness Declaration is merely an "expansion" of Ms. Holdiness's testimony which is not "new evidence."  Response at 6.  Alternatively, plaintiff argues that the Second Holdiness Declaration, to the extent it contradicts the first, is "still sufficient to create a genuine factual issue to defeat summary judgment."  *Id.* at 7.  In making these arguments, plaintiff misreads the testimony of Ms. Holdiness as well as Eighth Circuit authorities demonstrating that the Second Holdiness Declaration is improper and cannot be used to create a fact issue on summary judgment.

A.    **Plaintiff Cannot Avoid Summary Judgment By Manufacturing A "Sham" Issue Of Fact Through The Second Holdiness Declaration**

Where, as here, a party files a new affidavit which contradicts prior sworn testimony in response to a well-supported summary judgment motion, for the sole purpose of creating a factual issue that would prevent summary judgment, the affidavit is considered an improper sham.  The Eighth Circuit "has long held that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)).

The Eighth Circuit first adopted this rule more than two decades ago in *Camfield Tires, Inc.*, when it affirmed summary judgment in favor of the defendant, despite a material conflict between the plaintiff's deposition testimony and a later affidavit that he filed "expressly for the purpose of opposing summary judgment." *Camfield Tires, Inc.*, 719 F.2d at 1365.  The Court held that plaintiff's filing of the new affidavit created a "sham issue of fact instead of a genuine one" and did not prevent summary judgment in the defendant's favor.  *Id*.  A substantial body of Eighth Circuit authority has since developed following *Camfield Tires, Inc.*

In *RSBI Aerospace* for example, in the face of conflicting sworn statements, the Eighth Circuit affirmed the district court's order granting summary judgment to the defendant insurer on an insured's claim for coverage under a commercial fire insurance policy.  49 F.3d at 404.  The material issue in *RSBI* was whether, for the purpose of applying a policy exclusion, an individual who intentionally started a fire was employed by the insured company on the date of the fire. The insurer moved for summary judgment based, in part, on the testimony of two company officers that the arsonist was employed on the relevant date.  *Id*. at 401.  The company responded to the summary judgment motion by filing new affidavits from the same officers, asserting that the arsonist had been terminated prior to the date of the fire and was merely consulting for the company when he started the fire.  *Id*.   As the court in *RSBI* explained:

> This circuit has long held that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment. . . . .  In this case, RSBI's officers repeatedly represented in sworn statements that [the arsonist] was employed at RSBI on the date of the fire.  However, after Affiliated filed its motion for summary judgment, the same officers submitted affidavits which contradicted their earlier testimony.  These affidavits do not mention the difference in testimony, nor do they contain statements explaining why the affiants repeatedly took one position before the motion for summary judgment, but another inconsistent position after.  Without having any evidence before it of misunderstanding or confusion which would reconcile the inconsistent statements, the district court decided the issue under

7

the principles enunciated in *Camfield Tires*, and correctly
determined that the affidavits did not create a genuine issue of
material fact.

*Id*. at 402 (citing *Camfield Tires, Inc.*, 719 F.2d at 1361).  The *Camfield Tires* rule regarding

"sham" issues of fact has been extended to non-party testimony as well, where that testimony has

been procured by a party solely to manufacture a sham issue of fact to avoid summary judgment.

*See American Airlines, Inc. v. KLM Royal Dutch Airlines*, 114 F.3d 108, 111-12 (8th Cir. 1997)

(district court properly disregarded subsequent deposition testimony of expert hired by airline,

where expert's new testimony contradicted his previous deposition testimony, and party had

"attempted to manufacture a material issue of fact just to evade the impact of summary judgment

by inexplicably changing" the expert's testimony).

Similarly, courts have rejected unpersuasive efforts by counsel to explain away a

contradictory affidavit by pretending, as plaintiff does here, that it is somehow consistent with

prior testimony.  *Schiernbeck v. Davis*, 143 F.3d 434, 438 (8th Cir. 1998) (affirming summary

judgment in favor of defendant and rejecting plaintiff's argument that statements in her affidavit

were "in accord with her earlier deposition testimony," where a "careful review" of plaintiff's

deposition demonstrated "that the statements are plainly inconsistent" and the district court

"correctly determined that [plaintiff's] affidavit did not create a genuine issue of material fact").

### B.   The Second Holdiness Declaration Contradicts The Original Holdiness Declaration And Does Not Address Any Confusion Or Misunderstanding

Under *Camfield Tires, Inc.* and its progeny, the Second Holdiness Declaration should be

stricken or disregarded, even if it were timely filed.  There is no question that the Second

Holdiness Declaration directly contradicts and is irreconcilable with the original Holdiness

Declaration.  The first Holdiness Declaration was filed with Transamerica's Motion for

Summary Judgment.  Docket #76-4.  In the first Holdiness Declaration, Ms. Holdiness testified

unequivocally that "Management Services Organization *did not charge* Mr. Hall for any amount beyond the Medicare Allowance," that Management Services Organization "does not bill *any* Medicare insured more than the Medicare Allowance for any treatments or services provided," that "the total fee to Mr. Hall for this surgery was $1,483.58," and that "Management Services Organization *did not charge its maximum rates to Mr. Hall*."  Holdiness Declaration ¶¶ 6, 11- 12 (emphasis added).

The Second Holdiness Declaration was obtained and filed solely to create a factual issue that would preclude summary judgment.  Contrary to plaintiff's creative attempts to describe the Second Holdiness Declaration as "supplemental," the new testimony in the Second Holdiness Declaration directly conflicts with Ms. Holdiness's earlier, material testimony.  For example, the Second Holdiness Declaration states that "Management Services actually charges patients its maximum rates, regardless of whether they have Medicare," and that "Mr. Hall became contractually obligated to pay the maximum rate of $4,166.00" and "the maximum rate for [the anesthesia service] which was $1,210.00."  Second Holdiness Declaration ¶¶ 6, 8.  These statements cannot be reconciled with Ms. Holdiness's original testimony.  The declarations are in direct conflict and the issues plaintiff has injected, as the court held in *Camfield Tires, Inc.*, are "not genuine."  719 F.2d at 1365; *see also Nickerson v. Allied Mut. Ins. Co.*, 198 F.3d 250, 1999 WL 980933, at *1 (8th Cir. 1999) (holding, where party's affidavit contradicted earlier testimony, "we *must* disregard her affidavit") (emphasis added).

Plaintiff's Response alternatively makes an unconvincing attempt to invoke a narrow exception to the "sham" affidavit rule, by alleging that the Second Holdiness Declaration was necessary to clarify or explain the original testimony.  Response at 7-8.  Plaintiff relies on a Fifth Circuit case which concluded that a genuine issue can be raised by a party's affidavit that conflicts with prior testimony, if the new affidavit explains confusion in the prior testimony and

is, therefore, "not inherently inconsistent." *See Camfield Tires, Inc.*, 719 F.2d at 1364 (quoting, but not following, *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980), and explaining that "the limited facts in *Kennett-Murray* suggested that the party did not file an inconsistent affidavit for the purpose of circumventing Rue 56").

The situation addressed by the Fifth Circuit in *Kennett-Murray* does not apply here.  The Holdiness Declaration does not reflect any testimony that was the result of confusion or a misunderstanding.  Indeed, Ms. Holdiness was unequivocal in her testimony that "the total fee to Mr. Hall for this surgery was $1,483.58" and that "Management Services Organization *did not charge its maximum rates to Mr. Hall*."   Holdiness Declaration ¶ 12 (emphasis added). Moreover, the Second Holdiness Declaration filed by plaintiff in response to Transamerica's Summary Judgment Motion does not even mention the prior declaration.  *See RSBI Aerospace, Inc.* 49 F.3d at 402 (disregarding new, conflicting affidavits which did not "reconcile" the previous testimony, "mention the difference in testimony," or "contain statements explaining why the affiants repeatedly took one position before the motion for summary judgment, but another inconsistent position after"); *Hottinger v. Contel of Ark., Inc.*, 65 F.3d 172, 1995 WL 492892, at *2 (8th Cir. 1995) (disregarding new, contradictory affidavit because "[c]ontradictory affidavits preclude summary judgment *only* if the prior affidavits reflect confusion on the part of the affiant and the subsequent affidavits *explain why* the earlier affidavits contain conflicting statements") (emphasis added); *Schiernbeck*, 143 F.3d at 438 (rejecting contradictory affidavit where plaintiff "made no explanation" as to why her new statements contradicted earlier testimony and made no attempt to show confusion or misunderstanding).

### C.    The Second Holdiness Declaration Is Demonstrably False

Transamerica's Motion to Strike also demonstrated through evidence and legal authority that various statements in the Second Holdiness Declaration are inaccurate and unsupportable.

*See* Memorandum at 8-9, 14-15 (summarizing testimony of other witnesses, and collecting legal authorities and regulations).  Plaintiff attempts to overcome this substantial evidence, and justify the Second Holdiness Declaration, by alleging that Ms. Holdiness's two declarations address different "time period[s]."  Response at 13-14.  Plaintiff's theory is unsupportable.  The original Holdiness Declaration is not limited to any specific time period, but, consistent with Medicare regulations, demonstrates that Mr. Hall was never billed or charged, and never owed, Dr. Wade's "list" prices.  Although plaintiff alleges that the Second Holdiness Declaration is describing a "time period after the service is rendered but before any coverage determinations are made under Medicare" (Response at 13), the declaration contains absolutely no discussion of any "time period" before "coverage determinations."

Moreover, plaintiff's contention that Medicare law permits a provider to "charge" arbitrary "list" prices to a Medicare insured during some "preliminary" time period is baseless and unsupported by any cases plaintiff cites.

> Where Medicare contracts with a medical provider to set fees for a given service, the Medicare beneficiary i*s **never liable*** for the amount forgone by a doctor under that agreement.  A doctor who accepts Medicare assignment "has signed an agreement with Medicare to accept the Medicare-approved amount as full payment for covered services.... They agree to only charge you the Medicare deductible and coinsurance amount and wait for Medicare to pay its share."  (Medicare & You, http://www.medicare.gov/ Publications/Pubs/pdf/10050.pdf, at p. 47, 375 N.Y.S.2d 229).  Given this agreement, it is essentially impossible that Plaintiff would ever face liability for a provider's hypothetical full fee.

*Metz v. U.S. Life Ins. Co.*, 2010 WL 3703810, at *3 (S.D.N.Y. Sept. 21, 2010) (emphasis added); *see also* 42 C.F.R. § 489.20(a) (A Medicare participating provider must "limit its charges to beneficiaries and to other individuals [paying] on their behalf" to the amounts allowed under Medicare); 42 C.F.R. § 489.21(a) (Medicare participating providers must not "charge" a beneficiary for "[s]ervices for which the beneficiary is entitled to have payment made under

Medicare.").

Plaintiff does not dispute the *Metz* court's analysis of Medicare law, but rather contends that *Metz* is distinguishable because it "deals with a totally different type of supplemental policy." Response at 12. The type of policy at issue in *Metz*, however, is completely irrelevant to the court's analysis of federal Medicare law. Plaintiff relies on three cases to support his position, none of which include any analysis or conclusion by a court that would support plaintiff's allegation that he was "charged" and contractually liable to pay nearly *three times* the amount allowed by Medicare law. Rather, plaintiff's cases merely summarize inapposite testimony by witnesses about hospital "Charge Master" price lists. *See, e.g.*, Response at 12 (summarizing testimony in various cases about hospitals' "Charge Master" prices). Ms. Holdiness, however, attested that "Management Services Organization abides by Medicare regulations *and does not bill any Medicare insured more than the Medicare Allowance* for any treatments or services provided at Management Services Organization." Holdiness Declaration ¶ 11 (emphasis added). Testimony regarding the billing practices of other hospitals in other cases does not alter the fact that Mr. Hall was *never actually charged*, never incurred an expense, and was never expected to pay Dr. Wade's list price of $4,166.00 for the surgery at issue in this case.[6]

---

[6] Plaintiff also cites two irrelevant cases for the unremarkable proposition that "[k]nowing acceptance of medical services creates an implied contract." Response at 11. In *Ex Parte University of South Alabama*, 737 So.2d 1049, 1052-53 (Ala. 1999), the court found that an insured who "knowingly accepted" services at a hospital where her insurer only covered 80% of the hospital charges was liable for the remaining 20%. In *K.A.L v. Southern Medical Business Services*, 854 So.2d 106, 108 (Ala. Civ. App. 2003), the court held that an inmate was liable for a "reasonable fee" for medically necessary services provided by a hospital despite that the inmate was unconscious upon admission and did not expressly consent to the treatment. Neither case involved any discussion of provider "list" prices or the cost for medical care and billing arrangements of a provider accepting Medicare assignments. These cases do not support plaintiff's allegation that he "owed" $4,166.00 for the surgery at issue in this case. Similarly, *Himmler v. Califano*, 611 F.2d 137 (6th Cir. 1979), is inapposite and does not support

Plaintiff's new argument that Mr. Hall was "charged" Management Services Organization's "list price" and was "contractually liable" for that amount at some preliminary stage before Medicare was billed is unsupportable, contrary to Medicare law, and contrary to the original Holdiness Declaration.  Accordingly, the Court should grant the Motion to Strike.

### D.   The Second Holdiness Declaration Was Prepared By Plaintiff's Counsel And Is Not The Testimony Of Kathy Holdiness

The Second Holdiness Declaration should also be stricken because it was surreptitiously obtained and does not represent Ms. Holdiness's true testimony.  After plaintiff filed the Second Holdiness Declaration as an exhibit to plaintiff's Reply in support of his Cross-Motion, Transamerica's counsel contacted counsel for Ms. Holdiness regarding the origin of the Second Holdiness Declaration.  Transamerica summarized its conversation with Ms. Holdiness's counsel in the Memorandum.  *See* Memorandum at 6-7, and n.11.  Transamerica disagrees with plaintiff's Response to the extent it describes the Motion to Strike as including "irrelevant ad hominem attacks on Hall's counsel."  Response at 1.[7]

---

plaintiff's contention that he was "contractually liable" to pay Dr. Wade's list prices.  *Himmler* addressed the procedures for determining whether post-hospital extended care services are "medically necessary."  It was decided more than 30 years ago, long before the development of grossly inflated list prices.  *Himmler* includes no discussion of whether a Medicare insured is contractually obligated to pay a medical provider's list prices, but instead merely discusses potential financial liability to an extended care facility after Medicare had declined coverage.  Here, it is indisputable that all of plaintiff's claims were covered and paid by Medicare, and that plaintiff was never billed for, never owed, and never paid Dr. Wade's list prices for the Surgery and Anesthesia claims at issue in this lawsuit.

[7] Plaintiff's Response seeks to impugn Transamerica and its counsel by referencing an order entered nearly two years ago in *Belue v. AEGON, USA, Inc*., C/A No. 7:08-cv-3830 GRA (D.S.C.).  Response at 4-5.  This is not the first time plaintiff has raised the *Belue* order to detract from relevant issues pending before the Court.  *See* Defendants' Reply Memorandum in Further Support of Their Motion to Deny Class Certification and Eliminate Plaintiff's Class Allegations (Docket #36) at 16, n.13 (discussing plaintiff's reference to the *Belue* Order in response to the motion to deny class certification).  The district judge in *Belue* made highly disparaging comments regarding the Arkansas judiciary, and in particular, Judge Susan Webber Wright, after being informed that she had denied class certification in a similar case.  *Belue* Docket #72-2.  As

The original Holdiness Declaration was obtained by Transamerica within the discovery period, with notice, pursuant to a subpoena, and was immediately produced to plaintiff's counsel in the normal course of discovery.  Transamerica properly worked with outside counsel for Ms. Holdiness, Rush Health Systems, Inc., Management Services Organization, and their affiliates (the "Rush entities") to ensure the first Holdiness Declaration was accurate. Transamerica's counsel never spoke with Ms. Holdiness in the absence of her counsel. Transamerica was surprised to learn that plaintiff had circumvented Ms. Holdiness's counsel in obtaining the Second Holdiness Declaration.[8]

After filing the Motion to Strike, Transamerica's counsel forwarded the Motion and Memorandum to counsel for Ms. Holdiness and the Rush entities, and inquired further regarding the circumstances surrounding the Second Holdiness Declaration.  Those circumstances are described in a third Declaration of Kathy Holdiness which is attached hereto as Exhibit B. Transamerica believes the new declaration speaks for itself in explaining the inconsistencies in the two declarations and Ms. Holdiness's mistake and confusion in signing the Second Holdiness Declaration.

## CONCLUSION

For the reasons set forth herein and in the Motion to Strike, Transamerica respectfully requests that the Court strike the Second Holdiness Declaration from the record and award Transamerica its reasonable attorney's fees for investigating and preparing the Motion to Strike.

---

a result, Transamerica filed a motion to recuse the district court judge, who then revoked the *pro hac vice* status of every out-of-state lawyer who had entered an appearance for the defendants. The *Belue* order cited by plaintiff is irrelevant to the Motion to Strike.

[8] Indeed, Transamerica expressly informed plaintiff's counsel that the Rush entities were represented by counsel, and forwarded the attorneys' contact information to plaintiff's counsel during discovery.  *See* e-mail from Julianna Thomas McCabe to Hilton Tomlinson and Doralee Chandler attached hereto as Exhibit A.

Respectfully submitted,

/s/ John K. Baker

| | |
|---|---|
| Markham R. Leventhal, Esq. | John K. Baker, Esq., Ark. Bar No. 97024 |
| Farrokh Jhabvala, Esq. | **MITCHELL, WILLIAMS, SELIG,** |
| Julianna Thomas McCabe | **GATES & WOODYARD, P.L.L.C.** |
| **JORDEN BURT LLP** | 425 West Capitol Avenue, Suite 1800 |
| 777 Brickell Avenue, Suite 500 | Little Rock, Arkansas  72201 |
| Miami, Florida  33131 | Telephone:  (501) 688-8800 |
| Telephone:  (305) 371-2600 | Facsimile:  (501) 918-7850 |
| Facsimile:  (305) 372-9928 | jbaker@mwlaw.com |
| ml@jordenusa.com | |
| fj@jordenusa.com | |
| jt@jordenusa.com | *Attorneys for Defendant Transamerica Life* |
| | *Insurance Company* |

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2011, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL  35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, FL 32601

*Attorneys for Plaintiff*

The undersigned hereby certifies that a true and correct copy of the foregoing was served

by First-Class U.S. mail upon the following on this 5th day of May, 2011:

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, FL 32601


_____ */s/ John K. Baker* _____

# EXHIBIT A

**From:**       McCabe, Julianna Thomas
**Sent:**       Tuesday, July 20, 2010 5:32 PM
**To:**         'htomlinson@bellsouth.net'; 'dchandler@msslawfirm.com'
**Cc:**         John Baker; Leventhal, Markham; Jhabvala, Farrokh; Mary Lawrence; Dombroski, Elizabeth
**Subject:**    Hall v. Equity: Subpoenas to Rush Medical Group, P.A., et al.
**Attachments:** Hall Ltr. 2010-07-20 to K. Bailey re Rush Medical Subpoenas.pdf

All:

Please see my attached letter to counsel for the various Rush entities cancelling the depositions that were
scheduled for tomorrow.

Thank you,

*Julianna Thomas McCabe*
*Jorden Burt LLP*
*777 Brickell Avenue, Suite 500*
*Miami, Florida 33131*
*Main Telephone No. 305-371-2600*
*Direct Telephone No. 305-347-6870*



777 BRICKELL AVENUE
SUITE 500
MIAMI, FL 33131-2803
(305) 371-2600
FAX: (305) 372-9928

1025 THOMAS JEFFERSON STREET, N.W.
SUITE 400 EAST
WASHINGTON, D.C. 20007-5208
(202) 965-8100
FAX: (202) 965-8104

175 POWDER FOREST DRIVE
SUITE 301
SIMSBURY, CT 06089-9658
(860) 392-5000
FAX: (860) 392-5058

JULIANNA THOMAS McCABE
(305) 347-6870
jt@jordenusa.com

July 20, 2010

<u>Via Facsimile and E-Mail</u>

Kacey Guy Bailey, Esq.
Hammack, Barry, Thaggard & May, LLP
505 Constitution Avenue
Meridian, Mississippi 39302-2009

  Re: *Robert W. Hall v. Equity National Life Ins. Co.*
    Case No. 1:09cv00057 (E.D. Arkansas)

Dear Ms. Bailey:

  This will confirm the cancellation of the depositions of Rush Medical Group, P.A., Rush Medical Group, Inc., Rush Medical Group of Newton, P.A., Rush Medical Foundation, and Rush Health Systems, Inc. that were scheduled to take place tomorrow, June 21, 2010.

  We understand that Rush Health Systems, Inc. will be producing documents responsive to the subpoenas tomorrow via Federal Express.

  Thank you for your cooperation.

       Very truly yours,

       Julianna Thomas McCabe

JTM/ed
cc: John K. Baker, Esq.
#187977

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

ROBERT W. HALL, individually and
on behalf of all others similarly situated                          PLAINTIFF

V.                                                                            Case No. 1:09-CV-00057-JLH

EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al                                                          DEFENDANTS

**DECLARATION OF KATHY HOLDINESS**

Pursuant to 28 U.S.C. 1746, the undersigned Kathy Holdiness, states the following:

1.      My name is Kathy Holdiness.  I am over 21 years of age and competent to testify to the statements set forth in this Declaration.

2.      I am the Director of Customer Service for Rush Health Systems, Inc., which provides the billing services for Management Services Organization.  The statements made herein are based on my personal knowledge and review of the business records of Rush Health Systems, Inc. and Management Services Organization ("MSO").

3.      I originally compiled documents and provided testimony for this case on behalf of Management Services Organization in a declaration that I signed on August 19, 2010, in connection with a subpoena (my "First Declaration").  A copy of the July 21, 2010, subpoena is attached to this declaration as Exhibit 1, and a copy of my First Declaration is attached as Exhibit 2 to this declaration.

4.      My deposition had been set for July 20 and 21, 2010, by subpoenas issued at the request of counsel for Transamerica Life Insurance Company pursuant to Fed. R. Civ. P. 30(b)(6). Upon the suggestion of counsel for Transamerica, my First Declaration was provided in lieu of my deposition.  My First Declaration was prepared by counsel for Transamerica to respond to the subpoena attached as Exhibit 1.  Defendant's counsel worked through counsel for my employer

to complete the First Declaration.

5.      Approximately eight months later, I received a message that an attorney named Paul Rothstein was attempting to obtain a supplemental declaration.  I returned Mr. Rothstein's telephone call, and he asked me whether I would sign another declaration for this case.  He stated that he was representing Robert Hall.  I told him that I did not know whether I could sign another declaration.  At the time of my conversation with Mr. Rothstein, I had not received a copy of his proposed declaration.

6.      Later that day or soon thereafter, I was forwarded a document entitled "Supplemental Declaration of Kathy Holdiness."   On the day I received the "Supplemental Declaration," I was advised that Mr. Rothstein expressed a need to have the document signed and returned by 4:30 p.m. the same day (that afternoon).  I reviewed the document briefly on March 17, 2011, and I signed and returned the document (the "Second Declaration").

7.      I was rushed when I signed the Second Declaration due to the time constraints that had been relayed to me and because I was trying to be helpful and to avoid the need for my deposition which I understood had been the purpose of obtaining the First Declaration.

8.      I have now reviewed the First Declaration and the Second Declaration more carefully.

9.      First, to the extent the First Declaration and the Second Declaration refer to "maximum rates", this term should read "standard rates".

10.     Moreover, the Second Declaration contains certain inaccurate statements that contradict statements in my First Declaration.

11.     For example, MSO always abides by Medicare regulations.  Under Medicare regulations, MSO cannot bill Mr. Hall any amount in excess of his deductible, co-insurance, or co-payment portion of the Medicare allowance for treatment.  Contrary to the statements in the Second Declaration, Mr. Hall was never "contractually liable for the full amount of Management

Services Organization's list prices of maximum rates."

12.   The Second Declaration is also inaccurate to the extent that it implies that MSO's standard rates are originally "charged" to patients like Mr. Hall with "Medicare or United Healthcare health insurance."  As stated in my First Declaration, Mr. Hall, a Medicare patient, was never "charged" Dr. Wade's or MSO's standard rates. The Second Declaration is incorrect in stating that "Mr. Hall became contractually obligated to pay the amount of $4,166.00," and that "Mr. Hall became contractually liable to pay the amount of $1,200.00" upon receiving anesthesia. I would like to withdraw this statements to avoid any confusion. As discussed in my First Declaration, Mr. Hall was not liable to pay Dr. Wade's standard rates at any time.

13.   My oversight and confusion in signing the Second Declaration were caused by the rushed time frame and my mistaken impression that the Second Declaration was merely supplemental. Several paragraphs of the Second Declaration contain statements that are nearly identical to my First Declaration and some of the incorrect statements in the Second Declaration were included in the middle of the paragraphs that contain true information.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this the 4th day of May, 2011.

*Kathy Holdiness*
KATHY HOLDINESS

Exhibit 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**ROBERT W. HALL, individually and**
**On behalf of all others similarly situated**

      **Plaintiffs,**

      **v.**

**EQUITY NATIONAL LIFE INSURANCE**
**COMPANY, et al.,**

      **Defendants.**

**SUBPOENA IN A CIVIL CASE**
**(Case Pending in the E.D. Arkansas,**
**Case No. 1:09-CV-00057-JLH)**

**TO:** **Management Services Organization**
**1800 12th Street**
**Meridian, MS 39301**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

■ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Schedule A.**

| PLACE | DATE AND TIME |
|---|---|
| **Brooks Court Reporting**<br>**2105 5th Street**<br>**Meridian, MS 39301** | **July 30, 2010**<br>**1:30 p.m.** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants | 7/21/10 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER :

    John K. Baker, Esq.
    MITCHELL, WILLIAMS, SELIG,
      GATES & WOODYARD, P.L.L.C.
    425 West Capitol Avenue, Suite 1800
    Little Rock, Arkansas 72201
    Tel. (501) 688-8800

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D below)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| | | |
|---|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE | |

| | | |
|---|---|---|
| SERVED BY (PRINT NAME) | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45(c) and (d), Federal Rules of Civil Procedure:

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected mater, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the using court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

## INSTRUCTIONS AND DEFINITIONS

1.      "You" or "Your" means Management Services Organization, or any person or entity acting on behalf of or at the direction of Management Services Organization.

2.      In responding to this Subpoena, You are required to furnish all documents that are available to You or that You may obtain by reasonable inquiry, including documents in the possession of any person or entity subject to Your control.

3.      The term "documents" as used in this subpoena includes all documents of every nature subject to discovery under the Federal Rules of Civil Procedure including electronically stored information.

4.      "Robert W. Hall" refers to the individual of said name whose Date of Birth is 8/06/45, and Social Security No. is  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, and all persons acting on his behalf, including but not limited to his spouse, personal representatives or legal representatives.

5.      Unless otherwise stated herein, this Subpoena seeks documents and information for the period commencing January 1, 2006 to the present.

## SCHEDULE A

1.   All statements, bills, invoices or other documents showing the amounts that You actually billed, charged, and were paid for medical services provided to Robert W. Hall on or after January 1, 2006.

2.   All contracts or agreements (including all exhibits) governing the amounts You are or were permitted to charge or bill for medical services provided to Robert W. Hall on or after January 1, 2006, including but not limited to any provider agreements with United Healthcare or Medicare participating provider or supplier agreements.

3.   All documents showing any amounts paid to You by Robert W. Hall for medical services provided to Mr. Hall on or after January 1, 2006.

4.   All manuals or guidelines in effect during calendar years 2006 and 2007 describing the procedures to be used or steps to be taken by You in filing claims with United Healthcare.

5.   All manuals or guidelines in effect during calendar years 2006 and 2007 describing the procedures to be used or steps taken by You in filing claims with Medicare.

6.   All correspondence and communications, including diaries or notes of conversations or communications, with Robert W. Hall, his attorneys or representatives regarding bills or charges, or the form of billing paperwork, for medical services or treatment rendered to Mr. Hall on or after January 1, 2006.

7.   All documents created by You at the request of Robert W. hall, his attorneys or representatives, including drafts and notes, related to Mr. Hall making any claim for benefits under a Transamerica cancer insurance policy on or after January 1, 2006.

81-873/820

**MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD**
**P.L.L.C.**
425 WEST CAPITOL AVENUE, SUITE 1800
LITTLE ROCK, ARKANSAS 72201-3525

appearance fee

82428

PAY _Forty and 00/100_____ **DOLLARS**

| DATE | TO THE ORDER OF | CHECK AMOUNT |
|------|-----------------|--------------|
| 2/20/10 | Management Services Organization | 40 00 |

MITCHELL WILLIAMS, SELIG, GATES & WOODYARD

_[signature]_

TWIN CITY BANK
NORTH LITTLE ROCK, ARKANSAS 72118  (501) 812-1400

CHECKS IN EXCESS OF $500.00 REQUIRES COUNTER SIGNATURE

⑈082428⑈ ⑈082008732⑈ ⑈404⑈649⑈8⑈

**MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD**
**P.L.L.C.**
425 WEST CAPITOL AVENUE, SUITE 1800
LITTLE ROCK, ARKANSAS 72201-3525

| IN PAYMENT FOR | 81-873/820 |
|---|---|
| XXXX | |
| mileage fee | **82429** |

PAY _Four and 00/100_ _____ **DOLLARS**

| DATE | TO THE ORDER OF | CHECK AMOUNT |
|---|---|---|
| 7/20/10 | Management Services Organization | 4 | 00 |

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD

_Vickie Darlington_

TWIN CITY BANK
NORTH LITTLE ROCK, ARKANSAS  72118  (501) 812-1400

CHECKS IN EXCESS OF $500.00 REQUIRES COUNTER SIGNATURE

⑆082429⑆ ⑆082008732⑆ ⑆404⑉649⑈8⑆

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

ROBERT W. HALL, individually and                                    PLAINTIFF
on behalf of all others similarly situated


v.                                    Case No. 1:09-CV-00057-JLH


EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.                                                      DEFENDANTS


**DECLARATION OF KATHY HOLDINESS**

Pursuant to 28 U.S.C. § 1746, the undersigned, Kathy Holdiness, states the following:

1.    My name is Kathy Holdiness.  I am over 21 years of age and competent to testify

to the statements set forth in this Declaration.

2.    I am the Director of Customer service for Rush Health Systems, Inc. which

provides the billing services for Management Services Organization.  The statements made

herein are based on my personal knowledge and review of the business records of Rush Health

Systems, Inc. and Management Services Organization.  I am a duly authorized and qualified

witness to certify the authenticity of the attached business records for Management Services

Organization.

3.    The copies of the business records which are attached to this declaration are true

copies of records maintained by Rush Health Systems, Inc.  These records were

       i.    made by employees and medical personnel of Management Services
Organization or Rush Health Systems, Inc. with knowledge of the matters
expressed therein,

ii.   made at or near the time of the acts, conditions or events described in the records,

iii.   made as a part of their regularly conducted activity and regular practice, and

iv.   kept by Rush Health Systems, Inc. in the ordinary course of its business.

4.   These records were prepared by employees and medical personnel of Management Services Organization in the ordinary course of business at or near the time of the acts, conditions or events described in the records.

5.   I am familiar with Medicare rules governing the administration and payment of health benefit claims for Management Services Organization patients who are Medicare-eligible. I am also familiar with the administration and payment of health benefit claims pursuant to the contract between Management Services Organization physicians and UnitedHealthcare. Furthermore, I have reviewed and am familiar with the business records maintained by Management Services Organization related to services and treatments provided to Robert Hall. I regularly work with such patient records in my work for Management Services Organization.

6.   The physicians at Management Services Organization have accepted assignment of benefits from Medicare (the "Agreements"). In 2006 and continuing through 2008, Robert Hall was covered by Medicare. Medicare regulations dictated the amounts that Management Services Organization physicians could bill or charge to Mr. Hall for the covered services and treatments he received as a Medicare-eligible patient, also known as the "Medicare Allowance." For his treatments received from Management Services Organization, Mr. Hall, in certain circumstances, was responsible for a portion of this Medicare Allowance as provided by Federal Law, and Management Services Organization submitted claims and received the balance of the Medicare Allowance from Medicare for his claims. Management Services Organization did not charge Mr. Hall for any amount beyond the Medicare Allowance.

2

7.     In addition to his Medicare eligibility, Mr. Hall was covered by a UnitedHealthcare Railroad Plan.  Because Mr. Hall was also covered by Medicare, Management Services Organization was not permitted to bill either Mr. Hall or UnitedHealthcare for any amounts greater than Mr. Hall's portion of the Medicare Allowance.

8.     Management Services Organization is not permitted to bill or charge a Medicare insured whatever amount it chooses to bill for covered services; instead Management Services Organization, through the Agreements entered into by its physicians, has agreed to accept certain Medicare "Allowances" as payment in full by Medicare and the Medicare insured for covered services provided to the Medicare insured.  No amount in excess of the Medicare Allowance can be billed or charged by Management Services Organization to the Medicare insured, Medicare, or any other insurance plan owned by the Medicare insured for covered services, such as a UnitedHealthcare Plan.

9.     In some cases, a Medicare insured or supplemental insurance plan owned by the Medicare insured may be required to pay the co-insurance portion of the Medicare Allowance, in which case the co-insurance is calculated based on the Medicare Allowance, and not as a percentage of Management Services Organization's maximum rates.

10.    When a Medicare insured receives services or treatments, the total amount that Management Services Organization can collect from Medicare and the Medicare insured for covered services to the Medicare insured cannot exceed the Medicare Allowance, which is the maximum amount that could ever be owed to Management Services Organization by the Medicare insured, Medicare, or any other insurance owned by the Medicare insured under the terms of the Agreements.

11.     Management Services Organization abides by Medicare regulations and does not bill any Medicare insured more than the Medicare Allowance for any treatments or services provided at Management Services Organization.   Nor does Management Services Organization bill any supplemental insurance plan owned by the Medicare insured more than a portion of the Medicare Allowance for any treatments or services provided at Management Services Organization.

12.     On July 27, 2006, Management Services Organization physician Dr. Stanley A. Wade performed prostate surgery on Mr. Hall.  Although Management Services Organization's maximum rate for treatment related to the surgery was $4,166.00, the total fee to Mr. Hall for this surgery was $1,483.58, which was the Medicare Allowed Amount.   Medicare paid $1,186.86, and UnitedHealthcare paid the balance of $296.72.   Under federal law, neither Medicare nor Mr. Hall or UnitedHealthcare were obligated to Management Services Organization or Dr. Wade for any amount in excess of the $1,483.58 Medicare Allowed Amount. Management Services Organization did not charge its maximum rates to Mr. Hall and did not otherwise attempt to obtain any payments from Mr. Hall or UnitedHealthcare in excess of the Medicare Allowed Amount.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this
*19th* day of August, 2010.

*Kathy Holdiness*

Kathy Holdiness

4