**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**ROBERT W. HALL**                                                              **PLAINTIFF**


**v.**                          **Case No. 4:11-cv-00086-JLH**


**EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.**                                                   **DEFENDANTS**

### TRANSAMERICA LIFE INSURANCE COMPANY'S
### CONSOLIDATED RESPONSE IN OPPOSITION TO
### PLAINTIFF'S MOTIONS FOR LEAVE TO FILE
### UNTIMELY SUMMARY JUDGMENT-RELATED MATERIALS

Defendant Transamerica Life Insurance Company ("Transamerica") submits this consolidated response in opposition to plaintiff's three recently filed motions (the "Recent Motions") which seek leave to submit untimely materials to defend against Transamerica's motion for summary judgment.[1]  For the reasons set forth below, plaintiff's Recent Motions should be denied because they are untimely and the attached materials do not create a genuine issue for trial.

### INTRODUCTION

On December 21, 2010, pursuant to the deadline for dispositive motions under the scheduling order entered by Judge Holmes, Transamerica filed its Motion for Summary

---

[1] Plaintiff's Recent Motions include:  (1) a Motion for Leave to file a late response to Transamerica's Statement of Undisputed Material Facts and a Substituted Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion (Docket #138) (the "Motion to File a New Statement of Facts"); (2) a Motion for Leave to file a new affidavit plaintiff obtained from an electronic filing in another action pending in Kentucky (Docket #139) (the "Motion to File Hartnedy Declaration"); and (3) an Amended Motion for Leave which seeks to file two other untimely and inadmissible amended declarations from the plaintiff and a third party witness named Kathy Holdiness (Docket #140) (the "Motion to File New Declarations").

Judgment (Docket #76) (the "Summary Judgment Motion").   Transamerica's Summary Judgment Motion has now been fully briefed since March 11, 2011, when Transamerica filed its Reply Memorandum (Docket #121) ("Transamerica's Reply").

Plaintiff's Recent Motions are the latest in a series of new filings submitted by plaintiff after briefing closed on Transamerica's Summary Judgment Motion.   Plaintiff offers no legitimate reason or justification for his serial filings, or for his failure to timely disclose or submit the new materials attached to his Recent Motions in accordance with discovery and pretrial deadlines and the time requirements of Rule 56.[2]  The materials submitted with the Recent Motions are, in any event, insufficient to overcome summary judgment in Transamerica's favor.  For example, the new factual allegations raised in plaintiff's recent Motion to File a New Statement of Facts are unsupported by admissible, probative evidence.   Similarly, the new declarations appended to plaintiff's Motion to File New Declarations are improper because they were filed solely to create "sham" issues of fact which, under Eighth Circuit precedent, are insufficient to avoid summary judgment.  *See RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361

---

[2] In addition to his Recent Motions which seek leave to submit these new materials, plaintiff proceeded to file all of the materials separately, without leave and, in some cases, multiple times.  For example, plaintiff filed the Declaration of John A. Hartnedy (the "Hartnedy Declaration"), his own amended declaration (the "Amended Hall Declaration") and an amended declaration of third party witness Kathy Holdiness (the "Second Holdiness Declaration") with a Notice of Filing (Docket #141), without awaiting a ruling on the Recent Motions.  Plaintiff also inappropriately filed the Amended Hall Declaration and the Second Holdiness Declaration with approximately twelve other untimely exhibits appended to a reply brief.  *See J.S. & A.S. v. E. End Sch. Dist.*, 2007 WL 1029559, at *1 n.2 (E.D. Ark. Apr. 3, 2007) (refusing to consider summary judgment exhibits submitted for the first time on reply).  Plaintiff's recent filings, designed solely to foster confusion and detract from the relatively simple analysis of his insurance benefits, should be stricken or disregarded.  *See, e.g.*, Transamerica's Motion to Strike the Supplemental Declaration of Kathy Holdiness (Docket #133) and supporting Memorandum of Law (Docket #134).

(8th Cir. 1983) (the Eighth Circuit "has long held that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment."). Because there is no justification for permitting plaintiff's violation of established deadlines and Rule 56 procedure, and because the new materials are immaterial and improper, plaintiff's Recent Motions should be denied.

## RELEVANT BACKGROUND

This case involves a dispute over the amount of benefits due for Surgery and Anesthesia Claims plaintiff submitted to Transamerica in 2007 under a limited benefit cancer insurance policy.[3]   The Policy insures for "loss incurred" and provides a Schedule of specified benefits, most of which are limited to fixed dollar amounts.  Some of the Policy's benefits are based on the "actual charges" or "actual fee" for the services rendered, up to a designated maximum stated in the Policy.  As a condition precedent to receiving benefits under the Policy, including benefits based on "actual charges," the insured is required to submit a written "proof of loss" for "each incurred expense."  Policy, Section K, ¶ 9, at p. 15 ("Indemnities payable under this policy for any loss will be paid as soon as we receive proper written proof of loss."); Section C, at p. 6 ("Proof of loss must be submitted to us for each incurred expense.").

Plaintiff submitted claims to Transamerica in March 2007, including proof of various incurred expenses for his medical treatment, and the Company paid benefits under the Policy directly to plaintiff in the amount of $5,523.38.  *See* Memorandum at 3; *see also* Motion for

---

[3] *See* Transamerica Life Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment at 1-3 (Docket #77) (the "Memorandum").  A copy of plaintiff's supplemental cancer insurance policy is attached to Transamerica's Motion for Summary Judgment.  *See* Motion for Summary Judgment (Docket #76), at Declaration of Connie Whitlock (Docket #76-1), at Exhibit B (the "Policy").

Summary Judgment (Docket #76), at Declaration of James A. Byrne (Docket #76-3) ¶¶ 9-12 and Exhibits D & E (attaching explanation of benefits forms and cancelled Transamerica checks negotiated by the plaintiff).  Plaintiff's Complaint alleges that his Surgery and Anesthesia Claims were underpaid.  Complaint ¶ 42.  With respect to the Surgery and Anesthesia Claims, Transamerica paid $1,483.58 to Mr. Hall as a benefit payment for the Surgery, and $370.90 for the Anesthesia, or 25% of the $1,483.58 surgical fee.  *See* Memorandum at 4-5.  Transamerica's combined payment to plaintiff for the Surgery and Anesthesia Claims was $1,854.48, based on the amount actually charged by and paid to his doctor for the services at issue.  *Id*. at  4.  Plaintiff contends he should have been paid $1,700.00 for the Surgery and $425.00 for the Anesthesia, or a combined total of $2,125.00.  Complaint ¶ 42.  Thus, the total amount in dispute in this action is $270.52.

On December 21, 2010, at the conclusion of a thirteen month discovery period during which Transamerica obtained direct testimony from the medical provider confirming that it had paid the correct "actual charges" benefits, Transamerica filed its Summary Judgment Motion, Memorandum, and supporting Statement of Facts (Docket #78) ("Transamerica's Statement") as required by Local Rule 56.1.  Transamerica supported its motion with substantial evidence, including evidence from the plaintiff himself; evidence from Transamerica employees regarding plaintiff's claims and the specific benefits paid to plaintiff under his Policy; expert testimony from Dr. Glenn Alan Melnick, a health economist, and Marc Chapman, a healthcare billing consultant; and the testimony of Kathy Holdiness, a representative of the billing entity for plaintiff's surgeon Dr. Wade, regarding the exact amounts billed for plaintiff's medical treatment.  Ms. Holdiness testified that:

> 12.    On July 27, 2006, Management Services Organization physician Dr. Stanley A. Wade performed prostate surgery on Mr. Hall.

> Although Management Services Organization's maximum rate for treatment related to the surgery was $4,166.00, ***the total fee to Mr. Hall for this surgery was $1,483.58***, which was the Medicare Allowed Amount.   Medicare paid $1,186.86, and UnitedHealthcare paid the balance of $296.72. Under federal law, neither Medicare nor Mr. Hall or UnitedHealthcare were obligated to Management Services Organization or Dr. Wade for any amount in excess of the $1,483.58 Medicare Allowed Amount.   Management Services Organization ***did not charge its maximum rates to Mr. Hall*** and did not otherwise attempt to obtain any payments from Mr. Hall or UnitedHealthcare in excess of the Medicare Allowed Amount.

Holdiness Decl. ¶ 12 (emphasis added).   Consequently, Transamerica's Summary Judgment Motion unequivocally established that the total amount actually charged, owed, and paid for plaintiff's Surgery was $1,483.58, the same amount that Transamerica paid plaintiff under his Policy, and that the total amount charged, owed, and paid for the Anesthesia was $189.11, much less than the $370.90 maximum benefit that Transamerica paid to plaintiff.

On February 15, 2011, after multiple extensions, plaintiff responded to Transamerica's Motion for Summary Judgment by filing a consolidated cross-motion for partial summary judgment and response brief.[4]   Plaintiff contended in conclusory fashion that he should have been paid a maximum surgery benefit of $1,700.00 under the Policy, because, he alleges, he was "charged" more than his doctor was paid.   In spite of overwhelming direct evidence to the contrary, plaintiff simply argued, without evidentiary support, that the "actual fee" for his surgery was $4,166.00, Dr. Wade's "list" price or MSRP for the procedure.   In support of his position, plaintiff filed a statement of facts with the Cross-Motion.   But the allegations in plaintiff's statement were unsupported by admissible evidence, and plaintiff failed to file any

---

[4] *See* Plaintiff's Cross-Motion for Partial Summary Judgment (Docket #105) ("Cross-Motion") and Memorandum in Support of Plaintiff's Cross-Motion for Partial Summary Judgment and Response in Opposition to Defendant Transamerica Life Insurance Company's Motion for Summary Judgment (Docket #106) ("plaintiff's Response").

response to Transamerica's Statement of Facts as required by Local Rule 56.1(b).  *See* Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion for Partial Summary Judgment (Docket #107) ("plaintiff's Statement").

Rather than filing the required response to Transamerica's Statement, plaintiff largely ignored all of Transamerica's evidence and merely included a footnote in his Statement denying in conclusory form, "all other facts stated in Transamerica's Statement of Material Facts in Support of Transamerica Life Insurance Company's Motion for Summary Judgment that are inconsistent with the facts stated herein."  Plaintiff's Statement at 1 n.1.  Plaintiff did not submit or cite any evidence to support his general denial of Transamerica's Statement, and plaintiff's Statement ignored entirely the Holdiness Declaration, his own deposition testimony, the testimony of Transamerica's expert witnesses and employees, and virtually all of the specific facts surrounding his Surgery and Anesthesia Claims.

Plaintiff's failure to submit evidence in opposition to Transamerica's Summary Judgment was not surprising.   During the discovery period established by the Court, plaintiff never produced any documents supporting his claim that he was billed a "list" price by Dr. Wade or anyone else for his Surgery and Anesthesia Claims.   Plaintiff also gave no indication that he disagreed with Transamerica's witnesses that the full amount owed, billed, and paid for his Surgery was $1,483.58, or that his benefit payments were based on the exact amount owed for his treatment.  In fact, plaintiff agreed at his own deposition that Dr. Wade received $1,483.58 as payment in full for the Surgery, and that plaintiff had no expectation of being paid more under the Policy than his own doctor was paid for his treatment.  Deposition of Robert Hall (Docket #121-5) at 204-05, 209 (Q.  "And is it your understanding that the $1,483.58 is what Dr. Wade was actually paid for the surgery?"  A.  "Yes, ma'am." . . . .  Q.  "And do you think that you

were entitled to get paid more than your doctor got paid for any particular service or treatment?" A.  "No, ma'am . . . .").[5]

After filing his Response, plaintiff sought and was granted leave to file two new exhibits in opposition to Transamerica's Motion for Summary Judgment, including his own declaration and the irrelevant deposition transcript of a plaintiff in another case.[6]  Plaintiff offered no explanation why he failed to timely submit these materials with his Summary Judgment Response or how they were relevant to Transamerica's Summary Judgment Motion, but because the two exhibits were filed before the close of briefing, Transamerica was able to address them in its Reply brief.

On March 11, 2011, Transamerica filed its Reply Memorandum in Support of its Motion for Summary Judgment and Response in Opposition to Plaintiff's Cross-Motion (Docket #121) (the  "Reply").    Transamerica's Reply established that plaintiff's failure to address Transamerica's Undisputed Statement of Material Facts, except in a conclusory footnote, was improper under this Court's rules and Eighth Circuit precedent.  As a result of plaintiff's failure

---

[5] Plaintiff engaged in no affirmative discovery of his own during the discovery period. He made no attempt to depose Transamerica's corporate witnesses, he served no written discovery or subpoenas, and he gave no indication that he took issue with the testimony of Transamerica's expert witnesses, or that of Dr. Wade's billing provider, Ms. Holdiness. Plaintiff's summary judgment response was largely copied from papers filed by other plaintiffs in other cases.  It was not until after the discovery period and briefing on Transamerica's Summary Judgment Motion both closed, that plaintiff apparently began his belated attempt to manufacture evidence to support his individual claims in this case.

[6] *See* Plaintiff's Motion for Leave to File Supplemental Exhibits to Memorandum in Support of Plaintiff's Cross-Motion for Partial Summary Judgment and Response in Opposition to Defendant Transamerica Life Insurance Company's Motion for Summary Judgment (Docket #115) and Order granting the motion (Docket #116).  A copy of the Declaration of Robert W. Hall dated February 23, 2011 ("First Hall Declaration") was subsequently filed with the Court. Docket #122-1.

to submit any evidence in opposition to Transamerica's Statement of Facts, the well-supported material facts in Transamerica's Statement were deemed admitted.  Transamerica's Reply at 4-7. Transamerica's Reply further established that plaintiff failed to demonstrate any issue of material fact regarding an entitlement to additional benefits under his Policy.  Plaintiff could not dispute that Transamerica had paid benefits equal to the amount charged, billed, owed, and paid for the Surgery and Anesthesia Claims, and therefore, summary judgment in favor of Transamerica is proper.  *Id*. at 9-12.  The Reply closed briefing on Transamerica's Motion for Summary Judgment.

 Plaintiff has since engaged in an improper attempt to prop up his claims with new documents and declarations, never previously disclosed under Rule 26 or in the discovery process.  Plaintiff filed fourteen new exhibits with a reply in support of his Cross-Motion and, after the fact, filed the Recent Motions and related Notice of Filing.  Plaintiff's new filings, including the Recent Motions, are immaterial to the simple issue before the Court, and they ignore that plaintiff was required by rule to timely respond to Transamerica's Summary Judgment Motion with a "separate, short and concise statement of the material facts as to which [he] contends a genuine dispute exists to be tried."  Local Rule 56.1(b).  Plaintiff was required to support his denial of Transamerica's Statement with admissible evidence.  *Duvall v. City of Rogers, Ark.*, 2005 WL 3784932, at *1 (W.D. Ark. Dec. 20, 2005) ("[W]hen a material fact is not agreed upon and the moving party puts forth evidence to support his contention with respect to it, the non-moving party is obliged to respond with contrary evidence if any he has.").

 Plaintiff has offered no justification for his failure to comply with the Court's schedule and well-settled rules of procedure.  Moreover, plaintiff's new declarations are immaterial and improper and do not create any genuine issue of fact that would preclude summary judgment in

favor of Transamerica.  The undisputed evidence in this case demonstrates that Transamerica paid plaintiff benefits equal to or greater than the amounts actually charged, billed, paid, and owed for the Surgery and Anesthesia Claims.  Accordingly, the Court should deny plaintiff's Recent Motions and grant summary judgment in favor of Transamerica.

## ARGUMENT

I.    **TRANSAMERICA'S SUMMARY JUDGMENT MOTION IS FULLY BRIEFED AND PLAINTIFF SHOULD NOT BE PERMITTED TO NOW FILE NEW DECLARATIONS AND A NEW RESPONSE TO TRANSAMERICA'S STATEMENT OF FACTS**

Plaintiff's Recent Motions and his failure to timely disclose and submit the materials he believed were relevant in compliance with Rules 26, 33, 34, the Court's Scheduling Order and the requirements of Rule 56 are unjustified.  Moreover, plaintiff's untimely filing of his new materials has resulted in substantial prejudice to Transamerica and the Court.

Transamerica's Summary Judgment Motion was supported with multiple sources of evidence regarding the amounts actually charged and billed to plaintiff for his Surgery and Anesthesia Claims, and unequivocally established that that the total fee charged and paid for plaintiff's Surgery was $1,483.58 and that the actual charge for plaintiff's Anesthesia was $189.11.  Transamerica's Statement at 8.  Pursuant to this Court's Local Rules and precedent, plaintiff was required to respond to Transamerica's Statement with "a separate, short and concise statement of the material facts as to which [he] contends a genuine dispute exists to be tried," Local Rule 56.1(b), and to support his assertions with "contrary evidence if any he has." *Duvall*, 2005 WL 3784932, at *1.

Plaintiff, however, failed to submit the required Rule 56.1(b) statement, and instead elected to summarily deny Transamerica's Statement without offering any evidence to support that denial.  Accordingly, because plaintiff failed to properly respond to Transamerica's

Statement with probative evidence, Transamerica's Statement was deemed admitted. *See* Transamerica's Reply 7-9 (citing LR 56.1(c) ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) ***shall be deemed admitted unless controverted by the statement filed by the non-moving party*** under paragraph (b).")); *see also Philson v. Ark. Dep't of Human Servs.*, 2010 WL 4683898, at *1 (W.D. Ark. Nov. 10, 2010) (holding, where plaintiff "relied on speculation, denials or allegations, without a proper basis in fact or clear citation to facts already in the record," the court would "view such facts as essentially undisputed" and "those facts not specifically controverted by [plaintiff] will be deemed to have been admitted pursuant to Local Rule 56.1").

Plaintiff's Recent Motions offer no reason for this Court to ignore the Rules and the Scheduling Order and grant plaintiff leave to now file new materials in opposition to Transamerica's fully briefed Summary Judgment Motion.  The Eighth Circuit has noted that "when an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if the party failed to act because of excusable neglect." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 856 (8th Cir. 2010) (citing Fed. R. Civ. P. 6(b)(1)).  Plaintiff has offered no "good cause" for the Court to allow him at this late date to essentially re-start briefing on summary judgment.

In *Huggins*, the plaintiff sought leave to supplement the summary judgment record with new evidence after he filed his response.  The district court acknowledged that the new evidence was of "potential significance" but declined to consider the evidence because it was obtained after the discovery and dispositive motion deadlines.  *Id*. at 856.  The Eighth Circuit affirmed the district court's refusal to permit the plaintiff to supplement the summary judgment record,

explaining that the plaintiff could not establish that his failure to timely obtain and submit the evidence was the product of excusable neglect.

Like the filings by the plaintiff in *Huggins*, plaintiff's Recent Motions in this case demonstrate neither "good cause" nor "excusable neglect" and they should be denied as untimely. After several extensions, plaintiff filed his Summary Judgment Response nearly two months after Transamerica filed its Motion for Summary Judgment and supporting Statement. Plaintiff unquestionably had sufficient time to prepare a compliant Rule 56.1(b) statement and to obtain declarations and evidence to support his Response. If plaintiff was unable to obtain the necessary evidence or meet his response deadline, the Federal Rules allowed him the opportunity to seek additional time by filing a Rule 56(f) motion. Plaintiff, however, sought no such extension, responded to Transamerica's Motion for Summary Judgment, and filed his own Cross-Motion for Summary Judgment. Without excuse, or even an attempt at explanation, plaintiff limited his response to Transamerica's Statement of Facts to a mere conclusory footnote.[7]

Plaintiff had many months during the discovery period within which he could have deposed Transamerica's corporate witnesses and experts. Transamerica produced a copy of the

---

[7] Plaintiff's suggestion that his new response to Transamerica's Statement should be permitted because it would serve merely to "explicitly" set forth the facts in Transamerica's Statement that were "clearly disputed" is without merit. *See* Motion to File a New Statement of Facts at 2. This Court's rules required plaintiff to submit evidence to support his denials, and plaintiff's general disagreement with Transamerica's Statement was insufficient. *Duvall*, 2005 WL 3784932, at *1 ("[W]hen a material fact is not agreed upon and the moving party puts forth evidence to support his contention with respect to it, the non-moving party is obliged to respond with contrary evidence if any he has."). Moreover, plaintiff's new proposed response relies extensively on his Reply brief, the Second Holdiness Declaration, and the Amended Hall Declaration to dispute Transamerica's Statement. *See, e.g.*, Docket #138-1 ¶¶ 10, 16, 19, 20, 23, 34, 37, 38, 39, 40, 45, 47, 49. None of these documents existed at the time plaintiff filed his original Statement, and thus Transamerica's Statement was never "clearly disputed."

Holdiness Declaration and related documents to plaintiff's counsel on September 3, 2010, more than *three months* before the expiration of the December 16, 2010 discovery deadline, and more than *five months* before plaintiff filed his Response to Transamerica's Motion for Summary Judgment.[8]  Plaintiff clearly had adequate time to test Ms. Holdiness's testimony through cross-examination at a deposition.  He also had the entire discovery period within which he should have produced to Transamerica any documents he intended to use to support his claims in this case, and which he subsequently filed for this first time with his reply brief.  Plaintiff did not disclose any of the documents that have since been filed, nor did he timely seek or disclose any witness statements or testimony.

Similarly, plaintiff unquestionably could have submitted any relevant testimony of his own with his Response, and plaintiff's contention that he should be permitted to file the Hartnedy Declaration because it was "just found" in another case is equally without merit.  *See* Motion to File Hartnedy Declaration at 2.  Had the plaintiff been diligent, he could have obtained and disclosed the same declaration during the discovery period established by the Court in this case.

---

[8] *See* Transamerica's Motion to Strike to the "Supplemental Declaration of Kathy Holdiness" at Exh. C (Docket #133-3) (the "Motion to Strike"); *see also* Transamerica's Memorandum of Law in Support of Motion to Strike the "Supplemental Declaration of Kathy Holdiness" (Docket #134) at 2.  Transamerica's Motion to Strike the Second Holdiness Declaration establishes unequivocally that Ms. Holdiness's second declaration, surreptitiously obtained by plaintiff's counsel after the discovery period, is not "supplemental" as its title suggests, but rather, directly contradicts Ms. Holdiness's original testimony without explanation.  Ms. Holdiness was confused by the second declaration presented to her by plaintiff's counsel and has since retracted the inconsistent statements therein that were prepared by the plaintiff.  *See* Transamerica Life Insurance Company's Amended Motion for Leave to File Reply Memorandum (Docket #143) in support of its Motion to Strike, at Exhibit B (May 4, 2011 Declaration of Kathy Holdiness).  Transamerica expressly incorporates its Motion to Strike herein and submits that the prejudice to Transamerica, inefficiency, and additional briefing caused by plaintiff's belated filings demonstrate why the Recent Motions should be denied.

Indeed, plaintiff's failure to locate potential witnesses and develop evidence in this case was a direct result of plaintiff's failure to take *any* depositions or engage in any written discovery in this case.  Given plaintiff's failure to engage in reasonable discovery, there is no reason to permit plaintiff to file untimely and untested declaration testimony from the discovery efforts of plaintiffs in other litigation after summary judgment has been fully briefed and the discovery period closed.  *See, e.g.*, *Huggins*, 592 F.3d at 856 (affirming the district court's decision to preclude plaintiff from using a new affidavit where the plaintiff failed to obtain the affidavit until after the discovery and dispositive motions deadlines).  Plaintiff's failure to timely obtain, disclose, or file these materials was a deliberate tactical decision, not the product of any excusable neglect.

Plaintiff's Motions should further be denied because plaintiff's tactic of withholding materials and attempting to introduce new materials in opposition to a fully briefed summary judgment motion is grossly inefficient and has resulted in substantial prejudice to Transamerica and the Court.  Indeed, plaintiff's failure to timely file his new materials has resulted in extensive, unnecessary supplemental briefing by the parties, including Transamerica's Motion to Strike and the present motions, and has significantly delayed resolution of Transamerica's Summary Judgment Motion.  Moreover, the discovery deadline has long since passed and Transamerica has no opportunity to depose Mr. Hartnedy, Ms. Holdiness, or Mr. Hall regarding the testimony submitted with plaintiff's new filings.

None of the cases cited in plaintiff's Motions remotely support his position that he should be afforded a second opportunity to supplement the summary judgment record with new materials after briefing is complete.  For example, in *Foster v. K-V Pharmaceutical Co.*, 2010 WL 979445, at *1 (E.D. Mo. Mar. 12, 2010), prior to answering the complaint and prior to any

discovery, the defendant filed a motion to dismiss, or in the alternative, for summary judgment. The defendant then moved to supplement the motion to dismiss with newly acquired evidence. *Id*. The court granted the motion, explaining that the plaintiff did "not raise any specific objection to including th[e evidence] in the record." *Id*. Unlike in *Foster*, where no discovery occurred, plaintiff in this case had more than a year to conduct discovery, but elected to do nothing. *Foster* is inapposite and lends no support to plaintiff's motion. Indeed, the motion to supplement in that case was unopposed. The Court in *Peterson v. GM Corp.*, 904 F.2d 436, 440 (8th Cir. 1990), and *McNeil v. NFL*, 777 F. Supp. 1476, 1480 (8th Cir. 1991), *denied* motions to supplement the record with newly discovered evidence under Rule 60(b), and neither case lends any support to plaintiff's Motions. Both cases recognize that in order to supplement the record based on newly discovered evidence, the moving party must demonstrate, among other things, that they exercised "due diligence" in obtaining discovery and that the new evidence is material. Plaintiff failed to engage in any discovery in this case and cannot demonstrate that he exercised even minimal diligence in pursuing discovery to support his claims, and, as discussed below, none of the new declarations is material to Transamerica's Summary Judgment Motion.

Plaintiff's reliance on *Shearer v. Homestake Mining Co.*, 727 F.2d 707 (8th Cir. 1984), is also misplaced. In *Shearer*, "[e]arly in the proceedings" the defendant moved for summary judgment. *Id*. at 708. The Court expressed reservations about whether there were any genuine issues of material fact, but denied the motion without prejudice in order to allow the parties to engage in discovery. *Id*. After discovery, the defendant filed a second motion for summary judgment. *Id*. *Shearer* is thus factually inapposite and irrelevant to the present case.[9] Plaintiff's

---

[9] Plaintiff also contends that he should be allowed to supplement the summary judgment record because the 2010 Advisory Committee Notes to Rule 56 explain that a court "may" afford
*(footnote continued on next page)*

Recent Motions are untimely and unsupported by "good cause" as required by the standard set forth in *Huggins*.  Accordingly, the Recent Motions should be denied and the materials appended thereto should be stricken or disregarded by the Court.

II.  **PLAINTIFF'S MOTIONS TO FILE THREE NEW DECLARATIONS SHOULD ALSO BE DENIED BECAUSE THE DECLARATIONS ARE IMMATERIAL AND IMPROPER AND DO NOT CREATE ANY GENUINE ISSUES OF MATERIAL FACT FOR TRIAL**

Plaintiff's request to file the three new declarations should also be denied because the declarations are immaterial and improper, and none would create a genuine issue of fact regarding the amounts charged or billed to plaintiff for the Surgery and Anesthesia Claims.

A.  **The Hartnedy Declaration Is Immaterial And Does Not Create Any Issue Of Fact Regarding The Amounts Charged, Billed, Owed, And Paid For Plaintiff's Surgery And Anesthesia Claims**

The Hartnedy Declaration does not address the amounts charged or billed for plaintiff's Surgery and Anesthesia Claims and is therefore irrelevant to Transamerica's Summary Judgment Motion.  Summary judgment is appropriate when "there is no genuine dispute as to any *material fact* and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added); *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 924 (8th Cir. 2001).  After the movant bears the initial burden of demonstrating the absence of genuine issues of material fact,

---

a party an opportunity to properly support or address a fact and note that "[i]n many circumstances this opportunity will be the court's preferred first step."  Fed. R. Civ. P. 56(e) 2010 Advisory Committee Notes.  The Court, however, previously took this "first step" and granted plaintiff's first motion to file supplemental exhibits in opposition to Transamerica's Motion for Summary Judgment, including the First Hall Declaration.  Plaintiff's contention that Rule 56 should be construed to permit a plaintiff to repeatedly supplement the summary judgment record after briefing is closed is untenable.  Moreover, plaintiff's Motions offer no reason why allowing him another opportunity to supplement the summary judgment record should be the preferred step in this case.  Indeed, the plaintiff has offered no justification for his failure to timely file these materials.

the burden is on the non-moving party to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

This case involves a dispute over the amount of benefits due for Surgery and Anesthesia Claims plaintiff submitted to Transamerica in 2007 under his Policy. Transamerica's Summary Judgment Motion established unequivocally that the total amount actually charged, owed, and paid for plaintiff's Surgery was $1,483.58, the same amount Transamerica paid plaintiff under his Policy, and the total amount charged, owed, and paid for Anesthesia was $189.11, much less than the $370.90 maximum anesthesia benefit paid to plaintiff, and thus Transamerica is entitled to summary judgment on these claims. Transamerica submitted substantial admissible evidence from multiple sources establishing that the actual fee charged for the Surgery Claim was $1,483.58, and that the Dr. Wade "*did not charge*" his maximum list price of $4,166.00 in this case. Holdiness Decl. ¶ 12. In order for plaintiff to withstand Transamerica's Motion for Summary Judgment, he would need to present evidence creating a genuine issue of fact regarding the amount charged for *his* Surgery and Anesthesia Claims.

The Hartnedy Declaration offers no analysis of the plaintiff's Surgery and Anesthesia Claims. Hartnedy worked for Life Investors for less than two years in 1994 to 1996, long before inflated "list" prices developed in the healthcare market. Aside from multiple statements that lack foundation or personal knowledge,[10] the Declaration stands generally for the unremarkable proposition that Life Investors requested "bills" to process claims in the 1990s. The Hartnedy

---

[10] Fed. R. Civ. P. 56(c)(4) (affidavits must be made on personal knowledge).

Declaration is untested affidavit testimony obtained by a policyholder in another case to argue that the phrase "actual charges" in an insurance policy should mean the "original amount billed by the doctor ... before any reductions to the billed amount."[11]   Mr. Hartnedy cannot alter the undisputed fact that "the total fee to Mr. Hall for th[e] surgery was $1,483.58," and that "[a]lthough Management Services Organization's maximum rate for treatment related to the surgery was $4,166.00 ...  Management Services Organization *did not charge* its maximum rates to Mr. Hall."   Holdiness Declaration ¶ 12 (emphasis added).   Plaintiff in this case was paid benefits *based on* the total amount owed and billed for the Surgery and Anesthesia Claims, and the Hartnedy Declaration does not create any genuine issue of fact sufficient to defeat summary judgment.[12]

---

[11] Mr. Hartnedy has not yet been deposed in the *Moore* action in which his declaration was filed, and thus, Transamerica has had no opportunity to cross-examine him regarding the statements made in his Declaration, or the related arguments of counsel.  Hartnedy was not at the Company in 2004 when Transamerica began to investigate the impact of provider "list" prices on premium rates, nor was he at the Company when Mr. Hall's claims were submitted, processed, and paid in 2007.

[12] The Court should also deny plaintiff's request to file the declaration because the statements in the Hartnedy Declaration lack foundation and include inappropriate hearsay, and are therefore inadmissible on summary judgment. "A party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (explaining that affidavits may be used in order to support summary judgment but that the affidavits must be based on personal knowledge and that inadmissible hearsay cannot be used to support summary judgment).  The 2010 Advisory Committee Notes to Rule 56(c)(2) explain that "[t]here is no need to make a separate motion to strike" and that the "burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."

**B.**     **The Second Holdiness Declaration And Amended Hall Declaration Are "Sham" Declarations And Do Not Create Any Genuine Issue Of Material Fact**

Plaintiff's Recent Motions also seek leave to file the "Supplemental Declaration of Kathy Holdiness" (the Second Holdiness Declaration) and plaintiff's own "Amended Declaration." The Second Holdiness Declaration and the Amended Hall Declaration are inadmissible "sham" affidavits which are, likewise, insufficient to withstand summary judgment.  Where, as here, a party files a new affidavit which contradicts prior sworn testimony in response to a well-supported summary judgment motion, for the sole purpose of creating a factual issue that would prevent summary judgment, the affidavit is considered an improper sham.  The Eighth Circuit "has long held that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)).

The Eighth Circuit first adopted this rule more than two decades ago in *Camfield Tires, Inc.*, when it affirmed summary judgment in favor of the defendant, despite a material conflict between the plaintiff's deposition testimony and a later affidavit that he filed "expressly for the purpose of opposing summary judgment." *Camfield Tires, Inc.*, 719 F.2d at 1365.  The Court held that plaintiff's filing of the new affidavit created a "sham issue of fact instead of a genuine one" and did not prevent summary judgment in the defendant's favor.  *Id*.  A substantial body of Eighth Circuit authority has since developed following *Camfield Tires, Inc.*

In *RSBI Aerospace* for example, in the face of conflicting sworn statements, the Eighth Circuit affirmed the district court's order granting summary judgment to the defendant insurer on an insured's claim for coverage under a commercial fire insurance policy.  49 F.3d at 404.  The

material issue in *RSBI* was whether, for the purpose of applying a policy exclusion, an individual who intentionally started a fire was employed by the insured company on the date of the fire. The insurer moved for summary judgment based, in part, on the testimony of two company officers that the arsonist was employed on the relevant date. *Id*. at 401. The company responded to the summary judgment motion by filing new affidavits from the same officers, asserting that the arsonist had been terminated prior to the date of the fire and was merely consulting for the company when he started the fire. *Id*. As the court in *RSBI* explained:

> This circuit has long held that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment. . . . . In this case, RSBI's officers repeatedly represented in sworn statements that [the arsonist] was employed at RSBI on the date of the fire. However, after Affiliated filed its motion for summary judgment, the same officers submitted affidavits which contradicted their earlier testimony. These affidavits do not mention the difference in testimony, nor do they contain statements explaining why the affiants repeatedly took one position before the motion for summary judgment, but another inconsistent position after. Without having any evidence before it of misunderstanding or confusion which would reconcile the inconsistent statements, the district court decided the issue under the principles enunciated in *Camfield Tires*, and correctly determined that the affidavits did not create a genuine issue of material fact.

*Id*. at 402 (citing *Camfield Tires, Inc.*, 719 F.2d at 1361); *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) ("[I]f testimony under oath . . . can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment."). Both the Second Holdiness Declaration and the Amended Hall Declaration are inconsistent with prior testimony and constitute improper "sham" affidavits designed to defeat Transamerica's Summary Judgment Motion.

There is no question that the Second Holdiness Declaration directly contradicts and is irreconcilable with the original Holdiness Declaration. The first Holdiness Declaration was filed with Transamerica's Motion for Summary Judgment. Docket #76-4. In the first Holdiness

Declaration, Ms. Holdiness testified unequivocally that "Management Services Organization *did not charge* Mr. Hall for any amount beyond the Medicare Allowance," that Management Services Organization "does not bill *any* Medicare insured more than the Medicare Allowance for any treatments or services provided," that "the total fee to Mr. Hall for this surgery was $1,483.58," and that "Management Services Organization *did not charge its maximum rates to Mr. Hall*." Holdiness Declaration ¶¶ 6, 11-12 (emphasis added).

The Second Holdiness Declaration was submitted to Ms. Holdiness without review by her counsel, and was obtained and filed solely as an attempt to manufacture a fictional dispute to preclude summary judgment. Ms. Holdiness has since retracted the inconsistent statements in the Second Holdiness Declaration and explained how she was rushed into signing a second declaration approximately eight months after providing her original testimony in this case. Specifically, Ms. Holdiness has now explained:

> 3. I originally compiled documents and provided testimony for this case on behalf of Management Services Organization in a declaration that I signed on August 19, 2010, in connection with a subpoena (my "First Declaration"). . . .

> 4. My deposition had been set for July 20 and 21, 2010, by subpoenas issued at the request of counsel for Transamerica Life Insurance Company pursuant to Fed. R. Civ. P. 30(b)(6). Upon the suggestion of counsel for Transamerica, my First Declaration was provided in lieu of my deposition. My First Declaration was prepared by counsel for Transamerica to respond to the subpoena attached as Exhibit 1. Defendant's counsel worked through counsel for my employer to complete the First Declaration.

> 5. Approximately eight months later, I received a message that an attorney named Paul Rothstein was attempting to obtain a supplemental declaration. I returned Mr. Rothstein's telephone call, and he asked me whether I would sign another declaration for this case. He stated that he was representing Robert Hall. I told him that I did not know whether I could sign another declaration. At the time of my conversation with Mr. Rothstein, I had not received a copy of his proposed declaration.

6.     Later that day or soon thereafter, I was forwarded a document entitled "Supplemental Declaration of Kathy Holdiness." On the day I received the "Supplemental Declaration," I was advised that Mr. Rothstein expressed a need to have the document signed and returned by 4:30 p.m. the same day (that afternoon). I reviewed the document briefly on March 17, 2011, and I signed and returned the document (the "Second Declaration").

7.     I was rushed when I signed the Second Declaration due to the time constraints that had been relayed to me and because I was trying to be helpful and to avoid the need for my deposition which I understood had been the purpose of obtaining the First Declaration.

8.     I have now reviewed the First Declaration and the Second Declaration more carefully.

9.     First, to the extent the First Declaration and the Second Declaration refer to "maximum rates", this term should read "standard rates".

10.    Moreover, the Second Declaration contains certain inaccurate statements that contradict statements in my First Declaration.

11.    For example, MSO always abides by Medicare regulations. Under Medicare regulations, MSO cannot bill Mr. Hall any amount in excess of his deductible, co-insurance, or copayment portion of the Medicare allowance for treatment. Contrary to the statements in the Second Declaration, Mr. Hall was never "contractually liable for the full amount of Management Services Organization's list prices o[r] maximum rates."

12.    The Second Declaration is also inaccurate to the extent that it implies that MSO's standard rates are originally "charged" to patients like Mr. Hall with "Medicare or United Healthcare health insurance." As stated in my First Declaration, Mr. Hall, a Medicare patient, was never "charged" Dr. Wade's or MSO's standard rates. The Second Declaration is incorrect in stating that "Mr. Hall became contractually obligated to pay the amount of $4,166.00," and that "Mr. Hall became contractually liable to pay the amount of $1,200.00" upon receiving anesthesia. I would like to withdraw this statement[] to avoid any confusion. As discussed in my First Declaration, Mr. Hall was not liable to pay Dr. Wade's standard rates at any time.

13.    My oversight and confusion in signing the Second Declaration were caused by the rushed time frame and my mistaken impression that the Second Declaration was merely supplemental. Several

> paragraphs of the Second Declaration contain statements that are nearly identical to my First Declaration and some of the incorrect statements in the Second Declaration were included in the middle of paragraphs that contain true information.

*See* May 4, 2011 Declaration of Kathy Holdiness, attached hereto as Exhibit A.  Ms. Holdiness's explanation demonstrates the "sham" nature of the Second Holdiness Declaration, and establishes that the alleged factual issues raised by the Second Holdiness Declaration are, as the court held in *Camfield Tires, Inc.*, "not genuine."  719 F.2d at 1365; *see also Nickerson v. Allied Mut. Ins. Co.*, 198 F.3d 250, 1999 WL 980933, at *1 (8th Cir. 1999) (disregarding similar sham affidavit).  Because the Second Holdiness Declaration is improper and unreliable, the Court should deny leave to file it and grant Transamerica's separate Motion to Strike.

Plaintiff's self-serving "Amended" Declaration is also an inappropriate attempt to inject a "sham" issue into the proceedings.  At his deposition, plaintiff testified that it was his understanding that Dr. Wade was paid $1,483.58 for his Surgery claims.  *See* Hall Dep. at 204 (Q. "…And is it your understanding that the $1,483.58 is what Dr. Wade was actually paid for the surgery?"  A.  "Yes, ma'am.").

After plaintiff filed his Summary Judgment Response, plaintiff sought and was granted leave to file the First Hall Declaration in opposition to Transamerica's Summary Judgment Motion.  Plaintiff's First Declaration stated, "I *believe* that the actual charges for the surgery . . . were $4,166.00."  First Hall Declaration ¶ 6 (Docket #122-1) (emphasis added).  Transamerica's Reply, however, established that this testimony of belief in the First Hall Declaration was inconsistent with plaintiff's deposition testimony and insufficient as a matter of law to establish a genuine issue of material fact to avoid summary judgment.  *Lark v. West*, 182 F. Supp. 794, 798 (D.D.C. 1960) ("[B]elief, no matter how sincere, is not equivalent to knowledge, and . . . the facts set forth in an affidavit in opposition to a motion for summary judgment must be such as

would be admissible in evidence should they be given from the witness stand during the trial of a case.").

Plaintiff's Recent Motions now attach a second "Amended" Declaration which merely adds the word "know" to the previous declaration. *See* Amended Hall Decl. ¶ 6 (Docket #140-3) ("I believe *and know* that the actual fee for the surgery . . . was $4,166.00.") (emphasis added). Plaintiff's "Amended" Declaration is still inconsistent with this prior deposition testimony; it still lacks foundation; and it is still inadmissible to oppose summary judgment because it is not based on personal knowledge and is demonstrably false. *See, e.g.*, *RSBI Aerospace, Inc.* 49 F.3d at 402 (disregarding new, conflicting affidavits which did not "reconcile" the previous testimony, "mention the difference in testimony," or "contain statements explaining why the affiants repeatedly took one position before the motion for summary judgment, but another inconsistent position after"); *Hottinger v. Contel of Ark., Inc.*, 65 F.3d 172, 1995 WL 492892, at *2 (8th Cir. 1995) (disregarding affidavit testimony that contradicted prior testimony because a contradictory affidavit can only "preclude summary judgment" if the affiant's prior testimony reflected confusion, and where the new testimony explains the prior conflicting statements); *Schiernbeck, v. Davis*, 143 F.3d 434, 438 (8th Cir. 1998) (rejecting contradictory affidavit where plaintiff "made no explanation" as to why new statements contradicted earlier testimony and made no attempt to show confusion or misunderstanding). Accordingly, plaintiff's self-serving attempt to submit multiple affidavits that contradict his deposition testimony are inadmissible and improper.

## CONCLUSION

For the reasons set forth herein, Transamerica respectfully requests that the Court deny the Recent Motions and disregard plaintiff's untimely new materials submitted in opposition to Transamerica's Motion for Summary Judgment.

Respectfully submitted,

/s/ Julianna Thomas McCabe

John K. Baker, Esq., Ark. Bar No. 97024

**MITCHELL, WILLIAMS, SELIG,**
   **GATES & WOODYARD, P.L.L.C.**

425 West Capitol Avenue, Suite 1800

Little Rock, Arkansas  72201

Telephone:  (501) 688-8800

Facsimile:  (501) 918-7850

jbaker@mwlaw.com

Markham R. Leventhal, Esq.

Farrokh Jhabvala, Esq.

Julianna Thomas McCabe, Esq.

**JORDEN BURT LLP**

777 Brickell Avenue, Suite 500

Miami, Florida  33131

Telephone:  (305) 371-2600

Facsimile:  (305) 372-9928

ml@jordenusa.com

fj@jordenusa.com

jt@jordenusa.com

*Attorneys for Defendant*
*Transamerica Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL  35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, FL 32601

*Attorneys for Plaintiff*

The undersigned hereby certifies that a true and correct copy of the foregoing was served by First-Class U.S. mail upon the following on this 25th day of May, 2011:

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, FL 32601


_____ /s/ Julianna Thomas McCabe _____