# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ROBERT W. HALL, individually and
on behalf of all others similarly situated                    PLAINTIFF

V.                                                            Case No. 1:09-CV-00057-JLH

EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al                                                DEFENDANTS

### DECLARATION OF KATHY HOLDINESS

Pursuant to 28 U.S.C. 1746, the undersigned Kathy Holdiness, states the following:

1. My name is Kathy Holdiness. I am over 21 years of age and competent to testify to the statements set forth in this Declaration.

2. I am the Director of Customer Service for Rush Health Systems, Inc., which provides the billing services for Management Services Organization. The statements made herein are based on my personal knowledge and review of the business records of Rush Health Systems, Inc. and Management Services Organization ("MSO").

3. I originally compiled documents and provided testimony for this case on behalf of Management Services Organization in a declaration that I signed on August 19, 2010, in connection with a subpoena (my "First Declaration"). A copy of the July 21, 2010, subpoena is attached to this declaration as Exhibit 1, and a copy of my First Declaration is attached as Exhibit 2 to this declaration.

4. My deposition had been set for July 20 and 21, 2010, by subpoenas issued at the request of counsel for Transamerica Life Insurance Company pursuant to Fed. R. Civ. P. 30(b)(6). Upon the suggestion of counsel for Transamerica, my First Declaration was provided in lieu of my deposition. My First Declaration was prepared by counsel for Transamerica to respond to the subpoena attached as Exhibit 1. Defendant's counsel worked through counsel for my employer

to complete the First Declaration.

5.   Approximately eight months later, I received a message that an attorney named Paul Rothstein was attempting to obtain a supplemental declaration. I returned Mr. Rothstein's telephone call, and he asked me whether I would sign another declaration for this case. He stated that he was representing Robert Hall. I told him that I did not know whether I could sign another declaration. At the time of my conversation with Mr. Rothstein, I had not received a copy of his proposed declaration.

6.   Later that day or soon thereafter, I was forwarded a document entitled "Supplemental Declaration of Kathy Holdiness." On the day I received the "Supplemental Declaration," I was advised that Mr. Rothstein expressed a need to have the document signed and returned by 4:30 p.m. the same day (that afternoon). I reviewed the document briefly on March 17, 2011, and I signed and returned the document (the "Second Declaration").

7.   I was rushed when I signed the Second Declaration due to the time constraints that had been relayed to me and because I was trying to be helpful and to avoid the need for my deposition which I understood had been the purpose of obtaining the First Declaration.

8.   I have now reviewed the First Declaration and the Second Declaration more carefully.

9.   First, to the extent the First Declaration and the Second Declaration refer to "maximum rates", this term should read "standard rates".

10.   Moreover, the Second Declaration contains certain inaccurate statements that contradict statements in my First Declaration.

11.   For example, MSO always abides by Medicare regulations. Under Medicare regulations, MSO cannot bill Mr. Hall any amount in excess of his deductible, co-insurance, or co-payment portion of the Medicare allowance for treatment. Contrary to the statements in the Second Declaration, Mr. Hall was never "contractually liable for the full amount of Management

Services Organization's list prices of maximum rates."

12. The Second Declaration is also inaccurate to the extent that it implies that MSO's standard rates are originally "charged" to patients like Mr. Hall with "Medicare or United Healthcare health insurance." As stated in my First Declaration, Mr. Hall, a Medicare patient, was never "charged" Dr. Wade's or MSO's standard rates. The Second Declaration is incorrect in stating that "Mr. Hall became contractually obligated to pay the amount of $4,166.00," and that "Mr. Hall became contractually liable to pay the amount of $1,200.00" upon receiving anesthesia. I would like to withdraw this statements to avoid any confusion. As discussed in my First Declaration, Mr. Hall was not liable to pay Dr. Wade's standard rates at any time.

13. My oversight and confusion in signing the Second Declaration were caused by the rushed time frame and my mistaken impression that the Second Declaration was merely supplemental. Several paragraphs of the Second Declaration contain statements that are nearly identical to my First Declaration and some of the incorrect statements in the Second Declaration were included in the middle of the paragraphs that contain true information.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this the 4th day of May, 2011.

_____
KATHY HOLDINESS

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ROBERT W. HALL, individually and
On behalf of all others similarly situated

    Plaintiffs,

v.

EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.,

    Defendants.

SUBPOENA IN A CIVIL CASE
(Case Pending in the E.D. Arkansas,
Case No. 1:09-CV-00057-JLH)

TO:   Management Services Organization
       1800 12th Street
       Meridian, MS 39301

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

■ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Schedule A.**

| PLACE | DATE AND TIME |
| --- | --- |
| Brooks Court Reporting<br>2105 5th Street<br>Meridian, MS 39301 | July 30, 2010<br>1:30 p.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
PREMISES

| DATE AND TIME |
| --- |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) <br> *[signature]* <br> Attorney for Defendants | DATE <br> 7/21/10 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:

John K. Baker, Esq.
MITCHELL, WILLIAMS, SELIG,
 GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Tel. (501) 688-8800

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D below)

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
           DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45(c) and (d), Federal Rules of Civil Procedure:

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction— which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.
  (2) *Command to Produce Materials or Permit Inspection.*
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  (3) *Quashing or Modifying a Subpoena*
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
      (i) fails to allow reasonable time to comply;
      (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45©(3)(B)(iii), the person may be commanded o attend a trial by traveling from any such place within the state where the trial is held;
      (iii) requires disclosure of privileged or other protected mater, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the using court may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information;
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
      (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
    (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) *Claiming Privilege or Protection.*
    (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

## **INSTRUCTIONS AND DEFINITIONS**

1. "You" or "Your" means Management Services Organization, or any person or entity acting on behalf of or at the direction of Management Services Organization.

2. In responding to this Subpoena, You are required to furnish all documents that are available to You or that You may obtain by reasonable inquiry, including documents in the possession of any person or entity subject to Your control.

3. The term "documents" as used in this subpoena includes all documents of every nature subject to discovery under the Federal Rules of Civil Procedure including electronically stored information.

4. "Robert W. Hall" refers to the individual of said name whose Date of Birth is 8/06/45, and Social Security No. is 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, and all persons acting on his behalf, including but not limited to his spouse, personal representatives or legal representatives.

5. Unless otherwise stated herein, this Subpoena seeks documents and information for the period commencing January 1, 2006 to the present.

## **SCHEDULE A**

1. All statements, bills, invoices or other documents showing the amounts that You actually billed, charged, and were paid for medical services provided to Robert W. Hall on or after January 1, 2006.

2. All contracts or agreements (including all exhibits) governing the amounts You are or were permitted to charge or bill for medical services provided to Robert W. Hall on or after January 1, 2006, including but not limited to any provider agreements with United Healthcare or Medicare participating provider or supplier agreements.

3. All documents showing any amounts paid to You by Robert W. Hall for medical services provided to Mr. Hall on or after January 1, 2006.

4. All manuals or guidelines in effect during calendar years 2006 and 2007 describing the procedures to be used or steps to be taken by You in filing claims with United Healthcare.

5. All manuals or guidelines in effect during calendar years 2006 and 2007 describing the procedures to be used or steps taken by You in filing claims with Medicare.

6. All correspondence and communications, including diaries or notes of conversations or communications, with Robert W. Hall, his attorneys or representatives regarding bills or charges, or the form of billing paperwork, for medical services or treatment rendered to Mr. Hall on or after January 1, 2006.

7. All documents created by You at the request of Robert W. hall, his attorneys or representatives, including drafts and notes, related to Mr. Hall making any claim for benefits under a Transamerica cancer insurance policy on or after January 1, 2006.

**MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD**
**P.L.L.C.**
425 WEST CAPITOL AVENUE, SUITE 1800
LITTLE ROCK, ARKANSAS 72201-3525

appearance fee

81-873/820

82428

PAY Forty and 00/100 — DOLLARS

DATE 7/20/10

TO THE ORDER OF
Management Services Organization

CHECK AMOUNT
40.00

MITCHELL WILLIAMS, SELIG, GATES & WOODYARD

TWIN CITY BANK
NORTH LITTLE ROCK, ARKANSAS 72118   (501) 812-1400

CHECKS IN EXCESS OF $500.00 REQUIRES COUNTER SIGNATURE

⑆082428⑆ ⑈082008732⑈ ⑆404 649 8⑆

| | |
|---|---|
| MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD P.L.L.C.<br>425 WEST CAPITOL AVENUE, SUITE 1800<br>LITTLE ROCK, ARKANSAS 72201-3525 | IN PAYMENT FOR — 81-873/820<br>XXXX<br>mileage fee<br>**82429** |

PAY _Four and 00/100_ DOLLARS

| DATE | TO THE ORDER OF | CHECK AMOUNT |
|---|---|---|
| 7/20/10 | Management Services Organization | 4 00 |

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD
_Vickie Darlington_

TWIN CITY BANK
NORTH LITTLE ROCK, ARKANSAS 72118  (501) 812-1400

CHECKS IN EXCESS OF $500.00 REQUIRES COUNTER SIGNATURE

⑈082429⑈ ⑆082008732⑆ ⑈404⑈649⑈8⑈

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ROBERT W. HALL, individually and                                    PLAINTIFF
on behalf of all others similarly situated

v.                    Case No. 1:09-CV-00057-JLH

EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.                                                     DEFENDANTS

**DECLARATION OF KATHY HOLDINESS**

Pursuant to 28 U.S.C. § 1746, the undersigned, Kathy Holdiness, states the following:

1. My name is Kathy Holdiness. I am over 21 years of age and competent to testify to the statements set forth in this Declaration.

2. I am the Director of Customer service for Rush Health Systems, Inc. which provides the billing services for Management Services Organization. The statements made herein are based on my personal knowledge and review of the business records of Rush Health Systems, Inc. and Management Services Organization. I am a duly authorized and qualified witness to certify the authenticity of the attached business records for Management Services Organization.

3. The copies of the business records which are attached to this declaration are true copies of records maintained by Rush Health Systems, Inc. These records were

   i. made by employees and medical personnel of Management Services Organization or Rush Health Systems, Inc. with knowledge of the matters expressed therein,

    ii.  made at or near the time of the acts, conditions or events described in the records,

    iii.  made as a part of their regularly conducted activity and regular practice, and

    iv.  kept by Rush Health Systems, Inc. in the ordinary course of its business.

  4.  These records were prepared by employees and medical personnel of Management Services Organization in the ordinary course of business at or near the time of the acts, conditions or events described in the records.

  5.  I am familiar with Medicare rules governing the administration and payment of health benefit claims for Management Services Organization patients who are Medicare-eligible. I am also familiar with the administration and payment of health benefit claims pursuant to the contract between Management Services Organization physicians and UnitedHealthcare. Furthermore, I have reviewed and am familiar with the business records maintained by Management Services Organization related to services and treatments provided to Robert Hall. I regularly work with such patient records in my work for Management Services Organization.

  6.  The physicians at Management Services Organization have accepted assignment of benefits from Medicare (the "Agreements"). In 2006 and continuing through 2008, Robert Hall was covered by Medicare. Medicare regulations dictated the amounts that Management Services Organization physicians could bill or charge to Mr. Hall for the covered services and treatments he received as a Medicare-eligible patient, also known as the "Medicare Allowance." For his treatments received from Management Services Organization, Mr. Hall, in certain circumstances, was responsible for a portion of this Medicare Allowance as provided by Federal Law, and Management Services Organization submitted claims and received the balance of the Medicare Allowance from Medicare for his claims. Management Services Organization did not charge Mr. Hall for any amount beyond the Medicare Allowance.

7. In addition to his Medicare eligibility, Mr. Hall was covered by a UnitedHealthcare Railroad Plan. Because Mr. Hall was also covered by Medicare, Management Services Organization was not permitted to bill either Mr. Hall or UnitedHealthcare for any amounts greater than Mr. Hall's portion of the Medicare Allowance.

8. Management Services Organization is not permitted to bill or charge a Medicare insured whatever amount it chooses to bill for covered services; instead Management Services Organization, through the Agreements entered into by its physicians, has agreed to accept certain Medicare "Allowances" as payment in full by Medicare and the Medicare insured for covered services provided to the Medicare insured. No amount in excess of the Medicare Allowance can be billed or charged by Management Services Organization to the Medicare insured, Medicare, or any other insurance plan owned by the Medicare insured for covered services, such as a UnitedHealthcare Plan.

9. In some cases, a Medicare insured or supplemental insurance plan owned by the Medicare insured may be required to pay the co-insurance portion of the Medicare Allowance, in which case the co-insurance is calculated based on the Medicare Allowance, and not as a percentage of Management Services Organization's maximum rates.

10. When a Medicare insured receives services or treatments, the total amount that Management Services Organization can collect from Medicare and the Medicare insured for covered services to the Medicare insured cannot exceed the Medicare Allowance, which is the maximum amount that could ever be owed to Management Services Organization by the Medicare insured, Medicare, or any other insurance owned by the Medicare insured under the terms of the Agreements.

11. Management Services Organization abides by Medicare regulations and does not bill any Medicare insured more than the Medicare Allowance for any treatments or services provided at Management Services Organization. Nor does Management Services Organization bill any supplemental insurance plan owned by the Medicare insured more than a portion of the Medicare Allowance for any treatments or services provided at Management Services Organization.

12. On July 27, 2006, Management Services Organization physician Dr. Stanley A. Wade performed prostate surgery on Mr. Hall. Although Management Services Organization's maximum rate for treatment related to the surgery was $4,166.00, the total fee to Mr. Hall for this surgery was $1,483.58, which was the Medicare Allowed Amount. Medicare paid $1,186.86, and UnitedHealthcare paid the balance of $296.72. Under federal law, neither Medicare nor Mr. Hall or UnitedHealthcare were obligated to Management Services Organization or Dr. Wade for any amount in excess of the $1,483.58 Medicare Allowed Amount. Management Services Organization did not charge its maximum rates to Mr. Hall and did not otherwise attempt to obtain any payments from Mr. Hall or UnitedHealthcare in excess of the Medicare Allowed Amount.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 19th day of August, 2010.

*Kathy Holdiness*
Kathy Holdiness