# Exhibit 1

```
 1                   IN THE UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF ARKANSAS
 2                            WESTERN DIVISION

 3   ROBERT W. HALL, individually
     and on behalf of all others
 4   similarly situated,

 5           Plaintiffs,
        v.                               No. 4:11CV00086 BSM
 6                                       June 24, 2011
                                         Little Rock, Arkansas
 7                                       1:01 p.m.
     EQUITY NATIONAL LIFE
 8   INSURANCE COMPANY merged
     into Life Investors Insurance Company
 9   of America n/k/a Transamerica
     Life Insurance Company, LIFE INVESTORS
10   INSURANCE COMPANY OF AMERICA also known
     as Transamerica Life Insurance Company,
11   AEGON USA INC, parent company of Life
     Investors Insurance Company of America n/k/a
12   Transamerica Life Insurance Company,

13           Defendants.

14                        TRANSCRIPT OF HEARING
                   BEFORE THE HONORABLE BRIAN S. MILLER,
15                      UNITED STATES DISTRICT JUDGE

16   APPEARANCES:

17   On Behalf of the Plaintiffs:

18      MS. DORALEE IDLEMAN CHANDLER, Attorney at Law
          Matthews, Sanders & Sayes
19        825 West Third Street
          Little Rock, Arkansas  72201
20
        MR. FRANK H. TOMLINSON, Attorney at Law
21        15 North 21st Street, Suite 302
          Birmingham, Alabama  35203-4130
22
        MR. N. ALBERT BACHARACH, JR., Attorney at Law
23        115 NE 5th Avenue
          Gainesville, Florida  32601-3416
24
        MR. PAUL S. ROTHSTEIN, Attorney at Law
25        626 NE 1st Street
          Gainesville, Florida  32601-3416      [CONTINUED]


                     Judith A. Ammons, RPR, CRR, CCR
                         United States Court Reporter
```

```
 1    ALSO APPEARING:

 2    On Behalf of the Defendants:

 3        MR. JOHN KEELING BAKER, Attorney at Law
            Mitchell, Williams, Selig, Gates & Woodyard, PLLC
 4          425 West Capitol Avenue, Suite 1800
            Little Rock, Arkansas  72201
 5
          MS. JULIANNA THOMAS MCCABE, Attorney at Law
 6          JordenBurt LLP - Miami
            777 Brickell Avenue, Suite 500
 7          Miami, Florida  33131

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21        Proceedings reported by machine stenography and displayed
      in realtime; transcript prepared utilizing computer-aided
22    transcription.

23

24

25


                      Judith A. Ammons, RPR, CRR, CCR
                         United States Court Reporter
```

P R O C E E D I N G S

THE COURT: All right. The next case on the docket is Hall versus Equity National Life Insurance Company. The case number is 7CV35.

And normally I would say what we are here to discuss today, but we have a number of motions on the docket.

Let me state for the record that this case was transferred to me, I guess, about a month and a half ago. I think it started over in Judge Holmes' courtroom. And at some point an affidavit or something was filed that created a conflict for him. It was transferred to me during the last month and a half. I've had several trials. I've had a number of large issues that I've been working on getting out. And then I took a vacation last week. I have looked at the file so I understand what the issues are, I understand what the case is about. But I must bring it to the lawyers' attention that this case was set for a hearing on the motions for summary judgment before it was transferred to me. And I'm sure that Judge Holmes put in far more work on this case than I have up to this point.

What I would ask the lawyers to do is to, I know what the issues are, but as we go through these various motions, hit the very key points that you believe you did not set out or flesh out fully in your briefs. That will help guide me into the areas you think are the most important that I can deal with

1   when I sit down to prepare the orders in this case.
2         Also, let me say this because I think I should disclose
3   everything fully.  At some point some years ago, I was a lawyer
4   practicing in Helena, and I used to get referred cases by John
5   Baker.  His law partner Rick Beard referred cases to me back
6   some years ago.  It's been more than seven or eight years, but
7   -- I think the last case I ever had with the Mitchell Firm was
8   more than seven or eight years ago, but I have to put that on
9   the record so if anybody wants to make a record of that or ask
10  that I do as Judge Holmes has done and stand down from the
11  case, I want to give you an opportunity to do that.  I know
12  that you're just now knowing this.  And I'll be very honest
13  with you.  When I sat down with this file and started really
14  focusing on it is the first time I noticed that, that John
15  Baker was on the case.  But he and I worked on one or two cases
16  back when I was in practice.  So that's it.  That's my full
17  disclosure.
18        If you don't want to take that issue up today, this is not
19  the last time that you can.  What I would say is, if you walk
20  out of here today and get a sinking feeling, whether good or
21  bad -- it may be that John walks out of here getting a sinking
22  feeling because he thinks I'm going against him -- you will
23  have a chance, I would say, to file a motion or notify me
24  within the next 10 or 14 days, within the next couple of weeks.
25  And then if I need to, I will have no problem at all

1   transferring the case to another judge or recusing and allowing
2   another judge to take the case.
3       So let's do this.  I ask that the lawyers for the
4   plaintiffs please introduce yourself so I know who you are.
5           MR. ROTHSTEIN:  Good afternoon, Your Honor.  Paul
6   Rothstein from Gainesville, Florida, here on behalf of the
7   plaintiff.
8           MS. CHANDLER:  I'm Doralee Chandler from Matthews,
9   Anderson & Sayes here in Little Rock.
10          MR. TOMLINSON:  Frank Tomlinson.  I'm from Birmingham.
11          THE COURT:  Which firm in Birmingham?
12          MR. TOMLINSON:  By myself.
13          THE COURT:  Okay.  Good.
14          MR. BACHARACH:  Your Honor, I'm Albert Bacharach.  I'm
15  a solo practitioner in Gainesville, Florida.
16          THE COURT:  Mr. Bacharach, give me your first name
17  again.
18          MR. BACHARACH:  Albert.
19          MR. BAKER:  Your Honor, I'm John Baker.  And with me
20  is Julie Thomas McCabe.  She's from Miami, Florida.
21          THE COURT:  Okay.  The first motion that I show on my
22  docket sheet is the motion for summary judgment.  And give me
23  the pronunciation of the insurance company.
24          MR. BAKER:  AEGON.
25          THE COURT:  It's AEGON?

1              MR. BAKER:  Yes.  I think that's the one you're asking
2     about.
3              THE COURT:  Yes.  That's the first one on the docket.
4              MR. BAKER:  If it please the Court, Your Honor, I am
5     John Baker.  I am here on behalf of the defendants.  I have the
6     assignment of arguing that motion.  Ms. McCabe is going to
7     be --
8              THE COURT:  Hold on just one second.  Mr. Rothstein
9     wants to be heard.
10             MR. ROTHSTEIN:  Your Honor, could we just recess for
11    five minutes so counsel can confer about the information you
12    gave us?
13             THE COURT:  Yes, that's fine.  Let's recess.  I'm not
14    going to leave the bench.  I think we have a witness room out
15    there that you can go in and sit down.  Let's just recess for
16    about five minutes.
17         (Recess at 1:07 p.m. until 1:11 p.m.)
18             THE COURT:  Mr. Rothstein?
19             MR. ROTHSTEIN:  Yes, Your Honor, if I may speak to the
20    Court.
21             THE COURT:  Yes, sir.
22             MR. ROTHSTEIN:  Your Honor, I don't feel good about
23    this for delaying the administration of justice and so forth,
24    but we conferred and we would like to move to recuse.
25             THE COURT:  Okay.  Let's do this, and let me see what

1    the lawyers feel about this.  We have, what is it, three
2    lawyers who have flown in from out of state.  We have one from
3    Miami, one from Gainesville, and one from Birmingham.
4              MR. ROTHSTEIN:  Two from Gainesville.
5              THE COURT:  Two from Gainesville.  I will tell you
6    that a number of the judges don't normally hear oral arguments
7    on motions.  We probably should do that more often, but we
8    don't.  Is there any objection to having -- going ahead and
9    making your arguments on the record, and then I can pass that
10   record along to the next judge?  I plan to just listen anyway.
11   I'm not going to interrogate anybody.
12             Normally my hearings -- I'll be very honest with you.  I
13   came here from the Arkansas Court of Appeals.  Normally my
14   hearings are like oral argument at the Court of Appeals where I
15   thoroughly engage and go back and forth with the lawyers.  I
16   had not planned to do that today.  But I'm thinking instead of
17   you coming back up here to argue again to another judge, you
18   can make your arguments now and we'll pass the record on to the
19   next judge.
20             MR. BAKER:  Your Honor, I guess I need some
21   clarification.  Have you already made your decision that you
22   believe recusal is necessary?
23             THE COURT:  I have not.
24             MR. BAKER:  Because we don't believe it's necessary.
25   And there's plenty of lawyers I know Your Honor worked with

1  before you took the bench.  And them appearing before you, I
2  don't believe, is grounds for recusal.  We would hope that we
3  could at least argue on the record that they haven't met the
4  burden of it.
5            THE COURT:  I'll give you that opportunity.
6            MR. BAKER:  But if you're saying you're going to
7  recuse, I don't believe it warrants a hearing.  I think we
8  ought to submit it on paper.  I think Leon had -- Judge Holmes
9  had questions that were intriguing to him, which is why he
10 asked for the hearing, which, of course, then got sloughed off
11 on you, and you look up and you've got a hearing all of a
12 sudden.  We're happy to argue this today, but if you're not
13 going to adjudicate it, then I'm not certain that that's
14 helpful.  But if you think that you will consider recusal, but
15 not necessarily rule on recusal, then we do want to argue it.
16           THE COURT:  Mr. Baker, here's the way I look at
17 recusal.  If a party has, even if it's -- I know it's supposed
18 to be objective, but if a party has a subjective belief that
19 they are not getting justice by my sitting as a judge, I have
20 no interest in these cases, so I would rather step down and
21 allow them to go to another judge who they view as being
22 impartial instead of hanging on to the case.  I wouldn't even
23 want that to be a question at some point.  That's the reason
24 why I even raised the issue when I came in here.  I looked on
25 the docket sheet and saw that you were on it.  I don't think

1    if -- I don't think that anybody who would go through this
2    trial would ever get the impression that I would be biased or
3    that I'm biased at all in your favor or against you.  But if
4    the party -- if the opposing party believes that there's an
5    appearance of some type of bias, it's just as easy for me and
6    probably easier for you just to have another judge hear it.
7         MR. BAKER:  It's not easier, Your Honor.  This case is
8    old.  It needs to be heard and ruled on, right or wrong, even
9    if you rule against me.  And so we -- we're here to argue.  We
10   want an adjudication.  This case can end today.  And there's
11   no -- I can tell you there's not going to be any standard that
12   they can articulate that should warrant your recusal.  With all
13   due respect to Your Honor, the standard you just articulated
14   anybody could invoke at any time and kick you off a case.  And
15   that's not the standard, Your Honor, respectfully.
16        And, you know, our firm has a relationship with every
17   federal judge when they were in private practice.  And so I
18   don't want to start that standard because that's some bad stuff
19   for our firm and everybody and you.  You'll never hear another
20   case from our firm apparently.  So we need to be careful about
21   this recusal standard, Your Honor.
22        THE COURT:  Mr. Baker, it wasn't just your firm.  I'll
23   be very honest with you.  In the conversation I had with my
24   clerk before I came out, I said I actually had at least one
25   insurance case with you.

1      MR. BAKER:  That's true, as co-defendants.  No.  We
2  did represent the same client.
3      THE COURT:  We represented the same clients.  And it
4  was a case you referred to me.  If it were a case, or if it was
5  your firm handling cases that I had no connection with at all,
6  or maybe a little more distance between it, I would have no
7  problem at all.  I don't really have a problem now because I
8  would rule against you just as well as I would anybody else.
9      MR. BAKER:  I know you will, Your Honor.
10     THE COURT:  But for somebody on the outside looking
11 in, the appearance means a lot to me also.  And so I just want
12 to make sure that everybody, you know, as long as that time is
13 as short as it's been -- and I think it was seven years ago.
14 I'd rather be safe for appearances purposes than unsafe.
15     MR. BAKER:  May I confer, Your Honor, with my lead
16 counsel?
17     THE COURT:  Yes.  And understand, Mr. Baker, I'll
18 raise this with Mr. Rothstein, I practiced in a small town over
19 in Eastern Arkansas in Helena.  I didn't practice here in
20 Little Rock.  And in my hometown we routinely had cases in
21 front of judges that we practiced with, that we went to church
22 with, that we fought with.  There's no question in Helena,
23 where I'm from, that -- I mean, I prosecuted people I knew
24 personally when I was a prosecutor.  I defended against people
25 who I had personal relationships with.  And there was no idea

1   that we had to recuse.  The standard is a little different over
2   here in Little Rock.  People have a tendency to believe that
3   there should be an even wider gulf between the judges and the
4   parties and lawyers involved in the cases.
5       For me, it would be old hat for me to hear the case and to
6   do my job, but I respect the fact that you would like somebody
7   who doesn't have a connection at all, or maybe their connection
8   is much -- there is much more distance between the connection.
9           MR. ROTHSTEIN:  Thank you, Your Honor.
10          MR. BAKER:  Your Honor, may we have a moment to confer
11  with our client?
12          THE COURT:  And here's what you can do, Mr. Baker, and
13  I would say this to plaintiff's counsel.  We can make a full
14  record on this and I can go and study a little bit and work on
15  it and maybe enter an order at some point later after I've had
16  a chance to deal with it.  I did not realize, to tell you the
17  honest-to-God's truth, that it was Judge Holmes who wanted to
18  hear from the parties about specific issues.  Because I will
19  tell you, I normally would not require you to come in here and
20  have an oral argument on a summary judgment motion.  I believe
21  this is something I could deal with on the briefs that you've
22  provided.  I mean, the briefs are substantial.  I think there's
23  enough here to make a decision on.
24          MR. ROTHSTEIN:  There are enough trees that have been
25  felled.

1           THE COURT:  That's right, and so you wouldn't have to
2   come back to Little Rock if I were to decide I was not going to
3   recuse.  So if we want to have a full-fledged hearing on that
4   issue, we can do that and I can reserve the ruling on it and
5   then make that discussion before I rule on the motions.  Either
6   way is fine.  I'll give both parties an opportunity to be
7   heard, to make a record.
8           MS. MCCABE:  Your Honor, could we just have a couple
9   of minutes to talk about this?
10          THE COURT:  Yes, ma'am, you can.
11          MS. MCCABE:  Appreciate it.
12          MR. ROTHSTEIN:  Are we in recess, Your Honor?
13          THE COURT:  We will be for a few minutes.
14      (Recess at 1:19 p.m. until 1:22 p.m.)
15          THE COURT:  Are we ready to go back on the record?
16          MR. BAKER:  Yes, Your Honor.  The defendants have
17  conferred and we -- our request, respectfully, would be that
18  you put the parties on a very tight scheduling -- briefing
19  schedule on a recusal motion.  Plaintiffs need to file a motion
20  articulating the grounds for that recusal, we get a short time
21  frame in which to respond, and then Your Honor rules.  And if
22  you keep the case, you can tell us if you think a summary
23  judgment hearing is necessary.  I think Judge Holmes must have
24  had questions because he, too, does not normally schedule
25  hearings.  I don't know that.  I'm speculating and supposing

1  that. I didn't know why Your Honor set this for a hearing, but
2  I was happy that you did because we want to keep this case
3  moving.
4         THE COURT: I think what was happening was it was
5  already scheduled. We just kept it on the schedule and didn't
6  move it.
7         MR. BAKER: That's true. I mean, it's kind of a weird
8  thing that happened here. I don't think the case absolutely
9  has to have an oral argument either. I think the briefs are
10 sufficient. We'll argue it if you want us to, but I don't
11 think there's grounds for recusal. And I hope the Court will
12 study it and I hope they get five days to brief it and we get
13 five days to brief it. And if you do think you need to recuse,
14 you recuse, then you hop off. And if you don't think you need
15 to recuse, then we keep going and you decide if you need a
16 summary judgment hearing or not.
17        THE COURT: Mr. Rothstein, is there any objection to
18 following that course of action?
19        MR. ROTHSTEIN: Your Honor, I think that, as I learned
20 in law school, probably judges have more power and authority
21 than anyone in this country, and federal judges are on the top
22 of that in terms of making decisions. I think -- I mean, if
23 the Court wants us to brief this issue, that's fine. I think
24 it certainly is within the inherent jurisdiction of the Court
25 to decide that issue. I appreciate the Court bringing this to

1    our attention.
2            THE COURT:  Here's the thing.  I know that I'm not
3    required to recuse, so any brief that would be filed would not
4    be a brief that would be written to tell me that I have to.  I
5    know better than that.  The question is, under the
6    circumstances that I have here -- which, I routinely have
7    lawyers in this courtroom who I know, and so it can't be just
8    that I know them or that I've worked with them at some point.
9    But I always think that lawyers who are not either local
10   lawyers or lawyers who don't know my relationships with other
11   lawyers need to be told so that you at least can make a record
12   of what you believe I should do on that issue or -- and if --
13   the honest-to-God's truth is, if the defendants in this case
14   didn't object to it and you said you wanted me to recuse, I
15   would stand down today.  I've had that happen.  Well, no, I
16   haven't had that happen because usually there's one side that
17   says:  I want you to stay on.  But I like to at least have
18   something that tells me why this would be the type of case or
19   why I should stand down.  And please feel free to make the best
20   arguments you can on that issue and don't hesitate to hurt my
21   feelings.  I really don't mind that at all.  I just need to
22   feel comfortable that both sides walk into this courtroom
23   feeling like you're getting unbiased justice, not that you come
24   in here and it's stacked against you the day you walk into the
25   courtroom.  And so you at least need to have an opportunity to

1    look at that and think about it and give me the reasons why I
2    should stand down.
3              MR. ROTHSTEIN:  And that's what we'll do, Judge.  Just
4    for purposes of a parallel -- and maybe I'm not seeing it
5    correctly, but what Judge Holmes did -- and I don't know if you
6    were privy to his letter or not in terms of what he wrote.  He
7    just brought this to our attention because he essentially is
8    echoing what you're saying, that he knew this individual or
9    whatever, but he thought that it would be better that he step
10   aside.
11             THE COURT:  But the individual involved was a witness,
12   right?
13             MR. ROTHSTEIN:  Correct.
14             THE COURT:  And that's a little different than knowing
15   one of the lawyers.  You know, in a small legal community like
16   Arkansas, you know, if you join one or two committees of the
17   Arkansas bar, you do something right here, we're going to know
18   each other or come across, cross paths with each other and that
19   type of thing.  But to know a witness in the case -- it's
20   almost like when I seat a jury and I ask them if a witness is
21   going to testify, would they feel like they would have to
22   answer to that person if they were to rule the opposite way,
23   that's a little stronger than knowing one of the lawyers.  I
24   respect what Judge Holmes did and I understand it.  If there
25   was a witness in this case who I knew -- well, that's not

1    always true, though -- who I respected and would give greater
2    weight or less weight to because of the testimony, then I would
3    recuse also.
4         MR. ROTHSTEIN:  But I don't think -- and I may be
5    misstating it, but I don't think he indicated that he thought
6    he would do that, but he was concerned about --
7         THE COURT:  The appearance.
8         MR. ROTHSTEIN:  -- the appearance of that.
9         THE COURT:  Yeah.  Mr. Bacharach says it's time to sit
10   down.  I understand that.  If you see me looking over at Ms.
11   Depper here, my clerk, and she starts doing that, it means it's
12   time to wind up.
13        Let's do this.  Just prepare something short.  I'll give
14   you five days.  And, you know, just something very short giving
15   me the most compelling reasons why I should stand down.  I will
16   think about it.  And I haven't made a decision.  I haven't
17   decided I will, but I will be very honest with you, Mr. Baker,
18   I haven't decided that I won't either.  I very well could stand
19   down and recuse from this case.  I do believe parties and
20   lawyers need to feel like they are getting unbiased justice.
21        Yes, sir, Mr. Bacharach.
22        MR. BACHARACH:  Your Honor, can we have just a few
23   more days than that?  The three out-of-town lawyers are working
24   on a petition for cert, so maybe ten?
25        THE COURT:  That's fine.  Do you need a little more

```
 1   time?  Ten days is great.
 2           MR. BACHARACH:  Thank you, Your Honor.
 3           THE COURT:  I have a trial that starts Monday that
 4   will go two weeks anyway.  So once I divert my attention from
 5   one issue, I just move right on to another one.
 6       Is ten days fine?
 7           MR. ROTHSTEIN:  Ten days is fine.  Just so we all are
 8   clear, I'm taking off the month of July.  So if the Court does
 9   say that they are going to stay here, I would like the hearing
10   not to happen in July because I'm out of my office.
11           THE COURT:  I understand.  And what are your plans for
12   the month of July?
13           MR. ROTHSTEIN:  Well, this is on the record.  I'm
14   hoping that my unpublished novel of 18 years will finally see
15   its way.  I'm going to be working on that.
16           THE COURT:  So it's not vacation; it's just other work
17   that you're working on?
18           MR. ROTHSTEIN:  I consider that vacation.
19           THE COURT:  You had me excited at first.  I thought
20   you were actually taking a vacation.
21           MR. ROTHSTEIN:  We're going to Seattle.
22           THE COURT:  All right.  I'm sorry to have had all of
23   you come to town.  I know you're spending clients' money and
24   there are other things you could have been working on, but I
25   did feel that I needed to let you know where I am.  And so
```

1  anyway, I think I've wasted a bunch of client time -- well, a
2  bunch of attorney time and a bunch of client money, so forgive
3  me.  But we will recess this hearing and I'll look for your
4  brief within ten days.
5         MR. BACHARACH:  Thank you, Your Honor.
6         MR. ROTHSTEIN:  Thanks.
7         MS. MCCABE:  Thank you, Your Honor.
8      (Proceedings concluded at 1:30 p.m.)
9                  C E R T I F I C A T E
10    I, Judith A. Ammons, Official Court Reporter, do hereby
11 certify that the foregoing is a true and correct transcript of
12 proceedings in the above-entitled case.
13
14
15
16 /s/  Judith A. Ammons, RPR, CRR, CCR    Date: July 11, 2011
        United States Court Reporter
17
18
19
20
21
22
23
24
25

Judith A. Ammons, RPR, CRR, CCR
United States Court Reporter