IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**ROBERT W. HALL**                                                                              **PLAINTIFF**

v.                                    Case No. 4:11-cv-00086-JLH

**EQUITY NATIONAL LIFE INSURANCE
COMPANY, et al.**                                                                              **DEFENDANTS**

TRANSAMERICA LIFE INSURANCE COM**PANY'S**
RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE AN
AMENDED SUBSTITUTED STATEMENT OF FACTS

Defendant Transamerica Life Insurance Company ("Transamerica") submits this response in opposition to plaintiff's new "Motion for Leave to File Plaintiff's Amended Substituted Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion for Partial Summary Judgment" (Docket #185) (the "Motion for Leave" or "Motion"). For the reasons set forth below, and in this Court's September 14, 2011 Order (Docket #190) denying plaintiff's nearly identical, previously-filed motion, the Motion for Leave should be denied.

**INTRODUCTION**

Plaintiff's Motion for Leave again seeks to file an untimely "substituted" statement of facts to replace the statement he filed *seven months* ago on February 15, 2011 (Docket #107) in support of a cross-motion for partial summary judgment (Docket #105) (the "Cross-Motion"). Plaintiff's Motion should be denied because it was filed months after the summary judgment briefing deadlines and it violates Local Rule 56.1 which required plaintiff to submit any statement of material facts and supporting evidence *with* his original summary judgment motion. *See, e.g.*, September 14, 2011 Order (Docket #190) (citing Local Rule 56.1 and denying plaintiff's previous motion (Docket #138) for leave to file an untimely substituted statement of

facts). In addition, the Motion for Leave attempts to incorporate two declarations that plaintiff failed to timely obtain or disclose without good cause. Plaintiff's Motion does not address or satisfy the legal standard for supplementing the summary judgment record in this Circuit. *See Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 856 (8th Cir. 2010) (affirming district court's order denying plaintiff's request to supplement summary judgment record based on plaintiff's failure to meet required "excusable neglect" standard). Moreover, although plaintiff alleges his proposed amended statement is based on "new evidence," he likewise does not satisfy the legal standard for "newly discovered evidence." *See Griffin v. Fed. Deposit Ins. Corp.*, 831 F.2d 799, 802 (8th Cir. 1987) (party claiming "newly discovered evidence" must demonstrate both due diligence and materiality). Plaintiff's Motion for Leave fails to even mention, much less satisfy, these standards.

By Transamerica's count, since filing his Cross-Motion, plaintiff has filed *eight* subsequent briefs, motions for leave, and/or notices of filing which, like the pending Motion for Leave, seek to add new "facts" to the summary judgment record. *See* Docket ## 129, 138, 139, 140, 141, 150, 153, 184, and 185.[1] As these serial filings demonstrate, plaintiff's Motion for Leave is part of a larger pattern designed to delay and create confusion regarding the record in this case. The Motion for Leave should be denied.

---

[1] Transamerica previously attempted to minimize the burden on the Court by responding to several of plaintiff's serial filings in consolidated fashion. *See* Transamerica's Consolidated Response to Plaintiff's Motions for Leave to File Untimely Summary Judgment-Related Materials (Docket #149) (filed May 25, 2011, responding to Docket ##138, 139, and 140). Unfortunately, plaintiff has continued to systematically inundate the Court with additional summary judgment-related papers, some of which, like the instant Motion for Leave, require a substantive response even though they are meritless and duplicative.

## **RELEVANT PROCEDURAL BACKGROUND**

### *The Parties' Summary Judgment Briefing*

This case involves a dispute over benefits paid to plaintiff for a 2006 Surgery Claim and Anesthesia Claim under a supplemental cancer insurance policy. On December 21, 2010, Transamerica filed its Summary Judgment Motion (Docket #76), supporting Memorandum of Law (Docket #77), and Statement of Material Facts (the "Statement") (Docket #78). As required by Local Rule 56.1(a), Transamerica supported its Summary Judgment Motion with substantial admissible evidence.[2] Transamerica's summary judgment evidence established that it had properly paid benefits in the amount of the "actual fee" and "incurred expense" for the claims at issue. Plaintiff maintains, however, that he should be paid benefits based on the provider's maximum "list price," even though the undisputed evidence shows he was never billed for the list prices, and never suffered a loss or incurred expense in the amount of the list prices.

As the Alabama Department of Insurance explained in correspondence to the plaintiff, closing its file on his complaint:

> [Transamerica] paid surgical benefits based on what Medicare had approved for it. The policy paid the maximum benefit of $200.00 per day for each day you were in the hospital, according to the policy provisions. All other benefits were paid according to the policy schedule. We are sorry you[r] policy could not pay more toward your claims but due to it being a Limited Benefits Contract it does not.

---

[2] Transamerica's Motion included evidence from the plaintiff; evidence from Transamerica employees regarding plaintiff's claims and the specific benefits paid to plaintiff under his Policy; the testimony of two expert witnesses; the testimony of a billing representative for plaintiff's healthcare provider; and a letter to plaintiff from the Alabama Department of Insurance explaining the Department's opinion that Transamerica properly paid all benefits due under plaintiff's Policy. *See generally* Transamerica's Summary Judgment Motion (Docket #76) at Exhibits 1-9.

*See* Transamerica's Summary Judgment Motion (Docket #76), at Exhibit 9.[3]

Transamerica's motion also established the cost of plaintiff's medical treatment with direct evidence from Kathy Holdiness, the billing representative for plaintiff's surgeon:

> On July 27, 2006, Management Services Organization physician Dr. Stanley A. Wade performed prostate surgery on Mr. Hall. Although Management Services Organization's maximum rate for treatment related to the surgery was $4,166.00, ***the total fee to Mr. Hall for this surgery was $1,483.58***, which was the Medicare Allowed Amount. Medicare paid $1,186.86, and UnitedHealthcare paid the balance of $296.72. Under federal law, neither Medicare nor Mr. Hall or UnitedHealthcare were obligated to Management Services Organization or Dr. Wade for any amount in excess of the $1,483.58 Medicare Allowed Amount. Management Services Organization ***did not charge its maximum rates to Mr. Hall*** and did not otherwise attempt to obtain any payments from Mr. Hall or UnitedHealthcare in excess of the Medicare Allowed Amount.

*See id.* at Exhibit 4 (Declaration of Kathy Holdiness ¶ 12) (hereinafter, the "Holdiness Declaration") (emphasis added). Accordingly, Transamerica's Summary Judgment Motion unequivocally established that Transamerica's benefit payment to plaintiff of $1,483.58 for his Surgery Claim was equal to the total expense plaintiff incurred, the total amount billed, owed, and paid for the Surgery, and the total amount accepted as payment in full by plaintiff's surgeon. Similarly, Transamerica's maximum benefit payment of $370.90 to plaintiff for Anesthesia Claim was much greater than the expense incurred of $189.11.[4] Transamerica's Summary

---

[3] Plaintiff is an Alabama resident and his claims are governed by Alabama law, which precludes payment of the "list" prices plaintiff seeks to recover in this action. *See Claybrook v. Central United Life Ins. Co.*, 387 F. Supp. 2d 1199, 1204 (M.D. Ala. 2005) (holding plaintiffs were not entitled, under Alabama law, to be paid their provider's list prices under a supplemental cancer insurance policy because "actual charges" means the amount the "providers accepted in full and final payment for their services").

[4] Plaintiff's Complaint alleged that his Surgery and Anesthesia claims were underpaid. Complaint ¶ 42. Transamerica paid benefits of $1,854.58 for these claims. *See* Transamerica Life Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment at 4 (Docket #77). Plaintiff contends that he should have been paid $1,700.00 for the Surgery plus

*(footnote continued on next page)*

Judgment Motion was filed after the close of the original, thirteen month discovery period in this case.  Since plaintiff's Policy bases benefits for surgery and anesthesia on the medical provider's "actual charge" or "actual fee," Transamerica's summary judgment evidence established that the Company is entitled to a final summary judgment on all of plaintiff's claims.

On February 15, 2011, after multiple extensions, plaintiff responded to Transamerica's Summary Judgment Motion by filing a consolidated cross-motion for partial summary judgment and response brief.[5]  Plaintiff also filed a Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion (Docket #107) ("plaintiff's Statement").  However, plaintiff failed to file any response to Transamerica's Statement of Facts as required by Local Rule 56.1(b).  Instead, plaintiff's Statement largely ignored all of Transamerica's evidence and merely added a conclusory footnote denying "all other facts stated in Transamerica's Statement of Material Facts in Support of Transamerica Life Insurance Company's Motion for Summary Judgment that are inconsistent with the facts stated herein."  Plaintiff's Statement at 1 n.1.  Plaintiff gave no indication that he needed additional time to collect evidence or conduct further discovery, yet he failed to submit or cite any evidence in support of his general denial of Transamerica's Statement.[6]

---

$425.00 for the Anesthesia, for a combined total of $2,125.00. Complaint ¶ 42. Thus, the total amount in dispute in this action is $270.42.

[5] With his Cross-Motion (Docket #105), plaintiff filed a Memorandum in Support of Plaintiff's Cross-Motion for Partial Summary Judgment and Response in Opposition to Defendant Transamerica Life Insurance Company's Motion for Summary Judgment (Docket #106) ("plaintiff's Response").

[6] Plaintiff engaged in no affirmative discovery of his own during the original discovery period.  He made no attempt to depose Transamerica's corporate witnesses, and he served no written discovery or subpoenas.  Plaintiff also made no effort to take the depositions of Transamerica's two expert witnesses, or the deposition of third party witness Ms. Holdiness, despite that all of these witnesses were disclosed to him during the discovery period.

On March 11, 2011, Transamerica filed its Reply Memorandum and Response in Opposition to Plaintiff's Cross-Motion (Docket #121) ("Transamerica's Reply"). Transamerica also filed its Response to plaintiff's Statement (Docket #120). Transamerica's Reply closed briefing on Transamerica's Summary Judgment Motion.

On March 23, 2011, plaintiff filed his Reply in support of the Cross-Motion (Docket #129) ("plaintiff's Reply"). Plaintiff's Reply attached fourteen new exhibits, including one of the two declarations he now seeks to incorporate into a substituted statement through his Motion for Leave. *See J.S. & A.S. v. E. End Sch. Dist.*, 2007 WL 1029559, at *1 n.2 (E.D. Ark. Apr. 3, 2007) (summary judgment exhibits submitted for the first time on reply were improper and would not be considered); *Percefull v. Claybaker*, 2005 WL 3805975, at *1 n.1 (W.D. Ark. Oct. 24, 2005) (party moving for summary judgment "will not be allowed to use their reply brief as a tool to circumvent the Court's deadlines and raise arguments that were omitted from their original Motion for Summary Judgment," and court would "not consider the new arguments raised [in reply] when considering the pending Motion for Summary Judgment").[7] Plaintiff's Reply closed briefing on plaintiff's Cross-Motion.

### *Plaintiff's Post-Summary Judgment Filings*

Since filing his Reply, plaintiff has submitted a convoluted series of filings which have

---

[7] Plaintiff's pending Motion for Leave seeks permission to rely on a "Supplemental Declaration of Kathy Holdiness" that was improperly attached as an exhibit to his Reply (the "Second Holdiness Declaration"). Plaintiff's Motion for Leave does not mention, however, that the Second Holdiness Declaration is the subject of Transamerica's fully briefed Motion to Strike (Docket #133). The Second Holdiness Declaration was not only untimely filed, but was improperly obtained after the close of the original discovery period, without notice to counsel for either Transamerica or Ms. Holdiness, has since been retracted, and constitutes an unreliable "sham" declaration inadmissible in this Circuit to support or oppose summary judgment. *See* Transamerica's Memorandum of Law in support of its Motion to Strike the "Supplemental Declaration of Kathy Holdiness" (Docket #134); Transamerica's Motion for Leave to File Reply Memorandum (Docket #143).

delayed and confused resolution of this relatively straightforward breach of contract case. Plaintiff's recent Motion for Leave is just the latest such filing. For example:

- On April 22, 2011, nearly a month after improperly filing the Second Holdiness Declaration with his summary judgment Reply, plaintiff filed a motion to incorporate the Second Holdiness Declaration in a substituted statement of facts. Docket #138 (plaintiff's "First Motion for Leave").[8]

- On May 2, 2011, plaintiff filed a Motion for Leave to File Newly-Discovered Evidence (Docket #139), which attached another new declaration. Docket #139-1 (Declaration of John A. Hartnedy; hereinafter, the "Hartnedy Declaration").

- On May 3, 2011, without awaiting a response on his two pending motions, plaintiff re-filed the Second Holdiness Declaration, the Hartnedy Declaration, and his own self-serving declaration with an Amended Motion for Leave to File Out of Time Newly-Discovered (Docket #140, and Exhibit A-C).

- On May 3, 2011, without leave, plaintiff also filed the same three declarations yet again in a Notice of Filing Declarations in Opposition to Defendant Transamerica Life Insurance Company's Motion for Summary Judgment and in Opposition to Defendant AEGON USA, LLC's Motion for Summary Judgment (Docket #141).

- On May 26, 2011, plaintiff filed yet another Motion for Leave to File Out of Time Newly-Discovered Evidence (Docket #150), which attached multiple documents plaintiff never previously identified or disclosed.[9]

- On June 10, 2011, plaintiff filed an Unopposed Motion for Leave to file plaintiff's deposition transcript, with all exhibits (Docket #153). Although this Motion was entirely unnecessary because Hall's deposition was already in the record Transamerica did not oppose this motion.

- On June 22, 2011, plaintiff delivered to the Court a letter and a tabbed binder including *additional* copies of several of these untimely materials, along with a

---

[8] On September 14, 2011, this Court denied plaintiff's First Motion for Leave and it is no longer pending. *See* September 14, 2011 Order (Docket #190).

[9] Transamerica filed a consolidated response to plaintiff's April 22nd, May 2nd, and May 3rd filings. *See* Transamerica's Consolidated Response in Opposition to Plaintiff's Motions for Leave to File Untimely Summary Judgment-Related Materials (Docket #149). Transamerica also responded to plaintiff's May 26, 2011 motion. *See* Response in Opposition to Plaintiff's Motion for Leave to File Untimely Summary Judgment-Related Materials (Docket #158). Transamerica also filed a "Consolidated Rule 56 Objections to Plaintiff's Untimely and Inadmissible Materials Submitted in Opposition to Summary Judgment" in an order to provide the Court with a consolidated response to all of plaintiff's summary judgment related filings. *See* Docket #163.

- new brief plaintiff labeled a "bench" memorandum. Transamerica had never previously seen, and had no opportunity to respond to the "bench" brief.
- On August 29, 2011, without leave, plaintiff filed a Notice of Filing "Amended Responses" to AEGON USA, LLC's and Transamerica's Statements of Fact in Support of their Motions for Summary Judgment (Docket #184).

The pending Motion for Leave seeks to file yet another untimely substituted statement of facts in connection with closed summary judgment briefing. The new Motion for Leave should be denied.

## ARGUMENT

**I. PLAINTIFF'S MOTION FOR LEAVE SHOULD BE DENIED BECAUSE HIS PROPOSED SUBSTITUTED STATEMENT OF FACTS IS UNTIMELY AND VIOLATES LOCAL RULE 56.1**

**A. Plaintiff's Motion For Leave Is Inconsistent With Federal Rule Of Civil Procedure 56 And Violates Local Rule 56.1**

Plaintiff's Motion for Leave should be denied because it violates Federal Rule of Civil Procedure 56 and Local Rule 56.1. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After the movant meets that initial burden, the burden shifts to the non-moving party to designate "*specific facts* showing that there is a genuine issue for trial." *Id*. (emphasis added). In this Court, Local Rule 56.1 further provides:

> (a) Any party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried.
>
> (b) If the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried.
>
> (c) All material facts set forth in the statement filed by the moving party

> pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b).

*See* Local Rule 56.1; *see also* September 14, 2011 Order (Docket #190) (denying plaintiff's previous motion for leave for failure to comply with Local Rule 56.1(b)).

Consistent with these standards, Transamerica's Summary Judgment Motion (Docket #76) was supported by a separate, short and concise statement of undisputed material facts (Docket #78) and was accompanied by substantial, admissible evidence. Transamerica's Motion thus shifted the burden to plaintiff to designate specific facts and evidence demonstrating a genuine issue for trial.

Instead of designating any specific facts that would prevent summary judgment in Transamerica's favor, plaintiff chose to file a consolidated Response and Cross-Motion. In those papers, plaintiff gave no indication that he needed further evidence or discovery in order to respond to Transamerica's Summary Judgment Motion. Thus, plaintiff was obligated in his responsive filings to comply with Local Rule 56.1(a) which required that plaintiff "annex" to his Cross-Motion a "statement of the material facts as to which [he] contends there is no genuine dispute to be tried;" and Local Rule 56.1(b) which required plaintiff to submit a separate statement "of the material facts as to which [he] contends a genuine dispute exists to be tried" with respect to Transamerica's Summary Judgment Motion. *See also Duvall v. City of Rogers, Ark.*, 2005 WL 3784932, at *1 (W.D. Ark. Dec. 20, 2005) ("[W]hen a material fact is not agreed upon and the moving party puts forth evidence to support his contention with respect to it, the non-moving party is obliged to respond with contrary evidence if any he has.").

Instead, plaintiff filed a single, mostly irrelevant Statement that satisfied neither sub-section of the Rule and failed to meet his burden of responding to Transamerica's Summary Judgment Motion. Pursuant to Local Rule 56.1, Transamerica's well-supported statement of facts was "deemed admitted" when plaintiff failed to file a timely response. Local Rule 56.1(c);

9

*see also Philson v. Ark. Dep't of Human Servs.*, 2010 WL 4683898, at *1 (W.D. Ark. Nov. 10, 2010) (finding it was inappropriate for summary judgment respondent to rely on "speculation, denials or allegations" to oppose well-supported facts, and "facts not specifically controverted" by reference to record evidence are "deemed to have been admitted pursuant to Local Rule 56.1").[10]

As this Court recognized in its recent Order, plaintiff's belated attempts to amend his statement of facts at this late date are improper, and the Motion for Leave should be denied.

**B.  Plaintiff's Motion For Leave Does Not Meet The Standard For Filing A Belated, Substituted Statement Of Facts**

The Eight Circuit has adopted a "good cause" standard for adding or substituting facts that were not timely presented to the Court in a party's original summary judgment briefing. This standard requires the party seeking amendment to demonstrate that the new facts were omitted because of "excusable neglect." *See Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 856 (8th Cir. 2010) (affirming district court's order which denied plaintiff's request to file a substituted statement of facts where plaintiff failed to demonstrate "good cause" or "excusable neglect"). Plaintiff has not cited and cannot meet this standard.

In *Huggins*, the plaintiff sought leave to supplement the summary judgment record with new evidence after he filed a response. The district court acknowledged that the new evidence was of "potential significance" but declined to consider the evidence because it was obtained after the discovery and dispositive motion deadlines. *Id*. at 856. The Eighth Circuit affirmed

---

[10] Transamerica responded to plaintiff's Cross-Motion and Statement, identifying substantial evidence in the record which unequivocally established that the facts in plaintiff's Statement were either unsupportable or immaterial to the pending summary judgment motions. *See* Transamerica's Response to Plaintiff's Statement of Undisputed Material Facts (Docket #120).

because plaintiff could not establish that his failure to timely obtain and submit the evidence was the product of excusable neglect. Like the filings by the plaintiff in *Huggins*, plaintiff's Motion in this case demonstrates neither "good cause" nor "excusable neglect."

Similarly, although plaintiff alleges this evidence is "newly discovered," plaintiff cannot possibly satisfy the legal standard in this court for submitting "newly discovered evidence." The Eighth Circuit requires that a party claiming "newly discovered evidence" must demonstrate, among other things, that the "the movant used due diligence to discover the evidence" and that the evidence "is material." *Griffin v. Fed. Deposit Ins. Corp.* 831 F.2d 799, 802 (8th Cir. 1987). Plaintiff's Motion demonstrates neither.

Plaintiff's sole basis for his Motion is that he wants to submit "new evidence" that was "first obtained after Hall filed his Cross-Motion." Motion for Leave at 2. Plaintiff's Motion fails to identify *any* reason why he did not seek or obtain this evidence during the original discovery period in this case. Transamerica produced a copy of the Holdiness Declaration to plaintiff's counsel on September 3, 2010, more than three months before the expiration of the December 16, 2010 discovery deadline, and more than five months before plaintiff filed his Cross-Motion. Plaintiff could have taken Ms. Holdiness's deposition but simply chose not to do so. Similarly, the Declaration of John Hartnedy was obtained and filed by a different insured in another case, and could have been obtained by the plaintiff here in the exercise of due diligence if plaintiff believed such testimony was relevant.[11] Plaintiff's failure to obtain the evidence he

---

[11] Plaintiff's tactic of collecting new materials and belatedly submitting them after the close of summary judgment briefing also violates the disclosure requirements of Rule 26(a), which requires timely identification of persons with discoverable information and documents a party intends to use to prove its claims or defenses. Fed. R. Civ. P. 26(a). Even if plaintiff had timely obtained and disclosed these materials, however, they are inadmissible and immaterial, and would not support his summary judgment arguments. *See infra*, pp. 12-18.

now seeks to file is the product of his counsel's tactical decision not to pursue any discovery prior to briefing summary judgment. Plaintiff cannot satisfy the standards of good cause, excusable neglect, due diligence, and materiality required to support the relief he now seeks.

## II. PLAINTIFF'S MOTION FOR LEAVE SHOULD BE DENIED BECAUSE IT IS BASED ON DECLARATION TESTIMONY THAT IS INADMISSIBLE AND IMMATERIAL

Even if plaintiff could meet the standard for submitting new evidence in support of his Cross-Motion, which he cannot, the Motion for Leave should be denied because it seeks to add "facts" that are either unsupported by admissible evidence, immaterial, or both. Plaintiff's proposed new "facts" are based on (a) the unreliable Second Holdiness Declaration, which is the subject of Transamerica's Motion to Strike and has been recanted by Ms. Holdiness in all material respects; and (b) multiple excerpts from the Hartnedy Declaration, which lack foundation and are not based on the witness's personal knowledge. *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e).") (citation omitted); *see also Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (citation omitted) (holding that a party opposing summary judgment "must substantiate his allegations with 'sufficient probative evidence,'" and affirming summary judgment as "appropriately granted" where responding party failed to present evidence other than "naked assertions").

Plaintiff has already filed both the Second Holdiness Declaration and the Hartnedy Declaration multiple times in the record, and the issue of whether these Declarations are relevant or admissible is already the subject of multiple pending filings. *See, e.g.*, Docket ##133, 134, 137, 139, 140, 141, 143, 149, and 163. It is entirely unclear, given the state of the record in this

case, why plaintiff filed his new Motion for Leave, addressing the very same material that is already being considered by the Court and has been briefed in exhaustive fashion. Nevertheless, as set forth below and in Transamerica's prior briefs, the Second Holdiness Declaration and the Hartnedy Declaration do not qualify as "probative evidence." *Moody*, 23 F.3d at 1412.

### A. The Second Holdiness Declaration Does Not Qualify As Probative Evidence And Cannot Support Plaintiff's Cross-Motion

Kathy Holdiness is a representative of the billing company for plaintiff's surgeon Dr. Stanley Wade. Ms. Holdiness is a third-party witness located in Meridian, Mississippi, who provided declaration testimony during the original discovery period in this case which established that plaintiff never owed and did not pay the list prices he seeks to recover in this action. *See* Transamerica's Summary Judgment Motion (Docket #76), at Exhibit 4 (original Holdiness Declaration). Ms. Holdiness's identity and testimony were timely disclosed to plaintiff, who made a tactical decision not to take her deposition or timely challenge her testimony. Instead, *after* briefing on Transamerica's Summary Judgment Motion was complete, plaintiff obtained a second declaration from Ms. Holdiness that was inconsistent with her original testimony. *See generally,* Transamerica's Motion to Strike (Docket #133) and supporting memorandum (Docket #134). Plaintiff first disclosed the Second Holdiness Declaration when he filed it with the Reply (Docket #129) in support of his Cross-Motion.

Relying on the Second Holdiness Declaration, plaintiff attempts to add to his Statement the allegation that plaintiff became "contractually liable" for his medical provider's "full list prices" at the time of treatment; that the billing service for plaintiff's medical provider "actually charges" its "maximum rates" to all patients, including plaintiff; and that plaintiff was "charged" and "became liable for" his medical provider's list prices. *See* Plaintiff's Motion for Leave, Exhibit A (citing Second Holdiness Declaration ¶¶ 6, 8).

13

Plaintiff's Motion for Leave, however, fails to inform the Court that the cited paragraphs directly conflict and are irreconcilable with Ms. Holdiness's original declaration in which she testified unequivocally that: "Management Services Organization did not charge" the plaintiff "for any amount beyond the Medicare Allowance" for his treatment; "did not charge its maximum rates to Mr. Hall"; was "not permitted to bill or charge" its maximum rates to the plaintiff; and that the Medicare Allowed Amount (rather than the medical provider's maximum list prices) was "the maximum amount that could ever be owed to Management Services Organization" by plaintiff. Holdiness Declaration ¶¶ 6, 8, 10, 12. Accordingly, the Second Holdiness Declaration could not possibly establish that there are undisputed facts supporting plaintiff's Cross-Motion.

Plaintiff's Motion for Leave also fails to disclose that Ms. Holdiness subsequently retracted the conflicting statements plaintiff seeks to incorporate into his new statement of facts. In withdrawing the conflicting testimony that plaintiff surreptitiously obtained from Ms. Holdiness without the participation of her own attorneys, Ms. Holdiness explained the circumstances that led to her signing the unreliable Second Holdiness Declaration:

> 3. I originally compiled documents and provided testimony for this case on behalf of Management Services Organization in a declaration that I signed on August 19, 2010, in connection with a subpoena (my "First Declaration"). . . .
>
> 4. My deposition had been set for July 20 and 21, 2010, by subpoenas issued at the request of counsel for Transamerica Life Insurance Company pursuant to Fed. R. Civ. P. 30(b)(6). Upon the suggestion of counsel for Transamerica, my First Declaration was provided in lieu of my deposition. My First Declaration was prepared by counsel for Transamerica to respond to the subpoena attached as Exhibit 1. Defendant's counsel worked through counsel for my employer to complete the First Declaration.
>
> 5. Approximately eight months later, I received a message that an attorney named Paul Rothstein was attempting to obtain a supplemental declaration. I returned Mr. Rothstein's telephone call, and

he asked me whether I would sign another declaration for this case. He stated that he was representing Robert Hall. I told him that I did not know whether I could sign another declaration. At the time of my conversation with Mr. Rothstein, I had not received a copy of his proposed declaration.

6. Later that day or soon thereafter, I was forwarded a document entitled "Supplemental Declaration of Kathy Holdiness." On the day I received the "Supplemental Declaration," I was advised that Mr. Rothstein expressed a need to have the document signed and returned by 4:30 p.m. the same day (that afternoon). I reviewed the document briefly on March 17, 2011, and I signed and returned the document (the "Second Declaration").

7. I was rushed when I signed the Second Declaration due to the time constraints that had been relayed to me and because I was trying to be helpful and to avoid the need for my deposition which I understood had been the purpose of obtaining the First Declaration.

8. I have now reviewed the First Declaration and the Second Declaration more carefully.

9. First, to the extent the First Declaration and the Second Declaration refer to "maximum rates", this term should read "standard rates".

10. Moreover, the Second Declaration contains certain inaccurate statements that contradict statements in my First Declaration.

11. For example, MSO always abides by Medicare regulations. Under Medicare regulations, MSO **cannot bill** Mr. Hall any amount in excess of his deductible, co-insurance, or copayment portion of the Medicare allowance for treatment. ***Contrary to the statements in the Second Declaration, Mr. Hall was never "contractually liable for the full amount of Management Services Organization's list prices o[r] maximum rates."***

12. The Second Declaration is also inaccurate to the extent that it implies that MSO's standard rates are originally "charged" to patients like Mr. Hall with "Medicare or United Healthcare health insurance." As stated in my First Declaration, ***Mr. Hall, a Medicare patient, was never "charged" Dr. Wade's or MSO's standard rates. The Second Declaration is incorrect in stating that "Mr. Hall became contractually obligated to pay the amount of $4,166.00," and that "Mr. Hall became contractually liable to pay the amount of $1,200.00" upon receiving anesthesia. I would like to withdraw this statement[] to avoid any confusion.*** As discussed in my First Declaration, Mr. Hall was not liable to pay Dr. Wade's standard rates at any time.

15

> 13. My oversight and confusion in signing the Second Declaration were caused by the rushed time frame and my mistaken impression that the Second Declaration was merely supplemental. Several paragraphs of the Second Declaration contain statements that are nearly identical to my First Declaration and some of the incorrect statements in the Second Declaration were included in the middle of paragraphs that contain true information.

*See* May 4, 2011 Declaration of Kathy Holdiness (Docket #149-1) (emphasis added). Ms. Holdiness's explanation demonstrates that only her original testimony is admissible for summary judgment purposes, and the Second Holdiness Declaration is neither probative nor admissible as a matter of law. *See RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) ("[P]arties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment.") (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983)).[12] Plaintiff's reliance on the Second Holdiness Declaration is misplaced, and the Second Holdiness Declaration does not remotely support plaintiff's Cross-Motion.

### B. The Hartnedy Declaration Does Not Qualify As Probative Evidence And Cannot Support Plaintiff's Cross-Motion

The Hartnedy Declaration likewise does not include probative, admissible evidence to support plaintiff's Cross-Motion. It does not address the amounts charged or billed for plaintiff's Surgery and Anesthesia Claims. Indeed, the Hartnedy Declaration offers no analysis of the plaintiff's Surgery and Anesthesia Claims.

---

[12] The Eighth Circuit first adopted this rule more than two decades ago in *Camfield Tires, Inc.*, when it affirmed summary judgment in favor of the defendant, despite a material conflict between the plaintiff's deposition testimony and a later affidavit that he filed "expressly for the purpose of opposing summary judgment." *Camfield Tires, Inc.*, 719 F.2d at 1365. The Court held that plaintiff's filing of the new affidavit created a "sham issue of fact instead of a genuine one" and did not prevent summary judgment in the defendant's favor. *Id.*; *see also Nickerson v. Allied Mut. Ins. Co.*, 198 F.3d 250, 1999 WL 980933, at *1 (8th Cir. 1999) (disregarding similar affidavit as "sham" testimony).

The Hartnedy Declaration is untested affidavit testimony obtained by a policyholder in another case to argue that the phrase "actual charges" in an insurance policy should mean the "original amount billed by the doctor . . . before any reductions to the billed amount."[13] The declarant, John A. Hartnedy, worked for a predecessor of Transamerica for less than two years from 1994 to 1996, long before Transamerica adopted the claim forms and proof of loss procedures at issue in this action. Hartnedy has no personal knowledge of the Company's current claims procedures, and many of the statements in his declaration are inadmissible because they lack foundation and include multiple levels of hearsay.[14] Moreover, Hartnedy's testimony about the historical practices of Transamerica's predecessors stands for the unremarkable, general proposition that these predecessors requested "bills" to process claims in the 1990s. The Hartnedy Declaration does not address the "list" prices at issue in this case, which were never billed or owed for treatment.

The Hartnedy Declaration does not alter the undisputed fact that Transamerica paid benefits to the plaintiff in this case based on the total amount billed, owed, expected as payment, and accepted as payment in full for the Surgery and Anesthesia Claims. Thus, in addition to its

---

[13] Hartnedy was not at the Company in 2004 when Transamerica began to investigate the impact of provider "list" prices on premium rates. Indeed, there is no indication that Hartnedy was even aware of the phenomenon of provider "list" prices when he signed the Hartnedy Declaration. Nor was Hartnedy at the Company when plaintiff's claims were submitted, processed, and paid in 2007.

[14] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also* Fed. R. Civ. P. 56(c)(4) (affidavits must be made on personal knowledge); *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (affidavits used to support summary judgment must be based on personal knowledge and inadmissible hearsay cannot be used to support summary judgment); *Akers v. Liberty Mut. Group*, 744 F. Supp. 2d 92, 98 (D.D.C. 2010) (refusing to consider summary judgment exhibits that were unauthenticated or contained hearsay, explaining that "judges are not like pigs, hunting for truffles buried in . . . the record.") (citation omitted).

17

untimeliness and inadmissibility, the Hartnedy Declaration does not support plaintiff's Cross-Motion.

### III. PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE IT IS DUPLICATIVE OF PLAINTIFF'S PRIOR FILINGS AND SERVES NO LEGITIMATE PURPOSE

Given the multitude of filings in the summary judgment record, including plaintiff's various motions and notices, there is no conceivable, legitimate reason for his filing the new Motion for Leave. Plaintiff's Motion for Leave is duplicated by his March 23, 2011 Reply brief (Docket #129) which attached the Second Holdiness Declaration, as well as his filings on April 22, 2011 (Docket #138) (motion for leave, denied by September 14, 2011 Order); May 2, 2011 (Docket # 139) (motion for leave to file Hartnedy Declaration); May 3, 2011 (Docket #140) (amended motion for leave to file Second Holdiness Declaration and Hartnedy Declaration); May 3, 2011 (Docket #141) (notice of filing, without leave, the Second Holdiness Declaration and Hartnedy Declaration), and August 29, 2011 (Docket #184) (notice of filing, without leave, amended responses to Defendants' summary judgment statements of undisputed material fact).

As plaintiff's counsel remarked in open court at a recent hearing, "enough trees" have fallen due to the filings in this case. Plaintiff's latest motion appears designed to simply delay the resolution of the parties' summary judgment motions in order to prolong this litigation and needlessly inflate litigation costs. The parties' summary judgment motions are fully briefed, and plaintiff's untimely, duplicative, and improper Motion for Leave should be denied.

### CONCLUSION

For the reasons set forth herein, Transamerica respectfully requests that the Court deny "Plaintiff's Motion for Leave to File Plaintiff's Amended Substituted Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion for Partial Summary Judgment" (Docket #185).

|  | Respectfully submitted, |
|---|---|
|  | /s/ John K. Baker |
| Markham R. Leventhal, Esq. | John K. Baker, Esq., Ark. Bar No. 97024 |
| Farrokh Jhabvala, Esq. | **MITCHELL, WILLIAMS, SELIG,** |
| Julianna Thomas McCabe, Esq. | **GATES & WOODYARD, P.L.L.C.** |
| **JORDEN BURT LLP** | 425 West Capitol Avenue, Suite 1800 |
| 777 Brickell Avenue, Suite 500 | Little Rock, Arkansas  72201 |
| Miami, Florida  33131 | Telephone:  (501) 688-8800 |
| Telephone:  (305) 371-2600 | Facsimile:  (501) 918-7850 |
| Facsimile:  (305) 372-9928 | jbaker@mwlaw.com |
| ml@jordenusa.com |  |
| fj@jordenusa.com | *Attorneys for Defendant* |
| jt@jordenusa.com | *Transamerica Life Insurance Company* |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Gail O. Matthews, Esq.
Doralee I. Chandler, Esq.
MATTHEWS, SANDERS & SAYES
825 West Third Street
Little Rock, AR 72201

Frank H. Tomlinson, Esq.
Attorney at Law
15 North 21st Street, Suite 302
Birmingham, AL 35203

Paul S. Rothstein, Esq.
Attorney at Law
626 NE 1st Street
Gainesville, FL 32601

N. Albert Bacharach, Jr., Esq.
Attorney at Law
115 NE 5th Avenue
Gainesville, FL 32601

*Attorneys for Plaintiff*

    /s/ John K. Baker